# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Alicia Arends,** *et al.,* | **Case No. 1:18cv2017** |
| **On behalf of herself and** | |
| **All others similarly situated,** | |
| | |
| **Plaintiffs,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| | |
| **Family Solutions of Ohio, Inc.,** | **MEMORANDUM OPINION AND** |
| *et al.,* | **ORDER** |
| | |
| **Defendants** | |

Currently pending is Plaintiff Alicia Arends' Motion for Conditional Certification and Court-Authorized Notice.  (Doc. No. 11.)  Defendants filed a Brief in Opposition on March 15, 2019, to which Plaintiff responded on March 29, 2019.  (Doc. Nos. 13, 14.)  Defendants were thereafter granted leave to file a sur-reply on April 2, 2019.  (Doc. No. 15-1.)  For the following reasons, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART, as follows.

## I.    Procedural Background

On September 4, 2018, Plaintiff Alicia Arends ("Plaintiff" or "Arends") filed a Complaint on behalf of herself and all others similarly situated against Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith.  (Doc. No. 1.)  Therein, Plaintiff asserted violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Ohio Minimum Fair Wage Standards Act ("OMFWA"), Ohio Rev. Code § 4111.01 *et seq*.; as well as claims for breach of contract and unjust enrichment.  (*Id*.)  Of particular relevance herein, Plaintiff alleged Defendants violated the FLSA by failing to pay for time worked that was not billable to Medicaid or

other health insurance.  (*Id.*)  Jamal Stephenson subsequently filed an Opt-In and Consent Form. (Doc. No. 12-1.)

Defendants answered the Complaint on December 23, 2018.  (Doc. No. 7.)  A Case Management Conference ("CMC") was thereafter conducted, at which time deadlines were set for conditional certification briefing.  *See* Non-Document Order dated February 14, 2019.

On February 28, 2019, Plaintiff Arends filed a Motion for Conditional Certification and Court-Authorized Notice with respect to her FLSA claims.  (Doc. No. 11.)  Therein, Plaintiff sought to conditionally certify a class consisting of "all hourly employees who worked as providers for Family Solutions' behavioral healthcare facilities during the three years preceding the commencement of this action."  (Doc. No. 11-1 at p. 1.)  Defendants responded on March 15, 2019, and Plaintiff filed a Reply on March 29, 2019.  (Doc. No. 13, 14.)  Defendants were subsequently granted leave to file a sur-reply on April 2, 2019.  (Doc. No. 15-1.)  Several months later, on September 3, 2019, Plaintiff filed the Supplemental Declaration of former Family Solutions' employee Maria Graciani, in support of her Motion.  (Doc. No. 19.)

This matter was re-assigned to the undersigned on June 27, 2019 pursuant to General Order 2019-13.

## II.    Factual Allegations

Defendant Family Solutions of Ohio, Inc. (hereinafter "Family Solutions") is a non-profit organization that provides mental and behavioral healthcare services and resources for children and

2

families throughout Ohio.[1]  (Doc. No. 13-1 at ¶ 2.)   According to Defendants, Family Solutions has

office sites in Cleveland, Bedford Heights, Lorain, Columbus, and Cincinnati, Ohio.  (*Id*. at ¶ 3.)

Plaintiff Arends and Opt-In Plaintiff Stephenson both worked for Family Solutions as

Qualified Mental Health Specialists ("QMHS").  Arends held this position from October 11, 2017

through December 12, 2017,[2] while Stephenson held this position from August 2016 through May

2017.  (Doc. No. 11-2 at ¶ 1; Doc. No. 11-3 at ¶ 1.)  Defendants assert (and Plaintiffs do not contest)

that Arends was based out of the Cleveland site, and Stephenson was based out of the Cincinnati site.

(Doc. No. 13-1 at ¶¶ 20, 25.)

In support of her Motion for Conditional Certification, Arends submitted a Declaration,[3] in

which she states as follows:

3.      Family Solutions of Ohio paid me an hourly rate for my work, and only
        for those services that were billable to health insurance.

4.      In other words, necessary services like documentation, travel between clients,
        time spent for client appointment no-shows, and administrative time was
        unpaid.  I only received compensation for my time spent in appointments
        with clients that were billed to health insurance.

5.      I understood that the pay practice of being compensated only for billable time
        was a company-wide practice for all providers.

---

[1] Plaintiff alleges that Defendant Prostar Management, Inc., is the parent company of Family Solutions, and that Defendant John Hopkins is Prostar's statutory agent.  (Doc. No. 1 at ¶ 9.)  Defendant Dawn Smith is Family Solutions' Vice President of Strategic Planning and Program Management.  (Doc. No. 13-1 at ¶ 1.)

[2] In the Complaint, however, Arends alleges that she worked for Family Solutions as a QMHS from *July* through December 2017. (Doc. No. 1 at ¶ 14.)  Defendants assert that Arends began her employment with Family Solutions in July 2017 as a salaried employee to develop the early childhood program.  (Doc. No. 13-1 at ¶ 21.)  Defendants state that Arends remained a salaried employee until she failed to "meet the requirements of her salaried position," after which she moved to an hourly QMHS position on October 30, 2017.  (*Id*. at ¶ 22.)  Defendants state that, shortly thereafter, Arends resigned, effective December 12, 2017.  (*Id*. at ¶ 23.)  In a Declaration submitted in support of her Motion, Arends states that she did not, in fact, begin work as QMHS until October 11, 2017.  (Doc. No. 11-2.)

[3] Neither party objects to the Court's consideration of the various Declarations and other materials submitted in support of the parties' briefing relating to Plaintiff's Motion.

3

> 6.    I was instructed by Family Solutions of Ohio to only put billable hours as a qualified mental health specialist on my weekly timesheets.

(Doc. Nos. 11-2.)  Arends estimates that she worked 50 to 55 hours on average each week performing the following tasks: (1) appointment time with clients, (2) administrative and planning work, (3) documentation, and (4) travel between clients.  (*Id*.)  Stephenson submitted a virtually identical Declaration, with the exception that he estimates working 60 to 70 hours on average each week.  (Doc. No. 11-3.)

Maria Graciani also submitted a Declaration similar to those submitted by Plaintiffs Arends and Stephenson.  (Doc. No. 19.)  Therein, Ms. Graciani avers that she worked for Family Solutions as a QMHS from October 2017 through May 2019 and was paid "an hourly rate for my work, and only for those services that were billable to health insurance."  (Doc. No. 19-1.)  Ms. Graciani states that "[i]n other words, necessary services like documentation, travel between clients, time spent for client appointment no-shows, and administrative time was unpaid."  (*Id.*)  The record does not reflect that Ms. Graciani has filed an Opt-In and Consent Form.

In addition, Plaintiffs relied on, and attached a copy of, a Memo entitled "How to Complete Billing/Time Sheet," which they claim is a "written, companywide policy that non-billable time could not be entered on time sheets unless 'approved by your supervisor to be paid for.'"  (Doc. No. 11-4 at 3.)  This Memo appears to provide codes to be entered for non-billable time but indicates that (at least for time entered as "Miscellaneous Time")[4] an employee may only enter non-billable time that has been approved by that employee's supervisor.  (*Id.*)

---

[4] As discussed *infra*, Defendants argue that Plaintiffs have mischaracterized the Memo regarding the completion of time sheets.  (Doc. No. 15-1.)  Specifically, Defendants maintain that the Memo demonstrates that certain categories of non-billable time can be entered without supervisory approval.  (*Id.*) (citing Doc. No. 11-4 at pp. 2-3.) Plaintiff has an

4

In response, Defendants submitted the Declaration of Dawn Smith, the Vice President of Strategic Planning and Program Management of Family Solutions and a named Defendant herein. (Doc. No. 13-1.)  Therein, Smith states that, at each of Family Solutions' five office sites, a Program (or Assistant Program) Director and Clinical Supervisor "oversee employees based out of that site that work with patients out in the field."  (*Id*. at ¶ 5.)  Smith identifies three such categories of employees: (1) Out-Patient Clinicians, (2) Qualified Behavioral Health Specialists (formerly known as QMHS), and (3) Intake Specialists.  (*Id*.)  Smith states that Intake Specialists are salaried positions; Out-Patient Clinicians include both hourly and salaried employees; and QMHSs are hourly employees.  (*Id*. at ¶ 6.)  She further notes that the QMHS and Out-Patient Clinicians are "different positions, have different duties and responsibilities, require different qualifications, and are in different Family Solutions programs."[5]  (*Id*. at ¶ 8.)

Smith avers that "training and monitoring of hourly employees' time reporting is conducted at the site-level by site employees."  (*Id*. at ¶ 11.)  Specifically, "the site's Program Director or Associate Program Director and the site's Clinical Supervisor provide a detailed and hands-on explanation of how Out-Patient Clinicians and QMHSs are to report their time," and "work individually with each employee and tailor the instruction to duties and procedures associated with that employee's position and questions posed by that employee."  (*Id*. at ¶ 16.)

---

altogether different interpretation of this Memo.  At this stage of the proceedings, the Court has no basis on which to evaluate the parties' differing interpretations.

[5] Specifically, Defendant Smith described the differing job responsibilities associated with these positions as follows: "An Out-Patient Clinician works out in the field visiting patient homes to conduct diagnostic assessments, outpatient therapy, crisis intervention, and Community Psychiatric Support Services, amongst other duties. The Out-Patient Clinician also conducts  treatment planning, and works with the patient's other providers  and support system to achieve treatment goals and objectives.  A QMHS works out in the field visiting patient homes to provide an array of mental and behavioral services in accordance with applicable standards of care, monitors medically necessary services to promote continuity of care, in addition to other duties."  (Doc. No. 13-1 at ¶¶ 9, 10.)

Smith further asserts that "Family Solutions does not have a policy to only pay for time that is billable to health insurance. Time sheets completed by Out-Patient Clinicians and QMHSs have sections for both activities with clients that may be billable and time spent on other activities."[6] (*Id.* at ¶ 19.) She states that the time sheets submitted by Arends and Stephenson "show both time that was billable to insurance and time that was not billable to insurance." (*Id.* at ¶¶ 23, 27.)

In addition, Smith states that she reviewed Arends' time sheets and found she worked a total of thirty-three (33) hours between October 30, 2017 and her resignation on December 12, 2017. (*Id.* at ¶ 24.) She further asserts that Stephenson "made mistakes in calculating his time sheets throughout his employment," and that his supervisors (who are no longer employed by Family Solutions) "often had to work with [him] in correcting his time sheets to accurately reflect [his] time worked." (*Id.* at ¶ 26.)

Finally, Smith states that "[t]here is no record of either Arends or Stephenson making any complaints during their employment regarding Family Solutions' pay or time recording practices." (*Id.* at ¶ 28.)

## III. Legal Standard for Conditional Certification

Under the FLSA, an employer must generally compensate an employee "at a rate not less than one and one-half times the regular rate at which he is employed" for work exceeding 40 hours per week. *See* 29 U.S.C. § 207(a)(1); *Monroe v. FTS USA, LLC, et al.*, 860 F.3d 389, 396 (6th Cir. 2017).

---

[6] Defendants also cite Family Solutions' "Reporting Time Worked Policy," that provides as follows: "Accurate recording of time worked and absence from work is the responsibility of every employee. All employees must complete and sign a time sheet that is signed by their immediate supervisor. If it is necessary to make corrections or modifications to the time sheet, both the employee and supervisor must initial the changes. Tampering, altering of falsifying time records, failure to timely turn in a completed time sheet, or recording time on another employee's time record, will result in disciplinary action, up to and including termination." (Doc. No. 13-1 at ¶ 14.)

"Congress passed the FLSA with broad remedial intent" to address "unfair method[s] of competition in commerce" that cause "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015). As the Sixth Circuit has explained, "the provisions of the statute are 'remedial and humanitarian in purpose,' and 'must not be interpreted or applied in a narrow or grudging manner.'" *Monroe*, 860 F.3d at 397 (quoting *Herman v. Fabri-Centers of Am., Inc*., 308 F.3d 580, 585 (6th Cir. 2002)).

To effectuate Congress' remedial purpose, the FLSA authorizes collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions under Fed. R. Civ. P. 23, collective actions under the FLSA require putative class members to opt into the class. *Id. See also Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (to participate in FLSA collective actions, "all plaintiffs must signal in writing their affirmative consent to participate in the action."). "These opt-in parties are party plaintiffs, unlike absent class members in a Rule 23 class action." *O'Brien v. Ed Donnelly Enterprises, Inc*., 575 F.3d 567, 583 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016).

Only similarly situated employees are permitted to "opt into" an FLSA collective action. *Comer*, 454 F.3d at 546. The FLSA does not define the term "similarly situated" and neither has the Sixth Circuit. *See Myers v. Marietta Memorial Hospital*, 201 F.Supp.3d 884, 890 (S.D. Ohio 2016); *Castillo v. Morales, Inc*., 302 F.R.D. 480, 483 (S.D. Ohio 2014); *Rosenbohm v. Cellco Partnership*, 2018 WL 4405836 at * 1 (S.D. Ohio Sept. 17, 2018). Courts generally use a two-stage approach to determine this issue. *See Comer*, 454 F.3d at 546-547; *Houston v. Progressive Cas. Ins. Co.*, 2015

WL 8527339 at * 1 (N.D. Ohio Dec. 11, 2015).  At the first stage, which generally occurs before the parties have conducted discovery,[7] "a court must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members."  *See Hamm v. Southern Ohio Medical Center*, 275 F.Supp.3d 863, 874 (6th Cir. 2017).  During the second stage, the court makes a final determination regarding whether opt-in class members are similarly situated based upon a thorough review of the record after discovery is completed.  *See, e.g., Marek v. Toledo Tool & Die,* 2017 WL 5891765 at * 2-3 (N.D. Ohio Nov. 29, 2017); *Houston*, 2015 WL 8527339 at * 1.

Because the first stage is conducted prior to (or at the beginning of) the discovery process, plaintiffs need only make a "modest factual showing" that they are similarly situated to proposed class members.  *See Comer*, 454 F.3d at 546-547; *Myers*, 201 F.Supp.2d at 890; *Waggoner v. U.S. Bancorp*, 110 F.Supp.3d 759, 764 (N.D. Ohio 2015).  The standard at this stage is "fairly lenient . . . and typically results in 'conditional certification' of a representative class."[8]  *Comer*, 454 F.3d at 547. *See also Myers*, 201 F.Supp.3d at 890; *Lewis*, 789 F.Supp.2d at 868; *Atkinson,* 2015 WL 853234 at * 2.  "In order to establish that other employees are similarly situated to the named plaintiff, the named plaintiff need only show that [her] position [is] similar, not identical, to the positions held by putative class members."  *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio

---

[7] As another court in this district has explained, "[b]ecause the statute of limitations on an FLSA claim continues to run until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit."  *Atkinson v. TeleTech Holdings*, 2015 WL 853234 at * 2 (S.D. Ohio Feb. 26, 2015).  *See also Lewis v. Huntington Nat'l Bank*, 789 F.Supp.2d 863, 867 (S.D. Ohio 2011).

[8] The FLSA does not import "the more stringent criteria for class certification under Fed. R. Civ. P. 23" and it is also "less stringent than [the] Rule 20(a) requirement that claims 'arise out of the same action or occurrence' for joinder to be proper[.]" *O'Brien*, 575 F.3d at 584.  *See also Ouellette v. Ameridial, Inc.*, 2017 WL 2972636 at * 2 (N.D. Ohio July 12, 2017).

2002).  *See also Comer*, 454 F.3d at 546-547; *Lewis,* 789 F.Supp.2d at 867.  Thus, similarly situated class members under the FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs.  *See Lewis*, 789 F.Supp.2d at 868; *Atkinson*, 2015 WL 853234 at * 2.

Courts have also found that plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs."  *O'Brien*, 575 F.3d at 585.  Proof of a "unified policy" of violations is not required, however.  *Id.  See also Myers*, 201 F.Supp.3d at 890 (same); *Marek*, 2017 WL 5891765 at * 2 ("But, by the same token, 'showing a 'unified policy' of violations' is not a hard and fast requirement.").  Employees may also be similarly situated if "their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."  *O'Brien,* 575 F.3d at 585.  *See also Marek*, 2017 WL 5891765 at * 2.

The lead plaintiffs bear the burden of demonstrating that the proposed class members are similarly situated to the lead plaintiff.  *See O'Brien*, 575 F.3d at 584; *Myers,* 201 F.Supp.3d at 890. In terms of proof, courts consider "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread plan was submitted." *Myers*, 201 F.Supp.3d at 890.  *See also Lewis*, 789 F.Supp.2d at 868.  However, at the conditional certification stage, a court "does not generally consider the merits of claims, resolve factual disputes, or evaluate credibility."  *Waggoner,* 110 F.Supp.3d at 765.  *See also Myers*, 201 F.Supp.3d at 890. Indeed, "requiring additional factual support, or weighing the defendant's competing factual assertions prior to discovery, would 'intrude improperly into the merits of the action.'"  *Hamm*, 275

9

F.Supp.3d at 874 (quoting *Lacy v. Reddy Electric Co*., 2011 WL 6149842 at * 3 (S.D. Ohio 2011)).

*See also Murton v. Measurecomp LLC*, 2008 WL 5725631 at * 5 (N.D. Ohio June 9, 2008).

The decision to conditionally certify a class, and thereby facilitate notice, is "within the discretion of the trial court." *Castillo*, 302 F.R.D. at 483. *See also Comer*, 454 F.3d at 546; *Hamm*, 275 F.Supp.3d at 874.  If conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Myers*, 201 F.Supp.3d at 890 (quoting *Cornell v. World Wide Bus. Servs. Corp*., 2015 WL 6662919 at * 1 (S.D. Ohio Nov. 2, 2015)).

At the second stage of the certification process, a defendant may file a motion to decertify the class.  During the second stage, the court makes a final determination on whether opt-in class members are similarly situated based upon a thorough review of the record after discovery is completed. *See Houston*, 2015 WL 8527339 at * 1; *Schwab v. Bernard*, 2012 WL 1067074 (N.D. Ohio March 28, 2012). This final certification decision is normally based on a variety of factors, including "factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien*, 575 F.3d at 584 (citations omitted).

## IV.  Analysis

### A.  Conditional Certification

In the Complaint, Plaintiffs seek to certify the following collective class:

All employees who worked as Qualified Mental Health Specialists for Family Solutions of Ohio during the period three years preceding the commencement of this action to the present.

(Doc. No. 1 at ¶ 33.) In their Motion, however, Plaintiffs seek to certify a broader class, consisting of "all hourly employees who worked as providers for Family Solutions of Ohio during the period three years preceding the commencement of this action to the present." (Doc. No. 11 at p. 1.) In their Reply Brief, Plaintiffs further clarify that the proposed class would include (1) QMHSs, and (2) Out-Patient Clinicians that are paid hourly. (Doc. No. 14 at p. 9.)

Plaintiffs argue conditional certification of these hourly providers is warranted because the potential opt-ins were subject to a unified policy of FLSA violations, all have FLSA claims against Defendants arising out of that policy, and their claims are unified by common theories of Defendants' statutory violations. (Doc. No. 11-1 at p. 3.) Specifically, Plaintiffs maintain that these hourly providers were subject to Defendants' company-wide policy that time spent on non-billable matters (such as documentation responsibilities and travel time)[9] would not be compensated absent supervisory approval. (*Id*. at p. 4-5.) Plaintiffs further assert that this policy was in force at each of Defendants' five Ohio locations and applied to all of Family Solutions' hourly employees. (Doc. No. 14 at pp. 7-10.)

Defendants argue conditional certification should be denied because Plaintiffs fail to sufficiently allege that they are similarly situated to other members of the proposed class of "providers," or identify a common policy that is applicable to the proposed class. (Doc. No. 13.) They assert that Plaintiffs herein worked only as QMHSs and are, therefore, not similarly situated to

---

[9] With regard to documentation responsibilities, Plaintiffs assert that Defendants' job description for QMHSs includes the requirement to "maintain and record daily client progress notes within 24 hours of seeing client." (Doc. No. 11-1, citing Doc. No. 11-6.) Plaintiffs assert that this documentation responsibility is time consuming, citing Defendants' written procedure that "contains a 20-step process for documenting client progress notes." (*Id*.) With regard to travel time, Plaintiffs argue that "every day, Family Solutions' providers traveled from client to client to perform their jobs" but were not compensated for this time. (Doc. No. 14 at pp. 2-3.)

Out-Patient Clinicians because these positions have "different licensure and hiring requirements, different job duties, and completely different tasks throughout the day." (*Id*. at p. 13.) Thus, Defendants maintain that any training regarding time reporting that a QMHS may have received "would necessarily be different than the training for an employee in another position." (*Id.*)

Defendants also argue that Plaintiffs have failed to demonstrate a common policy applicable to all hourly providers because "the evidence demonstrates that Family Solutions' training and monitoring of its time reporting is conducted by the different supervisors across its sites, rather than being administered in the same manner as a common policy across the organization." (*Id*. at p. 10.) Specifically, Defendants argue that Plaintiffs' claims will necessitate individualized inquiries because they are based on alleged instructions given to them by their particular supervisors at the Cleveland and Cincinnati sites. Defendants assert that "the allegation of an instruction demonstrates the unique nature of Plaintiffs' claims because it shows that they are alleging a supervisor from their site gave them an incorrect instruction or that they made an incorrect interpretation of a supervisor's instruction." (*Id*. at p. 11.) In sum, Defendants maintain that "Plaintiffs are not similarly situated to employees from other sites because those employees worked entirely with different supervisors," from whom they received individualized instruction as to time reporting requirements. (*Id*.)

Finally, Defendants argue that Plaintiffs are not similarly situated to the potential opt-ins because they have not worked at Family Solutions since 2017, had short tenures while employed there, and, therefore, "would not adequately represent a class." (*Id*. at p. 13.) With regard to Plaintiff Arends in particular, Defendants note that she "only moved into an hourly QMHS position in the weeks before she resigned, and her record demonstrates that she barely worked at all in the weeks that she was in the position." (*Id*.)

For the following reasons, the Court finds Plaintiffs have satisfied the modest factual showing necessary to demonstrate that they are similarly situated to other QMHSs employed at Family Solutions' Ohio sites for purposes of conditional certification.  Plaintiffs have not, however, satisfied their burden with respect to Family Solutions' hourly Out-Patient Clinicians.

As a threshold matter, the Court finds Plaintiffs have identified a common theory of Defendants' alleged statutory violations.  *See O'Brien,* 575 F.3d at 585.  *See also Marek*, 2017 WL 5891765 at * 2.  Plaintiffs Arends and Stephenson provide declarations, in which both state that they were (1) employed as QMHSs; (2) instructed to only put billable hours as a QMHS on their weekly time sheets; (3) paid only for services that were billable to health insurance; and (4) not paid for other non-billable necessary services such as documentation, travel, time spent for appointment no-shows, and administrative time.  (Doc. Nos. 11-2, 11-3.)  In addition, Plaintiffs Arends and Stephenson aver, under penalty of perjury, that they each understood that "the pay practice of being compensated only for billable time was a company-wide practice;"[10] i.e., that it was applied at all of Family Solutions various Ohio office sites.  (*Id.*)  Plaintiffs also provide a document entitled "How to Complete Billing/Time Sheet" that appears to instruct that non-billable hours falling within the category of "miscellaneous time" could only be entered with supervisory approval.  (Doc. No. 11-4.)  Defendants do not contest the legitimacy of this document and, indeed, indicate that it "appears to have common application."  (Doc. No. 13 at p. 11.)

Defendants' argument that Plaintiffs cannot demonstrate a common theory of FLSA violations in light of the individualized nature of training provided to hourly employees regarding

---

[10] Ms. Graciani (who has not opted in to the instant action) submitted a similar Declaration but, notably, did not aver that it was her understanding that the practice of compensation only for billable time was a company-wide practice.  (Doc. No. 19-1.)  Nor did she aver that she was instructed to log only billable hours on her weekly time sheet.  (*Id.*)

13

time reporting, is without merit.  As noted above, at this stage of the proceedings, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Waggoner,* 110 F.Supp.3d at 765.  *See also Myers*, 201 F.Supp.3d at 890; *Douglas v. J&K Subway*, 2015 WL 770388 at * 3 (N.D. Ohio Feb. 23, 2015).  As such, it is not appropriate, at this time, for the Court to consider factual issues surrounding the allegedly individualized nature of time-reporting training and/or variations that may or may not occur at Family Solutions' various office sites in this regard.  *See, e.g., Heibel v. U.S. Bank Nat'l Assoc*., 2012 WL 4463771 at *5 (S.D. Ohio Sept. 27, 2012) ("The Court finds that any detailed inquiry into . . . individualized considerations [that] may apply, or whether such consideration[s] will ultimately make the class unmanageable, is premature at this initial state prior to discovery.").  Moreover, as several courts have noted, the mere existence of potentially individualized questions does not, in and of itself, bar conditional certification.  *See O'Brien*, 575 F.3d at 584 (rejecting employer's argument that certification was improper when it would require an individual analysis that examines the facts of each alleged violation); *Hamm*, 275 F.Supp.3d at 877 (finding that proof of a unified theory of violations "is sufficient at this stage to justify conditional certification, even though proof of each violation will require an individual factual inquiry.")

For the same reasons, the Court rejects Defendants' arguments that conditional certification should be denied because Family Solutions "does not have a policy to only pay for time that is billable to health insurance."  (Doc. No. 13-1 at ¶19.)  Specifically, Defendants contest Plaintiffs' characterization of the "How to Complete Billing/Time Sheet" document and argue that the documents attached to the Motion show that employees may, in fact, record non-billable time.  (Doc. No. 15-1.)  Again, this argument is premature as it would require the Court to resolve factual disputes

14

and/or make a merits determination.  Likewise, the Court rejects, at this time, Defendants' argument that Plaintiff Arends would not adequately represent the class in light of her short tenure and the fact that she last worked for Family Solutions in 2017.  Defendants' arguments are more appropriately raised at the second stage of the certification process, after the parties have had the opportunity for discovery regarding these issues.

Accordingly, for all of the above reasons, the Court finds that Plaintiffs' Declarations and the documentation discussed above are sufficient to meet Plaintiffs' burden of making a modest factual showing that Plaintiffs are similarly situated to QMHSs employed by Family Solutions at its five Ohio sites.

The Court agrees with Defendants, however, that Plaintiffs have failed to demonstrate that they are similarly situated to Family Solutions' hourly Out-Patient Clinicians.   Plaintiffs have not submitted any Declarations from hourly Out-Patient Clinicians, nor have they offered any factual basis for their assertion that hourly Out-Patient Clinicians provided necessary services for which they were not compensated on the grounds that such services were not billable to health insurance. As noted above, the only Declarations that were submitted in this case were those of Plaintiff Arends, Opt-In Plaintiff Stephenson, and Ms. Graciani.  Each of these individuals were employed by Family Solutions as QMHSs, and not as hourly Out-Patient Clinicians.  Although Arends and Stephenson averred generally that they "understood that the pay practice of being compensated only for billable time was a company-wide policy for all providers," they do not provide any explanation of the basis for this understanding.  Indeed, Plaintiffs fail to develop this issue at all in either their Complaint, Declarations, or briefing.  While courts have considered affidavits from employees indicating that they observed or otherwise had personal knowledge that an employer's policy was applied to other

15

employees, Plaintiffs herein have failed to present any such allegations to the Court at this stage of the proceedings. *See, e.g., Crescenzo*, 2016 WL 3277226 at * 4-5 (considering plaintiff's statements regarding other employees based on his personal observations); *Hamm*, 275 F.Supp.3d at 876 (same).

In addition, Plaintiffs do not expressly indicate that the reference to "all providers" in their Declarations includes hourly Out-Patient Clinicians. Indeed, Arends' and Stephenson's references to "all providers" could just as easily be interpreted as referring to all QMHSs in Family Solutions' five locations. Moreover, the Court notes the Complaint does not even allege that hourly Out-Patient Clinicians are similarly situated to Plaintiff Arends.[11] Rather, the Complaint expressly and specifically limits the proposed class to "all employees who worked as Qualified Mental Health Specialists for Family Solutions of Ohio." (Doc. No. 1 at ¶ 33.) *See McDonald v. Franklin County, Ohio*, 306 F.R.D. 548, 553-554 (S.D. Ohio 2015) (rejecting Plaintiff's attempt to expand class definition via a motion to certify, noting "Plaintiff cannot circumvent [the] denial [of her motion to amend complaint] by introducing a new class of individuals in her motion to certify").[12]

Plaintiffs' reliance on *Myers, supra* in support of their position that they have met their burden with respect to hourly Out-Patient Clinicians, is misplaced for several reasons. In *Myers,* the district

---

[11] In their Motion, Plaintiffs claim that Paragraph 29 of the Complaint defines the proposed class as including "all hourly employees." Paragraph 29 of the Complaint, however, does not say this. Rather, Paragraph 29 relates to willfulness, stating "Defendants knew that their QMHSs were entitled to minimum wages and overtime compensation under federal and state laws, or acted in reckless disregard for whether they were so entitled." (Doc. No. 1 at ¶ 29.) Paragraph 33 of the Complaint specifically defines the proposed class for purposes of Plaintiff's FLSA collective action as "All employees **who worked as Qualified Mental Health Specialists** for Family Solutions of Ohio during the period three years preceding the commencement of this action to the present." (*Id*. at ¶ 33) (emphasis added).

[12] *See also Eager v. Credit Bureau Collection Services, Inc*., 2014 WL 3534949 at * 8 (W.D. Mich. July 16, 2014) ("Plaintiffs' class allegations [in the complaint] are limited to false assignment allegations and—especially given the absence of proposed class definitions for the Misnomer Classes—fail to notify Defendants that Plaintiffs intended to seek certification of the Misnomer Classes. In spite of the ample opportunity Plaintiffs had to amend their pleadings to include allegations addressing the proposed Misnomer Classes, Plaintiffs failed to move to amend. Thus, certifying a class under these circumstances would be both improper and unfair to Defendants.").

16

court conditionally certified a class of all hourly employees "responsible for direct patient care" (which potentially included registered nurses, patient care technicians, care coordinators, emergency department technicians, licensed practical nurses, and medical assistants), even though the named Plaintiffs were all nurses. *Myers*, 201 F.Supp.3d at 891-896.  In that case, however, the Amended Complaint before the Court specifically proposed a class that included "all of Defendant's current and former hourly employees who were responsible for direct patient care and were subject to Defendant's automatic meal deduction policy during the three years before this Complaint was filed up to the present." *See Myers v. Marietta Memorial Hospital*, Case No. 2:15CV2956 (S.D. Ohio) (Doc. No. 33 at ¶ 3.)  Moreover, that Complaint expressly alleged that the Defendant's automatic meal deduction policy "applies to all hourly-paid, non-exempt employees who are responsible for direct patient care." (*Id*. at ¶ 23.)  In addition, the court in *Myers* relied on the Plaintiffs' Declarations, which provided that "other direct patient care workers were constantly attending to patients and did not have time to take breaks," an observation which the district court found "another patient care worker could certainly make from personal knowledge." *Myers*, 201 F.Supp.3d at 895.

By contrast, the Complaint herein does not include hourly Out-Patient Clinicians in the proposed class and, moreover, fails to include any allegations that the pay policy at issue applied to this category of employees.  Additionally, the Declarations submitted by Arends, Stephenson, and Graciani are ambiguous as to whether they include hourly Out-Patient Clinicians in the first instance and, in any event, provide no basis for the Court to conclude the declarants have personal knowledge that hourly Out-Patient Clinicians provided necessary services for which they were not compensated under this policy.  Thus, *Myers* is distinguishable from the instant action and provides no support for Plaintiffs' arguments that conditional certification should extend to hourly Out-Patient Clinicians.

The Court recognizes that Plaintiffs need only make a "modest factual showing" and that the standard at the conditional certification is "fairly lenient." *See Comer*, 454 F.3d at 546-547. However, even with this lesser burden, Plaintiffs must have some factual basis to support the assertion that they are similarly situated to proposed class members. Here, the Court finds, for the reasons discussed above, that Plaintiffs have failed to meet their burden of demonstrating they are similarly situated to Family Solutions' hourly Out-Patient Clinicians.

Accordingly, and for all the reason set forth above, Plaintiff's Motion for Conditional Certification is granted in part and denied in part, as follows. Conditional certification is granted as to all current and former employees who worked as Qualified Mental Health Specialists for Family Solutions of Ohio, but is denied with respect to employees who worked for Family Solutions as hourly Out-Patient Clinicians.

### B. Notice

Plaintiffs also seek an Order authorizing notice to proposed class members who were employed by Family Solutions during the period three years preceding the commencement of this action. (Doc. No. 11 at 1-2.) Specifically, Plaintiffs ask the Court to order Defendants to provide, within 14 days, a roster of the names, home addresses, email addresses, and dates of employment of all potential opt-ins. (*Id.*) Plaintiffs further request that the Court order the parties to jointly submit, also within 14 days, a proposed Notice informing potential opt-ins of the pendency of the instant collective action and permitting them to opt-in by submitting an Opt-In and Consent Form. (*Id.*) Finally, Plaintiffs request that the Court order that the approved Notice be sent to potential opt-ins within 30 days and provide that duplicate copies may be sent in the event that new, updated, or corrected addresses are discovered. (*Id.*)

18

Defendants raise no objection to the specific procedure noted above but do argue that the conditional class should extend back only two (rather than three) years because "there is no evidence that Family Solutions willfully violated the FLSA."  (Doc. No. 13 at p. 14.)  In addition, Defendants argue that, for statute of limitations purposes, certification should count back from the date of approval of the notice, not the filing of the lawsuit.  (*Id*.)

In response, Plaintiffs maintain the conditional class should extend back three years because the Complaint sufficiently alleges that Defendants willfully violated the FLSA and deliberately withheld compensation from QMHSs for the hours it could not bill to Medicaid or other health insurers.  (Doc. No. 14 at p. 10.)  Plaintiffs agree with Defendants, however, that the "look back period should commence with the date of the Order granting conditional certification, not the filing of the Complaint."  (*Id*. at p. 11.)

Having conditionally certified the proposed class of QMHSs employed at Family Solutions' five Ohio office sites, "the Court has the authority to supervise notice to potential plaintiffs."[13]  *Lewis*, 789 F.Supp.2d at 863.  *See also Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.")  Accordingly, the Court grants Plaintiffs' request to authorize notice to potential opt-in plaintiffs as defined herein.

The Court also agrees with Plaintiffs that the conditional collective action class should extend back three years.  FLSA claims for unpaid compensation must be filed within two years after the

---

[13] Courts may facilitate notice to putative collective class members "so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168-169 (1989).  *See also Kinder v. MAC Manufacturing, Inc.,* 318 F.Supp.3d 1041, 1047 (N.D. Ohio 2018).

cause of action accrues, unless there was a willful violation of the statute, in which case the statute of limitations is extended to three years.  *See* 29 U.S.C. § 255(a); *Hamm*, 275 F.Supp.3d at 878.  To establish willfulness, a plaintiff is required to show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.  *See Hamm*, 275 F.Supp.3d at 878 (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966-967 (6th Cir. 1991)).  *See also Oullette*, 2017 WL 2972636 at * 5.

Here, Plaintiffs allege that Defendants "knew that their QMHSs were entitled to minimum wages and overtime compensation under federal and state laws, or acted in reckless disregard for whether they were so entitled."  (Doc. No. 1 at ¶ 29.)  Plaintiffs further allege as follows:

> 30.   Defendants willfully circumvented and violated the requirements of the FLSA and Ohio law.  Defendants deliberately withheld compensation from the QMHSs for the hours it could not bill to Medicaid or other health insurers.  Defendants knew or had full reason to know that withholding compensation for many hours meant the hourly rate for the QMHSs' total hours would fall below the minimum wage for some or all workweeks.    Defendants also deliberately withheld time-and-a-half compensation for many overtime hours.

(Doc. No. 1 at ¶ 30.)  In addition, both Arends and Stephenson averred that they were "instructed by Family Solutions of Ohio" to only put billable hours on their weekly timesheets.  (Doc. Nos. 11-2, 11-3.)

The Court finds the above allegations are sufficient to warrant application of the three-year statute of limitations of Plaintiffs' FLSA claim.  Defendants' arguments to the contrary go the merits of the action and are premature.  *See Kinder v. MAC Manufacturing, Inc.*, 318 F.Supp.3d 1041, 1048 (N.D. Ohio 2018) ("Because Defendants' statute of limitations argument requires an evaluation of the merits of Plaintiff's [FLSA] claims, it is inappropriate for resolution at this early stage of litigation.")

Accordingly, and given the lenient standard employed at the conditional certification stage, the Court finds it appropriate to define the proposed collective action class using a three-year statute of limitations at this time.  Of course, the Court may revisit this issue upon proper motion at a later stage of the case.  Lastly, the Court finds that conditional certification should count back from the date of this Memorandum Opinion & Order, not the filing of the lawsuit.  *See e.g., Atkinson*, 2015 WL 853234 at * 3; *Wolfram v. PHH Corp*, 2012 WL 6676778 at * 5 (S.D. Ohio Dec. 21, 2012).

## V.    Conclusion

Accordingly, Plaintiff's Motion for Conditional Certification (Doc. No. 11) is GRANTED IN PART and DENIED IN PART, as follows. The Court hereby conditionally certifies the following collective action class:  all current and former employees who worked as Qualified Mental Health Specialists for Family Solutions of Ohio during the period three years prior to the date of this Memorandum Opinion & Order.

The parties are hereby ordered to meet and confer, through counsel, regarding the content and form of notice to be given to the potential opt-ins and to submit, within fourteen (14) days of the date of this Order, a joint proposed judicial notice.[14]  In addition, Defendants shall, within fourteen (14) days of the date of this Order, provide Plaintiffs with a list of the full name and last known home address of each current and former employee falling within the conditional collective action class described above, as well as their dates of employment and last known personal email address.  Once approved, the Notice shall be sent to the potential opt-ins within thirty (30) days using the home and

---

[14] In drafting the proposed language, the parties should "be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action."  *Hoffman-La Roche, Inc*., 493 U.S. at 174.

email addresses provided by the Defendants.  Duplicate copies of the Notice may be sent in the event

new, updated, or corrected addresses are found for one or more potential opt-in.

**IT IS SO ORDERED.**


 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  September 16, 2019                    U. S. DISTRICT JUDGE

22