## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,* | **Case No. 1:18cv2017** |
| **On behalf of himself and** | |
| **All others similarly situated,** | |
| | |
| **Plaintiffs,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| | |
| **Family Solutions of Ohio, Inc.,** | **MEMORANDUM OPINION AND** |
| *et al.,* | **ORDER** |
| | |
| **Defendants** | |

Currently pending are the following motions filed by Plaintiffs Jamal Stephenson and Melanie Vilk Baron on behalf of themselves and all others similarly situated: (1) Motion for Supplemental QMHS Roster and Notice (Doc. No. 66); (2) Motion for Leave to File Second Amended Complaint (Doc. No. 67); and (3) Motion to Modify the Collective Action Class Conditionally Certified under 29 U.S.C. § 216(b) (Doc. No. 68).  Defendants filed Briefs in Opposition to Plaintiffs' Motions on August 21, 2020, to which Plaintiffs responded on August 28, 2020.  (Doc. Nos. 78, 79, 80, 81, 82, 83.)  Also pending is Defendants' Motion to Strike Unverified Exhibits, which was filed on September 9, 2020.  (Doc. No. 92.)  Plaintiffs filed a Brief in Opposition on September 17, 2020, to which Defendants responded on September 24, 2020.  (Doc. Nos. 96, 97.)

For the following reasons, Defendants' Motion to Strike Unverified Exhibits (Doc. No. 92) is DENIED.  Plaintiffs' Motion for Supplemental QMHS Roster and Notice (Doc. No. 66) is GRANTED as set forth herein.  Plaintiffs' Motions for Leave to File Second Amended Complaint and to Modify the Collective Action Class (Doc. Nos. 67, 68) are DENIED.

## I.      Relevant Procedural Background

On September 4, 2018, Plaintiff Alicia Arends ("Plaintiff" or "Arends") filed a Complaint in this Court on behalf of herself and all others similarly situated against Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith.  (Doc. No. 1.)  Therein, Plaintiff asserted the following six claims for relief:  (1) violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count One); (2) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, art. II, § 34a (Count Two); (3) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03 (Count Three); (4) violations of the OFMWA's record-keeping requirement (Count Four); (5) breach of contract (Count Five); and (6) unjust enrichment (Count Six).  (*Id.*)  Plaintiff sought conditional certification as an FLSA collective action; certification of the state law claims under Fed. R. Civ. P. 23; compensatory and punitive damages; and attorney fees and costs.  (*Id.*)  Jamal Stephenson subsequently filed an Opt-In and Consent Form.  (Doc. No. 12-1.)

Defendants answered the Complaint on December 23, 2018.  (Doc. No. 7.)  A Case Management Conference ("CMC") was conducted by then-assigned District Judge Christopher Boyko on February 14, 2019.  At that time, the case was assigned to the standard track and deadlines were set for conditional certification briefing.  *See* Non-Document Order dated February 14, 2019.

On February 28, 2019, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice with respect to their FLSA claims.  (Doc. No. 11.)  Therein, Plaintiffs argued that Defendants violated the overtime provisions of the FLSA by failing to pay potential class members for necessary services such as documentation, travel between clients, time spent for client appointments and no-shows, and administrative time.  (*Id.*)  Plaintiffs sought conditional certification with respect to "all hourly employees who worked as providers for Family Solutions of Ohio during

the three years preceding the commencement of this action to the present," which would include Qualified Mental Health Specialists ("QMHS") and Out-Patient Clinicians (also known as Therapists).  (*Id.*)

Defendants responded on March 15, 2019, and Plaintiff filed a Reply on March 29, 2019. (Doc. No. 13, 14.)  Defendants were subsequently granted leave to file a sur-reply on April 2, 2019. (Doc. No.  15-1.)  Several months later, on September 3, 2019, Plaintiffs filed the Supplemental Declaration of former Family Solutions' employee Maria Graciani, in support of her Motion.  (Doc. No. 19.)

On September 16, 2019, the Court[1] issued a Memorandum Opinion & Order granting Plaintiffs' Motion for Conditional Certification with respect to "all current and former employees who worked as Qualified Mental Health Specialists for Family Solutions of Ohio during the period three years prior to the date of this Memorandum Opinion & Order."  (Doc. No. 20.)  The Court, however, denied Plaintiffs' request to conditionally certify a broader class that included Out-Patient Clinicians/Therapists, finding that Plaintiffs had "failed to demonstrate that they are similarly situated to Family Solutions' hourly Out-Patient Clinicians."  (*Id* at pp. 15-18.)  The Court then set forth various deadlines regarding the Notice to be given to potential opt-in plaintiffs within the conditional class, including ordering Defendants "to provide Plaintiffs with a list of the full name and last known home address of each current and former employee falling within the conditional collective action class described above, as well as their dates of employment and **last known personal email address**." (*Id*. at p. 21.)

---

[1] This matter was re-assigned to the undersigned on June 27, 2019 pursuant to General Order 2019-13.

A Joint Submission of Proposed Notice was thereafter submitted on September 30, 2019. (Doc. No. 22.)  A Case Management Conference ("CMC") was conducted on October 7, 2019, at which time the Court approved the parties' proposed Notice.  In addition, various case management deadlines were set, including the following: (1) parties to be joined and pleading amendments due by February 6, 2020; (2) non-expert discovery due by July 6, 2020; (3) dispositive motions due by August 6, 2020; and (4) expert discovery to be completed by November 9, 2020.[2]  (Doc. No. 25.)

The docket reflects that consent forms were filed by twenty-four (24) opt-in plaintiffs between October and December 2019.[3]  *See* Doc. Nos. 26 through 36.   A Stipulated Protective Order was entered on December 27, 2019.  (Doc. No. 39.)

On March 24, 2020, Plaintiffs filed a Motion for Leave to file a First Amended Complaint Designating New Representative Plaintiffs.  (Doc. No. 43.)  Therein, Plaintiffs sought leave to file an Amended Complaint designating Jamal Stephenson and Melanie Vilk Baron as representative plaintiffs, in place of Alicia Arends.[4]  (*Id.*)  Defendants did not file a response.

On April 14, 2020, the Court granted Plaintiffs' Motion.  (Doc. No. 49.)  Shortly thereafter, Plaintiffs filed an Amended Class and Collective Action Complaint, designating Stephenson and Baron as the representative plaintiffs.  (Doc. No. 50.)  The Amended Complaint raised the same

---

[2] In their Report of the Parties' Planning Meeting, the parties also recommended that the Court set a deadline of February 6, 2020 for filing a motion for class certification under Rule 23.  (Doc. No. 23.)  The Court did not include this particular deadline in its CMC Order.  (Doc. No. 25.)

[3] The opt-ins plaintiffs are Alexander Dolin, Olga Diaz, Dawn Wood, Cocaina Hereford, Allen Steele, Kimberly Bolden, Latwana Wright, A'isha Braxton, Carolyn Cates, Dawn Glaze, Melanie Vilk Baron, Vonetta Watson, Mitchell Townsend, Maria Graciani, Alexandra Toth, Andrea Reynolds, Natalia Varias, Sharon Burns, Rachael DeGregario, Courtney Edwards, Anjelica Morris, Christina Harris, Jennifer Frymier, and Darrea Ragland.

[4] Ms. Arends sought to be relieved of her responsibilities as a representative plaintiff, but would remain a non-representative plaintiff, having filed a consent form pursuant to 29 U.S.C. § 216(b). (Doc. No. 43 at p. 3.)

4

factual and class allegations and asserted the same six grounds for relief set forth in the original

Complaint.  (*Id*.) Defendants filed an Answer on May 19, 2020.  (Doc. No. 51.)

On June 3, 2020, Defendants filed a Motion for Judgment on the Pleadings with respect to the

claims asserted by Plaintiff Baron, on the grounds that they are time-barred.  (Doc. No. 52.)  Plaintiff

Baron opposed the Motion and filed her own Motion for Equitable Tolling on July 6, 2020.  (Doc.

Nos. 57, 58.)  Defendants filed responsive briefing, and a Motion to Strike Certain Exhibits attached

to Plaintiff's Motion for Equitable Tolling.  (Doc. Nos. 61, 63, 64.)  Plaintiff Baron filed a brief in

opposition to Defendants' Motion on August 10, 2020, to which Defendants replied on August 17,

2020.  (Doc. Nos. 72, 75.)

Meanwhile, on June 26, 2020, Plaintiffs filed a Motion for Status Conference.  (Doc. No. 53.)

Therein, Plaintiffs stated (among other things) as follows:

> **Plaintiffs' discovery requests to defendants**.  Plaintiffs' First Set of Discovery
> Requests were served on Defendants on October 2, 20[19].  The parties' March 11,
> 2020 Status Report informed the Court that "the parties anticipate finalizing [written]
> discovery before the end of March" and "Defendants will produce a Fed. R. Civ. P.
> 30(b)(6) deponent in April to address the existence and whereabouts of requested
> documents as well as class certification issues under Rule 23."  The anticipated
> timetable was not met. Due ostensibly to the pandemic, Defendants' document
> production is not yet complete and Defendants did not produce the Rule 30(b)(6)
> representative until June 24, 2020. Testimony elicited from the representative
> regarding the existence and whereabouts of requested documents should help the
> parties resolve ongoing discovery disputes arising from Defendants' delayed
> production. Additionally, Plaintiffs have served a short Second Set of Discovery
> Requests, prompted by the Rule 30(b)(6) testimony.
>
> **Plaintiffs' motion for Rule 23 certification of state-law class**.  As anticipated,
> Plaintiffs' Rule 30(b)(6) deposition covered not only document issues but also "class
> certification issues under Rule 23." The June 24, 2020 testimony will enable Plaintiffs
> to file their motion for Rule 23 certification of a state-law class in approximately two
> weeks (as soon as the deposition transcript becomes available).

*Id.* Plaintiffs did not provide any indication in this Motion that they intended to file (or were considering filing) motions to amend the complaint, to modify the FLSA class, or for a supplemental notice and opt-in period.  (*Id.*)  Defendants filed a Brief in Opposition to Plaintiffs' Motion for Status Conference, to which Plaintiffs replied.  (Doc. Nos. 54, 55.)

The Court conducted a telephonic status conference with counsel on July 6, 2020.  (Doc. No. 56.)  Various matters were discussed during the call, including the potential for referring this matter to mediation.  (*Id.*)  Plaintiffs did not alert the Court to the possibility that they might file motions to amend the complaint, to modify the FLSA class, or for a supplemental notice and opt-in period.  (*Id.*)  The Court directed the parties to submit a Joint Motion with new proposed case management deadlines and "indicate whether they are interested in a referral to mediation."  (*Id.*)

On July 7, 2020, the parties filed a Joint Motion for Adoption of Proposed Scheduling Order.  (Doc. No. 59.)   Therein, the parties requested a referral to mediation and proposed new deadlines relating to non-expert discovery, Plaintiffs' Rule 23 certification motion, expert reports, and dispositive motions.  (*Id.*)  The Court granted the parties' Joint Motion and set the following deadlines: (1) non-expert discovery due by August 14, 2020; (2) Plaintiff's Rule 23 class certification motion due by July 31, 2020; (3) initial expert reports due by September 15, 2020; and (4) dispositive motions due by September 1, 2020.   In addition, the Court referred the case to mediation before Magistrate Judge Baughman to occur during the week of August 17, 2020.

Before that mediation could occur, however, Plaintiffs filed a series of unexpected motions relating to the size and scope of the FLSA conditional class.  Specifically, on July 30 and 31, 2020, Plaintiffs filed a (1) Motion for Supplemental QMHS Roster and Notice (Doc. No. 66); (2) Motion for Leave to File Second Amended Complaint (Doc. No. 67); and (3) Motion to Modify the Collective

Action Class Conditionally Certified under 29 U.S.C. § 216(b) (Doc. No. 68). In these motions, Plaintiffs asked the Court to (among other things) order Defendants to provide a corrected and supplemental roster of potential QMHS opt-ins; produce unredacted employment files for all individuals on that roster; re-open the notice and opt-in period; and expand the conditional class to include Therapists, which would also necessitate additional discovery and opt-in periods as well. Plaintiffs also filed a Motion for Rule 23 Class Certification as to their state law claims. (Doc. No. 70.)

Undaunted, Magistrate Judge Baughman conducted a two-hour pre-mediation zoom conference with counsel on August 17, 2020. (Doc. No. 74.) The next day, this Court held a telephonic conference with counsel (at the Court's request) to discuss "whether or not the mediation currently scheduled for August 19, 2020 . . . will be worthwhile or fruitful given the legal issues that have been raised by the motions filed subsequent to the referral." (Doc. No. 76.) After the conference, the Court terminated the referral to mediation. (*Id.*)

Defendants filed Briefs in Opposition Plaintiffs' Motions on August 21 and 31, 2020, to which Plaintiffs responded on August 28, 2020 and September 8, 2020. (Doc. Nos. 78, 79, 80, 81, 82, 83, 85, 91.) Defendants then filed a series of motions, including the following: (1) Motions for Summary Judgment as to Plaintiffs Stephenson and Baron (Doc. Nos. 88, 89); (2) Motion to Strike Unverified Exhibits (Doc. No. 92); (3) Motion to Strike Novel Arguments or, in the alternative for leave to file a Sur-Reply (Doc. No. 93); and (4) Motion pursuant to Rule 37(c)(2) to Deem Certain Admissions Admitted and for Reasonable Attorney Fees (Doc. No. 101.) Plaintiffs opposed each of Defendants' Motions, filing a series of briefs in opposition in September and October 2020. (Doc. Nos. 94, 96, 99, 100, 104.)

On October 27, 2020, Defendants responded by filing reply briefs in support of their Motions, as well as an additional five (5) motions to strike.  (Doc. Nos. 102-103, 105-109.)  The next day, Defendants filed a Motion to Decertify the Conditional Class certified under the FLSA.  (Doc. No. 110.)  Defendants' latest round of motions are not yet ripe.

On October 29, 2020, this Court issued an Order denying Defendants' Motion to Strike Novel Arguments but granting the Motion's alternative request for leave to file a sur-reply.  (Doc. No. 111.) The Court also stayed briefing on Defendants' Motion to Decertify the FLSA Conditional Class until such time as the Court issues a ruling on the Plaintiffs' pending motions relating to that conditional class.  (*Id.*)  Finally, the Court ordered the parties to file and submit hard copies of the full and complete deposition transcripts of Defendant Smith and Plaintiffs Stephenson and Baron.[5]  (*Id.*)

## II.  Analysis

As of the date of this decision, there are seventeen (17) pending motions in this standard track case.  This Memorandum Opinion & Order substantively addresses three (3) of these motions, each of which relate to the size and scope of the conditional class previously certified by this Court under the FLSA.[6]  Specifically, this Opinion addresses Plaintiffs' Motion for Supplemental QMHS Roster and Notice; Motion for Leave to File Second Amended Complaint; and Motion to Modify the Collective Action Class Conditionally Certified under the FLSA.  (Doc. Nos. 66, 67, 68.)  As it relates

---

[5]  In its Case Management Conference Scheduling Order issued September 16, 2019, this Court expressed a preference that parties file the entirety of depositions rather than relying on excerpts in support of motions.  (Doc. No. 21 at p. 3.) The Court's Order also directed the parties to "submit a courtesy copy of all dispositive motions, oppositions and replies, along with all supporting material to Chambers."  (*Id.*)  Neither party acknowledged or complied with these directives.

[6]  The Court will issue rulings on the thirteen (13) remaining motions in this action in due course.

to the Court's ruling on these Motions, the Court also addresses Defendants' Motion to Strike Unverified Exhibits (Doc. No. 92.)

The Court will address each of these Motion in turn, below.

**A.      Motion to Strike Unverified Exhibits (Doc. No. 92)**

In their Motion to Strike, Defendants ask this Court to strike thirty-one (31) exhibits attached to Plaintiffs' (1) Motion for Supplemental QMHS Roster and Notice; (2) Motion for Leave to File Second Amended Complaint; (3) Motion to Modify the Collective Action Class Conditionally Certified under the FLSA; (4) Motion for Rule 23 Certification; and (5) Reply Briefs in support of each of these Motions.  (Doc. No. 92.)  Defendants assert that the exhibits at issue are inappropriate and should be stricken because they are not authenticated by citations to deposition testimony or through affidavit or declaration of counsel, the named Plaintiffs, or the opt-ins.  (*Id*.)

In response, Plaintiffs assert that "there is no requirement in federal practice that every (or even any) document submitted as an exhibit to a motion must be authenticated."  (Doc. No. 96.) Plaintiffs cite a series of cases for the proposition that motions for class certification need not be supported by admissible evidence.  (*Id*.)  Plaintiffs further assert that there is no Local Rule in this District that "mandat[es] the authentication of every exhibit to every motion."  (*Id*. at p. 2.)  In addition, Plaintiffs maintain that "no genuine dispute exists as to the authenticity of the documents here."  (*Id*. at p. 3.)  In this regard, Plaintiffs note that 12 of the 31 exhibits objected to by Defendants were produced by Defendants themselves, and Defendants have admitted in discovery that these documents are authentic.  (*Id*. at p. 4.)  Plaintiffs further state that another 12 of the 31 exhibits are emails between counsel in this litigation, none of which are alleged to be inauthentic.  (*Id*. at p. 6.) Finally, Plaintiffs assert that the remaining 7 exhibits are documents that were created by Defendants

9

but produced by Plaintiffs in discovery.  (*Id*. at pp. 6-7.)  Although maintaining that there is no dispute about the authenticity of these exhibits given that the Defendants allegedly created them, Plaintiffs nonetheless attach declarations from Plaintiffs Arends and Stephenson authenticating these particular exhibits.  (Doc. Nos. 96-4, 96-5.)

In their Reply Brief, Defendants argue that the case law cited by Plaintiffs is distinguishable because "Plaintiffs' motions in this matter are vastly different from the traditional motion for certification."  (Doc. No. 97 at p. 3.)  Specifically, Defendants assert that "discovery has concluded and Plaintiffs argue that evidence learned in discovery supports a drastic expansion on the scope of this lawsuit."  (*Id*.)  Finally, Defendants again insist, summarily, that "counsel cannot simply attach non-verified documents to pleadings."  (*Id*. at p. 4.)

On its own or upon a motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "A court has broad discretion in determining whether to grant a motion to strike."  *McKinney v. Bayer Corp.,* 2010 WL 2756915 at *2 (N.D. Ohio July 12, 2010).  However, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant."  *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009).  Although Rule 12(f) only applies to pleadings, a court has "the inherent authority to strike non-pleadings in order to manage its docket."  *Taylor v. JP Morgan Chase Bank, N.A*., 2018 WL 5777497 at *3 (E.D. Tenn. Nov. 2, 2018).

Defendant's Motion to Strike is denied.  Although the Sixth Circuit has not squarely addressed this issue, numerous "courts have held that, on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be admissible at trial."  *Rockey*

*v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 582 (W.D. Mich. 2001). *See also, e.g., Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1005-1006 (9th Cir. 2018) (holding that "a district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met"); *In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604, 613 (8th Cir. 2011) ("Zurn correctly points out that we require district courts to rely only on admissible evidence at the summary judgment stage but the questions then are quite different than at the class certification stage. Because summary judgment ends litigation without a trial, the court must review the evidence in light of what would be admissible before either the court or jury.  In contrast, a court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'") (internal quotations omitted). Moreover, Defendants do not direct this Court's attention to any Local Rule that requires parties to authenticate exhibits to motions for conditional and/or class certification.

For the following reasons, the Court finds that it is appropriate to consider the following exhibits for purposes of resolving Plaintiff's motions regarding the FLSA and Rule 23 classes. Eleven (11) of the exhibits at issue are email exchanges between counsel relating to issues raised in Plaintiffs' motions.[7]  Defendants have not argued, or even suggested, that these email exchanges are inauthentic.  This Court routinely considers email exchanges between counsel in resolving non-dispositive matters and finds no reason not to do so here, particularly given the lack of any suggestion that the particular exhibits at issue are inaccurate or inauthentic.  Thus, the Court will not strike those contested exhibits that consist of emails between counsel; i.e. (1) Exhibits 3, 4, 5, 7, 8, and 10 to Plaintiffs' Motion for Supplemental QMHS Roster and Notice (Doc. No. 66); (2) Exhibit 3 to

---

[7] Plaintiff mistakenly identifies Exhibit 9 from Plaintiffs' Motion for Supplemental QMHS Roster and Notice as an email exchange between counsel. (Doc. No. 66-9.)  In fact, it appears to be a print-out from an archived version of Family Solution's website setting forth Staff Listings from various locations.

11

Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. No. 67); (3) Exhibit 2 to Plaintiffs' Motion to Modify the FLSA Collective Action Class (Doc. No. 68); and (4) Exhibits 1, 6 and 7 to Plaintiffs' Reply Brief in Support of Motion for Supplemental QMHS Roster and Notice (Doc. No. 81.)

Plaintiffs next state that twelve (12) of the exhibits are documents produced by Defendants in discovery.  Defendants do not dispute this nor do they dispute Plaintiffs' assertion that Defendants expressly admitted that "all documents and ESI produced by Family Solutions of Ohio in this action are authentic copies of regularly conducted activity within the meaning of Fed. R. Evid. 803(6)." (Doc. No. 96 at p. 5.)  Finally, Defendants do not argue that any of these specific 12 exhibits are inauthentic.  Accordingly, the Court will not strike those contested exhibits that consist of documents produced by Defendants in discovery; i.e., (1) Exhibits 1 and 6 to Plaintiffs' Motion for Supplemental QMHS Roster and Notice (Doc. No. 66); (2) Exhibit 2 to Plaintiffs' Memorandum in Support of Motion for Rule 23 Certification (Doc. No. 69); (3) Exhibits 2 and 3 to Plaintiffs' Reply Brief in Support of Motion for Supplemental QMHS Roster and Notice (Doc. No. 81); (4) Exhibit 2 to Plaintiffs' Reply in support of Motion to Modify the FLSA Collective Action Class (Doc. No. 82); (5) Exhibit 4 to Plaintiffs' Reply in support of Motion for leave to File a Second Amended Complaint (Doc. No. 83); and (5) Exhibits 2, 7, 8, 9, and 10 to Plaintiffs' Reply in support of Motion for Rule 23 Certification (Doc. No. 91.)

Finally, four (4) of the exhibits are documents produced by Plaintiffs in discovery.[8]  In support of their Brief in Opposition to Defendants' Motion to Strike, Plaintiffs have submitted sworn

---

[8] Plaintiffs incorrectly state that an additional three exhibits were produced by Plaintiffs in discovery and authenticated by Arends and Stephenson when, in fact, they were not.  These three exhibits (Exhibit 4 from Doc. No. 81, Exh. 3 from

declarations from Plaintiffs Arends and Stephenson, in which they specifically authenticate each exhibit.  (Doc. Nos. 96-4 and 96-5.)  Accordingly, the Court will consider those contested exhibits which were produced by Plaintiffs in discovery and authenticated by Arends and Stephenson; i.e., (1) Exhibit 3 to Plaintiffs' Memorandum in Support of Motion for Rule 23 Certification (Doc. No. 69); and (2) Exhibits 3, 4, and 6 to Plaintiffs' Reply in support of Motion for Rule 23 Certification (Doc. No. 91.)

This leaves four exhibits.  Each of these exhibits appear to be print outs of an archived version of Family Solution's website setting forth Staff Listings from various office locations.  Plaintiffs suggest that these documents are publicly available on the internet, and Defendants do not argue otherwise.  Moreover, Defendants do not argue that these specific exhibits are inaccurate or unreliable.  Accordingly, the Court will not strike these particular exhibits; i.e., (1) Exhibit 9 to Plaintiffs' Motion for Supplemental QMHS Roster and Notice (Doc. No. 66); (2) Exhibit 4 to Plaintiffs' Reply Brief in Support of Motion for Supplemental QMHS Roster and Notice (Doc. No. 81); (3) Exhibit 3 to Plaintiffs' Reply in support of Motion to Modify the FLSA Collective Action Class (Doc. No. 82); and (4) Exhibit 3 to Plaintiffs' Reply in support of Motion for leave to File a Second Amended Complaint (Doc. No. 83).

Therefore, and for all the reasons set forth above, Defendants' Motion to Strike Unverified Exhibits (Doc. No. 92) is DENIED.

### B.     Plaintiffs' Motion for Supplemental QMHS Roster and Notice (Doc. No. 66)

---

Doc. No. 82, and Exh. 3 from Doc. No. 83) appear to be print outs from an archived version of Family Solutions' website setting forth Staff Listings from various locations.

As noted above, on September 16, 2019, this Court conditionally certified a FLSA class consisting of "all current and former employees who worked as Qualified Mental Health Specialists for Family Solutions of Ohio during the period three years prior to the date of this Memorandum Opinion & Order."  (Doc. No. 20.)  At that time, the Court ordered Defendants "to provide Plaintiffs with a list of the full name and last known home address of each current and former employee falling within the conditional collective action class described above, as well as their dates of employment and **last known personal email address**." (*Id*. at p. 21) (emphasis added).

In response to this Order, Defendants produced a Roster to Plaintiffs on September 30, 2019 that identified 239 potential opt-ins.  (Doc. No. 66-1.)  While the Roster provided home addresses for each of these individuals, it only contained email addresses for 43 of the potential class members, or about 18% of the individuals listed.  (*Id.*)  When pressed by Plaintiffs regarding the "paucity of email addresses," Defendants repeatedly stated that "the client does not have any further email addresses." (Doc. Nos. 66-3, 66-4.)  Notice was approved and sent, and the opt-in period closed on December 24, 2019.  Twenty-six (26) employees filed consent notices and opted-in to the instant action.

In their Motion for Supplemental QMHS Roster and Notice, filed July 30, 2020, Plaintiffs argue that Defendants knowingly omitted personal email addresses from the Roster in violation of this Court's Order.  (Doc. No. 66.)  Plaintiffs state that Defendants produced personnel records for four (4) opt-ins in December 2019 and for the remaining twenty-two (22) opt-ins in June 2020.  (*Id.* at p. 4.)  Plaintiffs' review of these personnel records "revealed that employees' email addresses are contained in several places within documents routinely maintained by Family Solutions." (*Id.* at pp. 4-5.)  Specifically, Plaintiffs assert that the opt-ins' personal email addresses are contained in resumes, "New Hire Information" forms, and Department of Labor I-9 forms that are retained by

14

Defendants and were produced in discovery.  (*Id*. at p. 5.)  Plaintiffs further note that Defendants heavily redacted the personnel records produced in discovery (including employee email addresses) despite the fact that there is a Stipulated Protective Order in this case.  (*Id*.)  In some of the documents produced, however, Defendants (perhaps mistakenly) neglected to redact employee email addresses. (*Id*. at pp. 5-8.)  Plaintiffs note that, for several of these opt-ins, documents produced by Defendants in discovery contained those opt-ins' email addresses, but those email addresses were not provided in the Roster.  (*Id*. at p. 8.)

In support of this assertion, Plaintiffs attach to their Motion sixty pages of personnel records produced by Defendants in discovery.  (Doc. No. 66-6.)  These records demonstrate that employees' email addresses are, in fact, contained in documents retained by Defendants, i.e., in resumes, New Hire Information forms, and I-9 forms.  (*Id*.)  In addition, Plaintiffs correctly note that these records are heavily redacted to remove the opt-ins' personal information, often including their email addresses.  (*Id*.)  Finally, Plaintiffs also correctly note that, for at least six (6) opt-ins, the documents produced by Defendants in discovery contained these opt-ins' personal email addresses, but the Roster incorrectly indicated that email addresses were not available for these individuals.[9]  (*Id*.)

Defendants raise a host of arguments opposing Plaintiffs' Motion.  They first argue that Plaintiffs "unduly delayed" in bringing the Motion and "wholly failed" to meet and confer with Defendants prior to filing it.  (Doc. No. 80 at p. 2.)  Defendants next assert that Plaintiffs' Motion should be denied because "first class mail is the preferred method for notice transmission in FLSA classes."  (*Id*. at p. 8.) They argue that "Plaintiffs fail to provide any evidence or identify a single

---

[9] These individuals are Carolyn Cates, Kimberly Bolden, Alexandra Toth, Andrea Reynolds, Maria Graciani, and Vonetta Watson.  *Compare* Roster (Doc. No. 66-1) with personnel records (Doc. No. 66-6 at PageID#s 581, 582, 583, 584, 602-604, 609-611, 621-623, 630-632.)

individual who alleges that they were unable to opt-into this lawsuit or who otherwise did not receive the consent notice because it was not sent to their personal email address." (*Id*. at pp. 8-9.)  They further assert that "Plaintiffs provide no evidence showing that mail delivery of the consent notice somehow prevented potential opt-ins from joining this lawsuit." (*Id*.)  To the contrary, Defendants argue that, because 17 of the 26 opt-ins who filed consent notices did not receive notice via email, "the evidence to date shows that the manner of communicating the class notice did not affect the opt-in filings and do not warrant a supplemental roster." (*Id.*)

Defendants then argue that there is no evidence that they wrongfully withheld personal email addresses.  (*Id*. at p. 10.)  Defendants assert that, as a non-profit organization, Family Solutions does not have access to "high level human resources' software programs" and, in particular, "does not have an electronic record that includes the last known phone number, residential address, and email address" of employees. (Smith Decl. (Doc. No. 80-1) at ¶ 13.)  Thus, to complete the Roster, Defendant Smith supervised a manual review of approximately 600 paper files for current and former employees.  (*Id*. at ¶ 14.)  Smith states that each staff member reviewing the paper files "was directed to provide the contact information for the employee that was contained in the file." (*Id*. at ¶ 16.)  She avers that "[m]ost of the paper files reviewed by my staff do not contain last known personal email addresses" and states that "[t]he Roster was completed in good faith and to the best of our employee's abilities."  (*Id*. at ¶ 26.)  With regard to the redactions of the opt-ins' personnel files, defense counsel Donald Slezak states that "[a] paralegal was asked to redact all identifiable information from the files before production" and, "[d]ue to the many redactions that were necessary, the paralegal redacted all identifiable information, including the information on the opt-in members." (Slezak Decl. (Doc. No. 80-2) at ¶ 12.)

16

Finally, Defendants argue that there is no legal authority for issuing a supplemental notice and that doing so would be prejudicial because multiple court-authorized notices might improperly suggest that the Court believes Plaintiffs' claims have merit.  (Doc. No. 80 at p. 9.)  Defendants also assert that they should not be required to produce non-redacted versions of the opt-ins' personnel records because "there is no need whatsoever" to produce such files and "requiring Defendants to spend dozens of hours removing the redactions from the employee personal information and reapplying the redactions to the patient information is prejudicial, irrelevant, costly, and wholly disproportionate to the needs of the case."  (*Id.* at p. 13.)

As another district court in this Circuit recently noted, "Sixth Circuit cases addressing re-opening or extending the FLSA notice period are scarce." *Rogers v. Webstaurant, Inc.,* 2019 WL 691408 at * 2 (W.D. Ky. Feb. 19, 2019).  "The cases in this circuit and those from other courts nationwide that address the issue, or one similar, tend to disfavor re-opening the notice period unless significant and severe circumstances so warrant." *Id.  See Ratcliffe v. Food Lion, LLC*, 2020 WL 1987286 at * 2 (M.D. Tenn. April 27, 2020) (same).  *See also Potts v. Nashville Limo & Transp., LLC*, 2016 WL 1622015 (M.D. Tenn. Apr. 19, 2016), *partial reconsideration granted on other grounds*, 2016 WL 10674822 (Aug. 12, 2016) (re-opening the notice period based in part on "clear evidence" of the employer's attempted retaliation against an employee if he remained a claimant in the lawsuit); *Velasque-Monterrosa v. Mi Casita Restaurants,* 2016 WL 7429200 (E.D. N.C. Sept. 30, 2016) (noting that courts may reopen a notice period upon proper showings of misconduct).  Notably, courts have found reopening of the FLSA notice period warranted where employers failed to timely provide employee contact information.  *See, e.g., Beall v. Tyler Technologies, Inc.,* 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009).

17

The question before the Court, then, is whether the circumstances herein are significant and severe enough to warrant re-opening the FLSA notice period.  For the following reasons, the Court finds that they are.  In September 2019, this Court expressly ordered Defendants to provide Plaintiffs with contact information for each current and former employee falling within the conditional collective action class, including last known personal email addresses.  (Doc. No. 20.)  Defendants violated this Court's Order.  A review of the documents attached to the parties' briefing makes it quite clear that employees' personal email addresses were contained in employee resumes, New Hire forms, and I-9 forms.  Defendants do not dispute this nor do they dispute the fact that these documents were in Family Solutions' possession at the time the Court issued its Order.  Despite having this information in their possession, and despite this Court's clear Order, Defendants reported personal email addresses for only 43 of the 239 potential opt-ins, or less than 20% of the individuals on the Roster.

Defendants offer no meaningful explanation for their failure to provide personal email addresses for the remaining 196 potential opt-ins.  Instead, they suggest that email notification was not necessary in the first instance because first class mail is the "preferred method" of notice.  Whether or not this may be the case is entirely irrelevant.[10]  The fact remains that this Court ordered Defendants to provide last known personal email addresses.  Needless to say, it is wholly inappropriate for Defendants to unilaterally decide that email notification was not necessary.  Nor is it appropriate for Defendants to argue that, despite this Court's Order, Plaintiffs have the burden of

---

[10] The Court notes, in passing, that "courts within the Sixth Circuit have routinely approved dual notification through regular mail and email."  *Crosby v. Stage Stores, Inc.,* 348 F.Supp.3d 742, 751 (S.D. Oh. 2018) (collecting cases).  Moreover, Defendants did not raise any objection to email notification in opposing Plaintiffs' February 2019 Motion for Conditional Certification.  *See* Doc. Nos. 13, 15-1.

18

coming forward with evidence that first class mail delivery of the consent notice prevented potential opt-ins from joining this action.  Plaintiffs need not make any such showing.  Plaintiffs need only show that Defendants violated the Court's Order, which they have amply done.

The Court also rejects Defendants' argument that authorizing supplemental notice would be unduly prejudicial because a second Court-authorized notice might suggest that Court believes Plaintiffs' claims have merit.  As an initial matter, it is entirely disingenuous for Defendants to fail to provide required contact information in violation of a Court Order, and then turn around and argue that they will be prejudiced by the issuance of supplemental notices in order to remedy that very failure.  Secondly, the Court notes that its September 2019 Order granting conditional certification of the FLSA class expressly contemplated the possibility of supplemental notices.  Specifically, in that Order, the Court stated that "[d]uplicate copies of the Notice may be sent in the event new, updated, or corrected addresses are found for one or more potential opt-ins."  (Doc. No. 20 at p. 22.) Defendants did not raise any objection to this language at that time.  Defendants' argument is without merit and rejected.

Finally, the Court rejects Defendants' argument that Plaintiffs "unduly delayed" in bringing the Motion and "wholly failed" to meet and confer with Defendants prior to filing it.  (Doc. No. 80 at p. 2.)  As noted above, immediately after receiving the Roster, Plaintiffs emailed defense counsel with concerns regarding the fact that so few email addresses were provided.  On two separate occasions, defense counsel insisted that "the client does not have any further email addresses."  (Doc. Nos. 66-3, 66-4.)  Although Defendants provided personnel records for four (4) employees in December 2019, Defendants waited another six months (until June 2020) before providing the bulk of their document production, including the personnel records of the remaining twenty-two (22) opt-

ins.  It was only upon receiving these additional records that it became evident that Defendants had redacted personal email addresses on a widespread basis.  Plaintiffs promptly and repeatedly emailed defense counsel about Defendants' failure to provide last known personal email addresses and requested that they provide the missing email addresses and unredacted personnel files for all opt-ins.  (Doc. No. 81-7.)  Defense counsel largely ignored Plaintiffs' emails and refused to address the problem.  (*Id*.)

Plaintiffs did not unduly delay in bringing in the instant Motion.  Until Defendants' June 2020 document production, Plaintiffs were not (and could not have been) aware of the fact that employee personal email addresses had been in Defendants' possession but not disclosed on a widespread basis.  Once aware, Plaintiffs repeatedly tried to address this issue with Defendants prior to seeking Court intervention.  Defendants refused to address any omissions or oversights in providing the required contact information, or otherwise take any action to address Plaintiffs' concerns.  Under these circumstances, any delay in bringing this issue to the Court's attention is entirely the fault of Defendants.

The Court further notes that the delay in production appears to be the result, at least in part, of Defendants' decision to redact the opt-ins' personnel records.  As noted above, Defendants heavily redacted these records, including the opt-ins' phone numbers, email addresses, dates of birth, and social security numbers.  (Doc. No. 66-6.)  Defendants offer no explanation for why they believe redactions to these records were necessary in light of the fact that a Stipulated Protective Order was entered in this matter in December 2019.  Indeed, Defendants do not address the existence of the Stipulated Protective Order at any point in their briefing.  Rather, Defendants simply suggest that it was easier for them to have their paralegal engage in wholesale redactions as opposed to carefully

20

limiting their redactions to confidential patient health information.  Defendants' explanation is entirely insufficient.  There is no justification for Defendants to have redacted the opt-ins' contact information, particularly in light of this Court's express Order that this information be disclosed to Plaintiffs.  And Defendants give no plausible reason for having believed that they were entitled to do so.

For all the reasons set forth above, the Court orders as follows.  Within fourteen (14) days of the date of this Order, Defendants shall provide Plaintiffs with a Corrected and Supplemental Roster that contains last known personal email addresses for all potential QMHS opt-ins to the full extent available to Defendants and their agents.  For any individual on the Corrected and Supplemental Roster for whom Defendants fail to provide a personal email address, Defendants shall produce that individual's complete employment file within twenty-one (21) days of the date of this Order.  Defendants shall redact dates of birth, social security numbers, and HIPAA-related patient health information, but shall not redact employee contact information.  All documents produced in response to this Order will be subject to the Stipulated Protective Order entered December 27, 2019.  Within thirty (30) days of the date of this Order, the Supplemental Notice shall be sent via email to those potential opt-ins whose personal email addresses were omitted from the original Roster.  The Supplemental Notice period for such potential opt-ins is forty-five (45) days from the date of distribution of the Supplemental Notice.

Finally, Plaintiffs raise one other issue in their Motion.  Specifically, Plaintiffs assert that Defendants knowingly omitted four individuals from the original Roster; i.e., Cherelle Scott, Valerie White, Marie Petricca, and Bruce Thompson. (Doc. No. 66 at p. 9.)  In response, Defendants acknowledge that Cherelle Scott and Marie Petricca were erroneously omitted from the original

21

Roster due to a clerical error.  (Doc. No. 80 at p. 7; Smith Decl. at ¶ 25.)  With regard to Bruce Thompson, Defendants argue that he "never held the QMHS position."  (Smith Decl. at ¶ 24.)  With regard to Valerie White, Defendants assert that Ms. White's claims are time-barred because she only held the QMHS position until September 13, 2016.  (*Id*.)  In reply, Plaintiffs agree that Ms. White "ceased performing QMHS services three days before the 3-year lookback period for FLSA cases, so she need not be sent notice."  (Doc. No. 81 at p. 7.)  With regard to Mr. Thompson, Plaintiffs argue that he should be issued notice because he was listed on Family Solutions' website as having a dual position of "QMHS/Counselor." (*Id.* at p. 5-6.)

In sum, the parties agree that notice should be sent to Ms. Scott and Ms. Petricca, but not to Ms. White.  With regard to Mr. Thompson, the Court agrees with Plaintiffs that his description on Family Solutions' website as a "QMHS/Counselor" warrants sending him notice of the instant lawsuit.

Therefore, in their Corrected and Supplemental Roster, Defendants shall include mailing addresses and email addresses (if available) for Ms. Scott, Ms. Petricca, and Mr. Thompson.  If Defendants fail to provide email addresses for any of these individuals, they shall produce complete employment files for said individual, within twenty-one (21) days of the date of this Order. Defendants shall redact dates of birth, social security numbers, and HIPAA-related patient health information, but shall not redact employee contact information.  Notice shall be sent to Ms. Scott, Ms. Petricca, and Mr. Thompson within thirty (30) days of the date of this Order.  The Notice period for these individuals is forty-five (45) days from the date of distribution of Notice.

Accordingly, and for all the reasons set forth above, Plaintiffs' Motion for Supplemental QMHS Roster and Notice (Doc. No. 66) is GRANTED as set forth above.

**C.**     **Motion to Modify the Collective Action Class Conditionally Certified under the FLSA (Doc. No. 68)**

In their next Motion, Plaintiffs ask the Court to modify the FLSA conditional collective action class to include hourly Therapists.  (Doc. No. 68.)  Plaintiffs assert that "several persons who had been hired by Family Solutions as hourly Therapists were listed in Defendants' Roster and opted into the case," including proposed Representative Plaintiff Alexander Dolin.  (*Id.* at p. 4.)  Plaintiffs claim that the June 24, 2020 Rule 30(b)(6) deposition of Defendant Smith "established that QMHSs and hourly Therapists were paid identically by Family Solutions and subjected to the same unlawful pay practice;" i.e., they were both denied overtime compensation for time spent on necessary services such as documentation, travel time between clients, time spent for client appointment no-shows, and administrative time.  (*Id*. at p. 3.)  Plaintiffs argue that modifying the class is in the interest of justice and will promote judicial efficiency.  (*Id*. at p. 11.)  They assert that "[t]he only discovery necessary regarding any additional opt-ins will be Defendants' production of their personnel files and time/pay records."  (*Id.*)  Plaintiffs further argue that "failure to include Therapists in this case will only cause a separate filing by that group, which would, in all likelihood, be consolidated with this action."  (*Id*.)

Defendants argue that Plaintiffs' Motion should be denied for several reasons.  (Doc. No. 79.)  First, Defendants maintain that Plaintiffs failed to timely raise this issue and that allowing expansion of the class at this stage of the proceedings would be severely prejudicial.  (*Id*. at pp. 1-2, 8-9.)  In this regard, Defendants note that Mr. Dolin opted-in to the class in November 2019 and Plaintiffs were made aware immediately thereafter that he held the Therapist position.  (*Id*.)  Defendants maintain that, although Plaintiffs had access to Mr. Dolin since November 2019 and could have gathered information from him at that time to support expansion of the class, Plaintiffs waited another nine (9) months to file the instant Motion.  (*Id.*)  When Plaintiffs filed this Motion on July 31, 2020,

23

the non-expert discovery period was set to expire two weeks later, on August 14, 2020.  Defendants

assert that there has been no fact discovery regarding Therapists.  (*Id.* at p. 13.)  They maintain that,

if Plaintiffs' Motion is granted, notice will have to be issued and the parties will have to begin written

and deposition discovery anew regarding the Therapist position.  (*Id.*)

Second, Defendants argue that Plaintiffs' Motion should be denied because they have failed

to demonstrate that QMHSs and Therapists are similarly situated.  (*Id.* at pp. 14-15.)  Specifically,

Defendants maintain that, unlike QMHSs who are paid hourly, Therapists (also referred to as

"Outpatient Clinicians") "have been paid on a salary basis at various times since 2013."  (Smith Decl.

(Doc. No. 79-1) at ¶ 29.)  They further assert that "[s]ince 2018, all full-time Outpatient Clinicians in

Ohio have been paid based on the salary method."  (*Id.*)  Lastly, Defendants aver that "when not paid

on the salary method, the Outpatient Clinicians have been paid on a fee basis."  (*Id.*)  Thus,

Defendants argue that Therapists/Outpatient Clinicians are not similarly situated to QMHSs and are,

in fact, exempt from the overtime provisions of the FLSA.  (Doc. No. 79 at p. 14-15.)  Third, and

finally, Defendants argue that Mr. Dolin is not a suitable class representative because he (1) refuses

to admit or deny that he is not a QMHS; and (2) has failed to produce any evidence regarding

damages.  (*Id.* at p. 16.)

In reply, Plaintiffs argue that the delay in filing the instant Motion is Defendants' fault.  (Doc.

No. 82.)  Plaintiffs assert that Defendants (1) failed to produce Mr. Dolin's employment file until

June 3, 2020; and (2) failed to produce their Rule 30(b)(6) representative, Defendant Smith, until

June 24, 2020.  (*Id.*)  Plaintiffs argue that, during her deposition, Defendant Smith contradicted her

previously sworn declaration and admitted that hourly Therapists were, in fact, "treated identically to

QMHSs with respect to all issues relevant to this case;" i.e., hourly Therapists were not paid for their

travel time, no-show appointments, or entry of documentation.  (*Id.* at p. 1, 4.)  Plaintiffs maintain that they were not in a position to file the instant Motion until after deposing Defendant Smith and, thus, their Motion is not untimely.  Notably, Plaintiffs do not dispute that an additional notice and discovery period will be necessary in the event their Motion is granted.

Plaintiffs next argue that Smith's deposition directly supports their position that QMHSs and hourly Therapists are similarly situated.  (*Id.* at pp. 6-9.)  In this regard, Plaintiffs note that Defendant Smith's current averment that Therapists/Outpatient Clinicians are paid on either a salary or fee basis is directly contradictory both to her previous Declaration dated March 2019 and her 30(b)(6) deposition testimony, during which she stated that "Outpatient Clinicians include both employees paid salary and employees paid hourly."  (Doc. No. 13-1 at ¶ 6.)  Finally, Plaintiffs argue that Mr. Dolin is a proper class representative because he functioned in a dual role of both QMHS and Therapist.  (*Id.* at p. 5, 7.)

Generally speaking, "district courts have broad discretion to modify class definitions" and "to make appropriate adjustments to the class definition as the litigation progess[es]."[11]  *Power v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).  In so doing, courts have considered "whether the movant has identified compelling reasons, such as an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cabrera v. Gov't Emples. Ins. Co.*, 2015 U.S. Dist. Lexis 16663 at * 12 (S.D. Fla. Jan. 15, 2015) (citing *Kulig v. Midland Funding, LLC*, 2014 WL 6769741 at *1 (S.D.N.Y.

---

[11] Neither the parties' briefing nor the Court's own research revealed binding authority from this Circuit specifically dealing with standards governing the modification of conditional class definitions in the FLSA collective action context. In the absence of such authority, the Court draws on case law regarding the modification of class definitions as used in the context of Fed. R. Civ. P. 23.  Defendants rely on this authority in their Brief in Opposition, and Plaintiffs do not raise any objection.

Nov. 20, 2014)).  In addition, courts also consider other factors, such as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to any party, and the interest of proceeding to the merits of the case.  *Id.  See also Kerns v. Caterpillar Inc.,* 2011 WL 1598830 at *2 (M.D. Tenn. Apr. 27, 2011) (stating that the ability to alter a class certification order under Rule 23(c)(1)(C) should be "balanced with 'other concerns' including avoiding 'unnecessarily protracted' litigation."); *Burkhead v. Louisville Gas & Elec. Co.,* 2008 WL 1805487 at *1 (W.D. Ky. Apr. 18, 2008)  ("While the Rule certainly allows the Court great discretion in certifying, decertifying, or amending a class, other concerns are also important, such as actually proceeding to the merits of the case.")

For the following reasons, Plaintiffs' Motion is denied.  It is undisputed that Mr. Dolin opted-in to the class in November 2019 and that Plaintiffs were aware, at that time, that he was a Therapist/Outpatient Clinician.  It is further undisputed that, as of November 2019, Plaintiffs had access to Mr. Dolin and, in fact, spoke with him about his employment at Family Solutions.  *See* Doc. No. 68-2 (in email dated November 5, 2019, Plaintiffs' counsel states that he has "now spoken with" Dolin about his job duties and titles at Family Solutions).  Thus, since November 2019, Plaintiffs have had every opportunity to gather information from Mr. Dolin about his job duties, billing practices, timekeeping, and compensation at Family Solutions.

Moreover, at that time, Plaintiffs also had the benefit of Defendant Smith's March 2019 Declaration, which was submitted in opposition to Plaintiffs' Motion for Conditional Certification. (Doc. No. 13-1.)  Therein, Smith expressly avers that "Outpatient Clinicians include both employees paid salary and employees paid hourly." (*Id.* at ¶ 6.)  She also states that both Outpatient Clinicians and QMHSs "are required to follow Family Solutions' 'Reporting Time Worked' policy," which required both categories of employees to complete and time sheets on a weekly basis.  (*Id.* at ¶¶ 14,

15, 18.) Ms. Smith further avers that "Outpatient Clinicians and QMHSs are then paid everything reflected on the approved time sheet, including non-billable time." (*Id.* at ¶ 18.)

In other words, as of November 2019, Plaintiffs had access to sufficient information to promptly move to modify the class to include hourly Therapists/Outpatient Clinicians and presumably could have supported the same with a sworn Declaration from Mr. Dolin.[12] Yet despite having this information at their disposal, Plaintiffs waited nine (9) months, until July 31, 2020, to file the instant Motion. By that time, non-expert discovery was substantially complete; the discovery deadline was set to expire just two weeks later on August 14, 2020; and dispositive motions were due shortly thereafter on September 1, 2020. Notably, these case management deadlines were jointly proposed by the parties themselves on July 7, 2020, only three weeks prior to the filing of the instant Motion. (Doc. No. 59.)

Although it would certainly have been relevant to this Court's consideration of the parties' proposed deadlines, Plaintiffs did not, at any point in time, alert the Court that they intended to file the instant Motion. (Doc. Nos. 53, 55, 59.) It should have been very clear to Plaintiffs that resolution of the instant Motion (along with their Motion for Supplemental QMHS Roster and Notice) could potentially have a substantial impact on the progression of this case. And yet Plaintiffs said nothing, resulting in a referral to mediation when there was little likelihood of success[13] and the filing of dispositive motions when the scope and size of the FLSA class was called into question.

---

[12] In so finding, the Court rejects Plaintiffs' argument that they could not have filed the instant Motion until after Smith's deposition and the production of Mr. Dolin's employment file. As noted above, Plaintiffs offer no reason why they could not have gathered relevant information from Mr. Dolin himself and obtained a Declaration from him earlier in this case. This is particularly the case given that, by late 2019, Plaintiffs had Smith's original Declaration as well as at least some discovery from Defendants.

[13] Among other things, Plaintiffs' conduct demonstrated a total disregard for the Magistrate Judge's time in preparing for and conducting the pre-mediation conference on August 17, 2020.

In short, Plaintiffs unduly delayed filing the instant Motion and have offered no persuasive reason for having done so. The Court further finds that Defendants will be unduly prejudiced by expanding the class at this time. Defendants assert (and Plaintiffs do not contest) that there has been little to no fact discovery regarding Therapists/Outpatient Clinicians to date. Defendants further assert (and Plaintiffs do not contest) that, if Plaintiffs' Motion were to be granted: (1) a new roster would have to be compiled; (2) notice would thereafter have to be issued; and (3) the parties would have to begin written and deposition discovery anew regarding the Therapist position.[14] Essentially, this case would be placed back where it was over a year ago, in September 2019.

Plaintiffs offer no reason to support such a drastic measure, other than a vague reference to the "interests of justice" and the suggestion that "failure to include Therapists in this case will only cause a separate filing by that group." (Doc. No. 68 at p. 11.) Plaintiffs' argument is unavailing. Plaintiffs are free to pursue a separate action involving the Therapists if they wish.[15] This Court,

---

[14] The Court recognizes that, pursuant to this Memorandum Opinion & Order, supplemental notices will be sent to certain QMHSs, which may result in the necessity for additional fact discovery. Under these circumstances, Plaintiffs might argue that there is little practical prejudice from enlarging the class to include Therapists. This argument, however, would be without merit. The Court expects any additional delay stemming from supplemental notices to potential QMHS opt-ins to be relatively minor, given that the parties have already completed discovery regarding this position generally and taken the depositions of at least two QMHSs. By contrast, the parties have not conducted any discovery regarding the Therapist position. As Defendants note: "the Outpatient Clinician and QMHS positions are different positions, have different job duties and responsibilities, require different qualifications, and are in different Family Solutions programs. . . Time spent on the job by a QMHS is not reflective of or similar to the time spent on the job by an Outpatient Clinician." (Smith Decl. at ¶ 34.) Were the class to be modified to include Therapists, the parties would have to engage in significant discovery regarding this category of employees (including written and deposition discovery) which would result in far greater delay than that likely to result from the supplemental notification to potential QMHS opt-ins ordered herein.

[15] Plaintiffs appear to presume that, if a new action is filed on behalf of the Therapists, it "would, in all likelihood, be consolidated with this action." (Doc. No. 68 at p. 11.) Under Fed. R. Civ. P. 42(a)(2), a court may consolidate actions involving "a common question of law or fact." Fed. R. Civ. P. 42(a)(1); *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). Once the threshold requirement of establishing a common question of law or fact is met, the decision to consolidate rests in the sound discretion of the district court. *Gamboa v. Ford Motor Co.*, 381 F.Supp.3d 853, 866 (E.D. Mich. 2019). In determining whether to grant consolidation, courts weigh the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice. *Banacki v. OneWest Bank, FSB*, 276 F.R.D. 567, 571 (E.D. Mich. 2011). In the instant case, it is not at all clear that consolidation would be a foregone conclusion.

however, must consider the interests of the parties currently before it, as well as the Court's own interest in managing its docket.  As noted above, Defendants will be unduly prejudiced by having to turn back the clock and restart discovery into an entirely new class of prospective class members.  The QMHS opt-ins will also be prejudiced by having the resolution of their own claims significantly delayed.  And, finally, this Court must be mindful of its own obligation to expeditiously resolve the cases pending before it.  This standard track case is already over two years old.  Under the circumstances presented, reopening notice and discovery to include an entirely new category of potential class members at this stage of the proceedings is not in the interests of justice or judicial efficiency.

Accordingly, and for all the reason set forth above, Plaintiffs' Motion to Modify the FLSA Conditional Collective Action (Doc. No. 68) is denied.

### D.      Motion for Leave to File Second Amended Complaint (Doc. No. 67)

As a companion filing to their Motions to Modify the FLSA Collective Action and for Rule 23 Certification, Plaintiffs contemporaneously filed a Motion for Leave to File Second Amended Complaint.  (Doc. No. 67.)  Therein, Plaintiffs seek to "conform the pleaded class definitions and representatives to those sought in the related motions, to wit, adding hourly Therapists to the collective and class groups."  (*Id*.)  The only changes made in Plaintiffs' proposed Second Amended Complaint are to (1) to conform the class definitions under the FLSA and Rule 23 to include hourly Therapists, and (2) to list Opt-in Plaintiff Alexander Dolin, a former Therapist for Defendant Family Solutions of Ohio, as an additional named plaintiff and class representative. (*Id.*)

Plaintiffs' Motion is based on the same arguments and evidence presented in their Motion to Modify the FLSA Collective Action.  Plaintiffs' Motion is denied for all of the same reasons set forth

above in Section II.C of this Memorandum Opinion & Order; i.e., Plaintiffs' undue delay in filing the Motion, and the undue prejudice to Defendants that would result from modifying the FLSA conditional class at this stage of the proceedings. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) ("A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." )  In so holding, the Court notes that the same reasons for denying modification of the FLSA conditional class apply with equal force to Plaintiffs' request to modify their Rule 23 state-law class.

Accordingly, Plaintiffs' Motion for Leave to File Second Amended Complaint is denied. (Doc. No. 67.)

## III.    Conclusion

Accordingly, Defendants' Motion to Strike Unverified Exhibits (Doc. No. 92) is DENIED. Plaintiff's Motion for Supplemental QMHS Roster and Notice (Doc. No. 66) is GRANTED as set forth herein.  Plaintiff's Motions for Leave to File Second Amended Complaint and to Modify the Collective Action Class (Doc. Nos. 67, 68) are DENIED.

Additionally, in light of the above rulings, Defendants' Motion to Decertify the Class Conditionally Certified under 29 U.S.C. § 216(b) (Doc. No. 110) is DENIED WITHOUT PREJUDICE subject to refiling.  During the upcoming status conference with counsel on November 23, 2020, the Court will address an appropriate deadline for refiling this Motion after the close of the re-opened notice period for potential QMHS opt-ins.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　 *s/Pamela A. Barker*
　　　　　　　　　　　　　　　 PAMELA A. BARKER
Date:  November 4, 2020　　　 U. S. DISTRICT JUDGE

30