## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,* | **Case No. 1:18cv2017** |
| **On behalf of himself and** | |
| **All others similarly situated,** | |
| | |
| **Plaintiffs,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| | |
| **Family Solutions of Ohio, Inc.,** | **MEMORANDUM OPINION AND** |
| *et al.,* | **ORDER** |
| | |
| **Defendants** | |

Currently pending are the following motions: (1) the Motion of Defendants Family Solutions of Ohio, Inc, Prostar Management, Inc., John Hopkins, and Dawn Smith (herein referred to as "Defendants") for Judgment on the Pleadings on the Claims Asserted by Plaintiff Melanie Vilk Baron (Doc. No. 52); (2) Plaintiff Melanie Vilk Baron's Motion for Equitable Tolling (Doc. No. 57); and (3) Defendants' Motion to Strike Exhibits and References to Exhibits 1, 2, 3, and 4 to Plaintiff Baron's Motion for Equitable Tolling (Doc. No. 64.)

For the following reasons, Defendants' Motion to Strike (Doc. No. 64) is DENIED. Defendants' Motion for Judgment on the Pleadings (Doc. No. 52) is converted to a motion for summary judgment and DENIED. Plaintiff Baron's Motion for Equitable Tolling (Doc. No. 57) is GRANTED.

## I.     Relevant Procedural Background

On September 4, 2018, Plaintiff Alicia Arends ("Plaintiff" or "Arends") filed a Complaint in this Court on behalf of herself and all others similarly situated against Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith.  (Doc. No. 1.)  Therein,

Plaintiff asserted the following six claims for relief:  (1) violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count One); (2) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, art. II, § 34a (Count Two); (3) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03 (Count Three); (4) violations of the OFMWA's record-keeping requirement (Count Four); (5) breach of contract (Count Five); and (6) unjust enrichment (Count Six).  (*Id*.)  Plaintiff sought conditional certification as an FLSA collective action; certification of the state law claims under Fed. R. Civ. P. 23; compensatory and punitive damages; and attorney fees and costs.  (*Id.*)  Jamal Stephenson subsequently filed an Opt-In and Consent Form.  (Doc. No. 12-1.)

Defendants answered the Complaint on December 23, 2018.  (Doc. No. 7.)  A Case Management Conference ("CMC") was conducted by then-assigned District Judge Christopher Boyko on February 14, 2019.  At that time, the case was assigned to the standard track and deadlines were set for conditional certification briefing.  *See* Non-Document Order dated February 14, 2019.

On February 28, 2019, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice with respect to their FLSA claims.  (Doc. No. 11.)  Therein, Plaintiffs argued that Defendants violated the overtime provisions of the FLSA by failing to pay potential class members for necessary services such as documentation, travel between clients, time spent for client appointments and no-shows, and administrative time.  (*Id.*)  Plaintiffs sought conditional certification with respect to "all hourly employees who worked as providers for Family Solutions of Ohio during the three years preceding the commencement of this action to the present."  (*Id.*)

Defendants responded on March 15, 2019, and Plaintiff filed a Reply on March 29, 2019. (Doc. No. 13, 14.)  Defendants were subsequently granted leave to file a sur-reply on April 2, 2019.

2

(Doc. No.  15-1.)  Several months later, on September 3, 2019, Plaintiffs filed the Supplemental Declaration of former Family Solutions' employee Maria Graciani, in support of their Motion.  (Doc. No. 19-1.)

On September 16, 2019, the Court[1] issued a Memorandum Opinion & Order granting Plaintiffs' Motion for Conditional Certification with respect to "all current and former employees who worked as Qualified Mental Health Specialists ['QMHS'] for Family Solutions of Ohio during the period three years prior to the date of this Memorandum Opinion & Order;" i.e., all current and former employees who worked as QMHSs between September 16, 2016 and September 2019.  (Doc. No. 20.)  The Court then set forth various deadlines regarding the Notice to be given to potential opt-in plaintiffs within the conditional class.  (*Id*. at p. 21.)

A Joint Submission of Proposed Notice was thereafter submitted on September 30, 2019.  (Doc. No. 22.)  A Case Management Conference ("CMC") was conducted on October 7, 2019, at which time the Court approved the parties' proposed Notice and various case management deadlines were set.  (Doc. No. 25.)  The docket reflects that consent forms were filed by twenty-four (24) opt-in plaintiffs between October and December 2019.  *See* Doc. Nos. 26 through 36.  Of particular relevance herein, Plaintiff Melanie Vilk Baron filed a consent form on November 6, 2019.  (Doc. No. 29-1.)

On March 24, 2020, Plaintiffs filed a Motion for Leave to file a First Amended Complaint Designating New Representative Plaintiffs.  (Doc. No. 43.)  Therein, Plaintiffs sought leave to file an

---

[1] This matter was re-assigned to the undersigned on June 27, 2019 pursuant to General Order 2019-13.

3

Amended Complaint designating Jamal Stephenson and Melanie Vilk Baron as Representative Plaintiffs, in place of Alicia Arends.[2]  (*Id.*)  Defendants did not file a response.

On April 14, 2020, the Court granted Plaintiffs' Motion.  (Doc. No. 49.)  Shortly thereafter, on May 5, 2020, Plaintiffs filed an Amended Class and Collective Action Complaint, designating Stephenson and Baron as the representative plaintiffs.  (Doc. No. 50.)  The Amended Complaint raised the same factual and class allegations and asserted the same six grounds for relief set forth in the original Complaint.  (*Id.*)  The Amended Complaint does not include a request for, or any factual allegations relevant to the issue of, equitable tolling.  (*Id.*)  Defendants filed an Answer on May 19, 2020.  (Doc. No. 51.)

On June 3, 2020, Defendants filed a Motion for Judgment on the Pleadings with respect to the FLSA and Rule 23 claims asserted by Plaintiff Baron, on the grounds that they are time-barred.  (Doc. No. 52.)  Plaintiff Baron opposed the Motion and filed her own Motion for Equitable Tolling on July 6, 2020.  (Doc. Nos. 57, 58.)  Defendants filed responsive briefing, and a Motion to Strike Certain Exhibits attached to Plaintiff's Motion for Equitable Tolling.  (Doc. Nos. 61, 63, 64.)  Plaintiff Baron filed a brief in opposition to Defendants' Motion on August 10, 2020, to which Defendants replied on August 17, 2020.  (Doc. Nos. 72, 75.)

Defendants subsequently filed a series of motions, including the following: (1) Motions for Summary Judgment as to Plaintiffs Stephenson and Baron (Doc. Nos. 88, 89); (2) Motion to Strike Unverified Exhibits (Doc. No. 92); and (3) Motion pursuant to Rule 37(c)(2) to Deem Certain Admissions Admitted and for Reasonable Attorney Fees (Doc. No. 101.)  In their Motion for

---

[2] Ms. Arends sought to be relieved of her responsibilities as a representative plaintiff, but would remain a non-representative plaintiff, having filed a consent form pursuant to 29 U.S.C. § 216(b). (Doc. No. 43 at p. 3.)

4

Summary Judgment regarding Plaintiff Baron's claims, Defendants again argue that her FLSA and Fed. R. Civ. P.  23 state law class claims are time-barred.  (Doc. No. 88.)  Plaintiffs opposed each of Defendants' Motions, filing a series of Briefs in Opposition in September and October 2020.  (Doc. Nos. 96, 99, 100, 104.)  On October 27, 2020, Defendants responded by filing reply briefs in support of their Motions, as well as an additional five (5) motions to strike.  (Doc. Nos. 102-103, 105-109.) Plaintiffs filed Briefs in Opposition to Defendants' Motions to Strike on November 10, 2020.[3]  (Doc. Nos. 118-121.)

## II.    Analysis

At the outset, the Court addresses the proper standard of review.  The issue of whether Plaintiff Baron's FLSA and Rule 23 state law class claims are time-barred is addressed in three substantive motions currently pending before the Court, each of which is governed by different standards of review and proof.  As noted above, Defendants first raised the issue of the timeliness of Plaintiff Baron's claims in their Motion for Judgment on the Pleadings, which was filed on June 3, 2020. (Doc. No. 52.)  Motions filed under Fed. R. Civ. P. 12(c) are examined under the same standard of review as those filed under Fed. R. Civ. P. 12(b)(6).  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be

---

[3] In addition, on July 30 and 31, 2020, Plaintiffs filed a (1) Motion for Supplemental QMHS Roster and Notice (Doc. No. 66); (2) Motion for Leave to File Second Amended Complaint (Doc. No. 67); and (3) Motion to Modify the Collective Action Class Conditionally Certified under 29 U.S.C. § 216(b) (Doc. No. 68).  Plaintiffs also filed a Motion for Rule 23 Class Certification as to their state law claims.  (Doc. No. 70.)  Defendants filed Briefs in Opposition to Plaintiffs' Motions on August 21 and 31, 2020, to which Plaintiffs responded on August 28, 2020 and September 8, 2020.  (Doc. Nos. 78, 79, 80, 81, 82, 83, 85, 91.)  On November 4, 2020, this Court issued an Order granting Plaintiff's Motion for Supplemental QMHS Roster and Notice and denying Plaintiff's Motions for Leave to File Second Amended Complaint and to Modify the Collective Action Class (Doc. Nos. 67, 68).  Therein, the Court set deadlines for the completion of a Corrected and Supplemental Roster, and for sending Supplemental Notices to certain potential opt-ins.  (*Id*.)

5

granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).  Defendants argue that they are entitled to judgment on the pleadings with respect to Plaintiff Baron's collective and class action claims because they are untimely as a matter of law, and the Amended Complaint does not allege any facts relating to equitable tolling.  (Doc. Nos. 52, 63.)

Plaintiff Baron responded by opposing Defendants' Motion and filing her own Motion for Equitable Tolling.  (Doc. Nos. 57, 58.)  Plaintiff's Brief in Opposition and Motion rely on evidence outside the pleadings, including a Declaration from Ms. Baron in which she avers that she (1) was unaware of the instant action until she received the Court-authorized Notice to the Potential Class Members; and (2) did not know until she received the Notice that Defendants' denial of pay for intraday travel and documentation violated federal law.  (Doc. No. 57-2.)  Defendants note that Plaintiffs failed to include any of these allegations in the Amended Complaint.  They argue that Plaintiff Baron's Declaration should be stricken and not considered in the context of Defendants' Motion for Judgment on the Pleadings.  (Doc. No. 64.)

Before the Court was able to rule on the above Motions, Defendants filed a Motion for Summary Judgment on all Claims Asserted by Plaintiff Baron.  (Doc. No. 88.)  Therein, Defendants argue, among other things, that Plaintiff Baron's FLSA and Rule 23 class claims are time-barred.  (*Id.* at pp. 9-11.)  In support of this argument, Defendants rely on evidence outside the pleadings, including the deposition testimony of Plaintiff Baron.  (*Id.*)  Plaintiff Baron filed a Brief in Opposition, in which she submits another Declaration and relies on her deposition testimony.  (Doc. No. 100.)

6

For the following reasons, the Court finds that Defendants' Motion for Judgment on the Pleadings should be converted to a motion for summary judgment.  Fed. R. Civ. P. 12(d) provides as follows:

> **(d) Result of Presenting Matters Outside the Pleadings**. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Under this Rule, it is solely within the Court's discretion to either consider matters outside the pleadings and convert the motion to one for summary judgment, or to exclude the extra-pleading materials and apply the standard set forth in Rule 12(c).  *See Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000); *see also Marsilio v. Vigluicci,* 924 F.Supp.2d 837, 847 (N.D. Ohio 2013);  *Batt v. United States,* 976 F. Supp. 1095, 1096–97 (N.D. Ohio 1997) ("The decision to exclude material outside the pleadings is entirely within the discretion of the trial court.").

If the Court does not exclude the materials outside the pleadings, it must convert the motion. *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 296 (6th Cir. 2008) (citing *Max Arnold & Sons, LLC v. W.L. Hailey & Co*., 452 F.3d 494, 503 (6th Cir. 2006)) ("We have previously held that a district court converts a Rule 12(c) motion into a Rule 56 motion when the district judge merely 'fail[s] to exclude presented outside evidence.'")  Once the court converts the motion into a motion for summary judgment, it should give both parties notice of the conversion and provide a reasonable opportunity to present all material made pertinent to such a motion. *Max Arnold*, 452 F.3d at 504. However, "[t]he district court's failure to give such notice and opportunity to respond is not reversible error . . . where all parties in fact had a sufficient opportunity to present pertinent materials." *Id.*

7

(citations omitted).  *See also Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010) ("Although a district court should give the parties notice and an opportunity to present all material relevant to a motion for summary judgment, '[t]he district court's failure to give such notice and opportunity to respond is not reversible error ... where all parties in fact had a sufficient opportunity to present pertinent materials.'") (quoting *Max Arnold*, 452 F.3d at 504); *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 474 (6th Cir. 2020).

Here, both parties have had adequate notice that this matter could be converted to a summary judgment motion.  Plaintiff Baron submitted a Declaration and other exhibits in response to Defendants' Motion for Judgment on the Pleadings, and Defendants had the opportunity to substantively address the same in their Reply Brief.  Indeed, in their Motion to Strike, Defendants expressly acknowledge that their Motion for Judgment on the Pleadings could be converted to a summary judgment motion due to Plaintiff's introduction of extra-pleading evidence. (Doc. No. 64 at p. 3-4.)  Moreover, Defendants have, in fact, moved for summary judgment on Plaintiff Baron's collective and class action claims (in part) on the basis of the statute of limitations.  In that Motion, Defendants address Plaintiff Baron's Declaration and rely on additional evidence outside the record, including Baron's deposition testimony.  Plaintiffs had the opportunity to, and did, respond in their Brief in Opposition to Defendants' Motion for Summary Judgment.

In light of this unique procedural posture, the Court finds that it is appropriate to convert Defendants' Motion for Judgment on the Pleadings to a motion for summary judgment.  The Court further finds that notice and an opportunity to respond is not necessary in light of the fact that the parties each filed summary judgment briefing on this very issue, in which they had the opportunity to, and did, address and rely on evidence outside the pleadings.  *See, e.g., Holoman v. Stoneridge,*

8

*Inc.*, 2009 WL 10713888 at * 5 (N.D. Ohio Dec. 14, 2009) (considering extra-pleading evidence where "both parties appear to have adequate notice that this matter could be converted because Holoman submitted affidavits and defendant responded, addressing those affidavits.")   For clarity, the Court notes that, in resolving the issue of the timeliness of Plaintiff Baron's FLSA and Rule 23 class action claims set forth in Counts One through Four, it will consider all of the pertinent motions and filings, including Defendants' Motion for Judgment on the Pleadings, Plaintiff's Motion for Equitable Tolling, the arguments in Defendants' Motion for Summary Judgment relating to the timeliness of Baron's claims, and all the briefing related thereto.[4]

### A.       Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d

---

[4] Defendants' Motion for Summary Judgment raises a number of legal issues in addition to the timeliness of Plaintiff Baron's claims.  The Court reserves ruling on these additional arguments.

619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 Fed. Appx 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 Fed. Appx at 508-09. "[T]he nonmoving party may not simply rely on its pleading but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### B. Motion to Strike Unverified Exhibits (Doc. No. 64)

Prior to reaching the parties' substantive arguments regarding the timeliness of Baron's claims, the Court must first address Defendants' Motion to Strike (Doc. No. 64) the Exhibits attached to Plaintiff's Motion for Equitable Tolling. Having anticipated that the Court would convert the Motion for Judgment on the Pleadings to a Motion for Summary Judgment, Defendants argue that all four (4) of the Exhibits attached to Plaintiff's Motion should be stricken on the grounds that they fail to satisfy the requirements of Fed. R. Civ. P. 56(c). (Doc. No. 64 at pp. 3-4.)

Exhibit 1 is the Declaration of Plaintiff Baron.  Defendants maintain that this Exhibit is improper because it is electronically signed and, therefore, impermissible under both 28 U.S.C. § 1746 and this Court's Local Rules.  (*Id.* at pp. 4-5.)  Plaintiff Baron asserts that her Affidavit was submitted in accordance with § 1746 because it expressly declares that it was sworn "under penalty of perjury."  (Doc. No. 72 at pp. 3-10.)  Plaintiff then cites numerous cases in which district courts have approved the use of electronic signatures on § 1746 declarations, including several in which such declarations were held proper under Rule 56(c).  (*Id.*)  In addition, Plaintiff cites *Kilmer v. Burntwood Tavern Holdings*, 2020 WL 2043335 at * 4 (N.D. Ohio Apr. 28, 2020), in which this Court held that opt-in consent forms in an FLSA case could be signed electronically.  (*Id.*)  In response, Defendants cite a number of cases in which district courts have refused to accept electronically signed declarations.  (Doc. No. 64 at p. 5.)  Defendants further assert that this District's Local Rules prohibit non-attorneys from submitting electronically signed documents.  (*Id.*)

28 U.S.C. § 1746 provides, in pertinent part, as follows:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> ***
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).  (Signature)".

11

28 U.S.C. § 1746.  As Plaintiff Baron correctly notes, many federal district courts have found that electronically signed declarations that contain the requisite language noted above are sufficient to comply with § 1746, including in the context of summary judgment motions.  *See, e.g., United States v. Hyatt,* 2008 U.S. Dist. Lexis 16253 at * 6-7 (S.D. Ala. March 3, 2008) ("It appears that courts have routinely concluded that electronic signatures have the same effect as hand signatures unless court rules provide otherwise."); *Consumer Financial Protection Bureau v. Universal Debt & Payment Solutions, LLC*, 2019 WL 1295004 at * 11 (N.D. Ga. March 21, 2009) (same); *Tishcon Corp. v. Soundview Commc'ns, Inc.,* 2005 WL 6038743 at *3 (N.D. Ga. Feb. 15, 2005); *Wingate v. Gage County School District*, 2007 WL 2904094 at *1 (D. Neb. 2007).

On the other hand, other district courts (including several from within this Circuit) have found electronically signed declarations to be improper where local court rules proscribe it.  *See, e.g., Shields v. Sinclair Media III, Inc.,* 2020 WL 3432754 at * 2 (S.D. Ohio June 23, 2020) (under local rules, a declaration with an electronic signature could not be considered on motion for summary judgment); *Tdata Inc. v. Aircraft Technical Publishers*, 2007 WL 464411 at *3 (S.D. Ohio 2007) (same); *Vanguard Transp. Sys., Inc. v. Volvo Trucks N. Am., Inc.,*  2006 WL 2373273 at *6 (S.D. Ohio Aug. 14, 2006); *Malibu Media, LLC v. Doe*, 2014 WL 12586343 at *2 (S.D. Ohio Dec. 4, 2014); *King v. Ambs*, 2006 U.S. Dist. Lexis 13599, n. 9 (E.D. Mich. March 28, 2006);  *Johnson v. Ford Motor Co*., 2019 U.S. Dist. Lexis 472, n. 3 (E.D. Mich. Jan 2, 2019).

For the following reasons, Defendants' request to strike Plaintiff Baron's Declaration is denied.  Defendants cite no binding authority from this Circuit that electronically signed declarations are improper under § 1746.  To the contrary, numerous district courts have permitted such declarations, even in the context of analyzing summary judgment motions.  It is true that other courts

have reached the opposite conclusion.  However, in each of those cases, the district courts relied on the fact that their Local Rules expressly prohibited electronic signatures by non-attorneys.  *See, e.g., Shields,* 2020 WL 3432154 at * 2 (under local rules, a declaration with an electronic signature could not be considered on motion for summary judgment); *Tdata Inc.*,  2007 WL 464411 at *3 (same); *Vanguard Transp. Sys., Inc.,*  2006 WL 2373273 at *6 ("non-attorney's electronically signed declaration 'was not properly signed in compliance with the rules of this District, and will not be considered as evidence under Rule 56'"); *Malibu Media, LLC,* 2014 WL 12586343 at *2 ("non-attorney's electronically signed declaration is not properly signed in compliance with the rules of this District"); *Johnson*, 2019 U.S. Dist. Lexis 472, n. 3 (E.D. Mich. Jan 2, 2019) (refusing to consider as competent summary judgment evidence a declaration bearing only the electronic signature of a non-attorney on the grounds electronic signature was not in compliance with local rules).

Here, the Court does not interpret this District's Local Rules as clearly prohibiting electronic signatures by non-attorneys.  Local Rule 5.1(b) provides as follows:

> (b) Pursuant to Fed. R. Civ. P. 5(e), the Clerk's Office will accept papers filed, signed, or verified by electronic means that are consistent with technical standards, if any, that the Judicial Conference of the United States establishes. A paper filed by electronic means in compliance with this Rule constitutes a written paper for the purposes of applying these Rules and the Federal Rules of Civil Procedure. All electronic filings shall be governed by the Court's Electronic Filing Policies and Procedures Manual and orders of the Court. (See Appendix B.)

Local Rule 5.1(b).  Nothing in the above language expressly prohibits non-attorneys from submitting electronically signed documents.[5]  Indeed, in a recent decision, this Court found that electronically

---

[5] Moreover, notwithstanding Defendants' assertion to the contrary, Section 10 of Appendix B does not expressly prohibit electronic signatures by non-attorneys. Rather, that Section simply states that "[d]ocuments requiring an original signature or documents that cannot be converted directly should be scanned into PDF."  Here, the Court has found that 28 U.S.C. § 1746 does not require an original signature. Moreover, in jurisdictions where courts have declined to consider electronically signed declarations, the local rules more clearly prohibit such signatures.  For example, in the United States

signed consent forms were acceptable for filing in an FLSA case.  *See Kilmer*, 2020 WL 2043335 at * 4.

In her Declaration, Baron states that she "hereby declare[s] **under penalty of perjury** that the following is true and correct to the best of my knowledge, information, and belief."  (Doc. No. 57-2) (emphasis added).  The Declaration is electronically signed by Ms. Baron and is dated July 1, 2020.  (*Id*.)  This language complies with the requirements of § 1746 and is not contrary to any express provision in this District's Local Rules.  Accordingly, the Court denies Defendants' Motion to Strike Baron's Declaration.

Defendants also seek to strike Exhibits 2 and 3 to Plaintiff's Motion for Equitable Tolling, both of which are emails between counsel.  (Doc. Nos. 57-3, 57-4.)  Defendants argue that these Exhibits are improper because they are "neither verified under oath, nor signed under penalty of perjury."  (Doc. No. 64.)  The Court need not determine whether these particular exhibits are appropriate materials for consideration under Fed. R. Civ. P. 56(c).  Neither of these Exhibits are particularly relevant to either the timeliness of Baron's claims or whether she is entitled to equitable tolling.  Although it will not go so far as to strike these Exhibits, the Court finds that they are simply not relevant and will not consider them in the context of deciding the instant Motions.

Finally, Defendants ask the Court to strike Exhibit 4 to Plaintiff's Motion.  This Exhibit is a letter from defense counsel to Plaintiff's counsel dated January 7, 2019.  (Doc. No. 57-5.)  It is explicitly labeled a "Rule 408 Communication" and contains settlement communications relating to

---

District Court for the Eastern District of Michigan, the Electronic Filing Manual expressly provides that "[a]n affidavit, declaration or paper containing the signature of a non-attorney shall be scanned and filed electronically." U.S. District Court for the E. D. Mich, Electronic Policies & Procedures Manual, Rule 10(d).

14

Plaintiff Arends.  Plaintiff asserts that the Court should consider this document because she "submitted Exhibit 4 for a non-prohibited purpose—to substantiate 'a contention of undue delay.'" (Doc. No. 72 at p. 10.)

As with Exhibits 2 and 3, the Court finds that Exhibit 4 is not particularly relevant to the legal issue of whether Plaintiff Baron's collective and class action claims are timely.  Therefore, the Court will not consider this Exhibit in the context of the instant Motions.  While the Court does not find it necessary to strike this Exhibit, it will, out of an abundance of caution, restrict public access to this Exhibit in light of the fact that it is clearly labeled a Rule 408 Settlement Communication.  *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 332 F.3d 976, 980 (6th Cir. 2003) (noting that there is a "strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations.").

Accordingly, and for all the reasons set forth above, Defendants' Motion to Strike (Doc. No. 64) is denied.  The Court will not, however, consider Exhibits 2, 3, or 4 in the context of deciding the instant Motions.  Moreover, the Court will restrict public access to Exhibit 4 (Doc. No. 57-5)  for the reasons discussed above.

### C. Equitable Tolling of Plaintiff's FLSA Claim (Count One)

Count One of the Amended Complaint alleges willful violations of the minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 216(b).  (Doc. No. 50 at ¶¶ 46-51.)  The FLSA was designed by Congress to "correct labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Microsystems LLC,* 781 F.3d 799, 806 (6th Cir. 2015).  It is designed to be "a broadly remedial and humanitarian statute." *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir.1994).  As such, the Sixth

Circuit construes the Act's provisions "liberally to effectuate the broad policies and intentions of Congress." *Id.*

The parties agree that the statute of limitations for willful violations of the FLSA is three (3) years from "each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *See* 29 U.S.C. 255(a); *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008).  Subject to certain exceptions, an action is "commenced" on the date the complaint is filed. *See* 29 U.S.C. § 256.  In the case of a collective action, however, if an individual claimant does not immediately file written consent to become a party plaintiff, or if the individual claimant's name does not appear on the initial complaint, plaintiff's action is considered to be "commenced" when he or she files written consent. *See* 29 U.S.C. § 256(b).

In the instant case, it is undisputed that Plaintiff Baron was employed at Family Solutions as a QMHS from August 1, 2016 through October 7, 2016; and that she received her final paycheck on October 28, 2016.  (Doc. Nos. 50 at ¶ 15; Doc. No. 51-1.)  The docket reflects that she filed her consent form to opt-into the FLSA collective action on November 6, 2019 and was added as a Representative Plaintiff in the Amended Complaint filed May 5, 2020.  (Doc. Nos. 29-1, 50.)

Defendants assert that Baron's FLSA claim is untimely because "the last possible day in which any alleged violation with respect to Baron's wages or with respect to records pertaining to the payment of her wages is October 28 2016," but she did not opt-into this lawsuit until more than three years later, on November 6, 2019.  (Doc. No. 52 at p. 5.)  Thus, Defendants assert that Plaintiff Baron's FLSA claim is time-barred and judgment should be entered in Defendants' favor with respect to Count One.  (*Id.*)

16

Plaintiff Baron acknowledges that her FLSA claim is untimely.  (Doc. No. 58 at p. 4.)  She asserts, however, that she is entitled to equitable tolling because "for reasons not within [her] control, she was not afforded an opportunity to opt-into this case for over one year after its filing."  (Doc. No. 58 at p. 5.)  She asks the Court to equitably toll the statute of limitations for her FLSA claim from February 28, 2019 (the date that Plaintiffs moved for conditional certification) through October 25, 2019 (the date that Notice of the instant lawsuit was sent to her.)  (Doc. No. 57 at p. 1.)  In support of this request, Plaintiff asserts that, until she received Court-authorized Notice of this lawsuit, she was unaware either that (1) Defendants' denial of pay for certain aspects of her working time was unlawful, or (2) the instant lawsuit had been filed.  (Doc. No. 57-1 at p. 2.)  Plaintiff further states that she diligently pursued her rights because she "acted immediately upon receiving the Notice by opting into this lawsuit and asserting the claims at issue."  (*Id.*)  She argues that "any delay in the prosecution of her claims was caused by Defendants, who misled [her] about the compensability of the hours at issue and then refused to stipulate to conditional certification."  (*Id.*)  Finally, Plaintiff asserts that tolling should be granted in light of the seven (7) month delay between the filing of Plaintiffs' Motion for Conditional Certification in February 2019 and the Court's decision granting the Motion, in part, in September 2019.  (*Id.*)

Defendants argue that equitable tolling is sparingly granted and not appropriate herein.  (Doc. No. 63 at p. 4.)  Defendants maintain that Plaintiff "cannot show that she did not have notice or constructive knowledge of her FLSA claim, nor can she show that she was not reasonably unaware of her rights and filing requirement."  (*Id*. at p. 5.)  In this regard, Defendants note that Plaintiff does not claim that Family Solutions lied to her or told her she would be paid overtime and then failed to follow through.  (*Id*. at pp. 6-7.)  They assert that "Baron had knowledge that she was not paid for

17

travel and documentation time at the outset of her employment in August 2016," but nonetheless waited more than four years to opt-into the instant lawsuit.  (*Id*. at pp. 7-8.)  Defendants further assert that Plaintiff was not diligent in pursuing her claims, noting again that she was aware that she was not receiving pay for certain work since August 2016.  (*Id*.)  In this regard, Defendants highlight Plaintiff's deposition testimony suggesting that she failed to join this lawsuit sooner because she was busy with family obligations.  (Doc. No. 103 at p. 9.)  Lastly, Defendants argue that they will "suffer great prejudice should Plaintiff's FLSA claim be tolled."  (Doc. No. 63 at p. 9.)

The doctrine of equitable tolling "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Baden–Winterwood v. LifeTime Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007).  *See also Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).  The equitable tolling doctrine is read into every federal statute.  *Id.*  "Thus, although the FLSA's opt-in mechanism 'necessarily involves some lapse of time between the date a collective action is commenced and the date that each opt-in plaintiff files his or her consent form,' the FLSA does not limit the equitable powers of the courts." *Fitzpatrick v. Cuyahoga County,* 2017 WL 5178266 at * 4 (N.D. Ohio Nov. 8, 2017) (quoting *Baden-Winterwood*, 484 F.Supp.2d at 826).  *See also Struck v. PNC Bank,* 931 F.Supp.2d 842, 846 (S.D. Ohio 2013).

The decision to invoke equitable tolling in any particular case lies solely within the discretion of the trial court.  *See Fitzpatrick*, 2017 WL 5178266 at * 4; *Baden-Winterwood*, 484 F.Supp.2d at 826; *Struck*, 931 F.Supp.2d 846; *Kampfer v. Fifth Third Bank,* 2016 WL 1110257 at * 6 (N.D. Ohio March 22, 2016).  In exercising this discretion, courts must be mindful of the fact that equitable tolling of a statute of limitations should only be granted "sparingly."  *Struck,*931 F.Supp.2d at 846.  *See also Hughes,* 542 F.3d at 187 (noting that "one theme that runs throughout these cases is that equitable

18

tolling is to be carefully applied.")  The plaintiff bears the burden of demonstrating the need for tolling in a particular case.  *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1076 (S.D. Ohio 2016).  Equitable tolling should only be invoked when a litigant can demonstrate that the "failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000).

To determine whether equitable tolling is appropriate, courts generally consider five factors including: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truitt,* 148 F.3d 644, 648 (6th Cir.1998). *See also Graham-Humphreys,* 209 F.3d at 561-562; *Archer v. Sullivan County*, 1997 WL 720406 at *3 (6th Cir. Nov. 14, 1997)).  These factors are "not necessarily comprehensive, and not all factors are relevant in all cases." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  *See also Hughes*, 542 F.3d at 187.

Based on careful consideration of these factors, the Court finds that equitable tolling is warranted with respect to Plaintiff Baron's FLSA claim.

### 1.    Actual Notice of the Filing Requirement

The first factor is whether the plaintiff lacked actual notice of the filing requirement.  *See Truitt*, 148 F.3d at 648; *Graham-Humphreys*, 209 F.3d at 561-562.  Plaintiff argues that she did not have actual notice of either her FLSA claims and/or the instant lawsuit.  In support of this argument, Plaintiff relies on the July 1, 2020 Declaration attached to her Motion for Equitable Tolling, in which she alleges (in relevant part) as follows:

19

> I was unaware of the case against Family Solutions of Ohio until I received the Notice to Potential Class Members.  I did not know until I received the Notice that Defendants' denial of pay for such things as intraday travel and documentation violated federal law.  Immediately upon receiving the Notice, I opted into the case by signing and returning the consent form.

(Doc. No. 57-2 at ¶ 3.)  Defendants argue that Plaintiff's Declaration is "not accurate."  (Doc. No. 88 at p. 11.)  They direct this Court's attention to the following testimony in Plaintiff's August 27, 2020 deposition:

> Q:    Okay.  Why didn't you file your lawsuit sooner against Family Solutions?
>
> A:    What do you mean by that?
>
> Q:    I just mean that you're involved now four years after the fact.  Why didn't you file it sooner?
>
> A:    Being busy and having a brand new daughter and being a new mother and a new job and a house and a husband and all that stuff.  Just very busy.

(Depo. of Melanie Baron (Doc. No. 113-1) at Tr. 63.)  Defendants maintains that Plaintiff's testimony indicates that she was, in fact, aware of her claims and/or the instant lawsuit but chose not to pursue them because she was busy with her family.  (Doc. No. 88 at p. 11; Doc. No. 103 at pp. 9-10.)

Plaintiff asserts that Defendants have taken her deposition testimony out of context.  (Doc. No. 100 at pp. 3-4.)  In opposition to Defendants' Motion for Summary Judgment, Plaintiff submits an additional Declaration, dated October 8, 2020,[6] in which she explains as follows:

> 2.    As I stated in my July 1, 2020 declaration and testified in my deposition, I was unaware of the case against Family Solutions of Ohio until I received the Notice to Potential Class Members.  I did not know until I received the Notice that Defendants' denial of pay for such things as intraday travel and documentation violated the law.

---

[6]  This Declaration contains a hand-written signature and is not the subject of any of the many Motions to Strike filed by Defendants in this action.

3.      When I was asked in my deposition about why I delayed filing a case against Family Solutions, I thought that I was being asked why there was a delay in returning the consent form after receiving it.

4.      To put my answer to that question in context, my daughter was born on January 26, 2019.

 (Doc. No. 100-3.)   Plaintiff also directs this Court's attention to additional testimony from her deposition, which she argues is, in fact, consistent with her Declarations:

Q:      So, Melanie, the time that you spent for Family Solutions, but were you paid for your travel time in between clients?

A:      No.

Q:      Were you paid for the time that you spent documenting your plan notes?

A:      No, sir.

Q:      Or what about for your time reviewing client notes?

A:      No.

Q:      What about for when you had a client that was a no-show, your time travel out to there or waiting for them? Were you paid for that time?

A:      Nope.

**Q:      During the time that you worked for Family Solutions, did you know that you were entitled to be paid for that time?**

**A:      I had no idea.**

**Q:      When did you find that out?**

**A:      Just when the, when I received the letter that my, that there was a lawsuit being begun, being filed with them.**

(Baron Depo. (Doc. No. 113-1) at Tr. 64-65) (emphasis added).

Upon careful review, the Court is satisfied that Plaintiff did not have actual notice of either her FLSA claims or the instant lawsuit.  When read in context, and in light of her subsequent

21

Declaration, the Court finds that the deposition testimony relied on by Defendants relates only to Plaintiff's knowledge and delay after receiving Court-authorized Notice. The Court, therefore, finds that the first factor weighs in favor of equitable tolling.

### 2. Constructive Notice

The second factor is whether the plaintiff had constructive knowledge of the filing requirement. *See Truitt*, 148 F.3d at 648; *Graham-Humphreys,* 209 F.3d at 561-562. At the outset, the Court notes that, in an unpublished decision, the Sixth Circuit found that the mere existence of the FLSA statute provides plaintiffs with constructive notice of their rights under the FLSA and the filing deadlines. Specifically, in *Archer v. Sullivan County Tenn.*, 1997 WL 720406 (6th Cir.1997), the court held as follows:

> Although the plaintiffs may have lacked actual notice of the county's violation of the [FLSA] and of the filing deadline, it is "well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir.1991). **The statute itself gave the plaintiffs constructive notice of the fact that the county was violating their rights under the FLSA and of the deadline for filing suit**.
>
> The statute, as we have seen, provides that employees must receive overtime pay for any overtime work performed after accrual of 480 hours of compensatory time. The statute further provides that, absent an agreement to the contrary entered into before the performance of the work, employees hired on or after April 15, 1986, must receive overtime pay for any overtime work performed. The county's practice of awarding compensatory time does not change the fact that none of the plaintiffs received the overtime pay to which he was entitled under the FLSA. **The plaintiffs knew that they were not receiving any overtime pay-and that knowledge constituted knowledge of facts triggering the accrual of a cause of action.**

*Id.* at * 4 (emphasis added).

Several district courts have since noted the tension between the Sixth Circuit's holding in *Archer* and both the equitable tolling factors themselves and the notice provisions of the FLSA. As one court explained, "[i]f the mere existence of a law suffices to impart constructive notice, an inquiry

22

into the [equitable tolling] notice factors would be meaningless" because "[a] court would always find that every plaintiff had constructive notice of the filing requirement." *Baden–Winterwood*, 484 F.Supp.2d at 828.  That court further noted that "[s]uch a finding also questions why notice is required to be sent to all potential opt-in plaintiffs to inform them of their rights and statutory deadlines." *Id.*  Indeed, another district court declined to follow *Archer* based on the same concerns*:*

> Although the Sixth Circuit has said in an unpublished opinion that the existence of the FLSA statute on its own gives "plaintiffs constructive notice of ... their rights under the FLSA and of the deadline for filing suit," *Archer v. Sullivan County*, 129 F.3d 1263, 1997 WL 720406, at *4 (6th Cir.1997) (table), that case's rationale is unpersuasive.  First off, the Sixth Circuit implicitly rejected it in *Hughes* [*v. Region VII Area Agency on Aging,* 542 F.3d 169, 187 (6th Cir. 2008)].  In that case, the court found that equitable tolling was appropriate "in light of the five factors outlined above"-one of which was the petitioner's lack of constructive notice-even though the FLSA was certainly on the books as the clock ticked on the petitioner's claims.  542 F.3d at 188.
>
> More, *Archer* suffers from several logical deficits.  As one district court observed, if the mere existence of a law is enough to give constructive notice, then the equitable-tolling inquiry into notice-related factors is meaningless, since *Archer* assumes that every plaintiff has constructive notice of all relevant statutory requirements. *Baden–Winterwood*, 484 F.Supp.2d at 828.  And this raises a related problem: if the existence of the FLSA alone informs individuals of their statutory rights and obligations, why send notice to potential opt-in plaintiffs at all? *Id.*

*Thompson v. Direct General Consumer Products, Inc*., 2014 WL 884494 at * 8-9 (M.D. Tenn. March 5, 2014).  *See also Penley v. NPC International, Inc*., 206 F.Supp.3d 1341, 1349 (S.D. Ohio 2016).

While the above district courts' reasoning has some force, this Court finds that it is bound by *Archer* until the Sixth Circuit clearly and expressly states otherwise.  However, in light of the facts of this case and the strength of the other factors in Plaintiff's favor (as discussed both above and below), the Court gives little weight to the fact that Plaintiff had constructive notice of the filing requirement.  *See Struck*, 931 F.Supp.2d at 847 (noting that "equity demands that this Court give little

23

weight to the fact that the mere existence of the FLSA placed Plaintiffs on constructive notice of the filing requirement.")

Accordingly, the Court finds that, although the second factor weighs in Defendants' favor under *Archer,* it does not weigh heavily in the balance.

### 3. Diligence

The third factor is "diligence in pursuing one's rights." *Truitt*, 148 F.3d at 648. With respect to this factor, courts have found that, "[i]n the context of an opt-in collective action, diligence is measured by whether Plaintiffs opted-in when given the opportunity, not by whether Plaintiffs chose initially to bring the lawsuit." *Baden-Winterwood*, 484 F.Supp.2d at 828. *See also Struck*, 931 F.Supp.2d at 847; *Fitzpatrick,* 2017 WL 5178266 at * 6

The Court finds this factor weighs in favor of equitable tolling. As discussed above, Plaintiff did not have actual knowledge of the instant lawsuit until she received Court-authorized Notice. (Doc. No. 57-2; Baron Depo. Tr. (Doc. No. 113-1) at Tr. 65.) Notice was sent on October 25, 2019, and Plaintiff filed her consent form shortly thereafter on November 6, 2019. (Doc. No. 29-1.) While Plaintiff testified she was somewhat delayed in returning the consent form due to her family obligations, the Court finds any such delay was minimal.

In addition, the Court agrees with Plaintiff that at least some of the delay in the instant case is attributable to matters outside the Plaintiff's control. Most notably, the Court recognizes that a ruling on Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice was delayed due to the transfer of the instant action to the undersigned in June 2019. As discussed above, Plaintiffs filed

their conditional certification motion on February 28, 2019.[7]  (Doc. No. 11.)  The matter was transferred to the undersigned on June 27, 2019, and this Court issued a Memorandum Opinion & Order authorizing Notice to potential opt-ins on September 16, 2019.  (Doc. No. 20.)  Thus, there was an approximately seven (7) month delay between the filing of the Plaintiffs' Motion and the Court's resolution thereof.  Clearly, this delay was outside Plaintiff's control.

Numerous courts have granted equitable tolling due to delays associated with the judicial process.  *See, e.g., Kutzback v. LMS Intellibound*, LLC, 233 F.Supp.3d 623, 631 (W.D. Tenn. 2017) (holding that "delays during the collective-action certification process constitute 'extraordinary circumstances' beyond the plaintiffs' control, making them appropriate for the application of equitable tolling"); *Struck*, 931 F.Supp.2d at 847 (granting equitable tolling where delay between Plaintiffs' initial request for court-supervised notice and the issuance of such notice "constitutes more than one-third of the FLSA's statute of limitations period and has the potential to extinguish the claims of a substantial portion of the putative class."); *Bacon v. Subway Sandwiches & Salads, LLC*, 2015 WL 1138387 at * 2 (E.D. Tenn. March 13, 2015) ("It has been found that the ordinary delays to be expected as a lawsuit works its way through federal court can alone justify equitable tolling"); *Kampfer*, 2016 WL 1110257 at * 7 (granting equitable tolling where there was six month delay in the court's resolution of plaintiff's motion for conditional certification and notice); *Thompson*, 2014 WL 884494 at *8–9 (concluding that a fifteen-month period between the motion for conditional certification and the court's ruling upon it was an extraordinary circumstance warranting equitable

---

[7] The Court finds that, under the circumstances presented, Plaintiffs promptly filed their Motion for Conditional Certification and Court-Authorized Notice.  As noted *supra*, the instant action was filed on September 4, 2018.  After receiving an extension of time, Defendants filed their Answer on December 23, 2018.  Plaintiff promptly filed their Motion two months later, on February 28, 2019.

tolling because, during that time, the potential opt-in plaintiffs did not have actual notice of the action).

Accordingly, the Court finds that the third factor (i.e., diligence) weighs in favor of equitable tolling.

### 4. Prejudice

The fourth factor is the "absence of prejudice to the defendant." *Truitt*, 148 F.3d 644, 648 (6th Cir. 1998). The Sixth Circuit has emphasized that "[a]bsence of prejudice [to defendant] is a factor to be considered only after a factor that might justify tolling is identified." *Allen,* 366 F.3d at 401–2. Having determined that at least two factors weigh in favor of equitable tolling (i.e., the first and third factors), the Court examines whether such tolling would be prejudicial to Defendants.

Defendants argue that they will "suffer great prejudice" if the statute of limitations is tolled. (Doc. No. 63 at p. 9.) The Court disagrees. "The purpose of statute of limitations is to ensure fairness to defendants by notifying defendants of the claims they must defend before they grow stale." *Baden-Winterwood*, 484 F.Supp.2d at 828 (citing *American Pipe and Construction v. Utah*, 414 U.S. 538, 561 (1974) (Blackmun, J., concurring) (stating that "the purpose of the statute of limitations is to prevent surprises 'through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared'") (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49 (1944)). Here, Defendants were fully aware of their potential scope of liability when the instant action was filed as a FLSA collective action in September 2018. Courts have held that such awareness is sufficient to conclude that employers are not prejudiced by equitable tolling. *See, e..g, Kutzback*, 233 F.Supp.3d at 630-631 ("As it appears to the Court that Defendants should have been aware of the potential scope of their

liability from the date the Complaint was filed, the Court finds that Defendants will not be prejudiced by the tolling of the statute of limitations."); *Fitzpatrick,* 2017 WL 5178266 at * 6 (noting that "a defendant cannot be prejudiced by additional claims when they know that the named plaintiff brought the suit as a collective action").

Moreover, the Court is not persuaded by Defendants' argument that "[a]llowing an untimely, unique plaintiff who lacks commonality with other opt-in plaintiffs, to toll her claims and serve as the named plaintiff in this lawsuit is severely prejudicial to Defendants."  (Doc. No. 63 at p. 9.) Defendants have not sufficiently explained how they would be prejudiced by equitably tolling Plaintiff Baron's claims and allowing her to proceed as a representative plaintiff.  Having determined that equitable tolling of Plaintiff Baron's claims is warranted, she is placed in the same position as other opt-in plaintiffs in this action whose claims are timely.  The issue of whether the plaintiffs' and opt-in's claims lack commonality is a separate issue that will be determined in the context of the Rule 23 Motion for Class Certification.  Under the circumstances presented, the Court finds Defendants have failed to show that they will suffer prejudice by tolling the statute of limitations with respect to Plaintiff Baron's FLSA claim.

Accordingly, the Court finds that the fourth factor weighs in favor of equitable tolling.

### 5.     Reasonableness in Remaining Ignorant of Filing Deadline

Finally, the fifth factor is "the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truitt*, 148 F.3d at 648.  Although "[i]gnorance of the law alone is not sufficient to warrant equitable tolling," *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir.1991)), courts have recognized that "ignorance of a filing requirement may be reasonable under certain circumstances to warrant equitable tolling." *Baden-Winterwood*, 484 F.Supp.2d at 829 (citing *Allen*, 366 F.3d at 401).

27

Here, the Court finds that Plaintiff Baron's lack of awareness of the filing requirement and deadlines associated with the instant lawsuit was reasonable.  As discussed above, Plaintiff has come forward with evidence that she was unaware either that Defendants' denial of pay for such things as intraday travel and documentation violated the law or that the instant lawsuit had been filed.  The Court finds that it is entirely reasonable that, having no actual notice of the pendency of this action, Plaintiff would remain ignorant of the filing deadline.  *See Struck*, 931 F.Supp.2d at 848 ("This Court finds that it is entirely reasonable that putative class members who received no actual notice of the pendency of this action would remain ignorant of the filing deadline.")  Thus, this factor weighs in favor of equitable tolling.

### 6.      Conclusion

In light of the above, the Court finds that the balancing of the five factors weighs in favor of equitably tolling the statute of limitations for Plaintiff Baron's FLSA claim.  The Court will, therefore, toll the limitations period from February 28, 2019 (the date on which Plaintiffs moved for conditional certification) through October 25, 2019 (the date that Court-authorized Notice of the instant lawsuit was sent to Plaintiff), rendering Plaintiff's FLSA claim timely.  Accordingly, Defendants' converted Motion for Summary Judgment with respect to Count One is denied.  Plaintiff Baron's Motion for Equitable Tolling with respect to this Count is granted.

### D.      Timeliness of Plaintiff Baron's State Law Class Action Claims (Counts Two through Four)

Defendants also argue that Plaintiff Baron's state law class action claims are barred by the applicable statutes of limitations.  (Doc. No. 52.)   Plaintiff Baron's state law class action claims are set forth in Counts Two through Four of the Amended Complaint.  Counts Two and Four allege violations of Ohio Constitution, art. II, § 34a, which the parties agree has a statute of limitations of

28

three years from the alleged violation or, if the violation is continuing in nature, from the date on which the alleged violation ceased.  (Doc. No. 52 at p. 4; Doc. No. 58 at p. 2-3.)  Count Three alleges violations of Ohio's overtime compensation statute (i.e., Ohio Rev. Code § 4111.03) which the parties agree has a statute of limitations of two years from the date of receipt of the employee's last paycheck. (*Id*.)

As they did in connection with her FLSA claim, Defendants assert that Plaintiff Baron's state law class action claims are untimely because "the last possible day in which any alleged violation with respect to Baron's wages or with respect to records pertaining to the payment of her wages is October 28 2016," but she did not opt-into this lawsuit until more than three years later, on November 6, 2019.  (Doc. No. 52 at p. 5.)  Thus, Defendants assert that Plaintiff Baron's state law class action claims in Counts Two, Three, and Four are time-barred and judgment as a matter of law should be entered for Defendants with respect to those claims. (*Id.*)

Plaintiff Baron argues that her state law class action claims are not untimely because the filing of a class action lawsuit under Fed. R. Civ. P. 23 tolls the statutes of limitations for putative class members.  (Doc. No. 58.)  Plaintiff Baron notes that the original complaint (which included Rule 23 class claims) was filed on September 4, 2018, less than two years after Baron's departure from Family Solutions.  (*Id.* at p. 2.)  She argues that "her entire tenure with Family Solutions of Ohio occurred less than three years before September 4, 2018" and, therefore, her claims asserting violations of the Ohio Constitution, art II. § 34(a) (i.e., Counts Two and Four) are not time-barred.  (*Id.* at pp. 2-3.) With regard to her overtime claim under Ohio Rev. Code 4111.03 (Count Three), Plaintiff asserts that this claim is not time-barred because "the original complaint was filed on September 4, 2018,

less than two years after Melanie Baron received her last paycheck on October 26, 2016." (*Id.* at p. 3.)

Defendants do not meaningfully respond to Plaintiff's argument that Counts Two through Four are not time-barred because the filing of the September 2018 complaint under Rule 23 tolled the statute of limitations. (Doc. No. 61.) Rather, without drawing a distinction between Plaintiff's FLSA claim and her Rule 23 state law class claims, Defendants insist that all of her claims are time-barred because she failed to file her consent notice to opt-into this suit until November 6, 2019. (*Id.*) Defendants assert that equitable tolling does not apply for various reasons, but do not acknowledge or address Plaintiff's argument that Counts Two, Three and Four are not time-barred because the filing of a class action lawsuit under Fed. R. Civ. P. 23 tolls the statutes of limitations for putative class members. (*Id.*)

The Court agrees with Plaintiff. The Sixth Circuit has held that "[t]he commencement of a class action tolls the applicable statute of limitations for all unnamed members of the class until certification is denied or the case is otherwise dismissed without being certified." *Guy v. Lexington-Fayette Urban Cty Gov't,* 488 Fed. Appx. 9, 20 (6th Cir. 2012) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53 (1974). Thus, the fact that Plaintiff Baron filed her consent form on November 6, 2019 is not relevant to whether her Rule 23 state law class action claims are timely.[8] Rather, the relevant date with respect to the timeliness of Plaintiff's Rule 23 state claims is the filing of the complaint. Here, the original Complaint was filed on September 4, 2018. (Doc. No. 1.) That

---

[8] *See, e.g., Brittmon v. Upreach, LLC*, 285 F.Supp.3d 1033, 1045 (S.D. Ohio 2018) ("*Unlike Rule 23 class actions*, the filing of an FLSA complaint does not toll the statute of limitations. Instead, the statute of limitations continues to run on each plaintiff's claim until the plaintiff files her or his consent to opt into the action.") (emphasis added); *Fenley v. Wood Group Mustang, Inc*., 170 F.Supp.3d 1063, 1076 (S.D. Ohio 2016) (same).

Complaint contained Rule 23 class action claims for violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, art. II, § 34a (Counts Two and Four) and Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03 (Count Three).  (Doc. No. 1.)  Thus, the filing of the Complaint tolled the statute of limitations for all unnamed members of the class, including Plaintiff Baron.

As noted *supra*, Plaintiff Baron worked at Family Solutions from August 1, 2016 through October 7, 2016 and received her last paycheck on October 28, 2016.  Thus, Plaintiff Baron's claims in Counts Two and Four are timely because her entire tenure with Family Solutions occurred less than three years before September 4, 2018.  In addition, Plaintiff Baron's claim in Count Three is timely because she received her last paycheck on October 28, 2016, which is less than two years before September 4, 2018.

Accordingly, Defendants' converted Motion for Summary Judgment with respect to Counts Two, Three and Four is denied.

## III.    Conclusion

Accordingly, and for all the foregoing reasons, Defendants' Motion to Strike (Doc. No. 64) is DENIED.  Defendants' Motion for Judgment on the Pleadings (Doc. No. 52) is converted to a motion for summary judgment and DENIED.  Plaintiff Baron's Motion for Equitable Tolling (Doc. No. 57) is GRANTED.  In addition, access to Exhibit 4 to Plaintiff's Motion for Equitable Tolling (Doc. No. 57-5) is hereby limited to Court users and the parties for the reasons discussed herein.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*

PAMELA A. BARKER

Date:  November 12, 2020          U. S. DISTRICT JUDGE

31