# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,*<br>**On behalf of himself and**<br>**All others similarly situated,** | **Case No. 1:18cv2017** |
| **Plaintiffs,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| **Family Solutions of Ohio, Inc.,**<br>*et al.,* | **MEMORANDUM OPINION AND**<br>**ORDER** |
| **Defendants** | |

Currently pending are the following Motions filed by Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith (hereinafter referred to collectively as "Defendants"): (1) Motion for Summary Judgment on all claims asserted by Plaintiff Melanie Vilk Baron (Doc. No. 88); (2) Motion for Summary Judgment on all claims asserted by Plaintiff Jamal Stephenson (Doc. No. 89); (3) Motion to Strike the Unverified Exhibits Presented by Plaintiff Baron (Doc. No. 105); (4) Motion to Strike the Unverified Exhibits Presented by Plaintiff Stephenson (Doc. No. 106); (5) Motion to Strike the Expert Report Presented by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 107); (6) Motion to Strike the Declarations of Rose Marie Pryor, Julie Winston, and Sereena Creamer and for Reasonable Attorney Fees (Doc. No. 108); and (7) Motion to Strike Certain Parts of the Declaration of Jamal Stephenson (Doc. No. 109).  Plaintiffs filed Briefs in Opposition to each of Defendants' Motions, to which Defendants replied.  (Doc. Nos. 99, 100, 102, 103, 118, 119, 120, 121, 124, 125, 126, 127, 128.)

For the following reasons, Defendants' Motions for Summary Judgment (Doc. No. 88, 89) are GRANTED IN PART and DENIED IN PART, as set forth herein.  Defendants' Motions to Strike

the Unverified Exhibits Presented by Plaintiffs Baron and Stephenson (Doc. Nos. 105, 106) are construed as objections under Fed. R. Civ. P. 56(c) and DENIED.  Defendants' Motion to Strike the Declarations of Rose Marie Pryor, Julie Winston, and Sereena Creamer and for Reasonable Attorney Fees (Doc. No. 108) is DENIED.  Finally, Defendants' Motion to Strike the Expert Report Presented by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 107) and Motion to Strike Certain Parts of the Declaration of Jamal Stephenson (Doc. No. 109) are both DENIED WITHOUT PREJUDICE as premature.

## I.    Facts

Founded in 2013, Defendant Family Solutions of Ohio, Inc. ("Family Solutions") is a non-profit organization that provides mental and behavioral healthcare services for children and families throughout Ohio.  (Decl. of Dawn Smith dated September 1, 2020[1] (Doc. No. 89-1) at ¶¶ 3, 5.) Defendant Dawn Smith ("Smith") was highly involved in the development of Family Solutions and currently serves as its Vice President of Strategic Planning and Program Management.  (*Id*. at ¶¶ 1, 3.)

Family Solutions has locations in Cleveland, Bedford Heights, Lorain, Columbus, and Cincinnati.  (*Id*. at ¶ 6.)  At each location, Family Solutions employs a Program Director or Assistant Program Director, as well as a Clinical Supervisor.  (*Id*.)  The Program Director/Assistant Program

---

[1] As discussed in more detail *infra*, Dawn Smith has submitted two Declarations in this litigation. The first was submitted in opposition to Plaintiffs' Motion for Conditional Certification and is dated March 14, 2019.  (Doc. No. 13-1.)  The second was submitted in support of Defendants' Motions for Summary Judgment and is dated September 1, 2020.  (Doc. Nos. 88-1, 89-1.)  Hereinafter, this Court will refer to Smith's March 2019 Declaration as "Smith Decl. I," and to Smith's September 2020 Declaration as "Smith Decl. II."

Director and Clinical Supervisor oversee employees based out of that site that work with patients in the field.  (*Id.* at ¶ 7.)

Qualified Mental Health Specialists[2] ("QMHSs") are one of the categories of employees at Family Solutions that work with patients in the field, including in school and home environments. (Smith Decl. II at ¶ 7.)  *See also* Deposition of Jamal Stephenson (Doc. No. 115-1) at Tr. 78; Deposition of Melanie Baron (Doc. No. 113-1) at Tr. 18-19.   The parties dispute the precise scope and nature of the QMHSs' job duties.  However, in general terms, the parties agree that QMHSs provide behavioral health services, including counseling services, to Family Solutions' Medicaid-eligible patients.  (Smith Decl. II at ¶¶ 26, 29.)  *See also* Stephenson Depo. at Tr. 78.[3]

Plaintiffs Melanie Vilk Baron ("Baron") and Jamal Stephenson ("Stephenson") were QMHSs. Baron worked in Family Solutions' Cleveland location for approximately six weeks between August 2016 and October 2016.  (Smith Decl. II at ¶ 50.)  *See also* Baron Depo. at Tr. 5, 12.  Stephenson worked in Family Solutions' Cincinnati location from August 2016 to May 2017.  (Smith Decl. II at ¶ 52.)  At the time of their respective hires, Family Solutions executed "Employment Letters" in

---

[2] This position is currently referred to as "Qualified Behavioral Health Specialists."  For purposes of this Opinion, the Court will refer to the position as it was known when it was held by Plaintiffs Baron and Stephenson, i.e., as Qualified Mental Health Specialists.

[3] Defendants assert that QMHSs provide "behavioral health services" and "counseling services," which they claim consist of "office or non-manual" work that involves the "exercise of discretion and independent judgment with respect to matters of significance" including "providing medical care that needs to be documented in the patient's medical files."  (Smith Decl. II at ¶¶ 26, 29, 33-35.)  Plaintiff Stephenson testified that, while employed as a QMHS, he provided important "mental health services," including helping patients deal with mental health crises.  (Stephenson Depo. at Tr. 78, 82-83.) Plaintiff Baron testified that she was not permitted to "treat" patients in the medical sense of the word; rather, she "helped [patients] with stuff" like finding a job, managing schoolwork, etc.  (Baron Depo. at Tr. 22-24.)  In response to Defendants' Requests for Admissions, Plaintiffs admitted that, as QMHSs, they "performed behavioral health treatment and supportive duties," including Community Psychiatric Supportive Treatment ("CPST") and counseling services. According to Plaintiffs, "[s]uch work involved a variety of services that complement mental health counseling/therapy. Examples of CPST services include needs assessment, links to community resources, symptom monitoring, education, and help with practicing the skills introduced in counseling sessions."  (Doc. No. 101-1 at PageID#s 2354-2357.)

which Baron and Stephenson were offered the position of QMHS.  *See* Doc. No. 51-2 at PageID#s 447, 448.[4]  Among other things, these letters provide that "[a]t this time, your hourly rate will be at a rate of $20."  *Id.*  Additionally, forms entitled "New Hire Information for Payroll Department" indicate that Plaintiffs Baron and Stephenson were both paid an hourly rate of $20/hour.  *See* Doc. Nos. 99-15, 100-13.

Employees who are paid hourly are required to follow Family Solutions' Reporting Time Worked policy.  (Smith Decl. II at ¶ 18.)  This policy provides, in pertinent part, as follows:

> Accurate recording of time worked and absence from work is the responsibility of every employee. All employees must complete and sign a time sheet that is signed by their immediate supervisor. If it is necessary to make corrections or modifications to the time sheet, both the employee and supervisor must initial the changes. Tampering, altering of [sic] falsifying time records, failure to timely turn in a completed time sheet, or recording ime on another employee's time record, will result in disciplinary action, up to and including termination.

(*Id.*)  Baron and Stephenson confirmed during deposition that, as QMHSs, they were required to submit weekly time sheets.  (Baron Depo. at Tr. 27, 37; Stephenson Depo. at Tr. 143, 145.)  Stephenson explained that, when completing his time sheet, he inputted the amount of time he spent with each patient.    (Stephenson Depo. at Tr. 143, 147-148, 151-152.)  Defendant Smith also confirmed that "[t]he time [on weekly time sheets] is inputted by the QMHS employee based on the amount of time spent on the activity . . ."  (Smith Decl. II at ¶ 23.)

The Clinical Supervisor then reviewed the QMHSs' time entries for accuracy and compliance with Family Solutions' policies.  (Smith Decl. II at ¶ 24.)  The time inputted by the QMHS was assigned a code pursuant to Family Solutions' Medicaid fee schedule.  (*Id.* at ¶ 23.)  *See also*

---

[4] Defendants attached Baron's and Stephenson's "Employment Letters" as Exhibits to their Answer to Plaintiffs' Amended Class and Collective Action Complaint. *See* Doc. No. 51 at ¶ 16.

4

Stephenson Depo. at Tr. 147-148.   Based on the billing code, a "unit" was assigned to the amount of time spent by the QMHS for each entry.  (Smith Decl. II at ¶ 45.)  For certain billing codes, one "unit" is one hour.  *See* Smith Decl. II at ¶ 46; Doc. No. 88-2 at PageID# 1457.  Family Solutions' fee schedule also included entries for time spent on non-billable matters.  *See* Smith Decl. II at ¶ 25; Baron Depo. at Tr. 31-32.

If any changes were needed to the time entries submitted by a QMHS, the Clinical Supervisor would speak with the QMHS and ask him/her to make the required change(s).  (Smith Decl. II at ¶ 24.)  If the QMHS made the change and thereafter submitted his/her time sheet, the QMHS was considered to have verified the accuracy of the time and billing codes on his/her time sheet.  (*Id.*)  If a QMHS disputed a change requested by a Clinical Supervisor, that issue would be escalated, reviewed, and resolved.  (*Id.*)  Otherwise, a QMHS was expected to approve and sign off on his/her time sheets each week.  *See* Stephenson Depo. at Tr. 142-148, 151-152; Baron Depo. at Tr. 38. Plaintiffs Baron and Stephenson testified that they were paid for whatever time they put on their time sheets.  *See* Baron Depo. at Tr. 41; Stephenson Depo. at Tr. 148.

Baron and Stephenson testified, however, that they were not paid for certain categories of time for which there was no corresponding Medicaid billing code.   Specifically, Baron and Stephenson testified that they were not paid for time spent (1) traveling between clients; (2) entering documentation into clients' electronic health records; and (3) dealing with no-show appointments. *See* Baron Depo. at Tr. 64-65; Stephenson Depo. at Tr. 39, 52-53, 135-137.

## II.    Relevant Procedural Background

On September 4, 2018, Plaintiff Alicia Arends filed a Complaint in this Court on behalf of herself and all others similarly situated against Defendants asserting the following six claims for

5

relief:  (1) violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count One); (2) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, art. II, § 34a (Count Two); (3) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03 (Count Three); (4) violations of the OFMWA's record-keeping requirement (Count Four); (5) breach of contract (Count Five); and (6) unjust enrichment (Count Six).  (Doc. No. 1.)  Plaintiff sought conditional certification as a FLSA collective action; certification of the state law claims under Fed. R. Civ. P. 23; compensatory and punitive damages; and attorney fees and costs.  (*Id.*)  Jamal Stephenson subsequently filed an Opt-In and Consent Form.  (Doc. No. 12-1.)

On February 28, 2019, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice with respect to their FLSA claims.  (Doc. No. 11.)  Therein, Plaintiffs argued that Defendants violated the overtime provisions of the FLSA by failing to pay potential class members for documentation, travel between clients, time spent for client appointments and no-shows, and administrative time.  (*Id.*)  Defendants responded on March 15, 2019, and Plaintiff filed a Reply on March 29, 2019.  (Doc. No. 13, 14.)

On September 16, 2019, the Court issued a Memorandum Opinion & Order granting Plaintiffs' Motion for Conditional Certification with respect to "all current and former employees who worked as Qualified Mental Health Specialists ['QMHS'] for Family Solutions of Ohio during the period three years prior to the date of this Memorandum Opinion & Order;" i.e., all current and former employees who worked as QMHSs between September 16, 2016 and September 16, 2019. (Doc. No. 20.)  The Court then set forth various deadlines regarding the Notice to be given to potential opt-in plaintiffs within the conditional class.  (*Id*. at p. 21.)

A Case Management Conference ("CMC") was conducted on October 7, 2019, at which time the Court approved the parties' proposed Notice and various case management deadlines were set. (Doc. No. 25.)  The docket reflects that consent forms were filed by twenty-four (24) opt-in plaintiffs between October and December 2019.  *See* Doc. Nos. 26 through 36.

On May 5, 2020, Plaintiffs filed an Amended Class and Collective Action Complaint, designating Plaintiffs Stephenson and Baron as the representative plaintiffs.[5]  (Doc. No. 50.)  The Amended Complaint raised the same factual and class allegations and asserted the same six grounds for relief set forth in the original Complaint.  (*Id.*)  Defendants filed an Answer on May 19, 2020. (Doc. No. 51.)

On September 1, 2020, Defendants filed Motions for Summary Judgment with respect to all claims asserted by Plaintiffs Baron and Stephenson.  (Doc. Nos. 88, 89.)  Plaintiffs filed Briefs in Opposition[6] on October 8, 2020, to which they attached numerous exhibits, including an expert report regarding damages from Shane Thompson.  (Doc. Nos. 99, 100.)  Defendants filed Reply Briefs in support of their summary judgment motions on October 22, 2020.  (Doc. Nos. 102, 103.)  Shortly

---

[5] Previously, on March 24, 2020, Plaintiffs filed a Motion for Leave to file a First Amended Complaint Designating New Representative Plaintiffs, in which they sought leave to file an amended pleading designating Jamal Stephenson and Melanie Vilk Baron as Representative Plaintiffs, in place of Alicia Arends  (Doc. No. 43.)  Therein, Plaintiffs explained that Ms. Arends sought to be relieved of her responsibilities as a representative plaintiff, but would remain a non-representative plaintiff, having filed a consent form pursuant to 29 U.S.C. § 216(b).  (*Id.* at p. 3.) The Court granted Plaintiffs' Motion on April 14, 2020.  (Doc. No. 49.)

[6] The Court notes that Plaintiffs Baron and Stephenson each failed to include a Statement of Facts in their Briefs in Opposition to Defendants' Motions for Summary Judgment.  In addition, and contrary to Local Rule 7.1(f), Plaintiffs failed to include either a certification specifying the track to which the case has been assigned, a statement certifying that the memorandum adheres to the applicable page limitations, a table of contents, table of authorities, or a brief statement of the issues to be decided.  *See* Local Rule 7.1(f) (providing, in relevant part, that "[a]ll memoranda exceeding fifteen (15) pages in length . . .  must have a table of contents, a table of authorities cited, a brief statement of the issue(s) to be decided, and a summary of the argument presented.")  Plaintiffs are cautioned that all future Motions and Briefs filed in this matter must comply with the Local Rules, including Local Rule 7.1.

thereafter, Defendants filed the following motions to strike various exhibits attached to Plaintiffs' Brief in Opposition: (1) Motion to Strike the Unverified Exhibits Presented by Plaintiff Baron (Doc. No. 105); (2) Motion to Strike the Unverified Exhibits Presented by Plaintiff Stephenson (Doc. No. 106); (3) Motion to Strike the Expert Report Presented by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 107); (4) Motion to Strike the Declarations of Rose Marie Pryor, Julie Winston, and Sereena Creamer and for Reasonable Attorney Fees (Doc. No. 108); and (5) Motion to Strike Certain Parts of the Declaration of Jamal Stephenson (Doc. No. 109).  Plaintiffs filed Briefs in Opposition to each of Defendants' Motions to Strike, to which Defendants replied. (Doc. Nos. 118, 119, 120, 121, 124, 125, 126, 127, 128.)

## III.    Motions to Strike

Prior to reaching the substantive arguments raised in Defendants' Motions for Summary Judgment and related briefing, the Court will first address the Defendants' Motions to Strike.  *See Brainard v. American Skandia Life Assur. Corp*., 432 F.3d 655, 657 (6th Cir. 2005) ("Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions.")

### A.    Motions to Strike Unverified Exhibits (Doc. Nos. 105, 106)

Defendants first ask this Court to strike certain "unverified" exhibits attached to the Briefs filed by Plaintiffs Baron and Stephenson in opposition to Defendants' Motions for Summary Judgment.  (Doc. Nos. 105, 106.)  Specifically, Defendants move to strike (1) Exhibits 13, 15, 16, 17, 18 and 19 to Plaintiff Baron's Brief in Opposition; and (2) Exhibits 15, 18, 19, 20, 21, 23, and 24 to

Plaintiff Stephenson's Brief in Opposition.[7]  (*Id.*)  Defendants assert that, although Plaintiffs purport to verify these Exhibits through the affidavit of their counsel, this is insufficient under Fed. R. Civ. P. 56(c) because Plaintiff's counsel "lacks the requisite personal knowledge to verify the documents for purposes of summary judgment."  (Doc. No. 106 at p. 1.)

As a threshold matter, the Court notes that a "motion to strike" applies only to pleadings.  *See* Fed. R. Civ. P. 12(f).[8]  "Pleadings" are enumerated in Fed. R. Civ. P. 7(a) and the list does not include affidavits, briefs, or exhibits.  Therefore, a motion to strike is not the proper vehicle for attacking exhibits filed in support of, or in opposition to, motions for summary judgment.  *See Berry v. Citi Credit Bureau*, 2020 WL 6440490 at * 6 (W.D. Tenn. March 30, 2020) ('Courts in this district have consistently held that a motion to strike is not the proper device for countering exhibits or affidavits attached to memoranda in support of motions."), *adopted by,* 2020 WL 4596774 (W.D. Tenn. Aug. 11, 2020).  *See also Loadman Group, Inc. v. Banco Popular North America*, 2013 WL 1154528 at * fn 1 (N.D. Ohio March 19, 2013); *Erwin v. Village of Morrow, Ohio,* 2019 WL 1495921 at * 1 (S.D. Ohio April 4, 2019); *Foreword Magazine, Inc. v. Overdrive, Inc.,* 2011 WL 5169384 at fn 1 (W.D. Mich. Oct. 31, 2011); *Adams v. Valega's Prof. Home Cleaning, Inc.*, 2012 WL 5386028 at * 2 (N.D. Ohio Nov. 2, 2012).

Rather, in this context, "motions to strike should be construed as objections under Rule 56(c)(2)" of the Federal Rules of Civil Procedure.  *Smith v. Interim HealthCare of Cincinnati, Inc.,*

---

[7] Defendants initially also sought to strike Exhibits 17 and 22 to Stephenson's Brief in Opposition.  However, Defendants clarify in their Reply Brief that Exhibits 17 and 22 are, in fact, properly authenticated and should not have been included in their Motion to Strike.  (Doc. No. 124 at fn 1.)

[8] In pertinent part, Rule 12(f) provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

2011 WL 6012971 at * 4 (S.D. Ohio Dec. 2, 2011).  *See also* Fed. R. Civ. P. 56(c) (2010 Advisory Committee Notes) (explaining that the Rule 56(c)(2) objection "functions much as an objection for trial, adjusted for the pretrial setting. . . There is no need to make a separate motion to strike.").  *See Stillwagon v. City of Delaware*, 274 F.Supp.3d 714, 736-737 (S.D. Ohio 2017) ("If a party does file a separate motion to strike, the motion should be construed as an objection under Rule 56(c)(2).") *See also Berry*, 2020 WL 6440490 at * 6; *Erwin*, 2019 WL 1495921 at * 2; *Loadman Group, Inc*., 2013 WL 1154528 at fn 1.  If, in evaluating an objection under Rule 56(c)(2), a court is presented with inadmissible evidence, it "should disregard the evidence rather than striking it from the record." *Berry*, 2020 WL 6440490 at * 6 (citing *Lombard v. MCI Telecom. Corp*., 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998)).  Accordingly, and in light of the above, the Court will construe Defendants' Motions to Strike as objections under Fed. R. Civ. P. 56(c)(2).

With regard to the substance of Defendants' objections, the record reflects the following.  In support of Plaintiff Baron's Brief in Opposition, Plaintiff attaches the Declaration of Plaintiff's counsel, Scott Perlmuter.  (Doc. No. 100-7.)  Therein, Mr. Perlmuter avers that: "Exhibits 13, 15, 16, 17, 18, and 19 were produced by Defendants in discovery in this matter.  In response to Requests for Admission No. 5, Defendants admitted to the authenticity of each of these documents."  (*Id.* at ¶ 3.) Exhibits 13, 15, 16, 17, 18 and 19 consist of the following:

1.   A "New Hire Information" Form for Plaintiff Baron dated August 1, 2016, bates-stamped FS000237 (Exhibit 13);

2.   Pay stubs for Plaintiff Baron for September and October 2016, bates-stamped FS005168 (Exhibit 15);

3.   Plaintiff Baron's Weekly Billing Sheets for the weeks of September 19 through 25, 2016 and September 26, 2016 to October 2, 2016, bates stamped FS005099 - FS005102 (Exhibit 16);

4.      A one-page document that contains a table converting minutes and hours into "units," bates stamped FS007030 (Exhibit 17);

5.      A signed Declaration of Plaintiff Alicia Arends dated September 15, 2020, which attaches and authenticates a copy of a Power Point Slide that she avers was shown during her orientation at Family Solutions (Exhibit 18);[9] and

6.      A two-page document entitled "Family Solutions Job Description- Qualified Mental Health Specialist" that is signed by Jamal Stephenson and dated August 15, 2016, bates stamped FS 003318, FS 003320 (Exhibit 19).

Plaintiff Stephenson also attaches a Declaration from Mr. Perlmuter in support of his Brief in Opposition.  (Doc. No. 99-6.)  Therein, Mr. Perlmuter avers that: "Exhibits 15, 18, 19, 20, 21, 23, and 24 were produced by Defendants in discovery in this matter.  In response to Requests for Admission No. 5, Defendants admitted to the authenticity of each of these documents."  (*Id.* at ¶ 4.)  Exhibits 15, 18, 19, 20, 21, 23, and 24 consist of the following:

1.      A "New Hire Information" Form for Plaintiff Stephenson dated August 15, 2016 (Exhibit 15);

2.      Pay stubs for Plaintiff Stephenson for February and March 2017, bates-stamped FS005199 (Exhibit 18);

3.      Plaintiff Stephenson's "Service Time" sheet for the weeks of March 6, 2017 through March 12, 2017 and March 13, 2017 through March 19, 2017, bates stamped FS003436 – 3440 (Exhibit 19);

4.      Another copy of Plaintiff Stephenson's "Service Time" sheet for the weeks of March 6, 2017 through March 12, 2017 and March 13, 2017 through March 19, 2017, also bates stamped FS003436 – 3440 (Exhibit 20);

5.      A one-page document that contains a table converting minutes and hours into "units," bates stamped FS007030 (Exhibit 21);

---

[9] Plaintiffs acknowledge that the inclusion of Exhibit 18 in Mr. Perlmuter's Declaration was "inadvertent and in error." (Doc. No. 118 at p. 7.)  As noted above, Exhibit 18 includes a signed Declaration from opt-in Plaintiff Arends authenticating the documents attached to her Declaration based on her personal knowledge.  The Court therefore concludes that Exhibit 18 is properly authenticated and should not have been included in Defendants' Motion to Strike.

11

6. A two-page document entitled "Family Solutions Job Description- Qualified Mental Health Specialist" that is signed by Jamal Stephenson and dated August 15, 2016, bates stamped FS 003318, FS 003320 (Exhibit 23); and

7. A one-page document entitled "Family Solutions End of Employment" dated May 22, 2017 for Jamal Stephenson, bates stamped FS003298 (Exhibit 24.)

Defendants assert that all of the above Exhibits should be stricken because "they are not within Mr. Perlmuter's personal knowledge and, therefore, not properly verified for purposes of Fed. R. Civ. P. 56(e)." (Doc. No. 105 at p. 4.)

Plaintiffs argue that Defendants' Motions should be denied because Defendants produced the contested Exhibits in discovery and confirmed that they are authentic copies of business documents created by Family Solutions. (Doc. No. 118.) Plaintiffs further assert that Rule 56 does not, in fact, require that the documents at issue already be authenticated but, rather, only requires a showing that they can be presented in a form that is admissible at trial. (*Id.*) Moreover, even if the Rule did impose an authentication requirement, Plaintiffs argue that all of the Exhibits at issue are properly authenticated because Mr. Perlmuter has personal knowledge of the matters set forth in his Declaration; i.e., that the Exhibits at issue were produced by Defendants in discovery. (*Id.*)

In reply, Defendants argue that "the issue in this Motion is not authentication." (Doc. No. 124.) Defendants argue that Rule 56(c)(4) requires that summary judgment affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (*Id.*) Defendants maintain that Mr. Perlmuter's affidavit fails to comply with this Rule because Mr. Perlmuter himself does not have personal knowledge of the contents and meaning of the Exhibits at issue. (*Id.*) Specifically, Defendants assert that "[w]hether lead counsel or not, an attorney does not have personal knowledge of pay practices when the attorney never worked for the employer, was never paid by the employer,

12

and was never subjected to the employer's beliefs."  (*Id.* at p. 5.)  Defendants argue that "[i]f Plaintiff is permitted to circumvent Rule 56 in this manner, there will no longer be the need for fact witnesses—counsel can simply attach discovery documents and present counsel's unsworn arguments to the Court to avoid summary judgment."  (*Id.*)

Rule 56(c) governs the admissibility of statements contained in declarations used to support or oppose a motion for summary judgment.  Of particular relevance herein, Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Fed. R. Civ. P. 56(c)(4).  "Whenever the court receives accompanying affidavits with a memorandum either in support of or in opposition to a motion for summary judgment, it is required to evaluate the contents and determine whether the affidavits meet the relevant criteria under the Federal Rules of Civil Procedure."  *Berry v. Specialized Loan Servicing, LLC*, 2020 WL 6439171 at * 6 (W.D. Tenn. March 17, 2020), *adopted by*, 2020 WL 4698318 (W.D. Tenn. Aug. 13, 2020).  "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) (2010 Advisory Committee Notes).  *See Erwin*, 2019 WL 1495921 at * 2; *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 954 (S.D. Ohio 2000) (citing 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[1][c] (3d ed. 1999)).  An affidavit that does not satisfy the requirements of Rule 56(c)(4) "may be disregarded on summary judgment."  *Lloyd v. Midland Funding, LLC*, 639 Fed. Appx. 301, 304 (6th Cir. 2016).

A declaration or an affidavit offered in support of, or in opposition to, a motion for summary judgment "must set forth specific facts (not conclusory statements) made on the basis of personal

13

knowledge." *Enigwe v. Diversity City Media*, 2008 WL 11352583 at *2 (S.D. Ohio June 2, 2008). *See also Sears v. Jo-Ann Stores, Inc.*, 2014 WL 3672113 at *3 (M.D. Tenn. July 23, 2014) (citing *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 772 (6th Cir. 2012)). In this context, personal knowledge means "personal observations or experiences." *Alexander v. Kellogg USA, Inc.*, 674 Fed. Appx. 496, 499 (6th Cir. 2017). *See also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991). "Courts may infer personal knowledge from the content and context of an affidavit." *Alexander,* 674 Fed Appx. at 499 (citing *Reddy*, 137 F.Supp.2d at 956). "[I]nferences, thoughts and opinions must be based on first-hand observations or personal experience, substantiated by specific facts." *Erwin*, 2019 WL 1495921 at * 2. An affiant's "statement ... based upon his 'belief' ... [does] not demonstrate the personal knowledge required by [Rule 56]." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir.2007).

Here, Defendants do not ask the Court to strike Mr. Perlmuter's affidavit. Rather, Defendants ask the Court to disregard the Exhibits that Mr. Perlmuter references in his affidavit (all of which are business documents created by Family Solutions) on the grounds that Mr. Perlmuter does not have personal knowledge of the contents or meaning of those Exhibits.

For the following reasons, the Court declines to do so. As an initial matter, Defendants do not contest (and Plaintiffs have sufficiently demonstrated) that the Exhibits at issue are authentic. In his Affidavits, Mr. Perlmuter expressly avers that each of the contested Exhibits were produced by Defendants in discovery. (Doc. No. 99-6 at ¶ 4; 100-7 at ¶ 3.) He further avers that "[i]n response to Requests for Admission No. 5, Defendants admitted to the authenticity of each of these documents." (*Id*.) Defendants do not contest that these specific facts are within Mr. Perlmuter's personal

14

knowledge. Nor do Defendants contest that they produced the Exhibits at issue or that they admitted to the authenticity of these Exhibits during discovery.[10]

Numerous district courts within this Circuit have held that "[w]here a document is produced in discovery, 'there [is] sufficient circumstantial evidence to support its authenticity' at trial." *Churches of Christ in Christian Union v. Evangelical Ben. Trust*, 2009 WL 2146095 at * 5 (S.D. Ohio July 15, 2009) (quoting *Denison v. Swaco Geolograph Co*., 941 F.2d 1416, 1423 (10th Cir. 1991)). *See Cincinnati Holding Co., LLC v. Fireman's Fund Ins. Co*., 2020 WL 635655 at * 3 (S.D. Ohio Feb. 11, 2020); *Welch v. Bissell*, 2013 WL 6504679 at * 4 (N.D. Ohio Dec. 11, 2013); *Ganim v. Columbia Casualty Co*., 2008 WL 2390776 at fn 1 (N.D. Ohio June 9, 2008). Under the circumstances presented, the Court finds that the Exhibits at issue are admissible as evidence offered in support of Plaintiffs' Briefs in Opposition to Defendants' Motions for Summary Judgment.

Defendants argue, however, that the Court should nonetheless disregard the Exhibits because Plaintiffs make "extensive arguments regarding the contents and meanings of" the Exhibits but Mr. Perlmuter does not himself have personal knowledge of the Exhibits to support these arguments. (Doc. No. 124 at p. 4.) By way of example, Defendants argue that Plaintiffs improperly make arguments in opposition to summary judgment based on *Mr. Perlmuter's* interpretation of the meaning of Baron's and Stephenson's billing sheets and pay stubs, which are attached as Exhibits 15 and 16 to Baron's Brief in Opposition and Exhibits 18, 19 and 20 to Stephenson's Briefs In Opposition. (*Id.*) Defendants assert that Mr. Perlmuter is not competent to testify about these matters

---

[10] The Court notes that the contested Exhibits are affixed with bates-stamps that begin with the letters "FS," i.e., Family Solutions. Moreover, during discovery, Plaintiffs asked Defendants to "[a]dmit that all documents and ESI produced by Family Solutions of Ohio in this action are authentic copies of records of regularly conducted activity within the meaning of Fed. R. Evid. 803(6)." (Doc. No. 118-1 at PageID#4302.) Subject to various general and specific objections, Defendants admitted this request for admission. (*Id.*)

and note that Plaintiffs failed to submit Declarations from either Baron or Stephenson to support their arguments about these specific documents.  (*Id*. at p. 8.)

Plaintiffs' arguments regarding the meaning or interpretation of the Exhibits at issue are just that -- arguments.   The Court is capable of evaluating the underlying admissible evidence submitted in support of, or in opposition to, motions for summary judgment.  To the extent the meaning or content of any of the Exhibits at issue is not readily apparent from the face of the Exhibit itself, the Court will not consider such Exhibit in evaluating Defendants' Motions for Summary Judgment.  In any event, the Court did not, in fact, find it necessary to consider the majority of Exhibits at issue in resolving the Defendants' Motions for Summary Judgment.  In order to be very clear on this point, the Court states that, of the contested Exhibits at issue herein, it only considered Baron's and Stephenson's "New Hire" forms, which are attached as Exhibit 13 to Baron's Brief in Opposition (Doc. No. 100-13) and Exhibit 15 to Stephenson's Brief in Opposition (Doc. No. 99-15.)  The Court did not consider or rely on any of the remaining Exhibits at issue in resolving Defendants' Motions for Summary Judgment; i.e., Exhibits 15, 16, 17, and 19 to Baron's Brief in Opposition and Exhibits 18, 19, 20, 21, 23, and 24 to Stephenson's Brief in Opposition.

Accordingly, Defendants' Motion to Strike Unverified Exhibits (Doc. Nos. 105, 106) is construed as an objection under Fed. R. Civ. P. 56(c) and denied.  However, as set forth above, the Court states that, in evaluating Defendants' Motions for Summary, it did not consider or rely on (1) Exhibits 15, 16, 17, and 19 to Baron's Brief in Opposition; or (2) Exhibits 18, 19, 20, 21, 23, and 24 to Stephenson's Brief in Opposition.

     **B.**     **Motion to Strike the Declarations of Rose Marie Pryor, Julie Winston, and Sereena Creamer (Doc. No. 108)**

Defendants next move to strike the Declarations of Rose Marie Pryor, Julie Winston, and Sereena Creamer, which are attached as Exhibits to Plaintiffs' Briefs in Opposition to Defendants' Motions for Summary Judgment.  (Doc. No. 108.)  In these Declarations, Pryor, Winston, and Creamer state that they were employed by Family Solutions as Clinical Supervisors and that one of their jobs was to evaluate and approve or deny time logged by QMHSs on billing and time sheets. *See, e.g.*, Doc. No. 99-8 at PageID#s 2027, 2030, 2033.  Among other things, Pryor, Winston, and Creamer state that they were each instructed "not to approve, for insurance or compensation, time logged by . . . QMHSs for writing and reviewing client notes and documentation, work-related travel, or waiting and notating files regarding client no-shows."  *Id.* at PageID#s 2027-2028, 2030-2031, 2034.  They further state that "[n]either Therapists nor hourly QMHSs were paid for time spent on any of those activities."  *Id.* at PageID#s 2029, 2031-2032, 2035.  Finally, Winston and Creamer aver that (1) "hourly QMHSs were paid their hourly rate for whatever time they actually spent on billable hours, supervision time, and approved in-office time like staff meetings and training;" and (2) no QMHS was paid "on the basis of an agreed-upon sum of money for each of these tasks regardless of how long it took the employee to complete the task."  *Id.* at PageID#s 2032, 2035.

Defendants argue that the Court should strike the Pryor, Winston, and Creamer Declarations because "[a]t no time during the discovery process did Plaintiffs disclose, pursuant to Rule 26(a)(1)(A), in response to interrogatories or documents requests, or otherwise that Rose Marie Pryor, Julie Winston, or Sereena Creamer had facts relevant to this mater or otherwise would be providing witness testimony."  (Doc. No. 108 at p. 1.)  Specifically, Defendants argue that Plaintiffs failed to disclose these witnesses in their Rule 26(a)(1)(A) initial disclosures or in response to interrogatories that specifically asked Plaintiffs to identify "all persons whom you intend to call as witnesses at any

trial or hearing of this action." (*Id*. at p. 3.)  Defendants note that fact discovery concluded on August 14, 2020. (*Id*.)  Defendants argue that "Plaintiffs have ignored their discovery obligations throughout this lawsuit" and ask the Court to award attorney fees incurred in preparing their Motion pursuant to Rule 37(a)(5)(A). (*Id*. at p. 5.)

Plaintiffs argue that they timely identified Pryor, Winston and Creamer as potential witnesses and immediately produced their Declarations. (Doc. No. 121.)  Specifically, Plaintiffs argue that, in response to Defendants' interrogatories, they stated that potential witnesses included "officers and managerial employees of Defendant Family Solutions" as well as "any persons identified in Defendants' or Plaintiffs' discovery responses." (*Id*. at p. 2.)  Plaintiffs note that Defendants' discovery responses specifically identified Pryor, Winston, and Creamer as Family Solutions' employees with "supervisory authority." (*Id*.)  Plaintiffs further assert that they produced the Pryor, Winston, and Creamer Declarations promptly after they were signed. (*Id*. at p. 3.)  Plaintiffs argue that "long before the declarations were produced, Defendants not only knew of those witnesses, but employed them and had identified them by name as potential witnesses in discovery responses." (*Id*.)  Thus, Plaintiffs assert that, if there was a discovery violation, it was harmless and sanctions are not warranted. (*Id.* at p. 4.)

In reply, Defendants complain that, although Defendants disclosed these individuals in their discovery responses, "Plaintiffs elected not to depose any of the individuals, supplement their interrogatory responses, or otherwise provide evidence from" Pryor, Winston, or Creamer during discovery. (Doc. No. 128.)  Defendants further assert that Plaintiffs' failure to timely disclose these witnesses is not harmless and argue that "[n]o party should have to respond to surprises." (*Id.* at p. 3.)

Fed. R. Civ. P. 26(a)(1) provides, in pertinent part, as follows:

(1) *Initial Disclosure.*

(A) *In General.*  Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed. R. Civ. P. 26(a)(1).   In addition, Rule 26(e), entitled "Supplementing Disclosures and Responses," provides that:

> (1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e).

Fed. R. Civ. P. 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  As the Sixth Circuit has explained, "[a] non-compliant party may avoid sanction [under Rule 37(c)] if 'there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'" *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. Sept. 17, 2015) (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010)).

For the following reasons, the Court finds Plaintiffs did not fail to timely disclose Pryor, Winston, or Creamer as potential witnesses.  The record reflects that, on June 30, 2020, Plaintiffs responded to Defendants' request for the identification of potential witnesses as follows:

INTERROGATORY NO. 3:

Identify the name, work and home address, telephone number, and e-mail address of all individuals who have knowledge about the facts and circumstances referenced in the Complaint, including a summary of the facts known to each individual identified.

ANSWER:

Persons who have knowledge about the facts and circumstances referenced in the Complaint include the Individual Defendants in this case, **the officers and managerial employees of Defendant Family Solutions**, any other persons who were involved in the operation or management of Family Solutions, and **_any persons identified in Defendants' or Plaintiffs' discovery responses_**.  Persons with knowledge further include QMHSs and other nonmanagerial employees of Family Solutions whose paid hours failed to include all working time.

(Doc. No. 121-2 at PageID# 4360-4361) (emphasis added).  The record further reflects that, on December 20, 2019, Defendants identified Pryor, Winston, and Creamer in response to Plaintiffs' First Set of Interrogatories, as follows:

INTERROGATORY NO. 3:

Identify (by name and job title) the officers, managers, and supervisors whose responsibility included one or more of the following during the relevant period. If any such officer, manager, or supervisor is no longer associated with Defendant or in its employ, so state, provide his or her current or last known address, phone number, and email address, and state the inclusive dates of the period in which he or she had such responsibility.

    a)   determining the compensation of QMHS;
    b)   the timekeeping system utilized for QMHS;
    c)   the payroll system utilized for QMHS;
    d)   managing or supervising QMHS;
    e)   assigning and scheduling QMHS;
    f)   the billing of QMHS' hours or services to Medicare, Medicaid, or other insurers.

20

ANSWER:

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and does not contain a temporal limitation. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "officer", "manager", "supervisors", "relevant period", and "QMHS". Defendant also objects to this Interrogatory on the grounds that it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence. Defendant also objects to this Interrogatory to the extent that it seeks information which is protected by the attorney-client privilege, work product doctrine, or any other privilege or immunity. Subject to and without waiving the foregoing general and specific objections, Defendant states see documents produced in response to Plaintiff's First Set of Requests for Production. **Further answering, Defendant states the following individuals have supervisory authority with respect to the QMHS position: Julie Winston, Clinical Supervisor**; Tameka Huey-Barkley, Program Director; Deborah Williams, Program Director; Ameerah Board, Clinical Supervisor; Michelle Tarshis, Clinical Supervisor; Christine Zeh, Clinical Supervisor; Sylvia Brochue, Clinical Supervisor; Rachel Evans, Clinical Supervisor; Deana Robinson, Program Director; **Serena Creamer, Clinical Supervisor**; Ann Nash, Program Director; Nafisah Alim, Program Director; Natalie Brown, Clinical Supervisor; Valerie White, Program Director; April Moore, Clinical Supervisor; Marta Trujillo, Clinical Supervisor; **Rose Marie Pryor, Clinical Supervisor**; Dr. Yolanda Peay, Program Director; and Damien Boyd, Program Director.  The following individuals are responsible for Defendant's payroll function: Nancy J. Hopkins, Chief Financial Officer, from September 2016 to February 2018; Robert Beamon, IT Specialist, from March 2018 to the present.  The aforementioned individuals may be contacted through Defendant's counsel.

(Doc. No. 121-3 at PageID# 4389-4390) (emphasis added).

As set forth above, although Plaintiffs did not identify Pryor, Winston, or Creamer by name in their interrogatory responses, they did specifically identify "any persons identified in Defendants' or Plaintiffs' discovery responses," including "managerial employees of Defendant Family Solutions," as potential witnesses.  Moreover, Defendants do not contest (and the record confirms) that Defendants specifically identified Pryor, Winston, and Creamer in their responses to Plaintiffs'

interrogatories.  Based on the above, the Court finds that Plaintiffs did not violate their discovery obligations.[11]

Moreover, although Defendants state generally that "Plaintiffs' failure to disclose the witnesses was . . . highly prejudicial," Defendants fail to explain how they were prejudiced.  Having identified them in their discovery response, Defendants were certainly aware of these witnesses and their potential importance to the instant action.  Moreover, Pryor, Winston, and Creamer were all available to Defendants, at the very least during the times when they were employed by Family Solutions.  Under these circumstances, the Court finds Defendants have failed to sufficiently explain how they were harmed.

Accordingly, Defendants' Motion to Strike the Pryor, Winston, and Creamer Declarations (Doc. No. 108) is denied.

### C. Motions to Strike Dr. Thompson's Expert Report (Doc. No. 107) and Certain Parts of Jamal Stephenson's Declaration (Doc. No. 109)

Defendants' Motion to Strike Mr. Thompson's Expert Report (Doc. No. 107) and Defendants' Motion to Strike Certain Parts of the Declaration of Jamal Stephenson (Doc. No. 109) both relate to Plaintiffs' evidence regarding damages.   As set forth *infra*, the Court finds Defendants' argument

---

[11] Although not addressed by either party, the Court notes that Defendants' discovery response states that the individuals identified in that response "may be contacted through Defendant's counsel."  Here, Plaintiffs did not contact Pryor, Winston, and Creamer through defense counsel.  Rather, Plaintiffs state that Mr. Perlmuter "recently tracked down Pryor, Winston, and Creamer, interviewed them, and obtained their declarations." (Doc. No. 121 at p. 3.)  Specifically, Mr. Perlmuter avers that he interviewed Pryor on July 21, 2020 and interviewed Winston and Creamer on September 1, 2020. (Doc. No. 121-4.)  Plaintiffs note, however, that the Declarations of Pryor, Winston, and Creamer confirm that, by the time of their interviews, they were no longer employed by Defendant Family Solutions.  *See* Doc. No. 99-8 at PageID# 2027 (Pryor avers that she was employed by Defendants from September 2018 to August 2019); Doc. No. 99-8 at PageID# 2030 (Winston avers that she was employed by Defendants from November 2018 to October 2019); Doc. No. 99-8 at PageID# 2033 (Creamer avers that she was employed by Defendants from February 2019 to March 2020).  Defendants do not argue that these witnesses' Declarations should be stricken because Plaintiffs improperly contacted them directly.  Therefore, the Court will not consider this issue.

that they are entitled to summary judgment in their favor because Plaintiffs failed to timely disclose damages evidence, to be premature and has declined to address this argument at this time.  Thus, the Court finds that Defendants' Motions to Strike Dr. Thompson's Expert Report and Certain Parts of Jamal Stephenson's Declaration are likewise premature and denied without prejudice on that basis. Defendants may refile these Motions to Strike if they deem it appropriate to do so after the close of expert discovery.

## IV.   Motions for Summary Judgment

### A.   Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact."  *Ask Chems., LP v. Comput. Packages, Inc.*, 593 Fed. Appx 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts

of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 Fed. Appx at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### B.    Analysis

Defendants filed Motions for Summary Judgment on all claims asserted by Plaintiffs Baron and Stephenson.  (Doc. Nos. 88, 89.)  In both Motions, Defendants argue that they are entitled to summary judgment in their favor because (1) Plaintiffs are exempt from the overtime provisions of the FLSA and Ohio Revised Code under the so-called "*bona fide* administrative exemption;" and (2) Plaintiffs have failed to provide any evidence of damages or an estimate of hours worked for which they were not paid with respect to any of their federal or state claims.[12]  (*Id.*)  In addition, Defendants

---

[12] With regard to Plaintiff Baron, Defendants also argue that they are entitled to summary judgment in their favor because all of Baron's federal and state claims are untimely.  (Doc. No. 88.)  Defendants raised this same argument in their Motion for Judgment on the Pleadings, which was filed on June 3, 2020.  (Doc. No. 52.)  Plaintiffs opposed the Motion and filed a competing Motion for Equitable Tolling.  (Doc. No. 57, 57-8.)  On November 12, 2020, the Court issued a Memorandum Opinion & Order in which it converted Defendants' Motion for Judgment on the Pleadings to a Motion for Summary Judgment and denied it.  (Doc. No. 122.)  In that same decision, the Court granted Plaintiffs' Motion for Equitable Tolling. (*Id.*)  Thus, the Court has already denied summary judgment in Defendants' favor with respect to the timeliness of Baron's claims.

argue that they are entitled to summary judgment in their favor with respect to Plaintiffs' breach of contract claims because there is no genuine issue of material fact that Plaintiffs do not have employment contracts with Defendants.  (*Id.*)  Plaintiffs oppose Defendants' Motions.  (Doc. Nos. 99, 100.)

The Court will address Defendants' arguments in turn, below.

### 1.    Administrative Exemption to FLSA and Ohio overtime statutes

Defendants argue that Plaintiffs Baron and Stephenson are exempt from the overtime provisions of the FLSA and Ohio Rev. Code Chapter 4111 because there is no genuine issue of material fact that (1) QMHSs are paid on a fee basis; (2) QMHSs' primary duty is the performance of non-manual work that directly relates to Family Solutions' general business operations; and (3) QMHSs' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  (Doc. Nos. 88, 89.)

Plaintiffs first argue that Defendants forfeited the administrative exemption defense by failing to raise it as an affirmative defense in their Answer.  (Doc. No. 99 at p. 8; Doc. No. 100 at p. 10.) Plaintiffs then argue that there are genuine issues of material fact as to whether the administrative exemption applies to QMHSs.  (Doc. No. 99 at pp. 9-18; Doc. No. 100 at pp. 11-19.)

### a.    Forfeiture of Affirmative Defense

The Sixth Circuit has held that the overtime-pay exemptions set forth in 29 U.S.C. § 213 are affirmative defenses that defendants must prove.  *See Hopkins v. Chartrand*, 566 Fed. Appx. 445, 448 (6th Cir. 2014); *Franklin v. Kellogg Co.*, 619 F.3d 604, 611 (6th Cir. 2010).  As such, defendants must generally claim an exemption in their first responsive pleading or the defense will be considered forfeited.  *Hopkins*, 566 Fed. Appx. at 448.  *See also* Fed. R. Civ. P. 8(c); *Horton v. Potter*, 369 F.3d

25

906, 911 (6th Cir. 2004).  The purpose of Fed. R. Civ. P. 8(c)'s pleading requirement is to give the opposing party notice of the defense and a chance to rebut it.  *Mickowski v. Visi–Trak Worldwide, LLC*, 415 F.3d 501, 506 (6th Cir. 2005).  *See also Harmon v. YWCA of Greater Cleveland*, 2017 WL 931735 at * 5-6 (N.D. Ohio March 19, 2017).  Where the failure to timely assert an affirmative defense causes surprise and unfair prejudice to the opposing party, it may result in forfeiture.  *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997).  "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction."  *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994).  *See also Rogers v. IRS*, 822 F.3d 854, 857 (6th Cir. 2016).

Here, Defendants asserted the following affirmative defense in their Answer to the original Complaint:  "Plaintiffs' claims and those of the putative class or collective members are barred, in whole or in part, by any statutory exclusions, or credits under the Ohio wage and hour statute (O.R.C. § 411.03 et seq.) or the FLSA." (Doc. No. 7 at p. 11.)  Defendants also asserted this defense in their Answer to the Amended Complaint.  (Doc. No. 51 at p. 11.)

For the following reasons, the Court finds that Defendants have not forfeited the administrative exemption defense.  Although Defendants did not specifically plead the administrative exemption as a defense, Defendants did assert generally the affirmative defense of "statutory exclusions" under the FLSA and Ohio wage and hour law in their Answers, as set forth above.  Furthermore, in discovery, Defendants repeatedly asked Plaintiffs (in both requests for admission and deposition) about their exempt status and about all the relevant aspects of their job duties in relation

to the administrative exemption.  Notably, Plaintiffs have not argued that they were surprised or unfairly prejudiced by Defendants' assertion of the administrative exemption in their Motions for Summary Judgment.  Specifically, Plaintiffs have not argued that Defendants' assertion of the administrative exemption defense would require them to expend significant additional resources to conduct discovery or prepare for trial, or otherwise significantly delay the resolution of the dispute.

As the Sixth Circuit has explained,  "the failure to raise an affirmative defense by responsive pleading does not always result in a forfeiture of the defense—such as when the plaintiff receives notice of the affirmative defense by some other means." *Seals v. Gen. Motors Corp*., 546 F.3d 766, 770 (6th Cir. 2008).  *See also Hopkins*, 566 Fed. Appx. at 449 (same).  Indeed, "[a] district court may, in its discretion, allow a defendant to raise an affirmative defense for the first time in a motion for summary judgment if doing so does not result in either surprise or prejudice to the plaintiff." *Lauderdale v. Wells Fargo Home Mortg*., 552 Fed. Appx. 566, 573 (6th Cir. 2014).  *See also Jones v. L&G Trucking, LLC,* 2017 WL 1173937 at * 3 (E.D. Ky. March 29, 2017) (same).  Here, the Court finds that Plaintiffs received notice of Defendants' administrative exemption defense during discovery and, further, have not argued or demonstrated that Defendants' assertion of the defense has resulted in either surprise or prejudice.

Accordingly, under these particular circumstances, the Court concludes that Defendants have not forfeited the administrative exemption defense.

### b.  Elements of Administrative Exemption

The FLSA requires employers to pay their employees overtime for work performed in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  This provision, however, does not apply to individuals "employed in a *bona fide* ... administrative ... capacity."  29 U.S.C. § 213(a)(1).  An

employee working in a "*bona fide* administrative capacity" is someone: (1) who is compensated on a salary or fee basis at a rate of not less than $684 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  *See* 29 C.F.R. § 541.200(a).  *See also Lutz v. Huntington Bancshares, Inc*., 815 F.3d 988, 992 (6th Cir. 2016); *Foster v. Nationwide Mut. Ins. Co*., 710 F.3d 640, 642 (6th Cir. 2013).  An employee who satisfies all three elements falls within this "administrative exemption." *See Renfro v. Ind. Mich. Power Co*., 497 F.3d 573, 576 ("*Renfro II*") (6th Cir. 2007) (holding that an employer must establish all three elements of the defense with regard to its employees in order to prevail).  Ohio's overtime statute, Ohio Rev. Code § 4111.03(a), incorporates exemptions to the FLSA, including the administrative exemption. *See* Ohio Rev. Code § 4111.03(A); *Roshon v. Eagle Research Group*, 314 F.Supp.3d 852, fn 1 (S.D. Ohio 2018).

The employer bears the burden of proving each element of the exemption by a preponderance of the evidence. *Renfro II,* 497 F.3d at 575–577.  Although courts used to construe the exemption narrowly against the employer, the Supreme Court recently clarified that courts are to give FLSA exemptions a fair, rather than a narrow, interpretation.  *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).  *See also Sec'y of Labor v. Timberline S., LLC*, 925 F.3d 838, 850 (6th Cir. 2019); *Hardesty v. Kroger,* 2020 WL 7053358 at * 3 (S.D. Ohio Dec. 1, 2020).

As noted above, Defendants argue that there is no genuine issue of material fact that Plaintiffs satisfy each of the three elements of the administrative exemption.  Plaintiffs dispute this, arguing that there are genuine issues of material fact as to all three elements.  As it is determinative of this

28

issue, the Court begins with a discussion of the first element of the administrative exemption, i.e., whether there is a genuine issue of material fact that Plaintiffs Baron and Stephenson were compensated on a salary or fee basis.

In their Motions, Defendants argue that QMHSs are paid on a "fee basis."  (Doc. No. 89 at pp. 16-17.)  Defendants maintain that Plaintiffs' own deposition testimony confirms that (1) the "standard unit" for each appointment is one hour, and (2) each "unit" is based on a billing code tied to Medicaid services that the QMHS employee is permitted to provide.  (*Id*.)  Defendants argue that "[w]hen performing Medicaid related services, the QMHS employee is paid an agreed sum for a single job – the sum permitted under the Medicaid regulations."  (*Id*.)  They assert that QMHSs are paid this sum regardless of whether the employee has to work additional time to perform the service and, therefore, QMHSs are paid on a "fee basis" as that term is defined in 29 C.F.R. § 541.605(a). (*Id*.)

Plaintiffs argue that Defendants' assertion that QMHSs are paid on a "fee basis" is an "about-face" from positions taken in Defendants' previous filings.  (Doc. No. 99 at p. 9.)  Specifically, Plaintiffs note that, in opposing conditional certification, Defendants submitted a Declaration from Defendant Smith dated March 14, 2019, in which she expressly stated that "QMHSs are paid hourly." *See* Smith Decl. I (Doc. Nos. 13-1, 99-2) at ¶ 6.  Plaintiffs further note that Baron's and Stephenson's "Employment Letters" (attached as Exhibits to Defendants' Answer) and "New Hire Information" Forms specifically state that their "hourly rate will be at a rate of $20 per hour."  (Doc. No. 99 at p. 10, 12) (citing Doc. Nos. 51-2, 99-15, 100-13.)  Plaintiffs also note that, in their Declarations, former-Clinical Supervisors Julie Winston, and Sereena Creamer each aver that hourly QMHSs were "paid their hourly rate for whatever time they actually spent on billable hours, supervision time, and

approved in-office time" and that "[n]o . . . QMHS was paid . . . on the basis of an agreed-upon sum of money for each of [their] tasks." (*Id*. at p. 15) (Doc. No. 99-8 at PageID#s 2032, 2035.)  In addition, Plaintiffs assert that Defendant Smith testified during her Rule 30(b)(6) deposition that opt-in Plaintiff Arends "was a QMHS hourly" employee.  (*Id*. at p. 11) (citing Smith Depo. (Doc. No. 114-1) at Tr. 190.)  Plaintiffs argue that the above evidence demonstrates that they were paid on an hourly basis and, therefore, the administrative exemption cannot apply.  (*Id*. at p. 9.)

Plaintiffs next argue that Defendants' "new 'unit basis' formulation, even if true, would not meet Department of Labor regulations governing 'fee basis.'" (*Id*. at p. 12.)  Plaintiffs note that Defendant Smith herself conceded that QMHSs' time sheet entries were "based on the amount of time spent on the activity" and that "the time sheet just had the hours [worked] that day." (*Id.* at p. 13) (citing Smith Dec. II at ¶ 23; Smith Depo. at Tr. 122.)  Plaintiffs argue that, although the QMHSs time sheet entries were then converted to "units," the "units" are "simply another way of expressing a certain amount of time." (*Id*. at p. 13.)  Thus, Plaintiffs assert Defendants' use of "units" does not qualify as a "fee basis" arrangement because it "ties compensation to the number of hours worked." (*Id*.) (citing *Elwell v. Univ. Hosp. Home Care Servs*., 276 F.3d 832, 838 (6th Cir. 2002)).

In response, Defendants insist that Plaintiffs were "at all times paid on a per unit fee basis." (Doc. No. 102 at p. 2.)  In support, Defendants emphasize Stephenson's testimony that "every single meeting that I ever had would always have been an hour." (*Id*.) (citing Stephenson Depo. at Tr. 104.) Defendants do not, however, address any of the specific documents or arguments recited by the Plaintiffs in their Briefs in Opposition with respect to this issue. (*Id.* at p. 18-19.)

For the following reasons, the Court finds that there is a genuine issue of material fact as to whether Plaintiffs were paid on a "fee basis" for purposes of the administrative exemption. The term "fee basis" is defined in the regulations, as follows:

> Administrative and professional employees may be paid on a fee basis, rather than on a salary basis. An employee will be considered to be paid on a "fee basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job **regardless of the time required for its completion**. These payments resemble piecework payments with the important distinction that generally a "fee" is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again. **Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis**.

29 C.F.R. § 541.605(a) (emphasis added). Interpreting similar language in a previous version of this regulation, the Sixth Circuit has stressed that the regulations' use of the phrase "regardless of the time required for its completion," suggests that "a compensation plan will not be considered a fee basis arrangement if it contains *any* component that ties compensation to the number of hours worked." *Elwell*, 276 F.3d at 838 (emphasis added). *See also Hicks v. Great Lakes Home Health Services*, 2018 WL 2363959 at * 5 (E.D. Mich. May 24, 2018).

Here, Plaintiffs have come forward with evidence suggesting that Baron's and Stephenson's compensation was based on the number of hours worked. When Baron and Stephenson were hired, Defendants executed "Employment Letters" with Plaintiffs which offered them the position of QMHS and stated that "at this time, your hourly rate will be at a rate of $20." (Doc. No. 51-2.) At that time, Baron and Stephenson also completed forms (on Family Solutions' letterhead) entitled "New Hire Information for Payroll Department," which stated that their "hourly rate" was $20. (Doc. No. 99-15, 100-13.)

Baron and Stephenson confirmed during deposition that, as hourly QMHSs, they were required to submit weekly time sheets.  (Baron Depo. at Tr. 27, 37; Stephenson Depo. at Tr. 143, 145.)  Stephenson explained that, when completing his time sheet, he inputted the amount of *time* he spent with each patient, as opposed to a flat number of client sessions or meetings.  (Stephenson Depo. at Tr. 143, 147-148, 151-152.)  Defendant Smith also confirmed that hourly QMHSs entered *time* spent on various tasks on their weekly time sheets.  *See* Smith Decl. II at ¶ 23 ("The time is inputted [on the weekly time sheet] by the QMHS employee based on the amount of time spent on the activity . . .")  The Clinical Supervisor then reviewed the QMHSs' time entries for accuracy and compliance with Family Solutions' policies.  (Smith Decl. II at ¶ 24.)  Former Clinical Supervisors Julie Winston and Sereena Creamer both averred as follows:

> All QMHSs . . . at Family Solutions were either paid on an hourly basis or salaried. **[H]ourly QMHSs were paid their hourly rate for whatever time they actually spent** on billable hours, supervision time, and approved in-office time like staff meetings and trainings.  \*\*\*  **No . . . QMHS was paid - for billable hours, supervision time, and approved in-office time like staff meetings and trainings - on the basis of an agreed-upon sum of money for each of those tasks regardless of how long it took the employee to complete the task.**

(Doc. No. 99-8 at PageID# 2032, 2035) (emphasis added).

Plaintiffs Baron and Stephenson testified that they were paid for whatever time they put on their time sheets.  *See* Baron Depo. at Tr. 41; Stephenson Depo. at Tr. 148.  In a Declaration dated February 27, 2019, Stephenson reiterated that Family Solutions "paid me an hourly rate for my work" and that he "only received compensation for my time spent in appointments with clients that were billed to health insurance."  (Doc. No. 99-5 at ¶¶ 3, 4.)

As noted above, Section 541.605(a) expressly provides that **"[p]ayments based on the number of hours or days worked** and not on the accomplishment of a given single task are not

32

considered payments on a fee basis."  29 C.F.R. § 541.605(a) (emphasis added).  Based on the evidence discussed above, the Court has no difficulty in finding that Plaintiffs have come forward with sufficient evidence to show that there is a genuine issue of material fact regarding whether they were paid based on the "number of hours" worked and, therefore, not on a "fee basis" for purposes of 29 C.F.R. § 541.200(a).

As noted *supra*, in order to demonstrate that Plaintiffs fall within the administrative exemption, Defendants must show that there is no genuine issue of material fact as to all three of the elements of that exemption.  *See Lutz*, 815 F.3d at 992; *Renfro II*, 497 F.3d at 576.  Because the Court finds that there is a genuine issue of material fact as to the first of these elements (i.e., whether Plaintiffs were compensated on a "salary or fee basis"), the Court need not reach the remaining two elements.

Accordingly, and for all the reasons set forth above, Defendants are not entitled to summary judgment in their favor with respect to Plaintiffs' FLSA and Ohio overtime claims (i.e., Counts I and III) on the basis of the administrative exemption.

### 2.    Breach of Contract

In Count V of the Amended Complaint, Plaintiffs assert a breach of contract claim, as follows:

67.    Defendants' employment of Plaintiffs, the Potential Opt-Ins, and the Ohio Class Members was the subject of a written offer letters, the terms of which, including rate of pay terms, became binding upon acceptance by Plaintiffs, the Potential Opt-Ins, and the Ohio Class Members.

68.    Plaintiffs, the Potential Opt-Ins, and the Ohio Class Members accepted the terms in Defendants' offer letters and performed pursuant to the terms of their respective contracts.

69.    Defendants breached their contract with Plaintiffs, the Potential Opt-Ins, and the Ohio Class Members and caused damages by failing to compensate

> Plaintiffs, the Potential Opt-Ins, and the Ohio Class Members for all hours worked.

(Doc. No. 50 at ¶¶ 67-69.)

Defendants move for summary judgment with respect to this claim, asserting that "Plaintiff has failed to provide any evidence of a contract and, rather, the evidence shows that Plaintiff was an at-will employee."  (Doc. No. 89 at fn 5.)  In support of this argument, Defendants provide the Declaration of Dawn Smith, who avers as follows:

> 27.   All QMHS employees are at-will employees.   The two named Plaintiffs and 25 opt-ins did not have a contract with Family Solutions of Ohio – or any of the Defendants – with respect to their employment.   Rather, either Family Solutions of Ohio or the employee could terminate their employment relationship at any time and for any reason.
>
> 28.   The 2016 and 2017 Family Solutions of Ohio's employee handbooks contained at-will disclaimers.  The two disclaimers are attached hereto as Exhibit 1.

(Doc. No. 89-1 at ¶¶ 27, 28.)  Exhibit 1 to Smith's Declaration appear to be pages taken from Family Solutions' employee handbooks and provide, in relevant part, as follows:

> The Employee Handbook provides guidelines to be followed.  It is not an employee contract, and none of the policies described in this manual should be construed as being a part of an employment contract.
>
> Since employment as Family Solutions . . .  is based on mutual consent, both the employee and the employer have a right to terminate the employment relationship at will, with or without cause, at any time.

(Doc. No. 89-1 at PageID# 1593, 1594.)

Plaintiffs do not acknowledge or respond to Defendants' arguments and/or evidence with regard to their breach of contract claims.

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the

34

plaintiff as a result of the breach." *Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 Fed. Appx. 438, 441 (6th Cir. 2014) (quoting *V & M Star Steel v. Centimark Corp*., 678 F.3d 459, 465 (6th Cir. 2012)). *See also Gerling & Associates, Inc. v. Odulair, LLC*, 2017 WL 2790669 at * 7 (S.D. Ohio June 28, 2017).

The Court finds that Defendants are entitled to summary judgment in their favor with respect to Plaintiffs' breach of contract claim.  Defendants have come forward with evidence that the parties did not have an employment contract and that, to the contrary, Plaintiffs were at-will employees.  Plaintiffs failed to respond to this argument.  They have not specifically identified the "written offer letters" referenced in the Amended Complaint nor have they set forth any argument or evidence that such "offer letters" constitute a binding contract.

Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Baron's and Stephenson's breach of contract claims (Count V).

### 3. Damages

Lastly, Defendants argue that they are entitled to summary judgment in their favor with respect to all of Plaintiffs' claims because "Plaintiff[s] have not provided *any* evidence of damages or otherwise provided an estimate of hours worked for which [they] allegedly [were] not paid."  (Doc. No. 89 at p. 10) (emphasis in original).  Specifically, Defendants argue that Baron was unable to provide an estimate of her damages during deposition and, further, that Plaintiffs "wholly failed" to respond to interrogatories relating to damages.  (*Id.* at p. 11.)  Defendants further assert that, Plaintiffs' alleged failure to disclose damages during discovery precludes them from doing so now. (*Id.*)

Plaintiffs argue that they have provided "ample evidence" of damages.  (Doc. No. 99 at p. 2.) Plaintiffs note that both Baron and Stephenson testified that they were not paid for time spent traveling between clients, preparing for and attending no-show appointments, and entering required documentation into clients' electronic health records.  (Baron Depo. at Tr. 64-65, Stephenson Decl. (Doc. No. 99-5 at ¶ 4.)  In addition, Plaintiffs note that Stephenson estimated his damages during deposition and testified that "on average I worked about an extra ten to 15 hours a week . . . because of documentation time, as well as traveling in between clients."  (Stephenson Depo. at Tr. 135-137.) Plaintiffs also state that they recently produced an expert report from forensic labor economist Shane Thompson in which he analyzes the "available data" and opines that (1) Baron has sustained $4, 659.36 in unpaid wages; and (2) Stephenson has sustained $10, 176.42 in unpaid wages.  (Doc. No. 99-7, 100-2.)  Dr. Thompson's expert report is attached to Plaintiffs' Briefs in Opposition.  (*Id*.)

With regard to Defendants' arguments that Plaintiffs failed to timely produce estimates of their damages, Plaintiffs argue as follows.  Plaintiffs assert that, according to Defendant Smith's own deposition testimony, Family Solutions failed to keep any records that would reveal the amount of time spent by QMHSs travelling between clients.  (*Id.* at p. 3) (citing Smith Depo. at Tr. 89-90.) Plaintiffs further assert that Defendants withheld, and refused to timely produce, Family Solutions' audit logs with respect to 23 of the opt-ins, despite the fact that Plaintiffs repeatedly requested these documents in discovery.  (*Id.* at p. 5-6.)  Plaintiffs assert that these logs contain highly relevant information regarding hours spent by QMHSs on client documentation.  (*Id.*)  Plaintiffs complain that, as a result, they were forced to subpoena these documents from Family Solutions' vendor, ICANotes, on June 30, 2020 and did not receive them until August 5, 2020.  (*Id.* at pp. 6-7.)  Lastly, Plaintiffs argue that Defendants have records regarding the time spent by QMHSs on no-show

appointments but that Defendants refused to provide them.  (*Id.* at p. 7.)  Plaintiffs, therefore, "resorted to a poll of the opt-ins to estimate the time spent on no-shows to facilitate Dr. Thompson's damages analysis."  (*Id.* at pp. 7-8.)

Defendants assert that it is Plaintiffs that have failed to fulfill their discovery obligations. (Doc. No. 102 at p. 4.)  Specifically, Defendants argue that Plaintiffs failed to either (1) provide a computation of damages, as required by Rule 26(a)(1)(A)(iii); or (2) provide answers to interrogatories requesting a specific description of Plaintiffs' economic damages.  (*Id.* at pp. 4, 10-11.)  Defendants note that the non-expert discovery period closed on August 14, 2020 and that Plaintiffs failed to supplement any of their discovery responses regarding the specific numbers of hours for which they claim they were not paid.  (*Id.*)  Defendants further assert that, pursuant to Local Rule 37.1(b), Plaintiffs failed to timely raise any complaints regarding Defendants' discovery responses and are now precluded from doing so.  (*Id.* at p. 12-13.)

Lastly, Defendants complain, at length, that Plaintiffs' damages evidence is improper. Defendants move to strike Dr. Thompson's report on several grounds, including that "it is premature, as it was produced days before the [Briefs in] Opposition and without providing Defendants with an opportunity to conduct discovery with respect thereto.  (Doc. No. 107 at p. 2.)  In that regard, Defendants argue that "[i]f Plaintiffs believed that they needed an expert on liability issues, they should have produced an expert report prior to summary judgment or sought an extension."  (*Id.*) Defendants argue that Dr. Thompson's report should be stricken because "expert discovery has not concluded and Dr. Thompson has not been deposed regarding his opinion." (*Id.* at pp. 11-12.)

Defendants also move to strike certain parts of Stephenson's February 2019 Declaration, in which he avers as follows:  "I estimate that I worked 60-70 hours on average each week for Family

37

Solutions of Ohio performing the following tasks: (a) Appointment time with clients; (b) Administrative work; (c) Documentation; and (d) Travel between clients." (Doc. No. 99-5.) Defendants argue that this Declaration contradicts Stephenson's subsequent deposition testimony and was improperly relied upon by Dr. Thompson. (Doc. No. 109; Doc No. 107 at p. 9-10.)

As an initial matter, the Court finds that Plaintiffs have come forward with evidence that they suffered damages as a result of Defendants' failure to pay for time spent traveling between clients; entering documentation into clients' electronic health records; and dealing with no-show appointments. As Plaintiffs correctly note, both Baron and Stephenson testified to this effect during their depositions. *See* Baron Depo. at Tr. 64-65; Stephenson Depo. at Tr. 39, 52-53, 135-137. Moreover, former Clinical Supervisor Rose Marie Pryor averred as follows:

> 9.      Both Dawn Smith and Robert Beamon told me that, with the exception of Approved Office Time for meetings and training and Supervision Time, Family Solutions of Ohio's default policy was that if Medicaid didn't pay for it, it should not be approved on billing and time sheets. In other words, both Dawn Smith and Robert Beamon instructed me that when I was reviewing Therapist and QMHS billing and time sheets, I was not to approve any time they logged for writing and reviewing client notes and documentation, work-related travel, or waiting and notating files regarding client no-shows.
>
> ***
>
> 11.     At Family Solutions of Ohio, the mandatory job duties of Therapists and QMHSs included writing and reviewing client notes and documentation, and work- related travel.
>
> 12.     In my experience, Therapists and QMHSs at Family Solutions of Ohio regularly experienced client no-shows.
>
> 13.     Throughout my tenure with Family Solutions of Ohio, the company had a uniform policy for timekeeping and compensation of Therapists and QMHSs with respect to time spent writing and reviewing client notes and documentation, on work-related travel, or for waiting and notating files regarding client no-shows. Neither Therapists nor QMHSs were paid for time spent on any of those activities.

38

(Doc. Nos. 99-8 at PageID#s 2028-2029.)  Former Clinical Supervisors Julie Winston and Sereena Creamer likewise averred that they were instructed "not to approve, for insurance or compensation, time logged by . . . QMHSs for writing and reviewing client notes and documentation, work-related travel, or waiting and notating files regarding client no-shows" and, further, that QMHSs regularly experienced client no-shows.  (*Id.* at PageID#s 2030-2031, 2034.)  The Court finds that the above evidence is sufficient to create a genuine issue of material fact regarding the issue of whether Plaintiffs suffered damages as a result of Defendants' alleged pay practices.

With regard to the specific amount of Plaintiffs' damages, the Court finds as follows.  The non-expert discovery period in this matter closed on August 14, 2020.[13]  Plaintiffs argue (and Defendants do not contest) that Family Solutions' audit logs and progress notes contain information that is relevant to determining the specific number of hours for which Plaintiffs were allegedly not paid for time spent relating to documentation and no-show appointments.  With regard to the audit logs, Plaintiffs state (and Defendants do not contest) that, despite their repeated requests and best efforts, Plaintiffs did not ultimately receive these logs for the majority of the opt-ins until August 5, 2020.[14]  With regard to the progress notes, it appears that Plaintiffs' efforts to obtain these documents

---

[13] Although the parties now raise myriad complaints about each other's alleged failures to provide sufficient and timely discovery responses, none of these complaints were properly presented to the Court prior to the close of discovery.  Had the parties done so, the Court could have attempted to timely address and resolve the parties' various concerns.

[14] Plaintiffs' counsel, Mr. Perlmuter, submitted a Declaration in which he avers that: "On December 23, 2019, Defendants produced Alicia Arends' audit log.  On July 10, 2020, Defendants produced audit logs for Jamal Stephenson, Carolyn Cates, and Kimberly Bolden.  No other audit logs were ever produced by Defendants."  (Doc. No. 99-6 at ¶ 3.)   In addition, Mr. Perlmuter produced a series of emails between counsel which documented Plaintiffs' efforts to obtain the audit logs, including the fact that Plaintiffs subpoenaed ICANotes and was starting to receive the logs in response to that subpoena in August 2020.  *See, e.g.*, Doc. No. 99-10 at PageID# 2041-2046, 99-12, 99-13.

continued throughout the fall of 2020, with the latest request for these documents in December 2020. *See* Doc. No. 132 at p. 5; Doc. No. 132-5.

Under these circumstances, the Court is not persuaded that Plaintiffs failed to timely produce estimates and/or evidence of their damages and are, therefore, now precluded from doing so. Any delay in producing this information appears to be the result, at least in part, of the Defendants' delay in producing Family Solutions' audit logs and progress notes. Indeed, it does not appear to be disputed that Plaintiffs did not receive the majority of audit logs until August 2020 and still had apparently not received the requested progress notes as of December 2020. Defendants' Motions for Summary Judgment were filed on September 1, 2020, and Plaintiffs' Briefs in Opposition (along with Dr. Thompson's report) were filed on October 8, 2020. Moreover, at the time the summary judgment motions were filed, expert discovery was not scheduled to close until December 15, 2020. As of the date of this Opinion, expert discovery is stayed, pursuant to this Court's Order dated January 8, 2021.

In sum, the Court finds that Defendants' argument that they are entitled to judgment in their favor with respect to the issue of damages is premature. Plaintiffs are not precluded from introducing evidence regarding the fact that they suffered damages and/or the specific amount of their damages. As noted above, the expert discovery period has not concluded and, in fact, is stayed. In light of the reopened Notice period and additional opt-ins, Dr. Thompson may need to supplement his expert report once the stay is lifted. In addition, at that time, Defendants will have the opportunity to depose Dr. Thompson and fully question him about the basis for his opinion and the documents and information that he relied on. In this regard, Plaintiffs are reminded and advised that, prior to that deposition, they are required to produce to Defendants any documents that Dr. Thompson relied on in rendering his opinion, including the documents listed in Appendix B to his Report.

Accordingly, and for all the reasons set forth above, the Court finds that summary judgment on the issue of damages is not appropriate at this time.  Defendants' Motion for Summary Judgment with respect to the issue of damages is, therefore, denied without prejudice subject to refiling after the close of expert discovery.[15]  Because they also relate to the issue of damages, Defendants' Motions to Strike Dr. Thompson's Expert Report (Doc. No. 107) and Certain Parts of Stephenson's Declaration (Doc. No. 109) are likewise denied without prejudice subject to refiling after the close of expert discovery.  At the upcoming status conference, counsel should be prepared to discuss lifting the stay on expert discovery, as well as new expert discovery and motion deadlines.

## V.      Conclusion

Accordingly, and for all the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. No. 88, 89) are GRANTED IN PART and DENIED IN PART, as set forth herein.  Defendants' Motions to Strike the Unverified Exhibits Presented by Plaintiffs Baron and Stephenson (Doc. Nos. 105, 106) are construed as objections under Fed. R. Civ. P. 56(c) and DENIED.  Defendants' Motion to Strike the Declarations of Rose Marie Pryor, Julie Winston, and Sereena Creamer and for Reasonable Attorney Fees (Doc. No. 108) is DENIED.  Finally, Defendants' Motion to Strike the Expert Report Presented by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment

---

[15] Defendants also argue that any damages owed to Plaintiff Stephenson should be offset in light of his "serious misconduct" in allegedly failing to complete documentation for several of his patients.  (Doc. No. 89 at pp. 17-18.)  The Court also finds this issue to be premature and is not inclined to address at this time.  Defendants may re-assert this argument in any future motions that they may file with regard to the issue of damages.

(Doc. No. 107) and Motion to Strike Certain Parts of the Declaration of Jamal Stephenson (Doc. No. 109) are both DENIED WITHOUT PREJUDICE as premature.

**IT IS SO ORDERED.**


              *s/Pamela A. Barker*
              PAMELA A. BARKER
Date:  March 2, 2021          U. S. DISTRICT JUDGE