## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,* | **Case No. 1:18cv2017** |
| **On behalf of himself and** | |
| **All others similarly situated,** | |
| **Plaintiffs,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| **Family Solutions of Ohio, Inc.,** | **MEMORANDUM OPINION AND** |
| *et al.,* | **ORDER** |
| **Defendants** | |

Currently pending is Plaintiffs' Motion for Rule 23 Certification of a State-Law Class (Doc. No. 70.)  Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith filed a Brief in Opposition on September 1, 2020, to which Plaintiffs replied on September 8, 2020.  (Doc. Nos. 87, 91.)  Defendants filed a Sur-Reply on November 5, 2020 and Supplemental Briefing was submitted by both parties on March 26, 2021.  (Doc. Nos. 117, 141, 142.)

For the following reasons, Plaintiffs' Motion for Rule 23 Certification (Doc. No. 70) is GRANTED IN PART and DENIED IN PART, as set forth herein.

## I.     Factual Allegations

Founded in 2013, Defendant Family Solutions of Ohio, Inc. ("Family Solutions") is a non-profit organization that provides mental and behavioral healthcare services for children and families throughout Ohio.  (Decl. of Dawn Smith dated August 31, 2020[1] (Doc. 138-1) at ¶¶ 3, 5.)  Defendant

---

[1] Defendant Dawn Smith has submitted several Declarations in this litigation. The first was submitted in opposition to Plaintiffs' Motion for FLSA Conditional Certification and is dated March 14, 2019.  (Doc. No. 13-1.)  Another was submitted in opposition to Plaintiffs' Motion for Rule 23 Certification and is dated August 31, 2020.  (Doc. No. 87-2.)  A third Declaration was submitted by Defendant Smith in support of Defendants' Motions for Summary Judgment and is

Dawn Smith ("Smith") was highly involved in the development of Family Solutions and currently serves as its Vice President of Strategic Planning and Program Management.  (*Id*. at ¶¶ 1, 3.)

Family Solutions has locations in Cleveland, Bedford Heights, Lorain, Columbus, and Cincinnati.  (*Id*. at ¶ 6.)  At each location, Family Solutions employs a Program Director or Assistant Program Director, as well as a Clinical Supervisor.  (*Id*.)  The Program Director/Assistant Program Director and Clinical Supervisor oversee employees based out of that site that work with patients in the field.  (*Id*. at ¶ 7.)  Each site's Clinical Supervisor is the direct supervisor of employees based out of that particular site.  (*Id*. at ¶ 7.)

Qualified Mental Health Specialists[2] ("QMHSs") are one of the categories of employees at Family Solutions that work with patients in the field.  (*Id*. at ¶ 7.)  *See also* Deposition of Jamal Stephenson (Doc. No. 115-1) at Tr. 78; Deposition of Melanie Baron (Doc. No. 113-1) at Tr. 18-19. The parties dispute the precise scope and nature of the QMHSs' job duties.  However, in general terms, the parties agree that QMHSs provide behavioral health services, including counseling services, to Family Solutions' Medicaid-eligible patients.  (Smith Decl. (Doc. No. 138-1) at ¶ 7, 18.) *See also* Stephenson Depo. at Tr. 78.[3]  The parties also agree that, as part of their duties, QMHSs

---

dated September 1, 2020.  (Doc. Nos. 88-1, 89-1.)  Due to formatting and legibility problems, Defendants were directed to re-submit a complete and fully legible version of Ms. Smith's August 31, 2020 Declaration.  Defendants complied and submitted a complete copy of this Declaration, which is located at Doc. No. 138-1.  Finally, Defendant Smith submitted yet another Declaration on March 26, 2021, in support of Defendants' Supplemental Briefing in opposition to Plaintiffs' Motion for Rule 23 Certification. (Doc. No. 142-1.)

[2] This position is currently referred to as "Qualified Behavioral Health Specialists."  For purposes of this Opinion, the Court will refer to the position as it was known when it was held by Plaintiffs Baron and Stephenson, i.e., as Qualified Mental Health Specialists.

[3] Defendants assert that QMHSs provide "behavioral health services" and "counseling services," which they claim consist of "office or non-manual" work that involves the "exercise of discretion and independent judgment with respect to matters of significance" including "providing medical care that needs to be documented in the patient's medical files."  (Smith Decl. dated September 1, 2020 (Doc. No. 89-1) at ¶¶ 26, 29, 33-35.)  Plaintiff Stephenson testified that, while employed as a QMHS, he provided important "mental health services," including helping patients deal with mental health crises.

2

schedule appointments with clients and visit them at various locations, including in schools and homes.  (Stephenson Depo. at Tr. 78; Baron Depo. at Tr. 18-19.)  Because they visit clients in the field, virtually all QMHSs travel between clients during the course of the workday.  (Smith Depo. (Doc. No. 114-1) at Tr. 262-263.)  In addition, it is undisputed that QMHSs are required to create progress notes regarding their clients and enter documentation into their client's files using the "ICANotes" electronic medical record system.  *See* Smith Depo. at Tr. 262-263.

Representative  Plaintiffs  Melanie  Vilk  Baron  ("Baron")  and  Jamal  Stephenson ("Stephenson") were QMHSs.  Baron worked in Family Solutions' Cleveland location between August 2016 and October 2016.  (Smith Decl. (Doc. No. 138-1) at ¶ 46.)  *See also* Baron Depo. at Tr. 5, 12.  According to Defendants, Baron was still in her probationary period at the time she resigned from Family Solutions.  (Smith Decl. (Doc. No. 138-1) at ¶ 46.)  Stephenson worked in Family Solutions' Cincinnati location from August 2016 to May 2017.  (*Id*. at ¶ 42.)  At the time of their respective hires, Family Solutions executed "Employment Letters" in which Baron and Stephenson were offered the position of QMHS.  *See* Doc. No. 51-2 at PageID#s 447, 448.  Among other things, these letters provide that "[a]t this time, your hourly rate will be at a rate of $20."  *Id.*

Hourly employees are trained at the site-level by each site's employees.  (Smith Decl. (Doc. No. 138-1) at ¶ 26.)  When first hired, hourly employees (such as QMHSs) attend an orientation

---

(Stephenson Depo. at Tr. 78, 82-83.)  Plaintiff Baron testified that she was not permitted to "treat" patients in the medical sense of the word; rather, she "helped [patients] with stuff" like finding a job, managing schoolwork, etc.  (Baron Depo. at Tr. 22-24.)  In response to Defendants' Requests for Admissions, Plaintiffs admitted that, as QMHSs, they "performed behavioral health treatment and supportive duties," including Community Psychiatric Supportive Treatment ("CPST") and counseling services.  According to Plaintiffs, "[s]uch work involved a variety of services that complement mental health counseling/therapy.  Examples of CPST services include needs assessment, links to community resources, symptom monitoring, education, and help with practicing the skills introduced in counseling sessions."  (Doc. No. 101-1 at PageID#s 2354-2357.)

3

session that is conducted by salaried employees at their respective sites. (*Id.* at ¶ 27.) Specifically, the site's Program Director or Assistant Program Director and the site's Clinical Supervisor explain time reporting and methods of pay during orientation. (*Id.*) In addition, the Program Director, Assistant Program Director, and/or Clinical Supervisor work individually with each employee to provide training regarding how hourly employees are required to report their time. (*Id.* ¶¶ 30, 31.) Among other things, employees who are paid hourly are instructed that they must follow Family Solutions' Reporting Time Worked policy. (*Id.* at ¶ 28.) This policy provides, in pertinent part, as follows:

> Accurate recording of time worked and absence from work is the responsibility of every employee. All employees must complete and sign a time sheet that is signed by their immediate supervisor. If it is necessary to make corrections or modifications to the time sheet, both the employee and supervisor must initial the changes. Tampering, altering of [sic] falsifying time records, failure to timely turn in a completed time sheet, or recording time on another employee's time record, will result in disciplinary action, up to and including termination.

(*Id.*)

Both Baron and Stephenson confirmed during deposition that, as QMHSs, they were required to submit weekly time sheets. (Baron Depo. at Tr. 27, 37; Stephenson Depo. at Tr. 143, 145.) Clinical Supervisors then reviewed the QMHSs' time entries for accuracy and compliance with Family Solutions' policies. (Smith Decl. (Doc. No. 138-1) at ¶ 32.) As part of this review, the time inputted by the QMHS was assigned a code pursuant to Family Solutions' Medicaid fee schedule. (Smith Decl. dated September 1, 2020 (Doc. No. 89-1) at ¶ 23.) Family Solutions' fee schedule also includes entries for time spent on non-billable matters. (*Id.* at ¶ 25.) *See also* Baron Depo. at Tr. 31-32.

If any changes were needed to the time entries submitted by a QMHS, the Clinical Supervisor would speak with the QMHS and ask him/her to make the required change(s).  (Smith Decl. dated September 1, 2020 (Doc. No. 89-1) at ¶ 24.)  If the QMHS made the change and thereafter submitted his/her time sheet, the QMHS is considered to have verified the accuracy of the time and billing codes on his/her time sheet.  (*Id.*)  If a QMHS disputed a change requested by a Clinical Supervisor, that issue was escalated, reviewed, and resolved.  (*Id.*)  Otherwise, a QMHS is expected to approve and sign off on his/her time sheets each week.  *See* Stephenson Depo. at Tr. 142-148, 151-152; Baron Depo. at Tr. 38.

Representative Plaintiffs Baron and Stephenson testified that they were paid for whatever time they put on their time sheets.  *See* Baron Depo. at Tr. 41; Stephenson Depo. at Tr. 148.  Baron and Stephenson testified, however, that QMHSs were not paid for certain categories of time for which there was no corresponding Medicaid billing code.  Specifically, Baron and Stephenson testified that they were not paid for time spent (1) traveling between clients; (2) entering documentation into clients' electronic health records; and (3) dealing with no-show appointments.  *See* Baron Depo. at Tr. 64-65; Stephenson Depo. at Tr. 39, 52-53, 135-137.

In addition, Rose Marie Pryor, Julie Winston, and Sereena Creamer (each of whom were employed as Clinical Supervisors at different Family Solutions office locations) submitted Declarations in this action.[4]  (Doc. No. 100-5.)  Therein, Pryor, Winston, and Creamer aver that one of their jobs was to evaluate and approve or deny time logged by QMHSs on billing and time sheets.  (*Id.* at PageID#s 2253, 2256, 2259.)  Among other things, Pryor, Winston, and Creamer state that,

---

[4] Pryor, Creamer, and Winston were employed as Clinical Supervisors in Family Solutions' Cincinnati, Bedford Heights, and Akron offices.  (Doc. No. 100-5 at PageID# 2253, 2259, 2256.)

throughout their tenures with Family Solutions, "the company had a uniform policy for timekeeping and compensation of . . . hourly QMHSs with respect to time spent writing and reviewing client notes and documentation, on work-related travel, or for waiting and notating files regarding client no-shows." (*Id*. at PageID#s 2254-2255, 2257-2258, 2260-2261.)  Specifically, Pryor, Winston, and Creamer aver that they were each instructed "not to approve, for insurance or compensation" time logged by QMHSs for any of these activities.  (*Id.* at PageID#s 2253-2254, 2256-2257, 2260.)  They further state that hourly QMHSs were not paid for time spent on any of those activities.  (*Id*. at PageID#s 2254-2255, 2257-2258, 2260-2261.)

## II.    Relevant Procedural Background

On September 4, 2018, Plaintiff Alicia Arends filed a Complaint in this Court on behalf of herself and all others similarly situated against Defendants, in which she asserted the following six claims for relief:  (1) violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count One); (2) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, art. II, § 34a (Count Two); (3) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03 (Count Three); (4) violations of the OFMWA's record-keeping requirement (Count Four); (5) breach of contract (Count Five); and (6) unjust enrichment (Count Six).  (Doc. No. 1.)  Plaintiff sought conditional certification as a FLSA collective action; certification of the state law claims under Fed. R. Civ. P. 23; compensatory and punitive damages; and attorney fees and costs.  (*Id.*)  Jamal Stephenson subsequently filed an Opt-In and Consent Form.  (Doc. No. 12-1.)

On February 28, 2019, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice with respect to their FLSA claims.  (Doc. No. 11.)  Therein, Plaintiffs argued that

6

Defendants violated the overtime provisions of the FLSA by failing to pay potential class members for necessary services such as documentation, travel between clients, time spent for client appointments and no-shows, and administrative time.  (*Id.*)  Plaintiffs sought conditional certification with respect to "all hourly employees who worked as providers for Family Solutions of Ohio during the three years preceding the commencement of this action to the present."  (*Id.*)  Defendants responded on March 15, 2019, and Plaintiff filed a Reply on March 29, 2019.  (Doc. No. 13, 14.)

On September 16, 2019, the Court issued a Memorandum Opinion & Order granting Plaintiffs' Motion for Conditional Certification with respect to "all current and former employees who worked as Qualified Mental Health Specialists ['QMHS'] for Family Solutions of Ohio during the period three years prior to the date of this Memorandum Opinion & Order;" i.e., all current and former employees who worked as QMHSs between September 16, 2016 and September 16, 2019. (Doc. No. 20.)  The Court then set forth various deadlines regarding the Notice to be given to potential opt-in plaintiffs within the conditional class.  (*Id*. at p. 21.)

A Joint Submission of Proposed Notice was thereafter submitted on September 30, 2019. (Doc. No. 22.)  A Case Management Conference ("CMC") was conducted on October 7, 2019, at which time the Court approved the parties' proposed Notice and set pleading amendment, non-expert discovery, dispositive motion, and expert discovery deadlines.  (Doc. No. 25.)  The Court did not set a specific deadline for filing a motion for certification of a state law class under Fed. R. Civ. P. 23. (*Id.*)  The docket reflects that FLSA consent forms were filed by twenty-four (24) opt-in plaintiffs between October and December 2019.  *See* Doc. Nos. 26 through 36.

7

On May 5, 2020, Plaintiffs filed an Amended Class and Collective Action Complaint, designating Plaintiffs Stephenson and Baron as the representative plaintiffs. [5] (Doc. No. 50.) The Amended Complaint raised the same factual and class allegations and asserted the same six grounds for relief set forth in the original Complaint. (*Id*.) Defendants filed an Answer on May 19, 2020. (Doc. No. 51.)

On July 7, 2020, the parties filed a Joint Motion for Adoption of Proposed Scheduling Order. (Doc. No. 59.) The parties requested a referral to mediation and proposed new deadlines relating to non-expert discovery, Plaintiffs' Rule 23 certification motion, expert reports, and dispositive motions. (*Id*.) The Court granted the parties' Joint Motion and set the following deadlines: (1) non-expert discovery due by August 14, 2020; (2) Plaintiff's Rule 23 class certification motion due by July 31, 2020; (3) initial expert reports due by September 15, 2020; and (4) dispositive motions due by September 1, 2020.

Numerous motions were filed over the next several months. Of particular note, on July 31, 2020, Plaintiffs filed a Motion to Modify the FLSA Collective Action that had been conditionally certified under the FLSA. (Doc. No. 68.) Therein, Plaintiffs asked the Court to expand the FLSA conditional class to include Therapists employed at Family Solution's Ohio locations. (*Id*.) On that same date, Plaintiffs also filed a Motion for Rule 23 Certification of a State Law Class, in which they asked the Court to certify a state law class under Fed. R. Civ. P. 23(a) and (b)(3) consisting of both

---

[5] Previously, on March 24, 2020, Plaintiffs filed a Motion for Leave to file a First Amended Complaint Designating New Representative Plaintiffs, in which they sought leave to file an amended pleading designating Jamal Stephenson and Melanie Vilk Baron as Representative Plaintiffs, in place of Alicia Arends (Doc. No. 43.) Therein, Plaintiffs explained that Ms. Arends sought to be relieved of her responsibilities as a representative plaintiff, but would remain a non-representative plaintiff, having filed a consent form pursuant to 29 U.S.C. § 216(b). (*Id.* at p. 3.) The Court granted Plaintiffs' Motion on April 14, 2020. (Doc. No. 49.)

8

QMHSs and Therapists. (Doc. Nos. 69, 70.) Plaintiffs also asked the Court to (1) designate Plaintiffs' counsel as class counsel; (2) appoint named Plaintiffs Baron and Stephenson as QMHS class representatives; and (3) appoint opt-in Plaintiff Alexander Dolin as Therapist class representative. (*Id.*)

Defendants opposed both Motions. (Doc. Nos. 79, 87.) In addition, Defendants filed a Motion to Strike certain Exhibits attached to these Motions on the grounds that such Exhibits were "unverified." (Doc. No. 92.) Plaintiffs filed Reply Briefs in support of their Motions to Modify the FLSA Collective Action and for Rule 23 Certification; and opposed Defendants' Motion to Strike. (Doc. Nos. 82, 91, 96.)

On November 4, 2020, the Court issued a Memorandum Opinion & Order in which it denied Plaintiffs' Motion to Modify the FLSA Collective Action to include Therapists. (Doc. No. 116.) The Court noted that Plaintiffs had been aware of, in contact with, Therapist Alexander Dolin since November 2019 and had had access to sufficient information since that time to promptly move to amend the Complaint and/or modify the FLSA class to include Therapists. (*Id.* at pp. 26-27.) The Court further noted that Plaintiffs had failed to do so and had offered no persuasive reason for their delay. (*Id.* at p. 28.) The Court found that Defendants would be unduly prejudiced by expanding the FLSA class at that time and, further, that "reopening notice and discovery to include an entirely new category of potential class members at this stage of the proceedings is not in the interests of justice or judicial efficiency." (*Id*. at p. 29.) In addition, the Court denied Defendants' Motion to Strike the Exhibits attached to Plaintiffs' Motions to Modify and for Rule 23 Certification. (*Id*. at pp. 9-13.)

Meanwhile, on September 1, 2020, Defendants filed Motions for Summary Judgment with respect to all claims asserted by Melanie Baron and Jamal Stephenson. (Doc. Nos. 88, 89.) Plaintiffs

9

opposed both Motions, and Defendants replied.  (Doc. Nos. 99, 100, 102, 103.)   In addition, Defendants filed numerous motions to strike related to the Exhibits attached to Plaintiffs' Briefs in Opposition, which Plaintiffs opposed.  (Doc. Nos. 105, 106, 107, 108, 109, 118, 119, 120, 121.)

The Court conducted a telephonic status conference with lead counsel on January 8, 2021.  At that time, counsel for Plaintiffs specifically asked the Court not to rule on Plaintiffs' Motion for Rule 23 Certification of a State Law Class until after a ruling on the pending summary judgment motions.  Defendants did not object. [6]  *See* Non-Document Order dated January 8, 2021.  In addition, counsel for both parties sought, and the Court granted, an indefinite stay of expert discovery.  *Id.*

On March 2, 2021, the Court issued a Memorandum Opinion & Order in which it denied Defendants' Motions for Summary Judgment as to Plaintiff Baron's and Stephenson's FLSA and state law wage-and-hour claims. (Doc. No. 137.)  Therein, the Court rejected Defendants' argument that they were entitled to summary judgment on these claims because Plaintiffs are exempt from the overtime provisions of the FLSA and Ohio Revised Code under the so-called "*bona fide administrative exemption.*"  (*Id.* at pp. 31-33.)  Specifically, the Court concluded that "Plaintiffs have come forward with sufficient evidence to show that there is a genuine issue of material fact regarding whether they were paid based on the 'number of hours' worked and, therefore, not on a 'fee basis' for purposes of 29 C.F.R. § 541.200(a)."  (*Id.* at p. 33.)

The Court also rejected Defendants' argument that they were entitled to summary judgment on the issue of damages.  (*Id.* at pp. 35-41.)  The Court found that Plaintiffs had come forward with

---

[6] As Plaintiffs' Rule 23 Motion had been pending since July 2020, the Court determined that "judicial economy and timeliness concerns warrant a decision on Plaintiffs' Motion at the same time that decisions are rendered on Defendant's motions for summary judgment, or by March 30, 2021."  *See* Non-Document Order dated January 8, 2021.  However, the Court ultimately acceded to Plaintiffs' wishes and proceeded to rule on the pending summary judgment motions first.

sufficient evidence to create a genuine issue of material fact regarding the issue of whether they suffered damages as a result of Defendants' failure to pay for time spent traveling, entering documentation into clients' health records, and dealing with no-show appointments. (*Id.*) With regard to the specific amount of Plaintiffs' damages, the Court found that Plaintiffs had not failed to timely produce estimates and/or evidence of their damages.[7] (*Id.*) The Court further found that, in light of the fact that expert discovery had not yet concluded, Defendants' argument that they were entitled to judgment in their favor with respect to the issue of damages was premature.[8] (*Id.*) The Court, therefore, denied Defendants' Motion for Summary Judgment with respect to the issue of damages without prejudice subject to refiling after the close of expert discovery.[9] (*Id.*)

The Court did, however, grant summary judgment in Defendants' favor with respect to Baron's and Stephenson's breach of contract claims. (*Id.* at pp. 33-35.) The Court reached this conclusion because Defendants came forward with evidence that Baron and Stephenson did not have employment contracts with Family Solutions, and Baron and Stephenson failed to rebut this evidence. (*Id.* at p. 33-35.)

---

[7] In October 2020, Plaintiffs produced the expert report of forensic labor economist, Dr. Shane Thompson, regarding damages. (Doc. No. 99-7.)

[8] Specifically, the Court found that: "Plaintiffs are not precluded from introducing evidence regarding the fact that they suffered damages and/or the specific amount of their damages. As noted above, the expert discovery period has not concluded and, in fact, is stayed. . . . Dr. Thompson may need to supplement his expert report once the stay is lifted. In addition, at that time, Defendants will have the opportunity to depose Dr. Thompson and fully question him about the basis for his opinion and the documents and information that he relied on." (*Id.* at p. 40.)

[9] As noted *supra*, Defendants also moved to strike the report of Plaintiff's expert, Dr. Thompson, on the grounds that "it is premature, as it was produced days before the [Briefs in] Opposition [to Summary Judgment] and without providing Defendants with an opportunity to conduct discovery with respect thereto." (Doc. No. 107 at p. 2.) Defendants further argued that Dr. Thompson's report should be stricken because "expert discovery has not concluded and Dr. Thompson has not been deposed regarding his opinion." (*Id.* at pp. 11-12.) The Court likewise denied this Motion without prejudice. (Doc. No. 137 at p. 41.)

11

As of the date of this Opinion, then, the only remaining pending motion is Plaintiffs' Motion for Rule 23 Certification of a State-Law Class under Rule 23(a) and (b)(3).  (Doc. No. 70.) Defendants filed a Brief in Opposition on September 1, 2020, to which Plaintiffs replied on September 8, 2020.  (Doc. Nos. 87, 91.)  In addition, Defendants filed a Sur-Reply on November 5, 2020, in which they argued that the report of Plaintiffs' expert Dr. Thompson (which had only recently been produced) demonstrated that Plaintiffs' state law claims predominate over the FLSA claim.  (Doc. No. 117.)

As Plaintiffs had not had an opportunity to respond to Defendants' arguments regarding the impact, if any, of Dr. Thompson's expert report on the parties' arguments relating to Rule 23 certification, the Court ordered the parties to submit simultaneous supplemental briefing.  (Doc. No. 139.)  The parties were directed to address what bearing, if any, Dr. Thompson's expert report has on the issue of whether this Court should exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c)(2).  (*Id.*)  The parties were also asked to address the impact, if any, of Dr. Thompson's expert report on the Rule 23 factors, in particular the factors of commonality, predominance, and superiority.  (*Id.*)  The parties submitted their Supplemental Briefing on March 26, 2021.  (Doc. Nos. 141, 142.)

## III.    Analysis

In their Motion, Plaintiffs ask this Court to certify a state law class under Fed. R. Civ. P. 23(a) and (b)(3) consisting of both QMHSs and Therapists.  (Doc. Nos. 69, 70.)  Plaintiffs assert the following five state claims on behalf of the proposed Rule 23 class: (1) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, art. II, § 34a; (2) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03; (3) violations of the OFMWA's record-

keeping requirement; (4) breach of contract; and (5) unjust enrichment.  (Doc. No. 69 at p. 3.)

Plaintiffs assert that certification under Fed. R. Civ. P. 23(a) and (b)(3) is appropriate because the

proposed class of QMHSs and Therapists satisfies the requirements of numerosity, commonality,

typicality, adequacy of representation, predominance, and superiority.  (*Id.* at pp. 9-15.)

Defendants argue that Plaintiffs' Motion should be denied for several reasons.  First,

Defendants argue that Plaintiffs' Motion is untimely because it was filed "on the eve of the

conclusion" of fact discovery and well after the deadline for seeking conditional certification of the

FLSA class.  (Doc. No. 87 at pp. 15-16.)  Second, Defendants argue that this Court should decline to

exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(2) because Plaintiffs' state law claims

substantially predominate over their FLSA claim.  (*Id.* at pp. 16-18.)  Third, Defendants argue that,

as matter of law, a Rule 23 state law class cannot be maintained in the same action as a FLSA

collective action.  (*Id.* at pp. 18-20.)  Fourth, and finally, Defendants argue that Plaintiffs cannot meet

any of Rule 23's requirements because individualized questions predominate, the class size is too

small, and neither the class representatives nor class counsel are adequate.  (*Id.* at pp. 20-25.)

The Court will address the parties' arguments in turn, below.

A.      **Scope of Rule 23 Motion**

As a preliminary matter, the Court first addresses Plaintiffs' inclusion of hourly Therapists in

their Motion for Rule 23 Certification.  (Doc. No. 70.)  As discussed *supra,* in its November 4, 2020

Opinion, this Court carefully considered and denied Plaintiffs' Motion to Modify the FLSA

Conditional Collective Action to include hourly Therapists.  (Doc. No. 116.) For largely the same

reasons set forth in that Opinion, the Court likewise declines to certify a state law class under Rule

23 consisting of hourly Therapists.  Plaintiffs have offered no plausible explanation for their failure

to timely move to amend the proposed Rule 23 class definition to include hourly Therapists. Moreover, Defendants will be unduly prejudiced by certifying a state-law class of hourly Therapists at this time.  Defendants assert (and Plaintiffs do not contest) that there has been little to no fact discovery regarding Therapists/Outpatient Clinicians to date.  Defendants further assert (and Plaintiffs do not contest) that, if Plaintiffs' Motion were to be granted with respect to the hourly Therapists, a new roster would have to be compiled and the parties would have to begin written and deposition discovery anew regarding the Therapist position.  Essentially, this case would be placed back where it was over a year and a half ago, in September 2019.

The Court declines to do so for the reasons explained in its November 4, 2020 Opinion.  (Doc. No. 116 at pp. 27-29.)  Accordingly, Plaintiffs' Motion for Rule 23 Certification is denied to the extent it asks the Court to include hourly Therapists in the state-law class.  The Court's analysis going forward, therefore, applies solely with respect to Plaintiffs' request to certify a Rule 23 state-law class consisting of QMHSs.  In addition, as the Court recently granted summary judgment in Defendants' favor with regard to Plaintiffs Baron's and Stephenson's individual breach of contract claims (Doc. No. 137), the Court denies Plaintiffs' Motion for Rule 23 Certification to the extent it includes a class-action breach of contract claim.

**B.** **Timeliness of Plaintiffs' Motion**

Defendants first argue that Plaintiffs' Motion should be denied as untimely.  (Doc. No. 87 at pp. 15-16.)  Defendants note that the Court's original case schedule required Plaintiffs to file a motion for conditional certification by no later than February 28, 2019.  (*Id*.)  Defendants assert that, although Plaintiffs timely filed a Motion to Conditionally Certify the FLSA Class, Plaintiffs did not seek to certify a Rule 23 class at that time and did not raise the issue of filing a Rule 23 motion until over a

year later, in June 2020.  (*Id.*)  Defendants argue that, by that time, the FLSA notice period had closed and discovery "was on the eve of conclusion."  (*Id.*)  Defendants argue that they would be severely prejudiced by allowing conditional certification of a state-law class at this time.  (*Id.*)

Plaintiffs argue that their Motion is timely.  (Doc. No. 91 at pp. 1-3.)  Plaintiffs note that, while conditional certification under the FLSA generally occurs at the beginning of discovery, class certification under Rule 23 is a post-discovery issue that requires a rigorous analysis of the evidence. (*Id.*)  Plaintiffs assert that, for reasons beyond their control (including delays associated with the Covid-19 pandemic), they were unable to obtain discovery necessary for their Rule 23 Motion until June 2020.  (*Id.*)  Specifically, Plaintiffs assert that, despite repeated requests, Defendants did not produce documents bearing on Rule 23 issues until June 3, 2020 and did not produce their Rule 30(b)(6) witness (i.e., Defendant Smith) for deposition until June 24, 2020.  (*Id.*)  Plaintiffs note that they promptly filed their Rule 23 Motion shortly thereafter on July 31, 2020, in which they rely heavily on Defendant Smith's Rule 30(b)(6) deposition testimony.  (*Id.*)  Under these circumstances, Plaintiffs argue that their Motion is timely and should not be denied on that basis.

For the following reasons, the Court finds that Plaintiffs' Motion is not untimely.  First and foremost, Plaintiffs' Motion was timely filed under this Court's July 7, 2020 scheduling Order.  On that date, the parties filed a Joint Motion for Adoption of Proposed Scheduling Order, in which they *jointly* proposed a filing deadline of July 31, 2020 for Plaintiffs' Rule 23 class certification motion. (Doc. No. 59.)  The Court granted the Motion that same day and set a Rule 23 Motion deadline of July 31, 2020.  *See* Non-Document Order dated July 7, 2020.  Plaintiffs did, in fact, file their Rule 23 Motion on July 31, 2020.  It is, therefore, not untimely under the deadline jointly requested by the parties and adopted by this Court.

15

Second, the Court rejects Defendants' argument that (even though no previous deadline had been set and both parties proposed and agreed to a July 31, 2020 deadline) Plaintiffs' Motion should nonetheless be denied as untimely because it should have been filed earlier in the litigation.  As noted *supra,* resolution of Plaintiffs' Rule 23 Motion requires a "rigorous analysis" of the evidence regarding the Rule 23(a) and (b)(3) factors.  *See e.g., Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  For this reason, the parties jointly proposed, at various times during this litigation, that any deadline for Rule 23 briefing occur after a nine-month period of discovery.  Specifically, in their Parties' Planning Reports submitted on February 11, 2019 and October 1, 2019, the parties "proposed a period of nine months after the [CMC] . . . for non-expert discovery on merit issues and Rule 23 class-certification requirements."  (Doc. No. 10 at p. 2; Doc. No. 23 at p. 2.)  Indeed, Defendants themselves argued that "any motion for [Rule 23] certification should come after the deposition of the named Plaintiff."  (Doc. No. 54 at p. 4.)

Here, discovery was delayed for various reasons, including as a result of restrictions relating to the Covid-19 pandemic.  Defendants' deposition of the named Plaintiffs, for example, did not occur until July and August 2020, and Plaintiffs' deposition of Defendant Smith did not occur until late June 2020.  (Doc. Nos. 113-1, 114-1, 115-1.)  After Plaintiffs obtained documents and deposition testimony relevant to Rule 23 certification issues, they promptly filed their Rule 23 Motion on July 31, 2020.  Under these circumstances, the Court is not persuaded that Plaintiffs' Motion is untimely.  Defendants' argument to the contrary is without merit and denied.

### B.    Supplemental Jurisdiction

This Court begins by noting that it has original jurisdiction over Plaintiffs' FLSA claim because it arises under federal law.  *See* 28 U.S.C. 1331 ("The district courts shall have original

jurisdiction of all civil action arising under the Constitution, laws, or treaties of the United States.")
In order to consider Plaintiffs' state claims, the Court must be able to exercise supplemental
jurisdiction under 28 U.S.C. § 1367.[10]

Section 1367(a) provides that "the district courts shall have supplemental jurisdiction over all
other claims that are so related to claims in the action within such original jurisdiction that they form
part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C.
§ 1367(a).  Claims "form part of the same case or controversy" when they "derive from a common
nucleus of operative fact" and "are such that [the plaintiff] would ordinarily be expected to try them
all in one judicial proceeding."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  In
the instant case, it is undisputed that Plaintiffs' state law claims derive from a "common nucleus of
operative fact" and, therefore, form "part of the same case or controversy" for purposes of § 1367(a).

However, a district court may nonetheless, in its discretion, decline supplemental jurisdiction
over state law claims even if jurisdiction would otherwise be proper under § 1367(a).  Specifically, §
1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related
state claims if:

> (1) the claim raises a novel or complex issue of State law,
>
> **(2) the claim substantially predominates over the claim or claims over which the
> district court has original jurisdiction,**
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining
> jurisdiction.

---

[10] The parties agree that the statutory basis for this Court's jurisdiction over all of Plaintiffs' state law claims is
supplemental jurisdiction, set forth in 28 U.S.C. § 1367.

17

28 U.S.C. § 1367 (emphasis added).

"[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction." *Pinney Dock & Transp. Co. v. Penn Cent. Corp*., 196 F.3d 617, 620 (6th Cir. 1999) (internal quotation marks and citation omitted). That "wide latitude" in determining whether to retain jurisdiction over state claims is not restricted to instances where all claims over which the district court has original jurisdiction are dismissed under § 1367(c)(3), but extends to cases in which state law "predominates" under § 1367(c)(2). *See Ohio ex rel. Armstrong v. Stow-Munroe Falls CSD Bd. of Educ*., 2013 WL 5406807 at * 2 (N.D. Ohio Sept. 25, 2013) (citing *Dashields v. Robertso*n, 2000 WL 564024 at *3 (4th Cir. May 10, 2000) (per curiam)). In exercising its discretion, a district court can consider such factors as judicial economy, convenience, fairness and comity. *Pinney*, 196 F.3d at 620. "Although there appears to be no definitive test to determine whether state law predominates over federal claims, courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether [the] state law claims involve proof that is not needed to establish the federal law claims." *Williamson v. Recovery Ltd. P'ship*, 2009 WL 649841, at *9 (S.D. Oh. March 11, 2009). *See also Reed v. Pape Management Inc*., 2016 WL 5405248 at * 4 (N.D. Ohio Sept. 28, 2016).

Defendants argue that this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state claims on the grounds that those claims substantially predominate over the federal FLSA claim. (Doc. No. 87 at pp. 16-18.) While acknowledging that Plaintiffs' state law overtime and minimum wage claims (Counts Two and Three) are similar to the FLSA claim, Defendants argue that Plaintiffs' remaining state law claims for unjust enrichment and violation of Ohio's recordkeeping statute (Counts Four and Six) contain different elements, different sets of facts,

different burdens of proof, and provide for different damages.  (*Id*.)  Defendants further argue that there is a "substantial disparity" in the number of federal versus state plaintiffs, noting there are only 28 individuals in the FLSA collective class but potentially over 150 members of the Rule 23 class. (*Id*.)

Plaintiffs argue that the exercise of supplemental jurisdiction is appropriate in the instant case. (Doc. No. 91 at pp. 4-6.)  They assert that "[f]or at least the last ten years, courts roundly and routinely permit Rule 23 certification of state-law classes in FLSA collective actions."  (*Id*. at p. 4) (citing cases).  Plaintiffs recognize that the number of Rule 23 class members will usually "dramatically exceed" the FLSA collective group but argue that courts have nonetheless increasingly found that hearing the state and federal claims together promotes judicial economy.  (*Id*. at p. 5.)

In their Sur-Reply, Defendants argue that Plaintiffs' unjust enrichment and Ohio recordkeeping claims raise "new factual and legal issues" from the FLSA claim and, therefore will require different proof and additional discovery.  (Doc. No. 117 at pp. 2-5.)  Defendants argue that "the more than 100 new class members would have to prove that they worked hours beyond those reported to Family Solutions," which is a highly individualized inquiry that will necessitate "substantial and lengthy discovery into the employment histories of more than 100 new plaintiffs." (*Id*. at p. 5.)

In their Supplemental Briefing, Plaintiffs argue that the same evidence supports both the Ohio claims and the FLSA claims and that "negligible additional discovery" will be necessary.  (Doc. No. 141 at p. 3-4.)  In particular, Plaintiffs assert that Dr. Thompson's expert report already addresses Plaintiffs' state law claims as it pertains to both the FLSA Plaintiffs and the potential Rule 23 class members.  (*Id*. at p. 1.)  Plaintiffs state that, at most, Dr. Thompson would need employment dates

19

and wage rates for the additional Rule 23 class members, as well as a "small sample" of available time and pay records for between 10 and 20 employees.  (*Id.* at p. 4.)  In response, Defendants argue that damages in the instant case are highly individualized and Dr. Thompson's expert report cannot be used as a proxy for the Rule 23 Class Members.  (Doc. No. 142.)  Defendants maintain that they (i.e., Defendants) will need to serve written discovery on, and take the deposition of, every single FLSA and Rule 23 class member which could take "several years."  (*Id.* at p. 10.)

For the following reasons, the Court finds that Plaintiffs' state law claims do not substantially predominate over the FLSA claim.  Defendants themselves acknowledge that two of Plaintiffs' four remaining state law claims (i.e., Plaintiffs' claims for alleged violations of Ohio's minimum wage and overtime violations) are similar to the FLSA claim in terms of their elements and the relevant facts and evidence.  (Doc. No. 87 at p. 17.)  Moreover, while the elements of Plaintiffs' unjust enrichment claim are not identical to the FLSA claim, this claim is largely premised on the same evidence as the federal claim, i.e., evidence that Defendants failed to pay QMHSs for travel time, no show appointments, and time spent entering documentation into patient records.  With regards to liability, then, Defendants have not demonstrated that Plaintiffs' unjust enrichment claim is so different from the FLSA claim that it would "substantially predominate" for purposes of § 1367(c)(2).[11]  Further, while Plaintiffs' Ohio record-keeping claim differs in some respects from the

---

[11] Defendants argue that Plaintiffs' unjust enrichment claim will necessitate a "highly individualized inquiry" because "a plaintiff is entitled to damages for unjust enrichment only if there is not a[n] express contract between the parties." (Doc. No. 142 at p. 8-9.)  Defendants provide no further elaboration of this point, but the Court presumes that Defendants are arguing that this claim substantially predominates because the Court will be required to determine, for each putative class member, whether or not there exists an express contract between that class member and Family Solutions.  The Court rejects this argument.  During summary judgment briefing, Defendants presented evidence that "[a]] QMHS employees are at-will employees."  (Doc. No. 89-1 at ¶¶ 27, 28.) This evidence included the 2016 and 2017 Family Solutions' employee handbooks, both of which contain an at-will disclaimer. (Doc. No. 89-1 at PageID# 1593, 1594.)  Plaintiffs did not come forward with any evidence to the contrary.  Thus, based on the record currently before it, the Court is not

FLSA claim, the Court is not persuaded that, under the circumstances presented, this state claim is so distinct that it would necessarily predominate over the federal claim.  Indeed, to a certain extent, Plaintiffs' claim that Defendants failed to maintain employee time records draws from the same body of evidence that has already been the subject of discovery with regard to Plaintiffs' federal claim.[12]

Nor is the Court persuaded that the exercise of supplemental jurisdiction is inappropriate because of the disparity in class size between the FLSA and potential Rule 23 classes.  "A simple disparity in numbers should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action." *Ervin v. Os Restaurant Services, Inc.,* 632 F.3d 971, 980-981 (7th Cir. 2011).  *See also Shahriar v. Smith & Wollensky Restaurant Group, Inc.,* 659 F.3d 234, 248 (2nd Cir. 2011) ("[W]e agree with our sister circuits that the fact that there are more class members in the state law class action than those in the FLSA collective action 'should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action, as section 1367(c) uses that phrase.'") (collecting cases).  Rather, "'[p]redomination under section 1367 generally goes to the type of claim, not the number of parties involved.'" *Ervin,* 632 F.3d at 980-981 (quoting *DeAsencio v. Tyson Foods, Inc*., 342 F.3d 301, 311 (3rd Cir. 2003)).  Here, as noted above, the Court finds that two of Plaintiffs' state law claims essentially replicate the FLSA claim and the remaining two state claims rely on much of the same evidence and proof.  Plaintiffs' state claims are, therefore, not so distinct that they "substantially predominate" over the FLSA claim.  In any event, the Court

---

persuaded that Plaintiffs' class action unjust enrichment claim will necessitate a "highly individualized inquiry" regarding this issue.

[12] The Court notes that, in some respects, this claim is intertwined with issues relating to Plaintiffs' FLSA and state law wage and hour claims, as Plaintiffs assert that Defendants' failure to maintain employee time records allows them to rely on representative evidence of damages.

21

notes that, in this case, there are approximately 28 participants in the FLSA collective action and potentially 150 additional individuals that might participate in the proposed Rule 23 class.  Courts have found that a disparity of this size does not rise to the level of substantial predomination.  *See, e.g, Ervin*, 632 F.3d at 981 (finding exercise of supplemental jurisdiction appropriate where there were 30 FLSA plaintiffs and potentially 180 to 250 Rule 23 class members).

Finally, the Court is not persuaded by Defendants' arguments that Plaintiffs' state law claims substantially predominate because an extensive amount of additional discovery will be necessary.  As an initial matter, the Court is not persuaded that any significant additional discovery will be necessary with regard to liability issues associated with Plaintiffs' state law claims.  The only question is whether, and to what degree, additional discovery may be necessary with respect to damages.   As noted above, Plaintiffs themselves are not asking for a significant amount of additional discovery.  Rather, Plaintiffs maintain that Dr. Thompson's damages estimates for the FLSA plaintiffs also apply to the putative Rule 23 class.  (Doc. No. 141.)  Specifically, Plaintiffs argue that, in light of Defendants' failure to keep records regarding the amount of time QMHSs spent traveling between clients and dealing with no show appointments, Plaintiffs are entitled to prove their claims by representative evidence.  (*Id.* at p. 4-9.)  Defendants counter that representative evidence is not appropriate in this case because of the highly individualized nature of each QMHSs' potential damages.  (Doc. No. 142.)

The Court is not persuaded that significant additional discovery regarding damages will necessarily be required.  Both the Supreme Court and the Sixth Circuit have found that, if admissible and otherwise appropriate under the circumstances, representative evidence may be used in calculating collective and class action damages, particularly where (as here) the defendant employer

failed to maintain employee time records.  *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct.

1036, 1046 (2016) (in FLSA collective action and Rule 23 class action case, noting that "[i]n many

cases, a representative sample is the only practicable means to collect and present relevant data

establishing a defendant's liability"); *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 747-

748 (6th Cir. 2019).  As expert discovery is not complete, the Court is not deciding, at this time,

whether Dr. Thompson's expert report will ultimately be deemed appropriate and/or admissible in

this action.  However, in light of the fact that Plaintiffs have come forward with representative

evidence and assert that that evidence will apply equally to putative Rule 23 class members, the Court

is not persuaded that certification of a Rule 23 class will necessarily require the time-consuming,

years-long, individualized discovery that Defendants direly predict.[13]

Accordingly, the Court finds that Plaintiffs' Rule 23 state law claims do not substantially

predominate over their FLSA claim for purposes of 28 U.S.C. § 1367(c)(2).  The Court finds that

considerations of judicial economy, convenience, and fairness weigh in favor of exercising

supplemental jurisdiction over Plaintiffs' Rule 23 state law claims.  *See e.g., Shahriar,* 659 F.3d at

248 (after lengthy analysis and discussion, finding that district court in FLSA case did not abuse its

---

[13] The Court also rejects Defendants' argument that, "if the Court believes the expert report is relevant to [Plaintiffs' Rule 23] Motion[], Defendants should be permitted to depose the expert prior to this Court's rulings." (Doc. No. 142 at p. 1.) As an initial matter, it is *Defendants* who initially raised the relevance of Dr. Thompson's expert report to the pending Rule 23 Motion in their Sur-Reply, filed November 5, 2020.  (Doc. No. 117.) Nowhere in that Sur-Reply do Defendants suggest that they need to depose Dr. Thompson prior to the Court's ruling on the Rule 23 Motion or request the opportunity to do so.  Nor did Defendants raise this issue during the status conference with the Court two months later, on January 8, 2021.  To the contrary, during that conference, the parties *jointly* requested that the Court *stay* expert discovery.  *See* Minutes of January 8, 2021 Status Conference.  When this joint request was made, Defendants were well aware that this Court intended to rule on the pending summary judgment and Rule 23 motions prior to the next status conference, scheduled for April 2021.  In sum, at no point in time since Plaintiffs filed their Rule 23 Motion over seven months ago have Defendants stated that they needed to depose Dr. Thompson prior to a ruling on that motion.  It was not until Supplemental Briefing was recently filed on March 29, 2021 that Defendants first made this request, after only having recently requested a stay of all expert discovery in this matter.  Under the circumstances presented, Defendants' suggestion that Dr. Thompson's deposition is necessary to a resolution of the instant Motion is disingenuous, at best.  Defendants' request is denied.

discretion in exercising supplemental jurisdiction over Rule 23 state law claims); *Ervin,* 632 F.3d at 973-978 (same).

    **C.**    **Whether a State Law Rule 23 Class Can be Maintained in the Same Action as a FLSA Class**

Defendants next argue that "the Rules Enabling Act precludes Plaintiffs from maintaining an FLSA class action and an opt-out state law class in the same proceeding." (Doc. No. 87 at p. 18.) Relying principally on *Dillworth v. Case Farms Processing, Inc*., 2009 WL 2766991 (N.D. Ohio Aug. 27, 2009), Defendants argue that allowing a Rule 23 class in this action "would 'abridge and modify the substantive rights under the FLSA's opt-in requirement' and is precluded by the Rules Enabling Act." (*Id*.)

Plaintiffs argue that "this is simply not the law" and assert that "courts now roundly permit Rule 23 certification of state law classes in FLSA collective actions. (Doc. No. 91 at pp. 6-7.) Citing decisions from the Second, Third, Seventh, Eleventh and D.C. Circuits (as well as several unreported district court decisions from this Circuit), Plaintiffs maintains that there is no "inherent incompatibility" between FLSA and Rule 23 certification and, further, that the Rules Enabling Act does not preclude courts from maintaining an FLSA collective action alongside a Rule 23 class. (*Id*.)

The Court agrees with Plaintiffs. As an initial matter, the principal case relied upon by Defendants, *Dillworth v. Case Farms Processing, supra*, is of limited relevance in light of the fact that it was subsequently vacated by the presiding District Judge.[14] *See Dillworth v. Case Farms*

---

[14] Specifically, the Court in *Dillworth* granted the plaintiffs' motion for reconsideration and vacated that portion of its opinion stating that "Ohio's overtime statute allows only for an opt-in action similar to a collective action under [the] FLSA." *Id. See also Hurt v. Commerce Energy, Inc*., 2013 WL 4427255 at * 1 (N.D. Ohio Aug. 15, 2013) (noting that *Dillworth* was vacated on reconsideration). In addition, despite its concerns regarding the Rules Enabling Act, the *Dillworth* Court nonetheless approved the parties' settlement of both the Plaintiffs' FLSA and Rule 23 class claims. *Dillworth*, 2010 WL 776933 at * 3-6. The Court is troubled that Defendants failed to acknowledge these developments

24

*Processing, Inc.,* 2010 WL 776933 at * 9 (N.D. Ohio March 8, 2010).  Moreover, while the Sixth Circuit has not directly addressed this issue, numerous Circuit Courts of Appeals have determined that there is no inherent conflict between an opt-in collective action under the FLSA and an opt-out class under Rule 23.  *See, e.g., Knepper v. Rite Aid Corp.,* 675 F.3d 249, 259-262 (3rd Cir. 2012) ("[W]e disagree with the conclusion that jurisdiction over an opt-out class action based on state-law claims that parallel the FLSA is inherently incompatible with the FLSA's opt-in procedure. Nothing in the plain text of § 216(b) addresses the procedure for state-law claims, nor, in our view, does the provision's legislative history establish a clear congressional intent to bar opt-out actions based on state law.") *Shahriar*, 659 F.3d at 247-250 (finding that nothing in the language or legislative history of the FLSA prevents the exercise of supplemental jurisdiction over Plaintiffs' state law wage claims); *Ervin*, 632 F.3d at 973–74, 978 (looking to the plain language of the FLSA and concluding that "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA"); *Lindsay v. Gov't Employees Ins. Co*., 448 F.3d 416, 424–25 (D.C. Cir. 2006) (holding that the opt-in collective action provision of FLSA did not expressly prohibit the exercise of supplemental jurisdiction over the New York Minimum Wage Act claims of opt-out class members.)

In addition, district courts in this Circuit have also rejected the argument that an FLSA collective action and Rule 23 class action may not be maintained in the same lawsuit.  *See, e.g.,*

---

in their Briefing before this Court.  Defense counsel are hereby reminded that they have a duty of candor to this Court, which includes the obligation to advise the Court when cases relied upon in briefing have been vacated or otherwise limited in scope.  *See* Ohio Rule of Professional Conduct 3.3 ("(a) A lawyer shall not knowingly do any of the following: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel….").

*Waters v. Pizza to You, LLC,* 2021 WL 229040 at * 5 (S.D. Ohio Jan. 22, 2021) (""It is well-settled that employees in Ohio can maintain a Rule 23 class relating to their Ohio claims while simultaneously representing a 29 U.S.C. § 216(b) collective action relating to their FLSA claims.") (quoting *Ganci v. MBF Inspection Servs., Inc.,* 323 F.R.D. 249, 264 (S.D. Ohio 2017)); *Dillow v. Home Care Network*, 2017 WL 2418738 at * 5 (S.D. Ohio June 5, 2017) (same). *See also Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 181, 187 (S.D. Ohio 2012); *Castillo v. Morales*, 302 F.R.D. 480, 486-7 (S.D. Ohio 2014); *Laichev v. JBM, Inc*., 269 F.R.D. 633, 642 (S.D. Ohio June 19, 2008); *Hurt.,* 2013 WL 4427255 at *1; *Peterson v. Cleveland Inst. Of Art*, 2011 WL 1297097 at *12 (N.D. Ohio Mar. 31, 2011).

Accordingly, Defendant's argument that a Rule 23 Class Action and FLSA Collective Action cannot be maintained in the same action, is without merit and rejected.

### D.      Rule 23 Certification

The Court now turns to the merits of Plaintiff's request for certification under Fed. R. Civ. P. 23.  To obtain class certification under that Rule, Plaintiffs must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  "These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *In re Whirlpool Corp. Front- Loading Washer Products Liability Litigation*,

26

722 F.3d 838, 850 (6th Cir. 2013).  *See also Zehentbauer Family Land LP v. Chesapeake Exploration LLC,* 935 F.3d 496, 503 (6th Cir. 2019).

In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b).  *In re Whirlpool*, 722 F.3d at 850.  *See also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).   Here, Plaintiffs seek class certification under Rule 23(b)(3), which requires the district court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently.  *In re Whirlpool*, 722 F.3d at 850.  Plaintiffs carry the burden to prove that the class certification prerequisites are met.  *Id.* In addition, Plaintiffs, as class representatives, are required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent.  *Id.*

 "Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Comcast Corp.*, 569 U.S. at 33 (citations and internal quotation marks omitted). "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'"  *Id.* at 33–34 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). "That is so because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 34 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 351). This rigorous analysis is not, however, a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  *See also Zehentbauer Family Land*, 935 F.3d at 503.

A district court has broad discretion to decide whether to certify a class under Rule 23.  *See Hicks v. State Farm Fire and Casualty Company*, 965 F.3d 452, 457 (6th Cir. 2020); *In re Whirlpool*, 722 F.3d at 850.

### 1.    Numerosity

To prove numerosity, a plaintiff must demonstrate that the putative class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir.1996) (citing *Senter v. Gen. Motors Corp*., 532 F.2d 511, 523 n. 24 (6th Cir.1976).  Although "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative*." McGee v. East Ohio Gas Co*., 200 F.R.D. 382, 389 (S.D. Ohio 2001) (quotation and citations omitted).  The Sixth Circuit has held that "'substantial' numbers of affected [class members] are sufficient to satisfy this requirement." *In re Whirlpool*, 722 F.3d at 852.

Here, the precise size of the putative Rule 23 class is not entirely clear.  Plaintiffs note that the Roster provided by Defendants lists 239 individuals who were employed as QMHSs at Family Solutions from September 16, 2016 and September 16, 2019.  (Doc. No. 70 at p. 11.)   Defendant Smith, however, testified in deposition that some of the employees listed were not, in fact, QMHSs and were erroneously included on the Roster.  (Smith Depo. (Doc. No. 114) at Tr. 260-262.)  Notably, Smith acknowledged that, even subtracting the employees who were mistakenly included, the Roster

would still have over 150 individuals who were employed as QMHSs during the relevant time period.[15]  (*Id.*)

The Court finds a putative class of approximately 150 individuals is adequate to show impracticability of joinder and, therefore, satisfy the numerosity requirement.  *See, e.g., Guy v. Lexington-Fayette Urban County Gov't,* 488 Fed. Appx. 9, 22 (6th Cir. 2012) (stating that "[a] class of twenty or fewer is usually insufficiently numerous."); *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (finding the numerosity requirement satisfied when the class definition encompassed forty individuals); *Kelly v. Montgomery Lynch & Assocs., Inc*., 2007 WL 4562913 at *3 (N.D. Ohio Dec. 19, 2007) (finding fifty class members would be sufficient to satisfy the numerosity requirement).

### 2.    Commonality

The second Rule 23(a) factor is "commonality."  The Sixth Circuit has explained this factor as follows:

> A class action may be maintained if "there are questions of law or fact common to the class" and the plaintiffs' claims "are typical of the claims ... of the class." Fed. R. Civ. P. 23(a)(2) & (a)(3). To demonstrate commonality, plaintiffs must show that class members have suffered the same injury.  *Dukes*, 131 S.Ct. at 2551. "Their claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit. *Id*.

---

[15] In their Brief in Opposition, Defendants argue that the Rule 23 class "will consist of only approximately 22 individuals." (Doc. No. 87 at p. 20.) Defendants appear to be confusing the employees who opted in to the FLSA Collective Action, with the potential members of the Rule 23 Class which includes all eligible employees who do not timely opt out. Relevant here is the size of the putative Rule 23 opt-out class, not the FLSA opt-in collective class.

*In re Whirlpool,* 722 F.3d at 852-853.  Commonality is "not required on every question raised in a class action." *Swigart,* 288 F.R.D. at 183.  Rather, there is commonality "when the legal question linking the class members is substantially related to the resolution of the litigation . . . Individual class members need not be 'identically situated' to meet the commonality requirement." *Id.  See also Myers v. Marietta Memorial Hospital,* 2017 WL 3977956 at * 5 (S.D. Ohio Sept. 11, 2017).

Plaintiffs argue that commonality is satisfied because all putative QMHS class members were required to travel and enter documentation into patient records every day and used the same billing sheets to record their time.  (Doc. No. 70 at p. 11.)  Plaintiffs further assert that all putative QMHS class members were subject to the same policies governing their compensation for travel time and documentation time and have the same claims for Defendants' failure to compensate them for this time.  (*Id.* at pp. 11-12.)

Defendants argue that commonality is not satisfied because there are "serious individual and unique issues which preclude a common question of fact or law." (Doc. No. 87 at p. 21.)  Specifically, Defendants maintain that "each QMHS employment was significantly different" depending on each particular QMHS' supervisor, patient load, patient base, and experience level.  (*Id.*)  For example, Defendants assert that each Clinical Supervisor provided management training differently and "will handle patient work reporting differently." (*Id.*)  Defendants further state that some QMHSs have a large patient base and, therefore, may be able to limit travel time and days worked; whereas others with a smaller patient base "may have to travel more and work additional days in order to meet the full-time unit requirement." (*Id.*)

In response, Plaintiffs assert that QMHSs were treated identically with regard to compensation and timekeeping policies, regardless of what location they worked in, who their supervisor was, or

how many patients they had.  (Doc. No. 91 at p. 9.) Indeed, Plaintiffs note that Defendant Smith herself testified that all QMHSs (1) spent time travelling between clients and entering documentation into patient records; and (2) were subject to the same rules with respect to the payment for travel time and time spent entering documentation.  (*Id*. at p. 10.)

For the following reasons, the Court finds that the commonality factor is satisfied.  All of the putative class members share the same job title (i.e., QMHS) and were required, as part of their job duties, to spend time travelling between clients, entering documentation into patient records, and dealing with no show appointments.  (Smith Depo. (Doc. No. 114-1) at Tr. 262-263.)  All putative class members recorded their time on time sheets which were completed according to the protocols set forth in Family Solutions' employee handbook.  (*Id*. at Tr. 155-156.)  Defendant Smith herself testified that all QMHSs were subject to the same timekeeping and pay policies with respect to time spent travelling and entering documentation into patient records.  (*Id*. at Tr. 250-251, 263.)

In addition, former Clinical Supervisors Pryor, Winston and Creamer (each of whom worked in different office locations) aver that Family Solutions had "a uniform policy for timekeeping and compensation of . . . hourly QMHSs with respect to time spent writing and reviewing client notes and documentation, on work-related travel, or for waiting and notating files regarding client no-shows." (Doc. No. 100-5 at PageID#s 2254-2255, 2257-2258, 2260-2261.)  Specifically, Pryor, Winston, and Creamer aver that they were each instructed "not to approve, for insurance or compensation" time logged by QMHSs for any of these activities.  (*Id*. at PageID#s 2253-2254, 2256-2257, 2260.) Winston and Creamer also aver that "[m]any hourly employees at Family Solutions of Ohio complained about not getting paid for writing and reviewing client notes and documentation, work related travel time, and no-shows." (*Id*. at PageID# 2257, 2260.)  They state that "[t]hose employees'

31

complaints were regularly discussed with [Family Solutions]" but none of these complaints were ever rectified. (*Id.*)

Notably, Defendants have not directed this Court's attention to any contrary evidence from other current or former Clinical Supervisors that QMHSs were, in fact, instructed to record on their time sheets the time they spent traveling, documenting patient care, and/or dealing with no-show appointments.  Nor do Defendants direct this Court's attention to any evidence suggesting that, if a QMHS complained about this particular issue, it was escalated and rectified.  Moreover, while Defendant Smith avers generally that "training differed" depending on the Clinical Supervisor and/or office location, she does not aver that QMHSs were subject to different timekeeping *policies* depending their office locations and/or Clinical Supervisors. To the contrary, Defendant Smith stated in deposition that all hourly QMHSs were subject to the same timekeeping and compensation policies, regardless of office location and/or Clinical Supervisor.  (Smith Depo. (Doc. No. 114-1) at Tr. 263.)

Accordingly, the Court rejects Defendants argument that commonality is not satisfied because the putative class members worked in different locations and received training from different Clinical Supervisors.  *See* Smith Decl. dated March 26, 2021 (Doc. No. 142-1) at ¶¶ 38-40.  While the parties dispute whether or not QMHSs were permitted to enter time spent on these non-billable activities on their time sheets under Family Solutions' timekeeping and pay policies, the Court finds that resolution of this factual question will generate a common answer for all putative class members.

Moreover, the same central legal question is at issue with respect to all members of the putative Rule 23 Class: whether Defendants were required to compensate putative QMHS class members for time spent traveling between clients, dealing with no show appointments, and entering documentation into patient records.  Resolution of this central legal question on a class-wide basis

32

would "generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool*, 722 F.3d at 852-853.  Indeed, courts have certified classes presenting similar issues of law and fact. *See, e.g., Myers v. Marietta Mem'l Hosp.*, 2018 WL 4932087 at * 6-7 (S.D. Ohio Sept. 11, 2018) (finding commonality requirement met where plaintiffs argued that putative class members had all been injured by defendant's common policies and pay practices); *Laichev*, 269 F.R.D. at 639-642 (same).

Finally, the Court rejects Defendants' argument that commonality is not satisfied because variability in each QMHSs' patient load, patient base, and experience level significantly impact the number of hours each individual QMHSs spent travelling, entering documentation, and dealing with no shows.  To satisfy the commonality element, Plaintiffs need only show that they can prove that all putative class members suffered a common injury.  *See Rikos v. Proctor & Gamble*, 799 F.3d 497, 505 (6th Cir. 2015); *In re Sonic Corp. Customer Data Breach Litigation*, 2020 WL 6701992 at * 3 (N.D. Ohio) (stating that "for class certification [plaintiffs] need only show that they can prove that all class members suffered damage").  "'[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.'"  *Laichev*, 269 F.R.D. at 640 (quoting *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)).  Here, the Plaintiffs have sufficiently shown that they can prove that all putative QMHS class members have suffered a common injury as a result of Defendants' timekeeping and compensation policies relating to time spent traveling, entering documentation into patient records, and dealing with no show appointments.  Under the circumstances presented, any alleged variability in damages is not sufficient

grounds for finding a lack of commonality.  *See Laichev*, 269 F.R.D. at 640; *In re Sonic Corp. Consumer Data Breach Litigation*, 2020 WL 6701992 at * 3.

In sum, the Court finds that Plaintiffs' claims raise common factual and legal questions, the determination of which will resolve issues that are "central to the validity of each one of the [class] claims in one stroke." *Dukes*, 131 S.Ct. at 2551.  Accordingly, the Court concludes that commonality is satisfied.

### 3. Typicality

Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998) (*en banc*) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).  This requirement ensures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members.  *Id*.  Stated differently, "a claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1082 (6th Cir. 1996) (internal citations omitted)).  "[P]laintiffs must show that their injury arises from or is directly related to a wrong to the class, and that wrong includes the wrong to the plaintiff." *Bacon v. Honda of Am. Mfg., Inc*., 370 F.3d 565, 572(6th Cir. 2004) (internal citations omitted).

Defendants argue that typicality is not satisfied because Stephenson's and Baron's employments were "uniquely different from one another and from the QMHS opt-ins." (Doc. No. 87 at p. 22.)  Specifically, Defendants assert that Stephenson and Baron each worked in different locations

34

and had different Clinical Supervisors.  (*Id*.)  Defendants maintain that Baron's claims are not typical of the putative class because she was "a probationary employee who was only employed by Family Solutions of Ohio for nine weeks."  (*Id*.)  Defendants argue that Stephenson's claims are not typical because he had "many issues with his time and billing entries," including improperly failing to submit his time sheets for the final week leading up to his resignation despite admitting that he performed medical care during that week.  (*Id*.)  Finally, Defendants argue that typicality is not satisfied because both Stephenson and Baron submitted time sheets which include time spent on non-billable tasks and were paid for this time.  (*Id*.)

Plaintiffs argue that typicality is satisfied because Stephenson and Baron were "subject to Family Solutions' timekeeping and pay practices and challenge those practices on the same legal theories."  (Doc. No. 70 at p. 12-13.)  Plaintiffs acknowledge that Baron and Stephenson may have been paid for some non-billable time entries, such as for office meetings and supervision sessions. (Doc. No. 91 at p. 14.)  However, Plaintiffs assert that this does not change the fact that, just like the putative Rule 23 QMHS class members, they were not paid for non-billable time spent traveling, entering documentation, and dealing with no show appointments.  (*Id*.)  Further, Plaintiffs maintain that Defendants' various criticisms of Baron's and Stephenson's work performance have no bearing on typicality under Rule 23(a).  (*Id*.)

For the following reasons, the Court finds that typicality is satisfied.  Baron's and Stephenson's state law claims arise from the same practice that gives rise to the claims of the putative QMHS class members, i.e, Defendants' alleged policy of failing to pay QMHSs for time spent traveling, entering documentation, and dealing with no shows.  Moreover, Baron's and Stephenson's claims are based on the same body of evidence and the same legal theory as the putative class members'

35

claims.  The Court agrees with Plaintiffs that the fact that Baron and Stephenson may have been paid for non-billable time unrelated to travel, documentation, and no-show appointments is simply not relevant to the issue of typicality.  Nor is the allegation that Baron and Stephenson had "issues" with their time and billing entries.  Even assuming this to be the case, this does not change the fact that Baron's and Stephenson's claims arise from the same timekeeping and pay policy that gives rise to the claims of the putative class members.  Regardless of any "issues" they may have had with their time sheets, Baron's and Stephenson's "injury arises from or is directly related to a wrong to the class." *Bacon*, 370 F.3d at 572.

Lastly, the Court rejects Defendants' argument that Baron's claims are not typical of the class because she was a probationary employee and had only worked for Family Solutions for a short time. Baron testified in deposition that she spent time traveling between clients, entering documentation into clients' electronic health records, and dealing with no-show appointments; and was not paid for this time. *See* Baron Depo. (Doc. No. 113-1) at Tr. 64-65.  Thus, regardless of her short tenure at Family Solutions, Baron's claims arise from the same practice that gives rise to the claims of other class members and are based on the same body of evidence and the same legal theory.  *Beattie*, 511 F.3d at 561.

Accordingly, and for all the reasons set forth above, the Court finds that typicality is satisfied.

### 4.        Adequacy of Class Representation

As to adequacy of representation, the Court considers two factors: "(1) The representative must have common interests with the unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.  *See also Young*, 693 F.3d at 543; *Kritzer v. Safelite Solutions, Inc.*, 2012 WL

36

1945144 at * 4 (S.D. Ohio May 30, 2012).  Put another way, courts "review[ ] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted).  Adequate class representation is essential due to the preclusive nature of a class action judgment.  *See Elkins v. American Showa, In*c., 219 F.R.D. 414, 419 (S.D. Ohio 2002).

With regard to the adequacy of the named Plaintiffs as class representatives, the Court finds that Baron and Stephenson satisfy this element.  As discussed above, both Baron and Stephenson have common interests with the putative class members.  Both have actively participated in this case by answering Defendants' discovery requests and sitting for deposition.  Moreover, Baron and Stephenson each submitted Declarations in which they expressly aver that they "will continue to vigorously pursue the case on behalf of all class members."  (Doc. No. 69-4 at PageID#s 775, 781.)  Based on the above, the Court finds that Baron and Stephenson share a common interest with the rest of the class, as well as the desire and commitment to obtain compensation for the uncompensated time at issue in this case.  The adequacy element is, therefore, satisfied with respect to Class Representatives Baron and Stephenson.

The parties dispute whether proposed class counsel satisfies the adequacy of representation element.  Defendants argue that "Plaintiffs' counsel['s] conduct in this lawsuit ha[s] presented significant questions with respect to their knowledge of the law and their ability to adequately represent the proposed class."  (Doc. No. 87 at p. 25.)  Specifically, Defendants argue that Plaintiffs' counsel has failed to timely produce responsive discovery responses, documents, and evidence of damages.  (*Id.* at pp. 11-12.) Defendants further allege that Plaintiffs' counsel "has made

37

misrepresentations to this Court and failed to abide by local rules of this Court." (*Id.*)  Of particular note, Defendants accuse Plaintiffs' counsel of drafting "false declarations for their clients to sign," including that of Plaintiff Baron in support of her Motion for Equitable Tolling.  (*Id*. at p. 13.)

Defendants' arguments are without merit.  With regard to the most serious charge, the Court rejects Defendants' argument that Plaintiffs' counsel drafted false declarations for their clients to sign.  Defendants' argument is based on the Declaration previously submitted by Baron regarding the reason for her delay in submitting her FLSA consent form.  (Doc. No. 57-2.)  Defendants maintain that this Declaration is inconsistent with Baron's subsequent deposition testimony and accuse Plaintiffs' counsel of failing to fully investigate the situation before drafting a "false" declaration for Baron to sign.  This Court, however, expressly considered and rejected this argument in its November 12, 2020 Opinion granting Baron's Motion for Equitable Tolling.  (Doc. No. 122 at pp. 20-22.)  There, the Court determined that, when read in context, Baron's deposition testimony was not, in fact, contrary to her Declaration.  Thus, Defendants' argument has no factual support and is, quite simply, wrong.[16]

Defendants' remaining complaints about Plaintiffs' counsel are equally meritless.  Plaintiffs' counsel has diligently represented the interests of their clients and have not given this Court reason to doubt their knowledge of the law and/or their ability to represent the proposed class.  Indeed, the Court is aware that Plaintiffs' counsel has considerable experience litigating wage and overtime class

---

[16] The Court is troubled that Defendants would level such a serious accusation against opposing counsel in the absence of any supporting evidence.  Defense counsel are reminded of their obligation to behave professionally and with civility in all proceedings before this Court.  In addition, defense counsel are cautioned that they must make all efforts to ensure that any future arguments made in this action are fully supported by both the facts and the law.  *See* Ohio Rule of Professional Conduct 3.1 ("A lawyer shall not . . . assert . . . an issue in a proceeding, unless there is a basis in law and fact for doing so. . .).

actions.  Plaintiffs' counsel has vigorously pursued the claims in this action, further demonstrating adequate representation of not only the class representatives but the class as a whole.

Accordingly, the Court finds the fourth factor, adequacy of representation, to be satisfied.

### 4.    Ascertainability

In addition to the requirements of Rule 23(a), the Sixth Circuit in *Young, supra*, also adopted an "ascertainability" requirement, finding that certification necessitated "a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young,* 693 F.3d at 538; *see also Rikos,* 799 F.3d at 524–26.

Defendants do not argue that the proposed Rule 23 QMHS class is insufficiently definite. Upon review, the Court finds the putative class is sufficiently definite and, therefore, satisfies this requirement.

### 5.    Rule 23(b)(3):  Predominance and Superiority

Having found the prerequisites of Fed. R. Civ. P. 23(a) to be met, the Court must next determine whether the proposed class action fits under one of the categories specified in Rule 23(b). Here, Plaintiffs invoke Rule 23(b)(3), which allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court will address the predominance and superiority requirements separately, below.

### a.    Predominance

The predominance inquiry under Rule 23(b)(3) focuses on whether the proposed class is "sufficiently cohesive" to warrant class action treatment.  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 623 (1997).  The Supreme Court has held that this inquiry must focus on common questions that

can be proved through evidence common to the class.  *Amgen Inc*, 568 U.S. at 466-467.   Specifically,

and as the Sixth Circuit recently explained:

> "To meet the predominance requirement, a plaintiff must establish that issues subject
> to generalized proof and applicable to the class as a whole predominate over those
> issues that are subject to only individualized proof." [*Young*, 693 F.3d at 544] (quoting
> *Randleman v. Fid. Nat. Title Ins. Co.,* 646 F.3d 347, 352–53 (6th Cir. 2011)).  A class
> may be certified based on a predominant common issue "even though other important
> matters will have to be tried separately, such as damages or some affirmative defenses
> peculiar to some individual class members." 7AA Charles Alan Wright, Arthur R.
> Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed.
> 2005). In *Young v. Nationwide Mutual Insurance Co.,* we explained "the fact that a
> defense may arise and may affect different class members differently does not compel
> a finding that individual issues predominate over common ones." 693 F.3d at 544
> (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)). And in *In re
> Whirlpool Corp. Front-Loading Washer Products Liability Litigation,* we concluded
> that "when adjudication of questions of liability common to the class will achieve
> economies of time and expense, the predominance standard is generally satisfied even
> if damages are not provable in the aggregate." 722 F.3d at 850 (quoting *Comcast Corp.
> v. Behrend*, 569 U.S. 27, 41, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (Ginsburg, J.,
> dissenting)).

> Although "individual damages calculations do not preclude class certification under
> Rule 23(b)(3)," *In re Whirlpool*, 722 F.3d at 850, a court must ensure at the class-
> certification stage that plaintiffs' formula calculates damages based only on their
> theory of liability, *Rikos v. P&G Co.,* 799 F.3d 497, 523 (6th Cir. 2015).

*Hicks*, 965 F.3d at 460.  In sum, a plaintiff class need not prove that each element of a claim can be

established by class-wide proof: "What the rule does require is that common questions 'predominate

over any questions affecting only individual [class] members.'" [17]  *Amgen Inc*, 568 U.S. at 466-467.

---

[17] As the Sixth Circuit recently explained: "'Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded
by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.'
*Amchem,* 521 U.S. at 609, 117 S.Ct. 2231. And the Supreme Court in *Comcast* similarly noted that '[t]he same analytical
principles govern Rule 23(b) [and Rule 23(a)],' but 'Rule 23(b)(3)'s predominance criterion is even more demanding
than Rule 23(a).' 569 U.S. at 34, 133 S.Ct. 1426. 'What matters to class certification ... is not the raising of common
'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common *answers* apt to
drive the resolution of the litigation.' *Wal-Mart,* 564 U.S. at 350, 131 S.Ct. 2541 (ellipsis and emphasis in original)

*See also In re Whirlpool*, 722 F.3d at 858; *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Plaintiffs argue that the predominance requirement is satisfied because the central factual and legal questions in this case are common to the putative class and likely to drive resolution of this lawsuit.  (Doc. No. 70 at pp. 14-15.)  Plaintiffs assert that, even if there are some individualized damages issues, the liability issues clearly predominate and warrant certification.  (*Id.*)

Defendants do not directly address Rule 23(b)(3)'s predomination requirement, either in their Brief in Opposition, Sur-Reply, or Supplemental Brief.  Defendants do, however, generally argue that the certification is not warranted because the QMHS position is highly individualized.  (Doc. No. 142 at pp. 3-4.)  Citing Defendant Smith's latest Declaration, Defendants argue that "the following categories of employee-specific facts factor [into] the amount of work performed by each QMHS employee each week: (1) whether the employee is full-time, part-time, or on a probationary period; (2) the location where the QMHS employee is employed; (3) the Clinical Supervisors for each QMHS employee; (4) the individual who trained the QMHS employee; (5) the patient base for each QMHS employee; (6) patient load; (7) patient turnover; (8) travel time; (9) patient location; (10) the location for which the QMHS employee starts and finishes their day; (11) the type and level of patient care provided; (12) how each QMHS employee schedules their patients; and (13) documentation time and whether the QMHS employee properly and timely submits their time and billing sheets."   (Doc. No. 142-1 at ¶¶ 31-49).

---

(quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009))."  *Zehentbauer Family Land, LP*, 935 F.3d at 503.

In light of all of these variables, Defendants maintain that determining the amount of damages for each putative class member will involve a highly individualized factual inquiry into the particular facts and circumstances of each class member's employment at Family Solutions.  (Doc. No. 142 at p. 6.)  Defendants argue that the report of Plaintiffs' expert, Dr. Thompson, confirms that individual discovery will be necessary to evaluate damages associated with putative class members' claims.  (*Id.* at p. 4.)  Lastly, Defendants assert that the weekly averages determined by Dr. Thompson are inaccurate, not reliably applied, and "not based upon any real reliable data."  (*Id*. at p. 6.)

In response, Plaintiffs argue that there is no individual issue affecting Defendants' liability to class members, given the fact that all putative class members were subject to the same timekeeping and compensation policies regarding time spent traveling, entering documentation into patient records, and dealing with no show appointments.  (Doc. No. 141 at pp. 7, 10.)  Rather, Plaintiffs assert that "the only matter relevant to this case that varies from class member to class member is the amount of damages they sustained." (*Id*.)  Citing a series of district court and Sixth Circuit cases, Plaintiffs maintain that variability as to potential damages does not defeat class certification.  *(Id*. at pp. 7-8.)  Plaintiffs further assert that, in light of Defendants' failure to maintain certain employee time records, the putative class members should be permitted to introduce "representative evidence and average estimates such as those Dr. Thompson has prepared." (*Id.* at p. 8.)

For the following reasons, the Court finds that the requirement of predominance is satisfied. The Court concludes that factual and legal questions relating to liability are common to the Ohio class and predominate over any individual questions.  As discussed *supra*, Plaintiffs have identified several common questions that can be proven through evidence common to the class.  Specifically, resolution of Plaintiffs' state claims involve the following common questions:  (1) the factual question of

42

whether or not putative QMHS class members were permitted to enter time spent traveling, dealing with no show appointments, and entering documentation into patient records on their time sheets under Family Solutions' timekeeping and pay policies; and (2) the legal question of whether Defendants were required to compensate putative QMHS class members for such time.   For all the reasons that have been discussed previously in this decision, the Court is persuaded that these liability questions can be determined through common proof that is applicable to the putative class as a whole. *See, e.g., Swigart*, 288 F.R.D. at 186; *Waters*, 2021 WL 229040 at * 9.

As Defendants themselves acknowledge, the allegedly "highly individualized inquiries" identified in their Brief in Opposition and Supplemental Briefing relate principally to damages. However, "[i]n the Sixth Circuit, the potential for individual damages considerations do[es] not defeat class certification." *In re Sonic*, 2020 WL 6701992 at * 5-6 (citing *Beattie,* 511 F.3d at 564.)  *See also Hicks*, 965 F.3d at 460 (noting that "individual damages calculations do not preclude class certification under Rule 23(b)(3)"); *In re Whirlpool*, 722 F.3d at 861 ("Because '[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal, . . . , in 'the mine run of cases, it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members.'")(internal citations omitted); *Sterling*, 855 F.2d at 1197 (finding that "the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.").  *See also McFarlin v. The Word Enterprises, Inc.,* 2017 WL 4416451 at * 4 (E.D. Mich. Oct. 5, 2017) ("Although the damages for each delivery driver will be an individual determination, the damages arise from a course of conduct that is applicable to

the entire class: Defendants' payroll practices. Therefore, the predominance requirement is met."); *Waters*, 2021 WL 229040 at \*7 (same).

Moreover, here, Plaintiffs assert that that they will be able to provide class wide proof of damages through Dr. Thompson's damages estimates.  (Doc. No. 141.)  As Plaintiffs correctly note, courts have found that, if admissible and otherwise appropriate under the circumstances, representative evidence may be used in calculating collective and class action damages, particularly where (as here) the defendant employer failed to maintain employee time records.  *See, e.g., Tyson Foods, Inc.*, 136 S.Ct. at 1046 (in FLSA collective action and Rule 23 class action case, noting that "[i]n many cases, a representative sample is the only practicable means to collect and present relevant data establishing a defendant's liability"); *Pierce*, 922 F.3d at 747-748.  This makes sense as, "[o]therwise, 'defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained.'" *Hicks,* 965 F.3d at 462 (quoting *Young*, 693 F.3d at 540).  In the instant case, Plaintiffs intend to rely on class wide proof of damages, which would make it unlikely that individualized damages inquiries would predominate over the common issues of fact and law relating to liability in this matter.[18]

Accordingly, and for all the reasons set forth above, the Court finds that common questions predominate over any questions affecting only individual putative class members.

### b.    Superiority

---

[18] As noted *supra,* the Court is not deciding, at this time, whether Dr. Thompson's expert report will ultimately be deemed admissible.  Indeed, Defendants have not argued that such a determination is necessary for resolution of the instant Rule 23 Motion.  Nor have the Defendants challenged Dr. Thompson's report on *Daubert* grounds as of the date of this Opinion.

Rule 23(b)(3) also requires that class litigation is a superior way to resolve the controversy. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Young,* 693 F.3d at 545 (quoting *Amchem Prod., Inc.*, 521 U.S. at 617).  In assessing superiority, courts consider "the difficulties likely to be encountered in the management of a class action." *Beattie*, 511 F.3d at 567 (quoting Fed. R. Civ. P. 23(b)(3)).  Courts also look to the purpose of class action litigation.  *Hicks*, 965 F.3d at 464.  "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Young*, 693 F.3d at 545 (quoting *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980)).

"Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Id*. (quoting *Powers*, 501 F.3d at 619).   A class action is not a superior form of adjudication, however, where many individual inquiries are necessary. *Id.* "But, as with predominance, superiority can be satisfied 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"  *Hicks,* 965 F.3d at 464 (quoting 7AA Wright, Miller & Kane, Federal Practice and Procedure § 1778, at 123–24).  *See also Stuart v. State Farm Fire & Casualty*, 910 F.3d 371, 376 (8th Cir. 2018) ("The potential need for individualized damages inquiries is not sufficient to overcome the district court's findings of predominance and superiority.").   When a threshold common issue predominates, a class action is often the preferable form of litigation.  *See Hicks*, 965 F.3d at 464; *Daffin v. Ford Motor Co.,* 458 F.3d 549, 554 (6th Cir. 2006).

Here, the Court finds that a Rule 23 class action is the "superior" method of adjudicating the Plaintiffs' state claims.  As discussed at length above, common factual and legal issues predominate and are capable of resolution on a class wide basis.   In addition, the wages at issue on the individual class member level are likely to be relatively small, undercutting the individual class members' ability to pursue their own separate actions.  Moreover, there is a strong interest in prosecuting the claims in one forum.  *See Kritzer*, 2012 WL 1945144 at * 4.  Finally, while managing a Rule 23 Class and a FLSA Collective Class in the same action can be challenging, the Court is not persuaded that it will encounter any undue difficulties in managing the putative Rule 23 QMHS class herein.

Accordingly, and for all the reasons set forth above, the Court finds that the superiority requirement is met.

IV.    **Conclusion**

Accordingly, and for all the foregoing reasons, Plaintiffs' Motion for Rule 23 Certification (Doc. No. 70) is GRANTED IN PART and DENIED IN PART, as follows.  Plaintiffs' Motion is GRANTED to the extent it seeks certification of the following Rule 23 class:  All employees who worked in Ohio as QMHSs for Defendant Family Solutions of Ohio during the period three years preceding the commencement of this action to the present.  In addition, the Court grants Plaintiffs' requests to (1) designate Plaintiffs' counsel, Scott Perlmuter and Thomas Downie, as class counsel; and (2) appoint Plaintiffs Jamal Stephenson and Melanie Baron as class representatives.  Plaintiffs'

Motion is DENIED to the extent it includes hourly Therapists in the state-law class, and a class-action breach of contract claim.

**IT IS SO ORDERED.**


        *s/Pamela A. Barker*
        PAMELA A. BARKER
Date:  April 5, 2021        U. S. DISTRICT JUDGE

47