# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,* On behalf of himself and All others similarly situated, | Case No. 1:18cv2017 |
| Plaintiffs, | **JUDGE PAMELA A. BARKER** |
| -vs- | |
| **Family Solutions of Ohio, Inc.,** *et al.***,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants | |

Currently pending is Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith's "Motion for Sanctions Arising out of Plaintiffs' Failure to Timely Supplement Expert Discovery and Plaintiffs' Failure to Provide Evidence of Damages." (Doc. No. 153.) Plaintiffs filed a Brief in Opposition on May 27, 2021, to which Defendants replied on June 3, 2021. (Doc. Nos. 154, 155.) For the following reasons, Defendants' Motion for Sanctions (Doc. No. 153) is DENIED.

I.   **Relevant Background**

   A.   **Initial Pleadings and Conditional Certification**

On September 4, 2018, Plaintiff Alicia Arends filed a Complaint in this Court on behalf of herself and all others similarly situated against Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith (hereinafter "Defendants"). (Doc. No. 1.) Therein, Plaintiff asserted that she and the putative class members were employed by Defendants as Qualified Mental Health Specialists ("QMHS") and that Defendants had failed to pay them for time worked that was not billable to Medicaid or other health insurance. (*Id.*) Plaintiff alleged the

following six claims for relief: (1) violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count One); (2) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, Art. II, § 34a (Count Two); (3) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03 (Count Three); (4) violations of the OFMWA's record-keeping requirement (Count Four); (5) breach of contract (Count Five); and (6) unjust enrichment (Count Six). (Doc. No. 1.) Plaintiff sought conditional certification as a FLSA collective action; certification of the state law claims under Fed. R. Civ. P. 23; compensatory and punitive damages; and attorney fees and costs. (*Id.*) On March 4, 2019, Jamal Stephenson filed an Opt-In and Consent Form. (Doc. No. 12-1.)

Meanwhile, on February 28, 2019, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice with respect to their FLSA claims. (Doc. No. 11.) Therein, Plaintiffs argued that Defendants violated the overtime provisions of the FLSA by failing to pay potential class members for necessary services such as documentation time, intra-day travel between clients, and time spent for client appointments and no-shows. (*Id.*) Plaintiffs sought conditional certification with respect to "all hourly employees who worked as providers for Family Solutions of Ohio during the three years preceding the commencement of this action to the present." (*Id.*)

Plaintiffs submitted Declarations from Ms. Arends and Mr. Stephenson in support of the Motion. (Doc. Nos. 11-2, 11-3.) Therein, Ms. Arends averred that she worked approximately 50-55 hours on average each week for Family Solutions performing the following tasks: "a. Appointment time with clients; b. Administrative and planning work; c. Documentation; and d. Travel between clients (and not including travel from home to my first appointment of the day and travel from my last appointment of the day back home)." (Doc. No. 11-2.) Mr. Stephenson averred that he worked

2

approximately 60-70 hours on average each week performing the same tasks. (Doc. No. 11-3.) Defendants opposed Plaintiffs' Motion. (Doc. No. 13)

On September 16, 2019, the Court issued a Memorandum Opinion & Order granting Plaintiffs' Motion for Conditional Certification with respect to all current and former employees who worked as QMHSs between September 16, 2016 and September 16, 2019. (Doc. No. 20.)

### B. Non-Expert Discovery

A Case Management Conference ("CMC") was conducted on October 7, 2019, at which time the Court approved the parties' proposed Notice and set the following deadlines: non-expert discovery due by July 6, 2020; dispositive motions due by August 6, 2020; initial expert report due by August 6, 2020; responsive expert report due by September 7, 2020; and all expert discovery to be completed by November 9, 2020. (Doc. No. 25.)  The Court did not set a specific deadline for filing a motion for certification of a state law class under Fed. R. Civ. P. 23. (*Id.*)  The docket reflects that FLSA consent forms were filed by twenty-four (24) opt-in plaintiffs between October and December 2019. *See* Doc. Nos. 26 through 36.

At some point in late 2019 or early 2020, Defendants served written discovery requests on Plaintiffs.  Of particular relevance, these requests included the following Interrogatories:

**Interrogatory No. 17:**

Describe with specificity any economic damage that you allege you suffered as a result of the actions of Defendants, including the nature of the economic damage and your calculation of the amount of each item of economic damage.

**Interrogatory No. 20:**

Identify all amounts of payments you allege you are owed by Defendants or you otherwise allege were not paid to you by Defendants, including the paycheck number, date in which the payment was owed, and the amount in which you allege you are owed.

3

*See, e.g.*, Doc. No. 153-1 at PageID#s 5879-5881. Between March and June 2020, each of the opt-in Plaintiffs provided identical responses to the above Interrogatories, as follows:

> Objection. The FLSA and Ohio law required Defendants to maintain records of the hours Plaintiffs worked and the wages they should have been paid. See 19 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. Art. II, § 34a. Insofar as Defendants failed to maintain accurate and complete records, Plaintiffs are entitled to estimate their hours worked and the burden shifts to Defendants to prove that Plaintiffs' estimates are incorrect. *See, e.g., U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir. 1995). Plaintiffs have not yet prepared estimates of their hours and are still gathering evidence relating to hours, unpaid wages, and other damages. Without waiver of objections, Plaintiffs' estimates will be provided to Defendants when prepared.

*See, e.g.*, Doc No. 153-1 at PageID#s 5879-5881.[1]

At the parties' request, the non-expert discovery deadline was extended to August 14, 2020, and the expert discovery deadlines were each extended by thirty days. (Doc. No. 59.) Plaintiffs conducted the Rule 30(b)(6) deposition of Dawn Smith on June 24, 2020, and Defendants conducted depositions of representative Plaintiffs Melanie Vilk-Baron and Jamal Stephenson in July and August 2020. (Doc. Nos. 113-1, 115-1.) During his deposition, Mr. Stephenson testified regarding the number of "extra" hours he estimated working each week because of documentation time and intra-day travel between clients. *See, e.g.,* Deposition J. Stephenson (Doc. No. 115-1) at Tr. 135 (testifying that "on the average, I worked about an extra 10 to 15 hours, you know, just because of documentation time, as well as traveling in between clients."). Counsel for Defendants did not ask Ms. Vilk Baron

---

[1] On May 5, 2020, Plaintiffs filed an Amended Class and Collective Action Complaint, designating Plaintiffs Stephenson and Melanie Vilk Baron as the representative plaintiffs. (Doc. No. 50.) The Amended Complaint raised the same factual and class allegations and asserted the same six grounds for relief set forth in the original Complaint. (*Id.*) Defendants filed an Answer on May 19, 2020. (Doc. No. 51.)

4

any questions regarding her estimated off-the-clock hours. Defendants did not depose any of the other Opt-In Plaintiffs.

Meanwhile, Plaintiffs had served written discovery requests in October 2019, including requests for documents "containing information about the hours, activities, movements, or whereabouts of Plaintiff and the Opt-Ins," including "schedules, assignments, time spent traveling, writing patient or client notes, and waiting for no-shows or late patients." (Doc. No. 154-4 at PageID# 6798.) Defendants produced certain documents in response to this request, including audit logs for Ms. Arends in December 2019 and audit logs for Mr. Stephenson and Opt-In Plaintiffs Carolyn Cates and Kimberly Bolden in June/July 2020. *See* Doc. No. 99-6 at ¶ 3. Plaintiffs, however, did not receive the majority of the audit logs until August 2020, after Plaintiffs subpoenaed Defendants' vendor for these documents. *Id.* at ¶ 6. *See also* Doc. No. 99-10 at PageID#s 2041-2046; Doc. No. 99-12. Additionally, it does not appear that Defendants have ever produced redacted progress notes relating to any of the Opt-In Plaintiffs. *See* Doc. No. 99-13.

In accordance with this Court's scheduling Order, Plaintiffs filed their Motion for Rule 23 Class Certification on July 31, 2020 and Defendants timely filed Motions for Summary Judgment with respect to all claims asserted by Ms. Vilk Baron and Mr. Stephenson on September 1, 2020. (Doc. Nos. 70, 88, 89.)

    **C.**     **Expert Discovery**

Shortly thereafter, and in accordance with this Court's scheduling Order, Plaintiffs produced the report of their expert, Shane Thompson, Ph.D., to Defendants on September 30, 2020. (Doc. No. 154-1 at PageID#s 6767-6777.) Therein, Dr. Thompson concluded that, between September 4, 2015 through September 29, 2019, Plaintiffs accrued 16,965 hours of unpaid work derived from the

5

following three activities: "(1) documentation time in clients' electronic health records, (2) travel time intraday from client to client, and (3) time spent on no-show appointments." (*Id.* at PageID# 6768.)

With regard to unpaid hours relating to documentation time, Dr. Thompson explained that he "used Excel spreadsheets consisting of the audit logs maintained and provided by the electronic medical record vendor showing time spent on documentation for each Plaintiff." (*Id*. at PageID# 6769.) Based on his review, he concluded that Plaintiffs had a total of 6,922 unpaid hours on documentation time. (*Id*.) With regard to unpaid hours relating to travel time, Dr. Thompson stated that "Defendants do not have a system to track the proportion of consecutive appointments that involved travel time between those appointments." (*Id*. at PageID# 6770.) He explained that he did have "records on the number of patients seen by Plaintiffs from their respective billing sheets" with respect to 30% of the "employee weeks;" however, the remaining 70% of employee weeks had "missing data." (*Id*.) In calculating Plaintiffs' unpaid hours for this category, then, Dr. Thompson relied on the billing records that were available and on information obtained by counsel from 12 of the 23 Plaintiffs. (*Id*.) He concluded that Plaintiffs had 3,919 total unpaid hours of travel time. (*Id.* at PageID# 6771.) Finally, with regard to unpaid hours relating to no-show appointments, Dr. Thompson noted that "Defendants do not have a system to track time spent on no-show appointments" and, therefore, he relied on the information obtained by counsel from 12 of the 23 Plaintiffs. (*Id*.) He concluded that Plaintiffs had a total of 6,124 total unpaid hours spent in this category. (*Id*.)

Dr. Thompson identified the materials he considered in reaching his Opinions, in Appendix B to his Report. (*Id.* at PageID# 6777.) These materials include excel spreadsheets summarizing the

6

above-referenced audit logs, billing sheets (regarding patients seen per day), and "opt-in information re travel and no-shows." (*Id*.)

On October 7, 2020, Dr. Thompson supplemented his Expert Report, explaining that "[s]ince issuing my September 30, 2020 report, I have received and reviewed audit logs for Maria Graciani and Kimberly Bolden, as well as declarations of Alex Dolin, Anjelica Morris, and Jamal Stephenson." (Doc. No. 154-1 at PageID#s 6764-6766.) This supplementation included two Revised Tables which reflected the information contained in these additional materials. (*Id*.) The Revised Tables indicate that Dr. Thompson revised his Opinion to find that Plaintiffs had 7,485.6 hours of total unpaid documentation time; 3,516 hours of total unpaid travel time hours; and 7,054 hours of total unpaid "no-show" hours. (*Id*.)

Plaintiffs' counsel produced Dr. Thompson's "expert file" to Defendants on November 23, 2020. In the accompanying email, Plaintiffs' counsel represents as follows: "Attached and linked is everything Dr. Thompson reviewed and relied upon." (Doc. No. 154-3.)

**D.     Court Rulings on Summary Judgment and Rule 23 Certification**

The Court conducted a telephonic status conference with lead counsel on January 8, 2021. At that time, counsel for Plaintiffs specifically asked the Court not to rule on Plaintiffs' Motion for Rule 23 Certification until after a ruling on the pending summary judgment motions. Defendants did not object. *See* Non-Document Order dated January 8, 2021. In addition, counsel for both parties sought, and the Court granted, an indefinite stay of expert discovery. *Id.*

On March 2, 2021, the Court issued a Memorandum Opinion & Order in which it denied Defendants' Motions for Summary Judgment as to Plaintiff Baron's and Stephenson's FLSA and state law wage-and-hour claims. (Doc. No. 137.) Notably, the Court rejected Defendants' argument

that they were entitled to summary judgment in their favor on the issue of damages. (*Id*. at pp. 35-41.) The Court first found that Plaintiffs had come forward with sufficient evidence to create a genuine issue of material fact regarding the issue of whether they suffered damages as a result of Defendants' failure to pay for time spent traveling, entering documentation into clients' health records, and dealing with no-show appointments. (*Id*.) With regard to the specific amount of Plaintiffs' damages, the Court found that Plaintiffs had not failed to timely produce estimates and/or evidence of their damages, explaining as follows:

> The non-expert discovery period in this matter closed on August 14, 2020. Plaintiffs argue (and Defendants do not contest) that Family Solutions' audit logs and progress notes contain information that is relevant to determining the specific number of hours for which Plaintiffs were allegedly not paid for time spent relating to documentation and no-show appointments. With regard to the audit logs, Plaintiffs state (and Defendants do not contest) that, despite their repeated requests and best efforts, Plaintiffs did not ultimately receive these logs for the majority of the opt-ins until August 5, 2020. With regard to the progress notes, it appears that Plaintiffs' efforts to obtain these documents continued throughout the fall of 2020, with the latest request for these documents in December 2020. *See* Doc. No. 132 at p. 5; Doc. No. 132-5.
>
> Under these circumstances, the Court is not persuaded that Plaintiffs failed to timely produce estimates and/or evidence of their damages and are, therefore, now precluded from doing so. Any delay in producing this information appears to be the result, at least in part, of the Defendants' delay in producing Family Solutions' audit logs and progress notes. Indeed, it does not appear to be disputed that Plaintiffs did not receive the majority of audit logs until August 2020 and still had apparently not received the requested progress notes as of December 2020. Defendants' Motions for Summary Judgment were filed on September 1, 2020, and Plaintiffs' Briefs in Opposition (along with Dr. Thompson's report) were filed on October 8, 2020. Moreover, at the time the summary judgment motions were filed, expert discovery was not scheduled to close until December 15, 2020. As of the date of this Opinion, expert discovery is stayed, pursuant to this Court's Order dated January 8, 2021

(*Id.* at pp. 39-40.) (footnotes omitted). The Court went on to find that, in light of the fact that expert discovery had not yet concluded, Defendants' argument that they were entitled to judgment in their favor with respect to the issue of damages was premature. (*Id*.) Specifically, the Court found that:

8

> Plaintiffs are not precluded from introducing evidence regarding the fact that they suffered damages and/or the specific amount of their damages. As noted above, the expert discovery period has not concluded and, in fact, is stayed . . . Dr. Thompson may need to supplement his expert report once the stay is lifted. In addition, at that time, Defendants will have the opportunity to depose Dr. Thompson and fully question him about the basis for his opinion and the documents and information that he relied on.

(*Id*. at p. 40.) The Court, therefore, denied Defendants' Motion for Summary Judgment with respect to the issue of damages without prejudice subject to refiling after the close of expert discovery.[2] (*Id*.)

As Plaintiffs had not had an opportunity to respond to Defendants' arguments regarding the impact, if any, of Dr. Thompson's expert report on the parties' arguments relating to Rule 23 certification, the Court ordered the parties to submit simultaneous supplemental briefing. (Doc. No. 139.) The parties submitted their Supplemental Briefing on March 26, 2021. (Doc. Nos. 141, 142.)

On April 5, 2021, the Court issued a Memorandum Opinion & Order granting Plaintiffs' Motion for Rule 23 Certification to the extent it sought certification of the following class: "All employees who worked in Ohio as QMHSs for Defendant Family Solutions of Ohio during the period three years preceding the commencement of this action to the present." (Doc. No. 143.)

### E.  Supplementation of Dr. Thompson's File and subsequent Motions

Two days later, on April 7, 2021, Plaintiffs supplemented Dr. Thompson's expert file. This supplementation consisted of a total of fourteen (14) Declarations of certain Opt-In Plaintiffs. (Doc. No. 153-1 at PageID#s 6683-6710.) In these Declarations, the Opt-In Plaintiffs estimated (1) the

---

[2] Defendants also moved to strike the report of Plaintiff's expert, Dr. Thompson, on the grounds that "it is premature, as it was produced days before the [Briefs in] Opposition [to Summary Judgment] and without providing Defendants with an opportunity to conduct discovery with respect thereto." (Doc. No. 107 at p. 2.) Defendants further argued that Dr. Thompson's report should be stricken because "expert discovery has not concluded and Dr. Thompson has not been deposed regarding his opinion." (*Id*. at pp. 11-12.) The Court likewise denied this Motion without prejudice. (Doc. No. 137 at p. 41.)

9

percentage of his/her appointments that involved travel; (2) the average amount of unpaid time spent traveling between consecutive appointments; and (3) the average of unpaid hours per week that he/she spent "scheduling, traveling to/from, and waiting for no-show appointments." (*Id*.) Eleven of the Declarations were signed on November 30, 2020 or December 1, 2020 but had not been previously produced.[3]

The Court conducted a status conference with counsel on April 14, 2021. During that conference, defense counsel expressed concern regarding the fact that Plaintiffs had only just produced the eleven Declarations, particularly since the Court had relied on Dr. Thompson's report in denying summary judgment and granting Rule 23 certification. When asked why Plaintiffs had failed to produce these Declarations sooner, Plaintiffs' counsel indicated that the Declarations simply confirmed information that had already been provided to Dr. Thompson and included in his expert report. The Court set case management deadlines relating to the Rule 23 class members, including deadlines for the submission of a joint proposed Notice, completion of representative fact discovery, completion of expert discovery, and submission of motions based on the same. (Doc. No. 145.)

Several days later, on April 19, 2021, Defendants filed a Notice of Interlocutory Appeal to the Sixth Circuit from this Court's decision granting, in part, Plaintiffs' Motion for Rule 23 Certification. (Doc. No. 147.)

Defendants subsequently filed the instant Motion for Sanctions on May 14, 2021, arguing that Plaintiffs' failure to provide evidence of damages and timely supplement expert discovery violates

---

[3] The eleven Declarations that had not been previously produced are from the following Opt-In Plaintiffs: (1) A'Ishah Braxton, (2) Natalia Varias, (3) Allen Steele, (4) Sharon Burns, (5) Maria Graciani, (6) Dawn Wood, (7) Latwana Wright, (8) Christina Harris, (9) Andrea Reynolds, (10) Alexandra Toth, and (11) Carolyn Cates. (*Id*.)

Fed. Rules of Civ. Proc. 26 and 33. (Doc. No. 153.) Plaintiffs filed a Brief in Opposition on May 27, 2021, to which Defendants replied. (Doc Nos. 154, 155.)

On July 13, 2021, Defendants filed a Motion for Certification to File Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b). (Doc. No. 159.) Plaintiffs opposed the Motion, and Defendants filed a Reply. (Doc. Nos. 160, 161.)

While Defendants' Motion for Sanctions and Motion for Certification to file Interlocutory Appeal were pending, the parties filed a Joint Motion for Referral to Mediation and to Extend Deadlines. (Doc. No. 165.) The Court granted the Motion, referred the matter to Magistrate Judge William Baughman for mediation proceedings, and extended the remaining case management deadlines. After conducting mediation sessions on November 9, 2021 and December 13, 2021, the Magistrate Judge reported that the parties were unable to reach a resolution.

The Court conducted a status conference with counsel on December 15, 2021, at which time the parties jointly requested that the case schedule be extended by another sixty (60) days. The Court granted the parties' request and set a Final Pretrial for November 21, 2022 and a Trial date of December 5, 2022. (Doc. No. 171.)

## II. Legal Standard

Federal Rule of Civil Procedure 26 provides that a party seeking damages is required, without awaiting a discovery request, to provide to the other party a "computation of each category of damages," and to "make available for inspection and copying ... the documents or other evidentiary material ... on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). "If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information

... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Under these rules, "the party seeking to invoke the preclusion sanction [of Rule 37(c)(1)] must first prove that the opposing party violated Rule 26(a) or (e)...." *Nathan v. Ohio State Univ.,* 2012 WL 5342666 at *4 (S.D. Ohio Oct. 29, 2012) (quoting 7 James Wm. Moore et al., Moore's Federal Practice § 37.60[2][a] (3d ed. 2012)). Even if a violation is shown, however, "[a] noncompliant party may avoid sanction if there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (citation and internal quotation marks omitted).

The Sixth Circuit directs district courts to consider the following factors in assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id*. at 748 (quoting *Russell v. Absolute Collection Servs., Inc*., 763 F.3d 385, 396–97 (4th Cir. 2014)). *See also EQT Production Co. v. Magnum Hunter Production, Inc.,* 768 Fed. Appx. 459, 468 (6th Cir. 2019). District courts have broad discretion in applying these factors and need not apply each one rigidly. *See Bisig v. Time Warner Cable, Inc.,* 940 F.3d 205, 219 (6th Cir. 2019). *See also Bentley v. Highlands Hospital Corp*., 2016 WL 5867496 at * 10 (E.D. Ky. Oct. 6, 2016). "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bentley*, 2016 WL 5867496 at * 10-11 (quoting *Howe*, 801 F.3d at 747, 749). The burden is on the potentially

12

sanctioned party to show that the violation of Rule 26 was substantially justified or harmless. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010).

Rule 37(c)(1) allows for the imposition of both greater and lesser sanctions for failure to disclose or supplement discovery required by Rule 26(a) or (e). *See* Fed. R. Civ. P. 37(c)(1)(A) - (B); *Champion Foodservice, LLC v. Vista Food Exchange, Inc.*, 2016 WL 4468000 at * 19 (N.D. Ohio Aug. 23, 2016). In addition to or instead of exclusion, a district court may order payment of reasonable expenses caused by the failure, inform the jury of the party's failure, or impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1). A district court's decision on whether and how to sanction a party for discovery violations is reviewed for an abuse of discretion. *See Bisig,* 940 F.3d at 218.

### III. Analysis

In their Motion, Defendants argue that Plaintiffs failed to timely disclose evidence relating to damages, i.e., the number of hours worked by the Opt-In Plaintiffs but allegedly not paid. (Doc. No. 153.) Specifically, Defendants assert that Plaintiffs (1) failed to provide initial disclosures setting forth their damages computations, as required by Rule 26(a)(iii); (2) failed to properly respond to Defendants' Interrogatories Nos. 17 and 20 regarding damages and/or supplement their responses to those Interrogatories as required by Rule 26(e); and (3) failed to timely produce the eleven Declarations discussed above. (*Id.*) Defendants maintain that Plaintiffs' discovery failures were not substantially justified and have been "extremely harmful" to Defendants. (*Id.*) Defendants argue that this Court should impose the following sanctions pursuant to Rule 37(c)(1): "(1) Preclude Plaintiffs from presenting evidence of alleged hours worked, but not paid; (2) award Defendants' attorney fees for this Motion and related activities arising from Plaintiffs' intentional discovery failures; [and/or]

13

(3) impose sanctions of reconsidering this Court's orders on summary judgment and class certifications." (*Id*. at PageID#s 5833, 5851.)

In response, Plaintiffs argue that they properly and timely disclosed evidence to Defendants regarding their damages throughout the course of discovery. (Doc. No. 154.) Plaintiffs note Mr. Stephenson and Ms. Arends provided Declarations in February 2019 in which they estimated the number of unpaid hours they each worked per week, and that Mr. Stephenson testified about this same issue during his deposition. (*Id*.) Plaintiffs maintain that Defendants could have (but did not) ask Ms. Vilk Baron about her alleged unpaid hours during her deposition, nor did they depose any of the other Opt-In Plaintiffs. (*Id*.) Plaintiffs assert that they were unable to provide any final damages calculations until they finally received the audit logs from Defendants' vendor in August 2020. (*Id*.) Shortly after receiving those logs, Plaintiffs timely produced Dr. Thompson's expert report in September 2020, in which he (1) fully explained his methodology for calculating Plaintiffs' damages for each of the three categories of unpaid time; and (2) clearly identified the information and data on which his calculations were based. (*Id*.) Plaintiffs maintain that, on November 23, 2020, they provided to Defendants all of the underlying data obtained from the Opt-In Plaintiffs (hereinafter "the polling data") that was relied upon by Dr. Thompson. (*Id.*) With regard to the belatedly produced eleven Declarations, Plaintiffs assert that these Declarations simply restate in affidavit form the very same polling data that had already been provided to Dr. Thompson and disclosed to Defendants in spreadsheet form in November 2020. (*Id*.)

For the following reasons, the Court denies Defendants' request for sanctions under Rule 37(c). Even assuming *arguendo* that Plaintiffs did violate Rule 26 by failing to provide a computation of damages in their initial disclosures and/or written discovery responses, the Court finds any such

failure to be substantially justified and harmless. Under *Howe, supra*, the first factor is "the surprise to the party against whom the evidence would be offered." *Howe*, 801 F.3d at 748. Defendants' principal argument is that they were "sandbagged" by Plaintiffs' belated disclosure of the eleven Declarations. Based on the evidence before it at this time, the Court rejects this argument. With two minor exceptions noted below, the information contained in the eleven Declarations is duplicative of information that was already provided to Dr. Thompson, incorporated into his expert reports, and provided to Defendants in spreadsheet form in November 2020.

The facts relevant to this determination are as follows. According to Plaintiffs, "Dr. Thompson's [September 2020] report relied on polling data from twelve opt-ins in spreadsheet form." (Doc. No. 154 at fn 1.) Plaintiffs attach a copy of that spreadsheet as an Exhibit to their Brief in Opposition (hereinafter "Polling Data Spreadsheet"). (Doc. No. 154-6.) The Polling Data Spreadsheet contains the following information for thirteen (13) Plaintiffs[4]: (1) "% of back-to-back appointments involving travel;" (2) "average travel time (in mins.);" and (3) "average time per week scheduling, traveling to, waiting for no-shows (in hrs.)." (*Id.*) Two more opt-ins not listed on the Polling Data Spreadsheet (i.e., Anjelica Morris and Alex Dolin) subsequently provided "polling information via Declaration," necessitating Dr. Thompson's October 7, 2020 supplemental report. (Doc. No. 154-1.) Counsel for Plaintiffs represent that they produced the Polling Data Spreadsheet (as well as the Declarations of Ms. Morris, Mr. Dolin, and an additional Declaration of Mr. Stephenson dated October 7, 2020) to Defendants on November 23, 2020. (Doc. No. 154-3.)

---

[4] These Plaintiffs are: (1) Natalia Varias, (2) Sharon Burns, (3) Maria Graciani, (4) Alexandra Toth, (5) Andrea Reynolds, (6) Allen Steele, (7) Kimberly Bolden, (8) Latwana Wright, (9) A'Ishah Braxton, (10) Carolyn Cates, (11) Dawn Wood (12) Jamal Stephenson, and (13) Christina Harris. (Doc. No. 154-6 at PageID# 6824-6826.)

Counsel for Plaintiffs apparently later asked the Opt-Ins listed on the Polling Data Spreadsheet to complete Declarations,[5] in which they restate (in affidavit form) the information that was provided to Dr. Thompson. These Declarations are variously dated either November 30, 2020 or December 1, 2020. (Doc. No. 153-1 at PageID#s 6683-6704.) A careful review reveals that the information contained in the Declarations is (with two minor exceptions)[6] the same as the information contained in the Polling Data Spreadsheet. Through an unfortunate oversight by Plaintiffs' counsel, these eleven Declarations were not produced to Defendants until April 7, 2021.

While it would certainly have been better practice for Plaintiffs to have produced these Declarations sooner, the Court cannot find that Defendants suffered any surprise for purposes of the first *Howe* factor. Based on a careful review, the information contained in the eleven Declarations is largely identical to the information contained in the Polling Data Spreadsheet, which was provided to Defendants in November 2020. Defendants have failed to explain how, exactly, they suffered any surprise or were otherwise "sandbagged" under these circumstances.[7] Accordingly, the Court finds that the first *Howe* factor weighs in favor of Plaintiffs.

---

[5] For some unknown reason, counsel for Plaintiffs obtained polling data, and belatedly produced a Declaration, from Opt-In Latwana Wright even though she is not listed as one of the 23 plaintiffs considered in Dr. Thompson's September or October 2020 Reports. (Doc. No. 153-1 at PageID# 6695; Doc. No. 154-5 at PageID# 6823; Doc. No. 154-1 at PageID# 6768.)

[6] Based on its review, the Court found two discrepancies between the belatedly produced Declarations and the Polling Data Spreadsheets. First, in her Declaration, A'Isha Braxton estimates that 70% of her appointments involved travel. The Polling Data Spreadsheet states that 50% of Ms. Braxton's appointments involved travel. *Compare* Doc. No. 153-1 at PageID# 6683 *with* Doc. No. 154-6 at PageID# 6824. Second, in her Declaration, Christina Harris estimates that she spent an average of four unpaid hours per week scheduling, traveling to, and waiting for no-shows. However, the Polling Data Spreadsheet states that Ms. Harris spent an average of 3.5 hours per week on these activities. *Compare* Doc. No. 153-1 at PageID# 6697 *with* Doc. No. 154-6 at PageID# 6826.

[7] In an affidavit attached to the Motion, counsel for Defendants lists a litany of alleged ambiguities and problems in Dr. Thompson's report that were allegedly first revealed through the belated production of the eleven Declarations. (Doc. No. 153-1 at ¶ 55.) However, given that the information in the Polling Data Spreadsheet and the eleven Declaration is largely identical, the Court finds that Defendants have failed to explain why they could not have identified these problems based

The second *Howe* factor is the ability of the party against whom the evidence would be offered to cure the surprise. *Howe,* 801 F.3d at 748. Defendants argue that this factor weighs in their favor because fact discovery closed in August 2020 and they no longer have the opportunity to depose the eleven Opt-In Plaintiffs that submitted the belatedly produced Declarations. The Court rejects this argument. As an initial matter, Defendants had every opportunity to depose the Opt-Ins during fact discovery but chose not to do so. More importantly, Defendants will have the opportunity to cross-examine the eleven Opt-Ins about their Declarations at trial, which the Sixth Circuit has found provides an adequate opportunity to remedy surprise. *See EQT Production Co.*, 768 Fed. Appx. at 469 (noting that "we have held that the ability to cross-examine witnesses about late disclosures during trial both provided an opportunity to remedy surprise and minimized impact on trial"); *Howe*, 801 F.3d at 749 (finding there was an opportunity to remedy surprise in part because "Akron could have explored the problems with Carr's method for calculating back pay by cross-examining Carr and the other twenty-two Plaintiffs during the retrial.")

Lastly, as noted above, Defendants will have a full opportunity to depose Dr. Thompson about the bases for his report, including the eleven Declarations. Defendants will also have the opportunity to renew their motion for summary judgment on damages, if they so choose.[8] *See* Doc. No. 137 at p. 40-41 (finding that Defendants' motion for summary judgment with respect to damages was premature and denying the same "without prejudice subject to refiling after the close of expert

---

on the Polling Data Spreadsheet alone. Further, as discussed *infra*, Defendants will have the opportunity to depose Dr. Thompson and inquire of him, at length, regarding the specific bases for his Expert Reports, including his review of and reliance on the polling data and Declarations. Any discrepancies or ambiguities can be addressed at that time.

[8] The deadline for deposing Dr. Thompson is currently April 21, 2022 and the deadline for filing motions based on fact and expert discovery (including motions for summary judgment or to decertify) is May 23, 2022.

discovery.") Accordingly, and for all the reasons set forth above, the Court finds that the second *Howe* factor weighs in favor of Plaintiffs.

The third *Howe* factor is "the extent to which the allowing the evidence would disrupt the trial." *Howe*, 801 F.3d at 748. The Court finds that this factor also weighs in favor of Plaintiffs. The trial date in this matter is December 5, 2022, just over ten months away. Defendants have ample opportunity before that date to evaluate Plaintiffs' damages evidence (including the eleven Declarations), depose Dr. Thompson, and submit their own rebuttal expert evidence. Moreover, Defendants will have the opportunity at trial to cross-examine the eleven Opt-In Plaintiffs that submitted the belatedly produced Declarations. *See EQT Production Co.*, 768 Fed. Appx. at 469 (noting that "we have held that the ability to cross-examine witnesses about late disclosures during trial . . . minimized impact on the trial"). Under these circumstances, the Court is not persuaded that allowing Plaintiffs to introduce evidence relating to damages, and Defendants to cross-examine the Plaintiffs' witnesses as to damages, would disrupt the trial.

The fourth *Howe* factor is the importance of the evidence. *Howe*, 801 F.3d at 748. Here, Defendants ask this Court to "preclude Plaintiffs from presenting evidence of alleged hours worked, but not paid." (Doc. No. 153.) As Defendants themselves note, the "amount of time worked" is both an element of Plaintiffs' FLSA claim and central to proving that Plaintiffs suffered compensable damages. Preclusion of this evidence would essentially eviscerate Plaintiffs' FLSA claim. Accordingly, the evidence which Defendants seek to preclude is highly important. This factor weighs in favor of Plaintiffs.

Finally, the fifth *Howe* factor is "the nondisclosing party's explanation for its failure to disclose the evidence." *Howe,* 801 F.3d at 748. Plaintiffs argue that their failure to timely produce

18

the eleven Declarations was an honest oversight that caused no harm because the information contained in those Declarations had already been fully disclosed to the Defendants when Plaintiffs produced Dr. Thompson's expert file in November 2020. Plaintiffs further assert that they did not improperly fail to disclose evidence of "alleged hours worked, but not paid" because any delay in producing this information was due to Defendants' failure to maintain records and/or refusal to produce records (such as audit logs and progress notes) that were necessary to their damages calculations. Defendants counter that Plaintiffs have always had the ability to poll the Opt-Ins and timely produce each Opt-In's estimate of unpaid hours spent on documentation, travel time, and no-show appointments. Defendants argue that Plaintiffs' failure to produce this information until after the close of fact discovery is "pure gamesmanship."

For the following reasons, the Court finds that this factor is neutral. The Court accepts Plaintiffs' representation that the belated production of the eleven Declarations was an honest mistake that did not cause either surprise or harm, as the information contained in the Declarations had already been provided to Defendants in spreadsheet form in November 2020. The Court also agrees with Plaintiffs that any delay in producing evidence regarding damages relating to unpaid documentation time is attributable, at least in part, to Defendants' failure to timely produce the audit logs. *See, e.g., Howe*, 801 F.3d at 750 (finding that "the Plaintiffs could not calculate and verify their back-pay calculations until they looked at the data in Akron's possession, and Akron bears at least some responsibility for the delayed disclosure"). However, with regard to travel time and no shows, Dr. Thompson states that he relied heavily on information obtained directly from the Opt-Ins themselves in calculating damages for these categories of unpaid time. Clearly, the Opt-Ins have been capable of providing estimates of their unpaid hours throughout the course of the litigation, as Mr. Stephenson

and Ms. Arends each provided such estimates as early as February 2019. Plaintiffs suggest that they did not disclose estimates from each of the Opt-Ins earlier in the litigation because they believed that information relating to travel time and no-shows could be found in Defendants' progress notes, which Defendants continually failed to produce. While this argument has some force, Plaintiffs have not fully explained why they could not have also obtained estimates from the Opt-Ins as to these categories of unpaid time earlier in the litigation and produced that information to Defendants prior to the close of fact discovery. Accordingly, on balance, the Court finds that this factor does not weigh heavily in favor of either party.

After balancing the five *Howe* factors as a whole, the Court finds that any delay in Plaintiffs' disclosure of evidence relating to damages was substantially justified and/or harmless. Accordingly, Defendants' request for sanctions under Rule 37(c) is denied.

## IV. Conclusion

Accordingly, and for all the foregoing reasons, Defendants' Motion for Sanctions (Doc. No. 153) is DENIED.

**IT IS SO ORDERED.**

                                                             s/Pamela A. Barker
                                                          PAMELA A. BARKER
Date: January 31, 2022                      U. S. DISTRICT JUDGE