# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,* | **Case No. 1:18cv2017** |
| **On behalf of himself and** | |
| **All others similarly situated,** | |
| | |
| **Plaintiffs,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| | |
| **Family Solutions of Ohio, Inc.,** | **MEMORANDUM OPINION AND** |
| *et al.,* | **ORDER** |
| | |
| **Defendants** | |

Currently pending is Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc.,
John Hopkins, and Dawn Smith's Motion for Certification to File Interlocutory Appeal pursuant to
28 U.S.C. § 1292(b).  (Doc. No. 159.)  Plaintiffs filed a Brief in Opposition on July 27, 2021, to which
Defendants replied on August 2, 2021.  (Doc. Nos. 160, 161.)  For the following reasons, Defendants'
Motion (Doc. No. 159) is DENIED.

## I.   Relevant Background[1]

### A.   Initial Pleadings and Conditional Certification of FLSA Collective Action

On September 4, 2018, Plaintiff Alicia Arends filed a Complaint in this Court on behalf of
herself and all others similarly situated against Defendants Family Solutions of Ohio, Inc., Prostar
Management, Inc., John Hopkins, and Dawn Smith (hereinafter "Defendants").  (Doc. No. 1.)
Therein, Plaintiff asserted that she and the putative class members were employed by Defendants as

---

[1] The Court has set forth the factual background on this matter in several lengthy Memorandum Opinions & Orders.  *See*
Doc. Nos. 137, 143.  The Court presumes familiarity with these Opinions and will not restate the factual background
herein.

Qualified Mental Health Specialists ("QMHS") and that Defendants had failed to pay them for time worked that was not billable to Medicaid or other health insurance. (*Id*.) Plaintiff alleged the following six claims for relief: (1) violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count One); (2) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, Art. II, § 34a (Count Two); (3) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03 (Count Three); (4) violations of the OFMWA's record-keeping requirement (Count Four); (5) breach of contract (Count Five); and (6) unjust enrichment (Count Six). (*Id*.) Plaintiff sought conditional certification as a FLSA collective action; certification of the state law claims under Fed. R. Civ. P. 23; compensatory and punitive damages; and attorney fees and costs. (*Id*.) On March 4, 2019, Jamal Stephenson filed an Opt-In and Consent Form. (Doc. No. 12-1.)

Meanwhile, on February 28, 2019, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice with respect to their FLSA claims. (Doc. No. 11.) Therein, Plaintiffs argued that Defendants violated the overtime provisions of the FLSA by failing to pay potential class members for necessary services such as documentation time, intra-day travel between clients, and time spent for client appointments and no-shows. (*Id.*) Plaintiffs sought conditional certification with respect to "all hourly employees who worked as providers for Family Solutions of Ohio during the three years preceding the commencement of this action to the present." (*Id.*)

On September 16, 2019, the Court issued a Memorandum Opinion & Order granting Plaintiffs' Motion for Conditional Certification with respect to all current and former employees who worked as QMHSs between September 16, 2016 and September 16, 2019. (Doc. No. 20.)

**B.    Discovery and Production of Dr. Thompson's Expert Report**

2

A Case Management Conference ("CMC") was conducted on October 7, 2019, at which time the Court approved the parties' proposed Notice and set the following deadlines: non-expert discovery due by July 6, 2020; dispositive motions due by August 6, 2020; initial expert report due by August 6, 2020; responsive expert report due by September 7, 2020; and all expert discovery to be completed by November 9, 2020.  (Doc. No. 25.)  The Court did not set a specific deadline for filing a motion for certification of a state law class under Fed. R. Civ. P. 23.  (*Id.*)  The docket reflects that FLSA consent forms were filed by twenty-four (24) opt-in plaintiffs between October and December 2019.  *See* Doc. Nos. 26 through 36.

On May 5, 2020, Plaintiffs filed an Amended Class and Collective Action Complaint, designating Plaintiffs Stephenson and Melanie Vilk Baron as the representative plaintiffs. (Doc. No. 50.)  The Amended Complaint raises the same factual and class allegations and asserts the same six grounds for relief set forth in the original Complaint.  (*Id.*)  Defendants filed an Answer on May 19, 2020.  (Doc. No. 51.)

In accordance with this Court's scheduling Order, Plaintiffs filed their Motion for Rule 23 Class Certification on July 31, 2020 and Defendants timely filed Motions for Summary Judgment with respect to all claims asserted by Ms. Vilk Baron and Mr. Stephenson on September 1, 2020. (Doc. Nos. 70, 88, 89.)

Shortly thereafter, and in accordance with this Court's scheduling Order, Plaintiffs produced the report of their expert, Shane Thompson, Ph.D., to Defendants on September 30, 2020.  (Doc. No. 154-1 at PageID#s 6767-6777.)  Therein, Dr.  Thompson concluded that, between September 4, 2015 through September 29, 2019, Plaintiffs accrued a total of 16,965 hours of unpaid work derived from the following three activities: "(1) documentation time in clients' electronic health records, (2) travel

3

time intraday from client to client, and (3) time spent on no-show appointments." (*Id.* at PageID# 6768.)  On October 7, 2020, Dr. Thompson supplemented his Expert Report based on newly submitted information relating to several Opt-Ins.  (*Id*. at PageID#s 6764-6766.)  Dr. Thompson's Supplemental Report includes two Revised Tables, which indicate that Dr. Thompson revised his Opinion to find that Plaintiffs had a total of 18,055.6 hours of unpaid work derived from these same three activities. (*Id*.) Plaintiffs' counsel produced Dr. Thompson's "expert file" to Defendants on November 23, 2020.

The Court conducted a telephonic status conference with lead counsel on January 8, 2021.  At that time, counsel for Plaintiffs specifically asked the Court not to rule on Plaintiffs' Motion for Rule 23 Certification until after a ruling on the pending summary judgment motions.  Defendants did not object.  *See* Non-Document Order dated January 8, 2021.  In addition, counsel for both parties sought, and the Court granted, an indefinite stay of expert discovery.  *Id.*

### C.    Rulings on Summary Judgment and Rule 23 Motions

On March 2, 2021, the Court issued a Memorandum Opinion & Order in which it denied Defendants' Motions for Summary Judgment as to Plaintiff Baron's and Stephenson's FLSA and state law wage-and-hour claims.  (Doc. No. 137.)    Among other things, the Court rejected Defendants' argument that they were entitled to summary judgment in their favor on the issue of damages.  (*Id*. at pp. 35-41.) The Court first found that Plaintiffs had come forward with sufficient evidence to create a genuine issue of material fact regarding the issue of whether they suffered damages as a result of Defendants' failure to pay for time spent traveling, entering documentation into clients' health records, and dealing with no-show appointments.  (*Id*.)  With regard to the specific amount of Plaintiffs' damages, the Court found that Plaintiffs had not failed to timely produce

estimates and/or evidence of their damages, finding that "[a]ny delay in producing this information appears to be the result, at least in part, of the Defendants' delay in producing Family Solutions' audit logs and progress notes." (*Id.* at pp. 39-40.) The Court went on to find that, in light of the fact that expert discovery had not yet concluded, Defendants' argument that they were entitled to judgment in their favor with respect to the issue of damages was premature. (*Id.*) The Court, therefore, denied Defendants' Motion for Summary Judgment with respect to the issue of damages without prejudice subject to refiling after the close of expert discovery.[2] (*Id.*)

As Plaintiffs had not had an opportunity to respond to Defendants' arguments regarding the impact, if any, of Dr. Thompson's expert report on the parties' arguments relating to Rule 23 certification, the Court ordered the parties to submit simultaneous supplemental briefing. (Doc. No. 139.) The parties submitted their Supplemental Briefing on March 26, 2021. (Doc. Nos. 141, 142.)

On April 5, 2021, the Court issued a Memorandum Opinion & Order granting in part and denying in part Plaintiffs' Motion for Rule 23 Certification of a state law class. (Doc. No. 143.) Therein, the Court began by denying Plaintiffs' Motion to the extent the putative class included hourly Therapists and a class-based breach of contract claim. (*Id.* at pp. 13-14.) Having thus narrowed the state law class, the Court proceeded to consider whether to exercise supplemental jurisdiction over Plaintiffs' remaining state class claims. After a lengthy analysis, the Court concluded that "considerations of judicial economy, convenience, and fairness weigh in favor of exercising

---

[2] Defendants also moved to strike the report of Plaintiff's expert, Dr. Thompson, on the grounds that "it is premature, as it was produced days before the [Briefs in] Opposition [to Summary Judgment] and without providing Defendants with an opportunity to conduct discovery with respect thereto." (Doc. No. 107 at p. 2.) Defendants further argued that Dr. Thompson's report should be stricken because "expert discovery has not concluded and Dr. Thompson has not been deposed regarding his opinion." (*Id.* at pp. 11-12.) The Court likewise denied this Motion without prejudice. (Doc. No. 137 at p. 41.)

supplemental jurisdiction over Plaintiffs' state law claims." (*Id.* at p. 23.) Specifically, the Court found that Plaintiffs' state law claims do not substantially predominate over the FLSA claim since (1) two of Plaintiffs' four remaining state law claims (i.e., Plaintiffs' claims for alleged violations of Ohio's minimum wage and overtime violations) are similar to the FLSA claim in terms of their elements and the relevant facts and evidence, and (2) Plaintiffs' unjust enrichment and recordkeeping claims are largely premised on the same evidence as the federal claim. (*Id.*)

Citing several Circuit court decisions, the Court then rejected Defendants' argument that the exercise of supplemental jurisdiction was inappropriate because of the disparity in class size between the FLSA and potential Rule 23 classes. (*Id.*) Lastly, the Court rejected Defendants' argument that Plaintiffs' state law claims substantially predominate because an extensive amount of additional discovery will be necessary. (*Id.*) The Court explained as follows:

> As an initial matter, the Court is not persuaded that any significant additional discovery will be necessary with regard to liability issues associated with Plaintiffs' state law claims. The only question is whether, and to what degree, additional discovery may be necessary with respect to damages. As noted above, Plaintiffs themselves are not asking for a significant amount of additional discovery. Rather, Plaintiffs maintain that Dr. Thompson's damages estimates for the FLSA plaintiffs also apply to the putative Rule 23 class. (Doc. No. 141.) Specifically, Plaintiffs argue that, in light of Defendants' failure to keep records regarding the amount of time QMHSs spent traveling between clients and dealing with no show appointments, Plaintiffs are entitled to prove their claims by representative evidence. (*Id.* at p. 4-9.) Defendants counter that representative evidence is not appropriate in this case because of the highly individualized nature of each QMHSs' potential damages. (Doc. No. 142.)
>
> The Court is not persuaded that significant additional discovery regarding damages will necessarily be required. Both the Supreme Court and the Sixth Circuit have found that, if admissible and otherwise appropriate under the circumstances, representative evidence may be used in calculating collective and class action damages, particularly where (as here) the defendant employer failed to maintain employee time records. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1046 (2016) (in FLSA collective action and Rule 23 class action case, noting that "[i]n many cases, a representative sample is the only practicable means to collect and present relevant data

6

establishing a defendant's liability"); *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 747-748 (6th Cir. 2019). As expert discovery is not complete, the Court is not deciding, at this time, whether Dr. Thompson's expert report will ultimately be deemed appropriate and/or admissible in this action. However, in light of the fact that Plaintiffs have come forward with representative evidence and assert that that evidence will apply equally to putative Rule 23 class members, the Court is not persuaded that certification of a Rule 23 class will necessarily require the time-consuming, years-long, individualized discovery that Defendants direly predict.

(*Id.* at pp. 20-23.)

The Court then proceeded to consider certification under Rule 23. (*Id.* at pp. 26-45.) Of particular relevance, the Court found that the requirements of commonality and superiority were satisfied. With regard to commonality, the Court noted that Defendant Smith herself testified that all QMHSs were subject to the same timekeeping and pay policies with respect to time spent travelling and entering documentation into patient records. (*Id.*) The Court also pointed to evidence from several former Clinical Supervisors that Family Solutions had "a uniform policy for timekeeping and compensation of . . . hourly QMHSs with respect to time spent writing and reviewing client notes and documentation, on work-related travel, or for waiting and notating files regarding client no-shows." (*Id.*) Notably, these Supervisors stated that they were each instructed "not to approve, for insurance or compensation" time logged by QMHSs for any of these activities. (*Id.*)

In light of the above, the Court reasoned that "the same central legal question is at issue with respect to all members of the putative Rule 23 Class: whether Defendants were required to compensate putative QMHS class members for time spent traveling between clients, dealing with no show appointments, and entering documentation into patient records." (*Id.*) The Court rejected Defendants' argument that commonality was not satisfied because variability in each QMHSs' patient load, patient base, and experience level would significantly impact the number of hours each

7

individual QMHSs spent travelling, entering documentation, and dealing with no shows. (*Id*.) The Court explained:

> To satisfy the commonality element, Plaintiffs need only show that they can prove that all putative class members suffered a common injury. *See Rikos v. Proctor & Gamble*, 799 F.3d 497, 505 (6th Cir. 2015); *In re Sonic Corp. Customer Data Breach Litigation*, 2020 WL 6701992 at * 3 (N.D. Ohio) (stating that "for class certification [plaintiffs] need only show that they can prove that all class members suffered damage"). "'[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.'" *Laichev*, 269 F.R.D. at 640 (quoting *Sterling v. Velsicol Chemical Corp*., 855 F.2d 1188, 1197 (6th Cir. 1988)). Here, the Plaintiffs have sufficiently shown that they can prove that all putative QMHS class members have suffered a common injury as a result of Defendants' timekeeping and compensation policies relating to time spent traveling, entering documentation into patient records, and dealing with no show appointments. Under the circumstances presented, any alleged variability in damages is not sufficient grounds for finding a lack of commonality. *See Laichev*, 269 F.R.D. at 640; *In re Sonic Corp. Consumer Data Breach Litigation*, 2020 WL 6701992 at * 3.
>
> In sum, the Court finds that Plaintiffs' claims raise common factual and legal questions, the determination of which will resolve issues that are "central to the validity of each one of the [class] claims in one stroke." *Dukes*, 131 S.Ct. at 2551.

(*Id*. at pp. 33-34.) Finally, with regard to the requirement of superiority, the Court found this requirement satisfied as well, explaining as follows:

> [T]he Court finds that a Rule 23 class action is the "superior" method of adjudicating the Plaintiffs' state claims. As discussed at length above, common factual and legal issues predominate and are capable of resolution on a class wide basis. In addition, the wages at issue on the individual class member level are likely to be relatively small, undercutting the individual class members' ability to pursue their own separate actions. Moreover, there is a strong interest in prosecuting the claims in one forum. *See Kritzer*, 2012 WL 1945144 at * 4. Finally, while managing a Rule 23 Class and a FLSA Collective Class in the same action can be challenging, the Court is not persuaded that it will encounter any undue difficulties in managing the putative Rule 23 QMHS class herein.

(*Id*. at p. 46.)

8

Shortly after issuing its Rule 23 ruling, the Court conducted a status conference with counsel, at which time it set case management deadlines relating to the Rule 23 class members, including deadlines for the submission of a joint proposed Notice, completion of representative fact discovery, completion of expert discovery, and submission of motions based on the same. (Doc. No. 145.)

### D.    Motions for Interlocutory Appeal and for Sanctions

On April 19, 2021, Defendants filed a Notice of Interlocutory Appeal to the Sixth Circuit from this Court's decision granting in part and denying in part Plaintiffs' Motion for Rule 23 Certification. (Doc. No. 147.) Several months later, on July 13, 2021, Defendants filed a Motion for Certification to File Interlocutory Appeal in this Court pursuant to 28 U.S.C. § 1292(b). (Doc. No. 159.) Plaintiffs opposed the Motion, and Defendants filed a Reply. (Doc. Nos. 160, 161.) Defendants also filed a Motion for Sanctions based on Plaintiffs' alleged failure to timely produce evidence of damages. (Doc. No. 153.)

While Defendants' Motions were pending, the parties filed a Joint Motion for Referral to Mediation and to Extend Deadlines. (Doc. No. 165.) The Court granted the Motion, referred the matter to Magistrate Judge William Baughman for mediation proceedings, and extended the remaining case management deadlines. After conducting mediation sessions on November 9, 2021 and December 13, 2021, the Magistrate Judge reported that the parties were unable to reach a resolution.

The Court conducted a status conference with counsel on December 15, 2021, at which time the parties jointly requested that the case schedule be extended by another sixty (60) days. The Court granted the parties' request and set a Final Pretrial for November 21, 2022 and a Trial date of

9

December 5, 2022. (Doc. No. 171.) Subsequently, on January 31, 2022, this Court denied Defendants' Motion for Sanctions. (Doc. No. 172.)

## II.    Legal Standard

Defendants' Motion for Interlocutory Appeal is governed by 28 U.S.C. § 1292(b), which provides as follows:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). Construing this statute, the Sixth Circuit has held that "[t]he district court may certify an order for interlocutory appeal if it is 'of the opinion' that three conditions exist: '[1] the order involves a **controlling question of law** to which there is [2] **substantial ground for difference of opinion** and ... [3] **an immediate appeal may materially advance the termination of the litigation**.'" *In re Donald J. Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (citing 28 U.S.C. § 1292(b)) (emphases in original).

A question of law is controlling if it "could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). *See also In re Trump*, 874 F.3d at 951. As the Sixth Circuit has explained,"'[t]he resolution of an issue need not necessarily terminate an action or 'have precedential value for a number of pending cases' to be 'controlling.'" *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169, fn 8 (6th Cir. 1992) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2nd Cir. 1990), *vacated on other grounds by*, 937 F.2d 44 (1991)). "Rather,

10

all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in district court." *Id*. (quoting *Arizona v. Ideal Basic Indus*. (*In re Cement Antitrust Litigation*), 673 F.2d 1020, 1026 (9th Cir. 1981)). Generally, a controlling question of law "does not include matters within the discretion of the trial court." *In re City of Memphis*, 293 F.3d at 351.

With regard to the second condition, a substantial ground for difference of opinion regarding the correctness of the decision exists when "'(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.'" *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (quoting *City of Dearborn v. Comcast of Mich. III, Inc*., 2008 WL 5084203 at *3 (E.D. Mich. Nov.24, 2008)). *See also In re Trump*, 874 F.3d at 952 (""A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.'") (quoting *Reese v. BP Exploration, Inc*., 643 F.3d 681, 688 (9th Cir. 2011).

Lastly, the third condition (i.e., whether an immediate appeal may materially advance the termination of the litigation) is satisfied where appellate review could "appreciably shorten the time, effort, and expense exhausted between the filing of a lawsuit and its termination." *Trimble v. Bobby*, 2011 WL 1982919 at * 2 (N.D. Ohio May 20, 2011). *See also Adell v Cellco Partnership*, 2019 WL 5285627 at * 2 (N.D. Ohio Oct. 18, 2019). However, "when litigation will be conducted in substantially the same manner regardless of [the Court's decision], the appeal cannot be said to materially advance the termination of the litigation." *In re City of Memphis*, 293 F.3d 351. *See also*

11

*United States Security & Exchange Comm'n v. Geswein*, 2 F.Supp.3d 1074, 1088 (N.D. Ohio 2014).

The decision of whether to certify an interlocutory appeal pursuant to § 1292(b) lies within the discretion of the court. *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.,* 2010 WL 4365514 at * 9 (N.D. Ohio Oct. 27, 2010).  Allowing for interlocutory appeal is generally disfavored and should be granted "sparingly." *In re City of Memphis*, 293 F.3d at 350. *See also Kraus v. Bd. of County Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966); *Geswein*, 2 F.Supp.3d at 1086; *Lang v. Crocker Park, LLC*, 2011 WL 3297865 at * 2 (N.D. Ohio July 29, 2011).  An interlocutory appeal is "not intended as a vehicle to provide early review of difficult rulings in hard cases." *Infocision Mgmt. Corp.,* 2010 WL 4365514 at * 9.  "[D]oubts regarding appealability . . . [should be] resolved in favor of finding that the interlocutory order is not appealable." *United States v. Stone*, 53 F.3d 141, 143-144 (6th Cir. 1995).  *See also Geswein* 2 F.Supp.3d at 1086.

## III.    Analysis

Defendants ask this Court "pursuant to 28 U.S.C. § 1292(b) to modify, amend, or otherwise certify for appeal" its April 5, 2021 Memorandum Opinion & Order (Doc. No. 143) granting in part and denying in part Plaintiffs' Motion for Rule 23 Certification.  (Doc. No. 159 at p.1.)  Defendants argue that that "there are several controlling questions of law" on which a substantial difference of opinion exists.  (*Id.*)  While Defendants do not clearly identify the specific legal questions that they believe warrant certification to the Sixth Circuit, the Court interprets Defendants' Motion as generally requesting certification of the Court's (1) decision to exercise supplemental jurisdiction over the Plaintiffs' state law claims under the particular circumstances of this case; and (2) finding that Rule 23's commonality and superiority requirements are met.  (*Id.* at p. 8.)  Defendants maintain that an immediate appeal of these issues would materially advance the ultimate termination of the litigation

12

because "[t]he Rule 23 Order has resulted in at least eighteen more months of litigation" and "[t]his is a standard case that will likely remain pending for four years before the Sixth Circuit's review if this interlocutory appeal is not granted." (*Id*. at p. 12.)

Plaintiffs argue that Defendants' Motion should be denied for several reasons.  (Doc. No. 160.)  Plaintiffs first assert that, because the class certification orders are discretionary, they do not generally involve a "controlling question of law" for purposes of § 1292(b).  (*Id*. at pp. 2-4.)  Plaintiffs next argue that Defendants have failed to articulate a "controlling question of law," either with respect to supplemental jurisdiction or class certification.  (*Id*.)  Finally, Plaintiffs argue that an interlocutory appeal would not materially advance the ultimate termination of the litigation but, rather, would "most assuredly delay the trial." (*Id*. at p. 10.)

The Court will address the parties' arguments in the context of the § 1292(b) requirements, below.

### A.     Controlling Questions of Law about which there Exist a Substantial Difference of Opinion

#### 1.     Decision to Exercise Supplemental Jurisdiction

Defendants first argue that interlocutory appeal is warranted because the Court should have exercised its discretion to decline supplemental jurisdiction in light of the procedural posture of the case and the disparity in class size between the FLSA and potential Rule 23 classes.  (Doc. No. 159 at p. 8.)  For the following reasons, the Court finds that Defendants have failed to identify a controlling question of law about which there exists a substantial difference of opinion with regard to this issue.

As the Sixth Circuit has explained, "district courts have broad discretion in deciding whether to exercise supplemental jurisdiction" under 28 U.S.C. § 1367, including in instances where state law claims are alleged to "substantially predominate" over claims falling within the district court's

original jurisdiction. *Pinney Dock & Transp. Co. v. Penn. Cent. Corp*., 196 F.3d 617, 620 (6th Cir. 1999). *See also Ohio ex rel. Armstrong v. Stow-Munroe Falls CSD Bd. of Educ*., 2013 WL 5406807 at * 2 (N.D. Ohio Sept. 25, 2013). Here, Defendants do not argue that the Court applied the wrong legal framework in evaluating supplemental jurisdiction but, rather, assert that this Court should have exercised its discretion differently given the particular facts of the instant case. The Sixth Circuit has made clear, however, that this type of discretionary decision does not generally constitute a "controlling question of law" for purposes of § 1292(b). *See, e.g., In re City of Memphis*, 293 F.3d at 351 (finding that, generally, a controlling question of law "does not include matters within the discretion of the trial court"); *Rover Pipeline LLC v. 5.9754 Acres of Land, More or Less, in Defiance County, Ohio,* 2019 WL 1455791 at *5 (N.D. Ohio Apr. 2, 2019) (in denying motion for interlocutory appeal from evidentiary ruling, noting that "[s]uch a question is one of judicial discretion, and the Sixth Circuit has held that such discretionary decisions on the admissibility of evidence are not 'controlling' for purposes of § 1292(b).")

Moreover, even assuming *arguendo* that the Court's discretionary decision to exercise supplemental jurisdiction under the facts of the instant case did constitute a "controlling question of law," the Court finds Defendants have failed to demonstrate that there exists a "substantial difference of opinion" regarding that decision. Although the Sixth Circuit has not directly addressed the issue, several Circuit Courts of Appeals have found it appropriate to exercise supplemental jurisdiction over state law wage claims under analogous circumstances, including where there has been a significant disparity in class size between the FLSA and potential Rule 23 classes. *See, e.g., Ervin v. Os Restaurant Services, Inc*., 632 F.3d 971, 980-981 (7th Cir. 2011); *Shariar v. Smith & Wollensky Restaurant Group, Inc*., 659 F.3d 234, 248 (2nd Cir. 2011). District courts within this Circuit have

14

reached the same conclusion.  *See, e.g., Peterson v. Cleveland Inst. Of Art,* 2011 WL 1297097 at * 5 (N.D. Ohio March 3, 2011); *Hendricks v. Total Quality Logistics, LLC*, 2011 WL 13350901 (S.D. Ohio March 11, 2011).

The sole case cited by Defendants, *De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3rd Cir. 2013) is distinguishable.  In that case, the Third Circuit found that the district court should not have exercised supplemental jurisdiction over state law wage claims for a number of reasons, including most notably because the state claims involved (1) "two novel and complex questions of state law" that had not yet been squarely addressed by Pennsylvania courts; and (2) individual questions of implied contract formation with respect to each member of the state class "which might conceivably predominate over the issues common to the claims of FLSA plaintiffs."  *Id*. at 311.

Here, by contrast, no such novel or complex state law issues are present.  Moreover, notwithstanding Defendants' assertion to the contrary (Doc. No. 161 at p. 5), the Court *denied* Rule 23 certification as to Plaintiffs' class-based breach of contract claims.  (Doc. No. 143 at p. 14.)  Thus, unlike *De Ascencio*, the instant case does not involve individualized questions of contract formation that might predominate over issues common to the FLSA class.  Rather, as the Court fully explained in its April 5, 2021 Opinion, Plaintiffs' claims for alleged violations of Ohio's minimum wage and overtime violations are similar to the FLSA claim in terms of their elements and the required proof, and Plaintiffs' state law unjust enrichment and record keeping claims are largely premised on the same evidence as the federal claim.  Thus, while the instant case may share some similarity with *De Ascencio* in terms of its procedural posture, two of the primary bases for the *De Ascencio* court's decision that supplemental jurisdiction was not appropriate, are simply not present here.

15

Accordingly, the Court finds that Defendants have not demonstrated that the Court's decision to exercise supplemental jurisdiction over Plaintiffs' state law claim constitutes "a controlling question of law about which there exists a substantial difference of opinion," for purposes of § 1292(b).

### 2.      Rule 23 Certification—Commonality and Superiority

Defendants next argue that interlocutory appeal is warranted with respect to the Court's decision that Rule 23's commonality and superiority requirements have been met.  (Doc. No. 159 at pp. 4, 8-10.)  Defendants assert that "Plaintiffs have not yet proved that a common policy exists and, in fact, the evidence in the record overwhelmingly establishes that there is no common policy."  (*Id.* at p. 4.)  Specifically, Defendants maintain that "a novel issue exists as to whether a District Court may find a common policy appropriate to determine liability and damages with respect to all plaintiffs based upon representative evidence in an expert report and where the individuals are wholly responsible for submitting their time and hours." (*Id.*)

For the following reasons, the Court finds that Defendants have failed to identify a controlling question of law about which there exists a substantial difference of opinion.  As an initial matter, like the decision whether to exercise supplemental jurisdiction, a district court has broad discretion to decide whether to certify a class under Rule 23.  *See Hicks v. State Farm Fire and Casualty Company,* 965 F.3d 452, 457 (6th Cir. 2020); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850 (6th Cir 2013).  Defendants do not argue that the Court applied the wrong legal framework under Rule 23 but, rather, assert that this Court should have exercised its discretion differently in deciding whether to certify a state law class under Rule 23.  As noted above, this type of discretionary decision does not generally constitute a "controlling question of law" for

16

purposes of § 1292(b).  *See, e.g., In re City of Memphis*, 293 F.3d at 351; *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 29 F.Supp.2d 825, 837 (N.D. Ohio 1998).   However, the Court does note that Defendants also appear to argue that this Court improperly determined, as a matter of law, that Plaintiffs established a "common policy" sufficient to demonstrate commonality and/or superiority under Rule 23.  Assuming *arguendo* that the Court's determination of this issue involves a "controlling" issue of law, however, the Court finds that Defendants have failed to demonstrate that there exists a "substantial ground for difference of opinion" regarding this issue for purposes of § 1292(b).

 As set forth *supra*, "a substantial ground for difference of opinion" regarding the correctness of a decision exists when (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.  *In re Miedzianowski*, 735 F.3d at 384.  Section 1292(b) "is not appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts."  *Howe v. City of Akron*, 789 F.Supp.2d 786, 810 (N.D. Ohio 2010) (citing *Link v. Mercedes–Benz of North America, Inc.*, 550 F.2d 860, 863 (3d Cir.1977)).  *See also United States ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 F.Supp.2d 858, 867 (N.D. Ohio 2012).

 Here, the Court is not persuaded that the question of whether Plaintiffs established a "common policy" for purposes of establishing commonality under Rule 23[3] is either difficult, novel, or the

---

[3] To demonstrate commonality, plaintiffs must show that class members have suffered the same injury and that their claims "depend upon a common contention . . . of such a nature that it is capable of class resolution." *In re Whirlpool*,

17

subject of a difference of opinion within the Sixth Circuit.  As discussed in this Court's April 5, 2021

Opinion, Plaintiffs have come forward with evidence that Defendants' pay practices with respect to

documentation time, intra-day travel time, and no-show appointments were common to all QMHSs.

For example, Defendant Family Solutions' 30(b)(6) representative, Dawn Smith, testified as follows:

> Q.    The question to you is [when you joined Family Solutions in 2013] was it already in place that QMHSs would not be paid for travel time?

> A.    Yes.

> Q.    That was already -- that their hours spent while driving would not be compensated, that was already a policy in place at Family Solutions when you came in in 2013?

> A.    Yes.

> Q.    And when you learned of that policy, how did you learn? By reading something, a written policy, a written document, or by speaking to someone?

> A.    Just speaking, trying to learn the company I had become a part of.

> Q.    Okay.  So somebody told you, We don't pay QMHSs for driving from one client to another?

> A.    Yes.

> Q.    Who told you that?

> A.    At that time, it would have been the CEO and CFO.

> Q.    Who were [they] at that time?

> A.    [Defendants] John Hopkins and Nancy Hopkins.

> ***

---

722 F.3d at 852-853. "This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit."  *Id*.

18

> Q.   And [QMHSs] were all subject to the same rules on whether they would be paid by Family Solutions for their travel time and for the time they spent entering documentation in the computer?
>
> A.   Correct.

(Depo. of Dawn Smith (Doc. No. 114-1) at Tr. 64-65, 263.)  In addition, Plaintiffs presented Declarations from former Clinical Supervisors Rose Marie Pryor, Julie Winston, and Sereena Creamer, in which they aver that Family Solutions had "a uniform policy for timekeeping and compensation of . . . hourly QMHSs with respect to time spent writing and reviewing client notes and documentation, on work-related travel, or for waiting and notating files regarding client no-shows." (Doc. No. 100-5 at PageID#s 2254-2255, 2257-2258, 2260-2261.)  Each of these Supervisors state that they were instructed "not to approve, for insurance or compensation" time logged by QMHSs for any of these activities.  (*Id*. at PageID#s 2253-2254, 2256-2257, 2260.)

In light of the above, the Court finds that Defendants have not established that the issue of commonality and/or superiority is difficult or novel.  Here, all of the class members were QMHSs and, according to Defendant Smith's own testimony, all were "subject to the same rules" that they would not be paid for time spent entering documentation, traveling between clients, and dealing with no-show appointments.  Resolution of whether these pay practices violate Ohio law will, thus, generate common answers for all the Rule 23 class members.  Moreover, under the particular circumstances presented, the Court is not persuaded that this issue is difficult and/or novel because Plaintiffs "admittedly drafted, reviewed and signed their time cards." (Doc. No. 159 at p. 11.)  As noted above, Clinical Supervisors Pryor, Winston, and Creamer each averred that they were instructed not to approve any time logged for time spent on these three categories of activities.  Winston and Creamer also averred that "[m]any hourly employees at Family Solutions of Ohio complained about

19

not getting paid for writing and reviewing client notes and documentation, work related travel time, and no-shows," but that none of these complaints were ever rectified. (Doc. No. 100-5 at PageID# 2257, 2260.) Defendants do not acknowledge or address this evidence in their Motion for Interlocutory Appeal or otherwise explain how, in light thereof, the question of commonality is sufficiently difficult or novel to warrant interlocutory appeal.

The Court also finds that Defendants have failed to demonstrate that the questions of commonality and/or superiority are the subject of either a difference of opinion within the Sixth Circuit or a Circuit split. Defendants rely principally on an unreported decision from the Western District of Michigan, *Jimenez v. Lakeside Pic-N-Pac, LLC*, 2007 WL 4454295 (W.D. Mich. Dec. 14, 2007). The Court finds *Jimenez* to be distinguishable. In that case, plaintiffs were seasonal farm workers who were employed by defendants to pick blueberries. The plaintiffs were paid on a piece rate basis, either by the bucket or the pound. Plaintiffs alleged that defendants violated the FLSA by improperly failing to supplement their piece-rate earnings so as to raise their individual pay period wages to a rate equal to or exceeding the minimum wage. The district court declined to a certify a collective action under the FLSA for several reasons, including that "[t]here was simply no evidence to support the existence of a uniform policy that operated to compensate [plaintiffs] at a rate less than minimum wage." *Id*. at * 5. Applying the Rule 23 requirements, the district court also declined to certify a class under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), finding that "whether or not Defendants paid a minimum wage does not present a question of law or fact that is common to the proposed class." *Id*. at *8.

By contrast, in the instant case, Plaintiffs have come forward with evidence (including testimony from Family Solution's own 30(b)(6) representative) that all QMHSs were subject to a

common policy that they would not be paid for time spent entering documentation, traveling between clients, and dealing with no-show appointments. Under these circumstances, the Court is not persuaded by Defendants' argument that *Jimenez* demonstrates a substantial difference of opinion within the Sixth Circuit. Nor have Defendants cited any cases regarding commonality and/or superiority that purport to demonstrate that the instant case involves a question that is the subject of a Circuit split.

Lastly, the Court rejects Defendants' argument that interlocutory appeal is warranted because "commonality does not exist due to the individualized inquiry necessary to determine whether each class member can prove an essential element of their claims—hours worked, but not paid." (Doc. No. 159.) In his expert report, Dr. Thompson calculated the total number of hours that each opt-in plaintiff spent entering documentation in clients' files, travelling between clients, and dealing with no-show appointments, for which they were allegedly not paid.[4] (Doc. No. 154-1 at PageID# 6766.) Plaintiffs have asserted that Dr. Thompson will be able to use representative evidence to determine the total number of hours worked (but allegedly not paid) by the Rule 23 class members in these same categories. Of course, Defendants will have the opportunity to depose Dr. Thompson, challenge his methodology and opinions, and, if appropriate, to move to decertify the class. This fact also weighs against certifying the Court's Rule 23 decision for interlocutory appeal. *See In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002) (finding that "an indication that the district court will reexamine the certification decision following discovery should discourage an interlocutory appeal.")

---

[4] Dr. Thompson calculated the number of hours spent on documentation time based on his review of Defendants' audit logs. (Doc. No. 154-1 at PageID# 6769.) Because Defendants failed to keep records regarding time spent by QMHSs traveling between clients and dealing with no-show appointments, he relied on information obtained from the opt-ins regarding these categories. (*Id.* at PageID#s 6770-6771.)

21

Accordingly, and for all the reasons set forth above, the Court finds that Defendants have not demonstrated that the Court's findings regarding the commonality and superiority requirements of Rule 23 constitute "controlling questions of law about which there exists a substantial difference of opinion," for purposes of § 1292(b).

**B.**     **Materially Advance the Termination of the Litigation**

Lastly, Defendants argue that interlocutory appeal will materially advance the termination of the instant litigation. (Doc. No. 161 at pp. 6-7.)  Defendants complain that "[t]his Court has expanded an FLSA class by a factor of nine and limited Defendants' discovery into this greatly expanded class to only twenty randomly selected class members." (*Id.*)  Defendants assert that this discovery "will reveal that the 180 new class members have many unique factual circumstances that will necessitate additional discovery and motion practice." (*Id.*) Defendants argue that, without an interlocutory appeal, the Court's April 5, 2021 Opinion will delay resolution of this case "by months, if not years." (*Id.* at p. 7.)  Plaintiffs disagree, arguing that class discovery is coming to a close and "permitting interlocutory appeal of the class certification ruling will most assuredly delay the trial." (Doc. No. 160 at p. 10.)

The Court finds that interlocutory appeal would not materially advance the termination of the instant litigation.  With respect to this Court's decision to certify a state law class under Rule 23, the Court may, in all likelihood, be asked to reexamine this issue in the coming months.  Specifically, Defendants have suggested that they may seek to decertify the Rule 23 class once class discovery and Dr. Thompson's deposition are complete. As noted *supra*, the Sixth Circuit has held that "an indication that the district court will reexamine the certification decision following discovery should discourage an interlocutory appeal." *In re Delta Lines*, 310 F.3d at 960. *See also In re Community*

22

*Health Systems, Inc.,* 2019 WL 5549319 at * 2 (6th Cir.  Oct. 23, 2019) ("If the district court might reexamine its certification decision, interlocutory review of the decision is discouraged."); *In re Carpenter Co.,* 2014 WL 12809636 at * 4 (6th Cir. Sept. 29, 2014).  It would be a waste of judicial resources to certify interlocutory appeal of an issue that has the potential to be moot should Defendants move to decertify the Rule 23 class.

Moreover, even if the Sixth Circuit were to reverse this Court's decisions to either exercise supplemental jurisdiction over Plaintiffs' state law claims and/or to certify a state law class under Rule 23, Plaintiffs' FLSA collective action claims would still remain for resolution.  Indeed, regardless of the outcome of Defendants' proposed interlocutory appeal, the parties would still need to complete expert discovery and, further, might potentially engage in motion practice to exclude Dr. Thompson's expert report and/or decertify the FLSA collective action.  Thus, interlocutory appeal would not result in the termination of the litigation but, rather, would likely significantly delay it.  *See Iron Workers Local Union No. 17,* 29 F.Supp.2d at 837 (denying interlocutory appeal of Rule 23 class certification where "immediate appeal would do little to alter litigation expenses and presentations."); *Hawes v. Macy's Inc*., 2019 WL 1492237 at * 3 (S.D. Ohio Apr. 4, 2019) (denying interlocutory appeal where such an appeal "would not avoid trial or substantially shorten the litigation").  Accordingly, the Court finds that Defendants have not demonstrated that interlocutory appeal would materially advance the termination of the litigation.

Having considered each of the three factors set forth in § 1292(b), the Court finds that Defendants have not met their burden of demonstrating that an interlocutory appeal is justified.  Defendants' Motion for Certification to File Interlocutory Appeal (Doc. No. 159) is, therefore, denied.

23

**IV.    Conclusion**

Accordingly, and for all the foregoing reasons, Defendants' Motion for Certification to File Interlocutory Appeal (Doc. No. 159) is DENIED.

**IT IS SO ORDERED.**


 *s/Pamela A. Barker*

PAMELA A. BARKER

Date:  February 9, 2022                                    U. S. DISTRICT JUDGE