IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMAL STEPHENSON, et al.                :
                                        :       CASE NO. 1:18-cv-02017-PAB
                Plaintiff,              :
                                        :
v.                                      :       JUDGE PAMELA A. BARKER
                                        :
FAMILY SOLUTIONS OF OHIO, INC.,         :
et al.                                  :
                                        :
                Defendants.             :

## DEFENDANTS' MOTION TO DECERTIFY THE CLASS CONDITIONALLY CERTIFIED UNDER 29 U.S.C. § 216(b)

Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith (collectively, "Defendants") hereby move to decertify the class conditionally certified under 29 U.S.C. § 216(b) in the captioned-matter.

Class certification under 29 U.S.C. § 216(b) occurs in two stages: conditional and final certification. *See Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669, 672 (6th Cir. 2012). "[T]he second stage warrants a stricter standard than the conditional stage because it occurs near the end of discovery." *Id.* at 671 (*citing Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)).  This motion seeks to decertify the class conditionally certified pursuant to 29 U.S.C. § 216(b).

The named plaintiffs in a class conditionally certified under the FLSA bear the burden of proving that the conditional class is "similarly situated" for purposes of 29 U.S.C. § 216(b) certification.  The conditional class consists of twenty-three (23) opt-ins.  Discovery in this matter has confirmed that the Qualified Mental Health Specialist ("QMHS") position at issue in this lawsuit is highly individualized and unique to each conditional class member.

In this matter, Plaintiffs' expert obtained individual statements from the majority of the FLSA class that supports the expert's report following the close of discovery.  This Court has ruled that Defendants "will have the opportunity to cross examine" the class members "about their Declarations at trial."  (ECF #172, pg. 17).  Accordingly, if the FLSA class continues, all twenty-three class members will be testifying at trial.

Put simply, none of the conditional class members are similarly-situated for purposes of certification pursuant to  29 U.S.C. § 216(b).  Moreover, the class is not the appropriate manner for the resolution of this dispute – each class member should move forward with an individual trial.  Accordingly, because Plaintiffs cannot show that they are similarly-situated nor numerosity, the conditional class must be decertified.  This Motion is supported by the attached Memorandum in Support, the declaration of Dawn Smith, and the depositions of Jamal Stephenson, Melanie Vilk Baron, and Shane Thompson.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Andrea V. Arnold (0099455)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
andrea.arnold@lewisbrisbois.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.       BRIEF STATEMENT OF THE ISSUES ................................................................. 1

II.      SUMMARY OF THE ARGUMENT ........................................................................ 1

III.     RELEVANT FACTS ................................................................................................. 4

       A.     General Procedural History. ........................................................................... 4

       B.     If The FLSA Class Proceeds To Trial, The Trial Will
             Be Highly Individualized ............................................................................... 5

       C.     The Proposed Class Drafted, Reviewed, And Signed Their Weekly
             Time Sheets. ..................................................................................................... 5

       D.     The Facts Relevant To Proving Plaintiffs' Claims Are Specific
             And Unique. ...................................................................................................... 6

            1.     Five separate locations with different supervisors. ............................ 7

            2.     Training is unique to each of the locations. ...................................... 8

            3.     Each patient visit is unique. ............................................................... 8

            4.     The QMHS employee determines their travel schedule. ................. 9

            5.     The number of weekly visits will vary. ............................................. 9

            6.     The named plaintiffs present individualized issues. ...................... 10

            7.     The FLSA Class was paid for no show appointments. ................... 11

IV.     LAW AND ARGUMENT ....................................................................................... 11

       A.     Standard Of Review. ..................................................................................... 11

       B.     Twenty-Three Class Members Is Not Sufficiently Numerous. ............................ 12

      C.      Class Certification Will Result In At least Twenty-Three Mini-Trials............... 13

          1.     How to get around the time cards they drafted and approved? ....................... 13

          2.     How to prove hours worked, but not paid? ..................................................... 14

          3.     Family Solutions' alleged knowledge of the hours worked. .......................... 16

      D.      Defendants Will Rely Upon Highly Individualized Defenses. ........................... 16

      E.      Degree Of Fairness And Procedural Impact. ...................................................... 17

V.        <u>CONCLUSION</u> .......................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cornell v. World Wide. Bus. Servs. Corp.*,
No. 2:14-cv-27, 2015 U.S. Dist. LEXIS 148191 (S.D. Ohio Nov. 2, 2015) ..........................12

*Creely v. HcR ManorCare, Inc.*,
920 F.Supp.2d 846 (N.D. Ohio 2013)..................................................................................15

*Cruz v. Dollar Tree Stores, Inc.*,
No. 07-2050 SC, 2011 U.S. Dist. LEXIS 73938 (N.D. Cal. July 7, 2011).............................15

*DeLong v. International Union*,
No. C-3-84-135, 1991 U.S. Dist. LEXIS 21766 (S.D. Ohio Aug. 26, 1991) ....................2, 12

*Dikker v. 5-Star Team Leasing, LLC*,
243 F.Supp.3d 844 (W.D. Mich. 2017) .......................................................................2, 14, 16

*Frye v. Baptist Mem. Hosp., Inc.*,
495 Fed. Appx. 669 (6th Cir. 2012)......................................................1, 1, 2, 4, 11, 12, 13, 14

*Frye v. Baptist Mem. Hosp., Inc.*,
No. 07-2708, 2010 U.S. Dist. LEXIS 101996 (W.D. Tenn. Sep. 27, 2010)...........................17

*Guy v. Lexington-Fayette Urban County Gov't*,
488 Fed. Appx. 9 (6th Cir. 2012).........................................................................................12

*Lockhart v. D&S Residential Servs., LP*,
No. 2:18-cv-02586, 2020 U.S. Dist. LEXIS 145321 (W.D. Tenn. Aug. 13,
2020) .................................................................................................................................17

*McDonald v. Madison Twp. Bd. of Twp. Trs.*,
No. 2:07-cv-0697, 2007 U.S. Dist. LEXIS 76450 (S.D. Ohio Oc. 5, 2007).....................12, 13

*O'Brien v. Ed Donnelly Enters.*,
575 F.3d 567 (6th Cir. 2009) ...............................................................................................11

*Reynoso v. All Power Mfg.Co.*,
No. 16-1037 JVS, 2018 U.S. Dist. LEXIS 227475 (C.D. Cal. Apr. 30, 2018).......................15

**Statutes**

29 U.S.C. § 216(b) ...........................................................................1, 2, 1, 4, 11, 13, 18

FLSA.................................................................1, 2, 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 17, 18

**Other Authorities**

*Fry* Appx. (6th Cir. 2012).................................................................................................................13

## I.    BRIEF STATEMENT OF THE ISSUES

1.      Whether the named Plaintiffs and opt-ins are similarly situated for purposes of 29 USC § 216(b) class certification.

2.      Whether the proposed class is sufficiently numerous.

3.      Whether a class is the proper method for resolving this matter since all of the FLSA class will be testifying at trial.

## II.    SUMMARY OF THE ARGUMENT

Following years of litigation, this matter involves two named Plaintiffs – Plaintiffs Jamal Stephenson and Melanie Vilk Baron ("Plaintiffs") – and a total of twenty-three (23) prospective class members (the "FLSA Class").  Discovery has closed and Defendants Family Solutions of Ohio, Inc. ("Family Solutions"), Prostar Management, Inc., John Hopkins, and Dawn Smith (collectively, "Defendants") seek to decertify the FLSA Class conditionally certified under 29 USC § 216(b).

Class certification under 29 U.S.C. § 216(b) occurs in two stages: conditional and final certification. *See Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669, 672 (6th Cir. 2012). "[T]he second stage warrants a stricter standard than the conditional stage because it occurs near the end of discovery." *Id.* at 671 (*citing Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)).  The named plaintiffs in a class conditionally certified under the FLSA bear the burden of proving that the conditional class is "similarly situated" for purposes of 29 U.S.C. § 216(b) certification.  Whether individuals are similarly situated for purposes of an FLSA class depend upon the (1) factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and

procedural impact of certifying the action as a collective action. *See Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669, 672 (6th Cir. 2012).

In this matter, it is undisputed that none of the members of the FLSA Class ever raised pay issues with Family Solutions prior to the filing of this lawsuit.  To the contrary, each of the FLSA Class members drafted their own time sheets, submitted the time sheets to their supervisor, and then signed the time sheets once the time sheet was approved by their supervisor.  All time reported by the FLSA Class members were paid by Family Solutions.  In order to circumvent these time sheets, Plaintiffs will bear the burden to establish that (1) they performed work for which they were not paid; and (2) that Defendants had actual or constructive knowledge of that work. *Dikker v. 5-Star Team Leasing, LLC*, 243 F.Supp.3d 844, 852-53 (W.D. Mich. 2017).

Initially, at only twenty-three members, the FLSA Class does not satisfy the numerosity requirement.  *DeLong v. International Union*, No. C-3-84-135, 1991 U.S. Dist. LEXIS 21766, *41-42 (S.D. Ohio Aug. 26, 1991) ("twenty-six individuals does not constitute such a large number that joinder is impracticable.").

As to the individualized nature of the FLSA Class, through an expert, the FLSA Class alleges that they were not paid for travel time, medical documentation time, and no show appointments.  There is no written policy supporting this claim.  Rather, the FLSA Class has been conditionally certified based on deposition testimony of Family Solutions' corporate representative stating that travel time is not normally billed and paid under Family Solutions' policies and the declarations of three former clinical supervisors who allege that travel time, medical documentation time, and no show appointments are not normally paid under Family Solutions' policies.  (ECF #175, pgs. 18-19).

Discovery has confirmed that the evidence is highly individualized with respect to the alleged hours worked, but not paid.  The work histories, patient loads, location worked, and different supervisors impact each of the three categories of work.  In fact, Plaintiffs' expert has conceded that his computations for two of the categories of damages are based entirely on written statements of most of the FLSA Class members.  (Deposition of Shane Thompson at 45-46, 54, and 181 ("Dep. Thompson at __")).[1]  Due to this individualized nature of calculating hours worked, but not paid, this Court has already ruled that Defendants "will have the opportunity to cross examine" the class members "about their Declarations at trial."  (ECF #172, pg. 17).

As to actual or constructive notice of the hours worked, but not paid, Family Solutions has many offices in Ohio and the FLSA Class had many different supervisors.  Moreover, Plaintiffs both reported non-patient time on their billing records and were paid for those non-billable hours. The prospective class members had different clinical supervisors and each experience with a clinical supervisor is unique because it is very "one-on-one."  (Deposition of Jamal Stephenson at 72 ("Dep. Stephenson at __")).  Baron admits that the patient load for each QMHS employee is different.  (Deposition of Melanie Baron at 52 ("Dep. Baron at ___")).  Baron further admits that the travel schedule for each QMHS position is different.  (Dep. Baron at 52).  Stephenson similarly admits that each QMHS employee set their own schedule with respect to patient visits.  (Dep. Stephenson at 99).  Stephenson further admits that each patient visit is unique depending on the patient's needs and the treatment plan.  (Dep. Stephenson at 83).  Finally, because job experiences for each QMHS employee is so different, each hours worked, but not paid, calculation is unique to the QMHS employee.  (Dep. Stephenson at 71).

---

[1] The cited pages from Shane Thompson's deposition are attached as Exhibit A.

Due to the highly unique employment experiences of the QMHS employees, Plaintiffs failed to produce documents supporting hours worked, but not paid, they never responded to an interrogatory requesting information on hours worked, but not paid, and they never provided damage estimates prior to the discovery cut-off date.  Similarly, Baron and Stephenson were deposed and testified to facts supporting the exempt status of the QMHS position.  However, prospective class members refused to respond to admission requests addressing the same factual issues confirmed by Stephenson and Baron – stating that "Plaintiffs cannot accurately admit or deny" these requests.  Plaintiffs inability or unwillingness to demonstrate such basic facts with respect to their job duties precludes them from establishing that they are similarly situated as a matter of law pursuant to Sixth Circuit authority. *See Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669, 671 (6th Cir. 2012) ("the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions"; decertification appropriate where job duties differed).

If this matter proceeds, it should proceed as individual cases that address the unique employment histories of each prospective class member.  Accordingly, because Plaintiffs cannot satisfy their higher burden of showing that they are similarly situated, Defendants' Motion should be granted.

## III.   RELEVANT FACTS

### A.   General Procedural History.

This lawsuit was filed on September 4, 2018. (*See* Docket at ECF #1).  The Court's September 16, 2019 Order conditionally certified as a class only those individuals employed by Family Solutions in the QMHS position from September 16, 2016 through September 16, 2019. (ECF # 20).  In the Order, the Court explicitly stated that "[it] may revisit [conditional certification]

upon proper motion at a later stage of the case]." At this stage of the litigation, the FLSA Class consists of twenty-three members. (Declaration of Dawn Smith at ¶66 and Exs. 1-2 ("Dec. Smith at __")).[2]

**B.** **If The FLSA Class Proceeds To Trial, The Trial Will Be Highly Individualized**

The FLSA Class alleges that they were not paid for medical documentation, travel time, and no show appointments. (Dep. Thompson at 13). Plaintiffs' expert has conceded that his computations for two of the categories of damages – travel time and no shows – are based entirely on written statements of most of the FLSA Class members. (Dep. Thompson at 45-46, and 54). The expert concedes that most or all of the FLSA Class submitted written statements setting forth the alleged damages in these two categories. (Dep. Thompson at 181).

Due to this individualized nature of calculating hours worked, but not paid, this Court has already ruled that Defendants "will have the opportunity to cross examine" the class members "about their Declarations at trial." (ECF #172, pg. 17). Accordingly, if this matter proceeds to trial, the vast majority of the FLSA Class will be testifying at trial. (ECF #172, pg. 17); (Dep. Thompson at 181).

**C.** **The Proposed Class Drafted, Reviewed, And Signed Their Weekly Time Sheets.**

During their employment, QMHS employees are required to fill out time sheets recording their time worked on a weekly basis. (Dep. Baron at 27 and 37); (Dep. Stephenson at 143 and 158-59). The time sheets are provided to the location's Clinical Supervisor, who reviews for accuracy and makes any necessary corrections. (Dep Baron at 27 and 37); (Dep. Stephenson at 143-145). The time is inputted by the QMHS employee based on the amount of time spent on the

---

[2] A copy of Dawn Smith's declaration is attached hereto as Exhibit B.

activity and the time is coded pursuant to Family Solutions' Medicaid fee schedule.  (Dep. Baron at 27 and 32-37; Dep. Stephenson at 142-145).

The Clinical Supervisor then reviews the entries to verify they are accurate and compliant with Family Solutions' policies.  (Dep. Baron at 37-38); (Dep. Stephenson at 142-148).  If any changes are needed to the entries submitted by the QMHS employee, the Clinical Supervisor will speak with the employee and ask the employee to make the required change to the entries.  (Dep. Baron at 37-38); (Dep. Stephenson at 142-148).  Stephenson admitted that he was paid the amount of units that he signed off on each week.  (Dep. Stephenson at 148).  Baron similarly testified that she approved and signed-off on her time sheet each week.  (Dep. Baron at 38 and 41).  Finally, the billing sheets submitted by Stephenson and Baron, and paid by Family Solutions, included non-billable and billable time.  (Dec. Smith at 58 and 61).

**D.** **The Facts Relevant To Proving Plaintiffs' Claims Are Specific And Unique.**

Based on the written time sheets drafted, reviewed and signed by the FLSA Class, the FLSA Class will have to rely on highly individualized facts to prove this claims.  There is no written policy supporting this claim.  Rather, the FLSA Class has been conditionally certified based on deposition testimony of Family Solutions' corporate representative stating that travel time is not normally billed and paid under Family Solutions' policies, and the declarations of three former clinical supervisors who allege that travel time, medical documentation time, and no show appointments are not normally paid under Family Solutions' policies.  (ECF #175, pgs. 18-19).

The highly individualized facts surrounding the FLSA Class are set forth in Paragraphs 35 through 54 of Dawn Smith's Declaration.  The deposition testimony of the Plaintiffs confirms these individualized facts.

**1.      Five separate locations with different supervisors.**

Family Solutions is a non-profit organization that provides mental and behavioral healthcare services and resources for children and families throughout Ohio.  (Dec. Smith at ¶ 7).  Relevant to this Motion, Family Solutions has five locations employing QMHS in Ohio.  (Dec. Smith at ¶ 10).  Each Ohio location employs a Program Director or Assistant Program Director, in addition to a Clinical Supervisor.  (Dec. Smith at ¶ 11-12).

Due to the many offices, Plaintiff Stephenson admitted that he only worked with one of the other twenty-six prospective class members.   (Dep. Stephenson at 55-69).   The only one Stephenson worked with, Alicia Arends, held a position other than QMHS when she worked with Stephenson.  (Dep. Stephenson at 55-57).  Stephenson never worked or spoke with Baron, the other named Plaintiff.  (Dep. Stephenson at 68).

More importantly, Stephenson does not know the clinical supervisors for any of the other prospective class members.  (Dep. Stephenson at 70).  This fact is very important to class certification because Stephenson recognizes that clinical supervision is unique to each relationship:

> Q.  Okay.  Obviously, it would be pretty individualized when you talk about each individual supervisor, especially in the clinical side, is trying to work one-on-one with each of the individuals in your former position with Family Solutions, correct?
>
> Counsel:  Object as to form.  You can answer, Jamal.
>
> A.  I'm not exactly sure.
>
> Q.  You're not sure whether it would be highly individualized, very fact based as to each individual as to their supervision?
>
> A.  **Yes, because, like I said, supervision was very one-on-one when I had the experience there, so I am not sure**.
> Like I said, I don't know of any policy changes or anything, so I don't know if the supervising policy changed or anything, any of that other stuff changed with other employees.

(Dep. Stephenson at 71-72 )(emphasis added).

### 2.    Training is unique to each of the locations.

Based on the time sheets drafted, reviewed and signed by the proposed class members, the training provided to each proposed class member on the time sheets is critical to proving Plaintiffs' claims.  Plaintiff Baron attended an initial two week training session.  (Dep. Baron at 18).  Stephenson also attended an orientation session.  (Dep. Stephenson at 79-80).  However, the training of employees on time reporting, and monitoring of their time reporting throughout employment is conducted at the site-level by site employees.  (Dec. Smith at ¶ 8).  The orientation is conducted by salaried employees at the location.  (Dec. Smith at ¶ 9).

### 3.    Each patient visit is unique.

Family Solutions' patients receive Medicaid services when those services are deemed "medically necessary."  (Dep. Baron at 24); (Dep. Stephenson at 101).  Before a QMHS employee sees a Family Solutions' patient, a case worker completes a screening process with the patient.  (Dep. Baron at 23).

Clinical Supervisors make the medical decisions on whether a patient is eligible for Family Solutions' Medicaid services.  (Dep. Baron at 24).  The Clinical Supervisors determine the treatment plans for the Family Solutions' patients.  (Dep. Baron at 24); (Dep. Stephenson at 98).  The treatment plan included the "initial diagnosis or mental health assessment."  (Dep. Stephenson at 98).  The QMHS employee is required to adhere to the treatment plan when treating patients. (Dep. Stephenson at 98).  If a QMHS employee has a question about patient care, they are directed to take the question to the Clinical Supervisor.  (Dep. Baron at 25).  In addition, Clinical Supervisors review the medical records completed by the QMHS employees when treating patients in order to update and modify treatment plans.  (Dep. Baron at 27).

Documentation time required for each patient visit varies because no two patient sessions are the same.  (Dec. Smith at ¶13-14); (Dep. Stephenson at 83).  Each time a QMHS employee meets with a patient, even a continuing patient, the session is unique.  (Dec. Smith at ¶13); Dep. Stephenson at 83).  The patients can and do bring up a variety of issues; many of which were not addressed in prior counseling sessions.  (Dec. Smith at ¶13); (Dep. Stephenson at 89-91 and 98-99).

### 4. The QMHS employee determines their travel schedule.

The QMHS employees set their work schedules each week.  (Dep. Stephenson at 99).  Some QMHS employees set their patient visits in the evenings, some pick certain days of the week to work, and some try to schedule patients each workday.  (Dep. Stephenson at 99-100).  Most importantly, the QMHS employee, not Family Solutions, is in charge of determining which patients to treat, how often to treat each patient, which days they will schedule patients, how many patients they will schedule each day, and the area or location in which they will treat patients.  (Dec. Smith at ¶ 47); (Dep. Stephenson at 87-88, 99, 104, 121, and 131).  Plaintiff Baron admitted that the travel schedule for each QMHS employee will be different:

> Q.  Okay.  And then I'm assuming the travel schedule would be different for each QMHS because they're dealing with different patients?
>
> A.  Yes.

(Dep. Baron at 52).

### 5. The number of weekly visits will vary.

The patient base is very different for every QMHS employee.  (Dec. Smith at ¶ 46-47).  Some have large patient bases because they can retain patients.  (Dec. Smith at ¶ 44).  These QMHS employees may be able to limit travel time and days worked.  (Dec. Smith at ¶ 47).  On the other

hand, a QMHS employee without a large patient base may have to travel more and work additional days in order to meet the full-time unit requirement.  (Dec. Smith at ¶ 47).  Plaintiff Baron admitted to the different patient loads for QMHS employees and the unique reasons for these different patient loads:

> Q.  Okay.  So it sounds like the patient load is different for each QMHS depending on how long they've been there and how long they've been performing?
>
> A.  **Yes.  Yeah, I mean I – yeah, that's right**.

(Dep. Baron at 52)(emphasis added).

### 6.    The named plaintiffs present individualized issues.

Jamal Stephenson and Melanie Vilk Baron are the proposed class representatives of the proposed state law class.  Stephenson worked at Family Solutions' Cincinnati location from August 2016 to May 2017.  (Dec. Smith at ¶ 56).  Stephenson admitted in his deposition that he provided patient care over the last weeks of his employment.  (Dep. Stephenson at 162).  However, Stephenson did not follow Ohio law and Family Solutions' policies because he did not create medical records for this patient care.  (Decl. Smith at ¶ 59).  Stephenson admitted to the knowing failure.  (Decl. Smith at ¶ 59; *see also* Dep. Stephenson at 158-59, 162).  This is a serious issue and any Family Solutions' employee would be subject to discharge for the misconduct.  (Decl. Smith at ¶ 59).  Stephenson also testified that he failed to timely submit his billing sheets during his employment, including for the final week leading up to his resignation.  (Dep. Stephenson at 36 and 158-159).

Baron was employed by Family Solutions in Cleveland.  (Dec. Smith at ¶ 60).  However, Baron's employment was very short, lasting only approximately nine weeks from August 1, 2016 to October 7, 2016. (Dep. Baron 5).  Baron was still in her probationary period at the time she resigned from her employment with Family Solutions of Ohio.  (Dec. Smith at ¶ 60).  During her

short period of employment, Baron had admitted issues with accurately recording and submitting her time.  (Dep. Baron 48-49).  Baron testified that she worked with her Clinical Supervisor to resolve the issues with reporting her units.  (Dep. Baron at 48-50).  Baron testified that she was aware of the requirement to use both billable and non-billable code entries when entering units into the billing sheets.  (Dep. Baron at 48-49).

### 7.     The FLSA Class was paid for no show appointments.

Plaintiffs' expert has calculated no show damages based entirely on witness statements. (Dep. Thompson at 54).  However, the FLSA Class were required to report no show appointments in their medical records.  (Dec. Smith at 73).  The nonbillable time is then paid by Family Solutions.  (Dec. Smith at 73).  Accordingly, this aspect of damages is incorrect and each of the FLSA Class members will be cross-examined on the issue at trial.  (Dec. Smith at 74).

## IV.    LAW AND ARGUMENT

### A.     Standard Of Review.

29 U.S.C. § 216(b) certification occurs in two stages: conditional and final certification. *See Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669, 672 (6th Cir. 2012).  "[T]he second stage warrants a stricter standard than the conditional stage because it occurs near the end of discovery." *Id.* at 671 (*citing Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). The named plaintiffs bear the burden of proving that the conditional class is "similarly situated" for purposes of 29 U.S.C. § 216(b) certification. *See Frye,* 495 Fed. Appx. at  672 (6th Cir. 2012). A putative class is "similarly situated" when all members "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009).  However, "[p]laintiffs are not deemed similarly situated at the second stage, however, merely because they recite a common theory of liability.  To proceed beyond the second stage an

allegation of an overarching policy is generally insufficient; plaintiffs must produce substantial evidence of a single decision, policy, or plan." *Cornell v. World Wide. Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 U.S. Dist. LEXIS 148191, *7 (S.D. Ohio Nov. 2, 2015) (internal citations omitted).

In addressing whether a putative class is "similarly situated", the Sixth Circuit applies the following factors: (1) factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action. *See Frye,* 495 Fed. Appx. at 672 (6th Cir. 2012) (citing *O'Brien*, 575 F.3d at 584 (6th Cir. 2009)).  As to the first factor – the factual setting of the employees – courts consider whether employees "perform[ed] different job duties, being under different supervision, or earning a different salary. *McDonald v. Madison Twp. Bd. of Twp. Trs.*, No. 2:07-cv-0697, 2007 U.S. Dist. LEXIS 76450, *6 (S.D. Ohio Oc. 5, 2007). "Plaintiffs generally must produce more than just allegations and affidavits demonstrating similarity in order to achieve final certification." *Id.*

### B. <u>Twenty-Three Class Members Is Not Sufficiently Numerous.</u>

The FLSA Class includes only twenty-three members.  The very small class size does not satisfy the numerosity requirements inherent of a class action.  Each class member's case is highly individualized, will require testimony from each class member, and is the type of case which is more appropriately suited on an individual rather than collective basis  Accordingly, this Court should decertify the conditional class to allow the class members to pursue their claims individually so that the Parties can conduct the highly individualized discovery required.  *See Guy v. Lexington-Fayette Urban County Gov't*, 488 Fed. Appx. 9, 22 (6th Cir. 2012) ("[a] class of twenty or fewer is usually insufficiently numerous"); *see also DeLong v. International Union*, No.

C-3-84-135, 1991 U.S. Dist. LEXIS 21766, *41-42 (S.D. Ohio Aug. 26, 1991) ("twenty-six individuals does not constitute such a large number that joinder is impracticable.").

### C.     <u>Class Certification Will Result In At least Twenty-Three Mini-Trials.</u>

Each of the FLSA Class members drafted, reviewed, and verified their weekly time sheets with Family Solutions.  If Plaintiffs are successful in proving their FLSA claim, the success will be through twenty-three mini-trials.  This matter is not suitable for a class action, but is rather better suited for twenty-three short individual trials.

The named plaintiffs bear the burden of proving that the conditional class is "similarly situated" for 29 U.S.C. § 216(b) certification.  *See Frye*, 495 Fed. Appx. at 672 (6th Cir. 2012).

Plaintiffs have provided no evidence that they are similarly situated other than alleging that the class members all held the QMHS position and were subject to the same time reporting requirements.  This, however, is not enough as a matter of law. *Fry*, 495 Appx. at 671-72 (6th Cir. 2012) (internal quotations omitted) (similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions); *see also See McDonald v. Madison Twp. Bd. of Twp. Trs.*, No. 2:07-cv-0697, 2007 U.S. Dist. LEXIS 76450, *6 (S.D. Ohio Oc. 5, 2007) ("[p]laintiffs generally must produce more than just allegations and affidavits demonstrating similarity in order to achieve final certification.").

### 1.     **How to get around the time cards they drafted and approved?**

Plaintiffs cannot point to any written policies that directed them not to report all time allegedly worked each week.  In addition, due to the many office locations at issue, different clinical supervisors for the proposed class members, and local orientation sessions, each proposed class member will have to testify to why the individual class member understood that they should not report all hours worked.

Plaintiffs will bear the burden to establish that (1) they were performed work for which they were not paid; and (2) that Defendants had actual or constructive knowledge of that work. *Dikker v. 5-Star Team Leasing, LLC*, 243 F.Supp.3d 844, 852-53 (W.D. Mich. 2017).  One class member may allege that they were directed not to report certain time in training, another may allege it was said as part of clinical supervision, others may allege that co-workers advise them of the purported policy.  However, the one fact that cannot be disputed is that all prospective class members will need to testify to these alleged facts in order to prove their case.  This testimony will be unique to each class member and very individualized.

### 2. How to prove hours worked, but not paid?

The FLSA Class alleges that they were not paid for medical documentation, travel time, and no show appointments.  (Dep. Thompson at 13).  Plaintiffs' expert has conceded that his computations for two of the categories of damages – travel time and no shows – are based entirely on written statements of most of the FLSA Class members.  (Dep. Thompson at 45-46, and 54).  The expert concedes that most or all of the FLSA Class submitted written statements setting forth the alleged damages in these two categories.  (Dep. Thompson at 181).

Due to this individualized nature of calculating hours worked, but not paid, this Court has already ruled that Defendants "will have the opportunity to cross examine" the class members "about their Declarations at trial."  (ECF #172, pg. 17).  Accordingly, if this matter proceeds to trial, the vast majority of the FLSA Class will be testifying at trial.  (ECF #172, pg. 17); (Dep. Thompson at 181).

The Sixth Circuit and its district courts have decertified FLSA classes that required highly individualized testimony from the class members.  *Frye*, 495 Fed. Appx. at 672 (6th Cir. 2012) (decertification appropriate where (1) three facilities with different administrative personnel; (2)

class members kept track of their time; and (3) management did not monitor compliance with policy)); *see also Creely v. HcR ManorCare, Inc.*, 920 F.Supp.2d 846, 854-55 (N.D. Ohio 2013).

For example, in *Creely*, the North District of Ohio decertified an FLSA class based upon the highly individualized fact inquiry required of the class members at issue.  Judge Zhoury held:

> "the varying accounts among these witnesses and indeed within the individual witness testimony weighs against final certification...all Plaintiffs were subject to the auto-deduct policy, but the application of the policy varied based on several factors, including job duties and individual managers a carious HCR facilities.  Some managers were more involved than others in implementing the policy.  For example, some managers provided follow-up training to Plaintiffs, others are accused of actively discouraging Plaintiffs from submitting missed punch forms.  What is apparent from the record here is that Plaintiffs' knowledge of and training on the policy, and the application of the auto-deduct policy itself, varied in large part depending on the individual managers at Defendant's facilities."

*Creely v. HcR ManorCare, Inc.*, 920 F.Supp.2d 846, 854 (N.D. Ohio 2013).

In holding, the North District of Ohio recognized the breadth of case law in the federal courts decertifying FLSA actions which involved highly individualized factual inquires, multiple supervisors, and decentralization.  *See Creely*, 920 F.Supp.2d at 854-56 (N.D. Ohio 2013).

This is further appropriate here, where there is no reliable way to obtain damages information without obtaining testimony from each proposed class member.  *See Reynoso v. All Power Mfg.Co.*, No. 16-1037 JVS, 2018 U.S. Dist. LEXIS 227475, *14-15 (C.D. Cal. Apr. 30, 2018) (decertification appropriate where plaintiffs failed to show that testimony from representative members would be a reliable way to extrapolate liability evidence for the class as a whole); *see also Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 SC, 2011 U.S. Dist. LEXIS 73938, *24-25 (N.D. Cal. July 7, 2011) (decertifying conditional class in overtime exemption case because plaintiffs presented no reliable way to extrapolate testimony for use on the class as a whole).

3.    **Family Solutions' alleged knowledge of the hours worked.**

Proving the number of hours worked, but not paid, is highly individualized.  However, proving Defendants' actual or constructive knowledge of that alleged work will be even more individualized.  *Dikker v. 5-Star Team Leasing, LLC*, 243 F.Supp.3d 844, 852-53 (W.D. Mich. 2017).

Each class member had a different clinical supervisor who reviewed and approved time cards.  Each class member drafted, reviewed and verified the weekly time sheet.  In the face of these facts, the class members will need to testify to their discussions with their clinical supervisors and the reasons why the employee did not object, did not challenge the policy and never created any documentation of the alleged misdeed.  One class member's testimony may be helpful to another class member's case, but one class member proving her clinical supervisor knew of the alleged work, does not mean that another clinical supervisor was aware of a different class member's alleged work.

D.    <u>**Defendants Will Rely Upon Highly Individualized Defenses.**</u>

The primary defense presented by Defendants is that the proposed class members held exempt status positions.  Although summary judgment on this issue has been denied, Defendants will continue to raise this defense at trial.

Similarly, Defendants will defend this case based on the time cards.  Each plaintiff is faced with time cards that they drafted, reviewed, and ultimately approved.  Stephenson admitted that he was always paid pursuant to the time cards.  Not one class member objected, in writing, to the payments received pursuant to the time cards.  In fact, the billing sheets submitted by Plaintiffs, and paid by Family Solutions, include non-billable and billable time.  (Dec. Smith at 58 and 61).

Finally, the alleged hours worked, but not paid, will be highly contested.  The no show hours were paid by Family Solutions.  The travel time is highly individualized and will be

contested heavily by Family Solutions.  Finally, and most importantly, the expert's calculation of the alleged medical documentation evidence is flawed and should be rejected.  (Dec. Smith at 76-77).

### E.    Degree Of Fairness And Procedural Impact.

The final factor requires courts to consider "whether treatment of the case as a collective action comports with the purposes of the FLSA, which Congress intended to be broadly remedial and humanitarian." *See Lockhart v. D&S Residential Servs.*, *LP*, No. 2:18-cv-02586, 2020 U.S. Dist. LEXIS 145321, *33 (W.D. Tenn. Aug. 13, 2020).  In doing so, courts balance the equities with the judicial inefficiency posed by allowing a collective action. *Id.*  Importantly, neither the remedial nature of the FLSA or a class members' ability to pursue their claims on their alone justify certification. *Id.*  at *35.

Courts have decertified FLSA actions based upon the third factor where a class action would result in many mini-trials and there is an absence of any evidence of a common pay practice or policy.  *See Lockhart v. D&S Residential Servs.*, *LP*, No. 2:18-cv-02586, 2020 U.S. Dist. LEXIS 145321, *33 (W.D. Tenn. Aug. 13, 2020); *see also Frye v. Baptist Mem. Hosp.*, *Inc.*, No. 07-2708, 2010 U.S. Dist. LEXIS 101996, *26-28 (W.D. Tenn. Sep. 27, 2010).  As set forth above, the FLSA Class alleges that they were not paid for medical documentation, travel time, and no show appointments.  (Dep. Thompson at 13).  Plaintiffs' expert has conceded that his computations for two of the categories of damages – travel time and no shows – are based entirely on written statements of most of the FLSA Class members.  (Dep. Thompson at 45-46, and 54).  The expert concedes that most or all of the FLSA Class submitted written statements setting forth the alleged damages in these two categories.  (Dep. Thompson at 181).

Due to this individualized nature of calculating hours worked, but not paid, this Court has already ruled that Defendants "will have the opportunity to cross examine" the class members "about their Declarations at trial." (ECF #172, pg. 17). Accordingly, if this matter proceeds to trial, the vast majority of the FLSA Class will be testifying at trial. (ECF #172, pg. 17); (Dep. Thompson at 181). Accordingly, decertification is appropriate.

## V.    **CONCLUSION**

Based on the foregoing arguments and authorities, Plaintiffs are not similarly situated for purposes of their FLSA claims because: (1) the QMHS position is unique and different for each employee; (2) there exist many material defenses to each proposed class member's claim; and (3) judicial fairness supports decertification. Accordingly, Defendants respectfully request that this Court grant its Motion to Decertify the Class Conditionally Certified Under 29 U.S.C. § 216(b).

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Andrea V. Arnold (0099455)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
andrea.arnold@lewisbrisbois.com

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 2nd day of June, 2022, the foregoing was filed through the Court's CM/ECF electronic filing system, which will provide service to Defendants' counsel of record.

/s/ *David A. Campbell*
David A. Campbell (0066494)

*One of the Attorneys for Defendants*