IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL STEPHENSON, et al. | : | |
| | : | CASE NO. 1:18-cv-02017-PAB |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE PAMELA A. BARKER |
| | : | |
| FAMILY SOLUTIONS OF OHIO, INC., et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

# DEFENDANTS' DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT

Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith (collectively, "Defendants") hereby move to exclude the testimony of Shane Thompson, the expert retained by Plaintiffs Jamal Stephenson and Melanie Vilk Baron ("Plaintiffs"), pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The expert report issued in this matter does not require "scientific, technical, or other specialized knowledge" and will not be helpful to the jury. This Motion is supported by the attached Memorandum in Support, the declaration of Dawn Smith, and the deposition of Shane Thompson.

                                                                                                          Respectfully submitted,

                                                                                                         */s/ David A. Campbell*
                                                                                                         David A. Campbell (0066494)
                                                                                                          Andrea V. Arnold (0099455)
                                                                                                          Lewis Brisbois Bisgaard & Smith, LLP
                                                                                                            1375 E. 9th Street
                                                                                                            Suite 2250
                                                                                                            Cleveland, OH 44114
                                                                                                            Phone: (216) 298-1262
                                                                                                            Fax: (216) 344-9421
                                                                                                            david.a.campbell@lewisbrisbois.com
                                                                                                            andrea.arnold@lewisbrisbois.com

                                                                                                          *Attorneys for Defendants*

I. **INTRODUCTION**

Plaintiffs Jamal Stephenson and Melanie Vilk Baron ("Plaintiffs") did not answer interrogatories during eighteen months of discovery regarding damages. Rather, Plaintiffs delayed providing any information until the class members provided witness statements to their expert, Shane Thompson.

Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith (collectively, "Defendants") move to exclude Thompson's report and testimony based on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Thompson admitted that the methodology used in his report was developed by Plaintiffs' counsel, not Thompson. Moreover, Thompson admits that he conducted no investigation into any of his calculations – even when two of his three categories of damages could not correlate. Accordingly, because Thompson's testimony is not helpful to the jury, Defendants' Motion should be granted and Thompson should be excluded from this lawsuit.

II. **RELEVANT FACTS**

A. **General Procedural History.**

This lawsuit was filed on September 4, 2018. (*See* Docket at ECF #1). At this stage, this Court has conditionally certified a twenty-three member FLSA class and a 178 member state law class. Relevant to this Motion, both classes allege that Plaintiffs and the class members were not paid for medical documentation, travel time, and no show appointments. (Dep. Thompson at 13).

B. **The Expert's Qualifications.**

Defendants concede that Thompson has stellar qualifications and that he could be an appropriate expert in other cases. Thompson is highly educated and he has provided expert

testimony in more than twenty other cases.  (Dep. Thompson at 5 and 8).  In addition, Thompson has worked for the Department of Labor and he is an expert in "labor economics generally."  (Dep. Thompson at 8-9).

### C. Thompson Has Not Utilized His Expertise In This Matter.

Although Thompson may have been a proper expert if he utilized his expertise, Plaintiffs have not utilized him in this manner in this lawsuit.  Initially, Thompson made clear that counsel reached out to him in this matter and asked if he "would calculate if there were any economic damages relating to three activities; documentation time, travel and no shows."  (Dep. Thompson at 94).  Thompson was clear: "[t]hat is what I did."  (Dep. Thompson at 94).

Incredibly, the three categories of damages were based on counsel's recommendations, not Thompson's review of the evidence and claims.  (Dep. Thompson at 93).  Counsel similarly provided Thompson with the manner to calculate the three categories of damages.  (Dep. Thompson at 95).  In fact, his reports have been partially written by counsel.  (Dep. Thompson at 126).  Finally, the witness statements and polling data that have been hotly contested in this matter were the idea of counsel.  (Dep. Thompson at 93).  Thompson did not even communicate with the class members or speak with counsel on what information counsel conveyed to the class when conducting the polls and completing the witness statements.  (Dep. Thompson at 56, 56, 64, 70, 79, and 87).[1]

---

[1] Based on Thompson's testimony, it is evident that Plaintiffs' counsel could have responded to interrogatories and provided initial disclosures with at least a large portion of the alleged damages.  It is obvious that Plaintiffs hid the ball and refused to respond to interrogatories, but rather provided witness statements to their expert after discovery closed.  The issue is not whether Defendants could have deposed the class members, but whether Plaintiffs should have disclosed this damage evidence over eighteen months of discovery.  This Court should review Thompson's testimony and revisit the discovery issues raised previously by Defendants.

Based on his reliance on counsel, Thompson admitted that he knew little about Family Solutions beyond the fact that he understood Family Solutions provided "[k]ind of in-home care, so medical care." (Dep. Thompson at 11). Thompson admitted that he was unaware of the type of medical care provided by the class members. (Dep. Thompson at 14). Similarly, Thompson admits that he knows little about the job duties and responsibilities of the class members. (Dep. Thompson at 94). In fact, Thompson admitted that he has no knowledge of the class members aside from the very limited documents and data that he reviewed. (Dep. Thompson at 161-162). The documents reviewed by Thompson were audit logs, billing sheets, witness statements and polling data. (Dep. Thompson at 18, 45-46, 87).

As set forth below, Thompson's only value to the report was very basic math. (Dep. Thompson at 63, 134, 159, 163-164, 169-170, and 172). In fact, the methodology followed, as set forth below, was so simple that Thompson admitted that Defendants' counsel could handle the math. (Dep. Thompson at 169-170).

      D.      **Travel Time And No Show Damages**.

Travel time has been a key issue in this case. The only documents that Thompson considered in reaching his travel time damage figure were witness statements. (Dep. Thompson at 45-46). Thompson simply took the travel time set forth in the witness statement and applied "simple math" to calculate damages. (Dep. Thompson at 63).

The no show calculation damages are also based entirely on the witness statements. (Dep. Thompson at 54). As with the travel time statements, Thompson never spoke to any of the witnesses regarding no show evidence. (Dep. Thompson at 56).

Thompson accepted the witness statements based solely on the fact that they were sworn statements. (Dep. Thompson at 47-48). Thompson does not know who drafted the statements, he

did not talk to any of the witnesses to verify the statements, and he does not know whether counsel gave direction to the witnesses as to ranges of travel time at issue. (Dep. Thompson at 64, 70, and 79-80). Thompson admitted that the witness statements show very "different" employment experiences. (Dep. Thompson at 108). Thompson explained: "I think you are trying to say these people are different, which is obvious. The attestations are different." (Dep. Thompson at 108). Thompson further admitted that the data in the witness statements is "far ranging." (Dep. Thompson at 119-120). In fact, Thompson admitted that the travel time was so far ranging that he could not correlate the travel time figures presented by the class members with the time sheets. (Dep. Thompson at 120-123).

Shockingly, the class members allege that they spent more time due to no show appointments than travel between actual appointments. (Dep. Thompson at 140). However, although surprised by the result, Thompson did not go further because there was "nothing alarming" in his view. (Dep. Thompson at 141).

Incredibly, although Thompson agrees that the witness statements have vastly different answers to travel time and no show questions, he could not explain any of the differences in the statements. (Dep. Thompson at 97-98). Despite the differences, Thompson did not look at the offices were the witnesses were based, the tenure of the employees, how employee schedules were set, or any other facts to verify veracity of the statements. (Dep. Thompson at 105-106). Rather, Plaintiffs' expert admits that he simply "took their attestations as the truth." (Dep. Thompson at 51).

D. **Medical Documentation Damages**.

Incredibly, as with travel time and no show pay, Thompson admitted that the medical documentation damages could have been calculated through witness statements as well. (Dep.

Thompson at 27 and 51). Rather than follow the witness statement method, however, Thompson reviewed audit logs. (Dep. Thompson at 18).

The audit logs showed when the class members logged into the computer system. (Dep. Thompson at 18). However, the log contains activity codes and Thompson admits that he does not know what the activities represent aside from the log-in activity code. (Dep. Thompson at 21-22). Thompson assumed that the class members were working when they were logged in, but he does not know. (Dep. Thompson at 22). As with the witness statements, Thompson conducted no investigation to determine what the activity code means or what the class members were doing when logged into the computer. (Dep. Thompson at 30). Incredibly, Thompson admits that the class member could have been performing little or no work when they were logged into the computer. (Dep. Thompson at 31-32). Finally, Thompson assumed that the class members were not being paid for patient care when they were logged into the computer. (Dep. Thompson at 38).

As with travel time, Thompson could not correlate the audit log review with the time sheets. (Dep. Thompson at 25). Thompson claims that the time sheets are too "scant" for him to correlate the audit log data. (Dep. Thompson at 25). In addition, Thompson admitted that he did not analyze the vast differences in results for his audit log review. (Dep. Thompson at 132). Due to the lack of correlation and knowledge of the activity codes, Thompson admitted that speaking with class members about their computer use would be helpful. (Dep. Thompson at 27).

E.  **The Rule 23 Class Calculations.**

Thompson reviewed audit logs and had witness statements for the FLSA class members. (Dep. Thompson at 18 and 181). These class members had damages calculated based on this documentation. (Dep. Thompson at 132).

However, Thompson did not utilize any of this "data" for the 178 Rule 23 class members. (Dep. Thompson at 132). Rather, as to these 178 class members, Thompson applied "pretty basic math" to average the damages and apply those averages to the class. (Dep. Thompson at 134). Incredibly, the average weekly damages applied to the Rule 23 class were 16% higher than the average weekly damages of the FLSA class members. (Declaration of Dawn Smith at 71) (attached hereto as Exhibit B).

IV. **LAW AND ARGUMENT**

A. **Standard Of Review.**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal cases of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 provides expert testimony is appropriate when it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Experts are only permitted to testify, however, when "(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Pursuant to Rule 702, a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements: (1) The witness must be qualified by 'knowledge, skill, experience, training, or education'; (2) the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue'; and (3) the testimony must be reliable. *In re Scrap metal Antitrust Litig.*, 527 F.3d 517, 528-529 (6th Cir. 2008). In this matter, Thompson does not satisfy the Rule 702 requirements and he should not be permitted to testify.

### B. Thompson Did Not Follow A Proper Method In Reaching His Opinion.

A court's inquiry should focus solely on principles and methodology, not on the conclusions they generate. *Daubert*, 509 U.S. at 597. Courts should confirm "the factual underpinnings of the expert's opinion [are] sound," *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999). The *Daubert* factors include: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community. . . ." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001).

In this matter, Thompson did not apply his own expertise or standards in developing his report and conclusions. Rather, the categories of damages in the report are based on counsel's recommendations, not Thompson's review of the evidence and claims. (Dep. Thompson at 93). Counsel similarly provided Thompson with the manner to calculate the three categories of damages. (Dep. Thompson at 95). In fact, Thompson's reports have been partially written by counsel. (Dep. Thompson at 126). Finally, the witness statements and polling data that have been hotly contested in this matter were the idea of counsel. (Dep. Thompson at 93). Thompson did not even communicate with the class members or speak with counsel on what information counsel conveyed to the class when conducting the polls and completing the witness statements. (Dep. Thompson at 56, 56, 64, 70, 79, and 87).

Thompson's methodology is not proper. Thompson did not interview any class member; Thompson did not question any of the witness statements; Thompson did not investigate any of the class members at issue in this lawsuit, and he did not question any of the calculations. This lack of investigation included Thompson's admissions that one third of his damage data could not

be correlated, witness statement information was far ranging, and no show damages were higher than travel time and medical documentation.

In fact, Thompson's only value to the report was very basic math. (Dep. Thompson at 63, 134, 159, 163-164, 169-170, and 172). The travel time and no show calculations were based on witness statements. The medical documentation calculation could have followed the same method, but counsel directed Thompson to review audit logs. However, Thompson did not conduct even a basic investigation of the audit logs to know what the audit entries represented. Finally, as to the Rule 23 class, Thompson did nothing but take the average weekly damages and blindly apply those averages to the Rule 23 class.

Thompson's testimony should be excluded because his testimony is not helpful to the trier of fact and the report has not required scientific, technical or economic knowledge. *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("[u]nder Fed. R. Evid. 702 'the "touchstone" of admissibility is helpfulness to the trier of fact.'" (citation omitted)); *see also Triad Cap Mgmt., LLC v. Priv. Equity Cap Corp.*, No. 07 C 3641, 2010 U.S. Dist. LEXIS 143454, * 10-11 (N.D. Ill. Nov. 22, 2010) (barring an expert's testimony because "[a] jury can do simple math and read"); *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, No. 3:09cv1546 (MRK), 2010 U.S. Dist. LEXIS 95092, *8 (D. Conn. April 9, 2010) ("[t]here is absolutely no reason why the jury cannot do [subtraction] for itself; in fact, juries do these types of calculations all the time.").

## V.     CONCLUSION

Based on the foregoing arguments and authorities, the expert report and testimony of Shane Thompson, Plaintiff's expert, should not be permitted. Thompson's testimony does not satisfy the

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), factors. Accordingly, Defendants' Motion should be granted and Thompson excluded from this matter.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Andrea V. Arnold (0099455)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
andrea.arnold@lewisbrisbois.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2022, the foregoing was filed through the Court's CM/ECF electronic filing system, which will provide service to Defendants' counsel of record.

                                        */s/ David A. Campbell*
                                        David A. Campbell (0066494)

                                        *One of the Attorneys for Defendants*