UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMAL STEPHENSON, et al., | ) CASE NO. 1:18-cv-02017-PAB |
| Plaintiffs, | ) |
| v. | ) JUDGE PAMELA BARKER |
| | ) |
| FAMILY SOLUTIONS OF OHIO, INC., et al. | ) **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY RULE 23 CLASS** |
| Defendants. | ) |

The Court's April 5, 2021 certification of a Rule 23 class, ECF No. 143, is probably among the most considered and reconsidered rulings in the history of class litigation. Virtually all of the issues raised in Defendants' instant decertification motion were briefed and addressed on the class motion and the many further briefings that have followed it.

Extensive briefs were submitted by the parties before the Court's April 2021 ruling. They included a Sur-Reply by Defendants, arguing the "highly individualized nature" of the proposed class, the fact that "employees are required to fill out time sheets recording their time," and that the Court should decline to exercise supplemental jurisdiction over state law claims. ECF No. 117, at pp. 4-5 (individualized inquiries), p. 4 (time sheets), and pp. 1-4 (supplemental jurisdiction).

Shortly after the Sur-Reply, Plaintiffs' damages expert, Shane Thompson, PhD., completed his September 2020 report. The Court ordered further briefing on the class motion, addressing "the impact, if any, of Dr. Thompson's expert report" on Rule 23 certification and "what bearing, if any," his report had on "whether this Court should exercise supplemental jurisdiction over Plaintiffs' state law claims." *Order*, ECF No. 139, at pp. 2-3.

The Court's April 2021 ruling addressed all of these issues. It included extensive discussions of the supplemental jurisdiction issue and of Defendants' argument that class litigation

would require "highly individualized inquiries." ECF No. 143, at pp. 16-23 (jurisdiction) and pp. 19-23, 40-44, and footnote 11 (individualized inquiries). The Court also rejected Defendants' assertion that "allowing a Rule 23 class" in an FLSA action would violate the Rules Enabling Act, noting that that the principal case cited by Defendants, *Dillworth v. Case Farms Processing, Inc.*, 2009 WL 2766991 (N.D. Ohio Aug. 27, 2009), "was subsequently vacated by the presiding District Judge." ECF No. 143, at pp. 24-25 and footnote 14.

Subsequently, Defendants initiated yet another round of briefing by filing a motion for interlocutory appeal, ECF No. 159. Denying that motion, the Court revisited and reaffirmed its supplemental jurisdiction ruling and its consideration of Defendants' "highly individualized inquiries" argument. ECF No. 175, at pp. 13-16 and pp. 6, 15, and 21.

Defendants now retread those twice-rejected arguments, couching them as grounds for decertification. ECF No. 182. Lengthy briefs again cover supplemental jurisdiction, Defendants' "highly individualized inquiries" argument, and the supposed significance of the fact that "employees are required to fill out time sheets recording their time." ECF No. 182, at pp. 12-15, pp. 4-10, and p. 5-6. Defendants even resurrect their reliance on the vacated *Dillworth* case for the notion that "the Rules Enabling Act precludes FLSA and Rule 23 state law class actions in the same lawsuit"—ECF No. 182, at p. 2—although the Court previously cautioned defense counsel, in discussing *Dillworth*, of their "obligation to advise the Court when cases relied upon in briefing have been vacated or otherwise limited in scope." ECF No. 143, at fn. 14.

While rehashing these issues and arguments, Defendants never offer the Court any new evidence ostensibly justifying decertification of the Rule 23 class. That alone warrants denial of their motion.

**I.      Defendants Have Not Shown "Definitive, Material Alteration of the Law or Facts"**

Defendants cite two cases as supporting their latest rehashing of class-certification objections—*Binta B v. Gordon*, 719 F.3d 608, 618 (6th Cir. 2013), holding that "[a] district court's responsibilities with respect to Rule 23(a) do not end once the class is certified," and *Sutton v. Hopkins Cty. Ky.*, No. 4:03CV-003-M, 2007 U.S. Dist. LEXIS 3143 *7 (W.D. Ky. Jan. 11, 2007), which said the court "is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case."

Certainly this Court has fulfilled those responsibilities.  Defendants' problem is that they cannot meet the further requirement of *Binta* and *Sutton*—that they present an "evidentiary development in the case" demonstrating that "the grounds for granting certification no longer exist or never existed."  *Sutton*, 2007 U.S. Dist. LEXIS 3143 at *7 (quoting *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 387 (S.D. Ohio 2001) (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982))).

*Binta* cited *Sosna v. Iowa*, 419 U.S. 393, 395-96 (1975), to illustrate the proper exercise of courts' responsibilities to certified classes. Changed circumstances in *Sosna* indicated that the named plaintiff was no longer an adequate class representative. The Supreme Court was duly concerned with that possibility, but recognized another responsibility as well. "When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [Sosna]." *Id*. at 399. While the controversy might have ended for Sosna, "it remains very much alive for the class of persons she has been certified to represent." *Id*.at 401.  In *Binta*, The Sixth Circuit rejected a similar defense assertion about the named plaintiff because it lacked evidentiary support: "there is nothing in the record supporting defendants' conclusion that Fitts withdrew from the class and the litigation

3

or had otherwise been found by the district court to be an inadequate named representative." 719 F.3d 618.

"Once a class is certified, the parties can be expected to rely on it and conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that in the normal course of events it will not be altered except for good cause." *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 94785, at *8 (N.D. Ohio July 21, 2015) (quoting *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 477 (D. Colo. 1998) (quoting Manual for Complex Litig. Third § 30.18 at 223 (1995))). "[D]ecertification is a 'drastic step'" and will not be entertained "without definitive, material alteration of the law or facts." *Id*. (citing *Glazer v. Whirlpool Corp*, 2014 WL 7781167, at *1 (N.D. Ohio 2014); Newberg on Class Actions § 7:37 at 190 (3d ed. 1992)).

## II. The Record Still Does Not Support Defendants' Assertion That the Issues Are "Highly Individualized"

Defendants' "highly individualized inquiries" argument fails the test for decertification—no "definitive, material alteration of the law or facts" has been shown. Defendants have made the argument in every brief they've filed on class issues. *See, e.g.*, ECF No. 117, at pp. 4-5; ECF No. 143, at pp. 19-23, 40-44, and footnote 11; ECF No. 175, at pp. 6, 15, and 21. They always base the argument on the same ostensible facts. Family Solutions of Ohio has five offices and multiple supervisors. Each patient is unique. QMHSs make their own schedules of patient visits during the week. The number of patients seen might vary from week to week. These, once again, are the factual primary assertions listed in Defendants' decertification motion. ECF No. 182, at pp. 6-11.

Those assertions, even if true, would not make the issues in this case "highly individualized." The actual issues are whether QMHSs were paid "for medical documentation [time], travel time, and no show appointments." Defendants' Brief, ECF No. 182, at pp. 4. This

Court has repeatedly found that these are common issues, notwithstanding the differences Defendants assert in brief after brief.

> All of the putative class members share the same job title (i.e., QMHS) and were required, as part of their job duties, to spend time travelling between clients, entering documentation into patient records, and dealing with no show appointments. (Smith Depo. (Doc. No. 114-1) at Tr. 262-263.) All putative class members recorded their time on time sheets which were completed according to the protocols set forth in Family Solutions' employee handbook. (Id. at Tr. 155-156.) Defendant Smith herself [Family Solutions' Vice President and Rule 30(b)(6) representative] testified that all QMHSs were subject to the same timekeeping and pay policies with respect to time spent travelling and entering documentation into patient records. (Id. at Tr. 250-251, 263.)

Memorandum Opinion, ECF No. 143, at 31.

Family Solutions knew that QMHSs were working these hours. Dawn Smith testified "at some point they all had travel time," and "[c]ertainly every one of them had the requirement that they complete documentation on the computer system." *Rule 30(b)(6) Deposition of Dawn Smith* ("Smith Depo."), portions attached at Exh. 1, at pp. 262-63. *See also Declarations of Clinical Supervisors Serena Creamer, Julie Winston, Rose Marie Pryor, and Valerie White*, attached collectively as Exh. 2 (all attesting that "QMHSs at Family Solutions of Ohio regularly experienced client no-shows."). If these activities had been compensated, they'd have been conspicuous—recorded on employee time sheets and paid as shown on a pay advice. Through four years of litigating this case, Defendants have never produced a single QMHS time sheet with supporting pay advice suggesting that they were paid for the time at issue.

After the Court certified the Rule 23 class, Defendants withheld any further production of records and data. *Perlmuter Dec.*, at Exh. 5, ¶¶ 6-8. Defendant did not respond to discovery requests for audit logs, progress notes, or time records for an agreed sample group of class members. Id. Defendants have the audacity to complain that the class members "did not provide interrogatory responses that set forth their alleged hours worked." ECF No. 182, at p. 2. Yet

5

Defendants ignored repeated requests "for phone numbers and e-mail addresses for the Rule 23 class members to facilitate contact with them, as the class roster produced by Defendants had only mailing addresses." Id. at ¶ 9.

The fact is that QMHSs were not paid for the activities in question and were not permitted to record the activities for compensation purposes. Of the eleven supervisors listed by Family Solutions in written discovery responses, four have come forward and submitted declarations attesting that Family Solutions didn't pay for documentation time, travel time, and no-show appointments and refused to allow QMHSs to put those activities on their time sheets. *See Defendants' Responses to Plaintiff's First Set of Interrogatories*, Exh. 4, at Interrogatory No. 3; *see also Creamer, Winston, Pryor, and White Declarations*, Exh. 2.  A fifth supervisor issued an email to Jamal Stephenson telling him that "after [orientation at Family Solutions] you are paid hourly for what you bill for. Documentation, preparation, and travel is not extra but included in that hourly rate." *Hunt Email*, at Exhibit 5.

What was true at the time of the Court's April 2021 class certification ruling is still true today in Defendants' decertification motion.  "Defendants have not directed this Court's attention to any contrary evidence from other current or former Clinical Supervisors that QMHSs were, in fact, instructed to record on their time sheets the time they spent traveling, documenting patient care, and/or dealing with no-show appointments.  Nor do Defendants direct this Court's attention to any evidence suggesting that, if a QMHS complained about this particular issue, it was escalated and rectified." *Memorandum Opinion*, ECF No. 143, at 32.

The absence of any "definitive, material alteration of the law or facts" constitutes a threshold reason for rejecting Defendants' "highly individualized inquiries" argument and denying their motion for decertification.

6

### III. Defendants' Objections to Dr. Thompson's Methodology Are Meritless

While conceding that Plaintiffs' damages expert, Shane Thompson, PhD., "has stellar qualifications," Defendants have separately moved to exclude his testimony under Evid. R. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). ECF No. 183, at p. 1. Some of those objections are repeated in Defendants' decertification brief. ECF No. 182, at p. 5. Plaintiffs respond to them below, but respectfully ask the Court to consider the *Daubert* briefs for in-depth treatment of Dr. Thompson's work.

Dr. Thompson prepared estimates for the three categories of claimed damages—"medical documentation [time], travel time, and no show appointments." *Decertification Motion*, ECF No. 182, at p. 4. As this Court has held, two sets of records from Defendants' electronic files—"audit logs" and "progress notes"—"contain information that is relevant to determining the specific number of hours for which Plaintiffs were allegedly not paid for time spent relating to documentation and no-show appointments." *Memorandum Opinion*, ECF No. 137, p. 39. However, Defendants refused to produce them. *Id*. at 40. Plaintiffs were able to subpoena the audit logs from Defendants' electronic records vendor, but Defendants still refuse to produce the more-detailed "progress notes." *Perlmuter Declaration*, at Exh. 5, ¶ 4-8.

"Work[ing] around the absence of records," Dr. Thompson "reviewed audit logs for the alleged medical documentation damages." *Thompson March 2022 Class Report*, at Exh. 6, ¶¶ 15 to 18. Defendants complain that Dr. Thompson "assumed that the FLSA Class members were working when they logged into the computer" but "admits that he does not have any facts to support this assumption." ECF No. 182, at p. 5. Defendants go so far as to suggest that class members "could have been performing little or no work when they were logged into the computer." ECF No. 183, at p. 5. In fact, the testimony of Defendants' Vice President, Dawn Smith, renders this argument preposterous. Smith testified that QMHSs logged into the electronic records "in

7

order to enter documentation for a client." *Smith Depo.*, Exh. 1, at p. 91. The audit logs "keep track of that" and "tell you that that had happened." *Id*. Dr. Thompson designed a statistical methodology to analyze the audit-log data, including a protocol that excluded periods in which "the system seems to have logged them out for them." *See Plaintiffs' Memorandum in Opposition to Daubert Motion*, ECF No. 185, at pp. 7-8, 12.

Defendants further say that Dr. Thompson's estimates "for two of the categories of damages — travel time and no shows — are based entirely on written statements." ECF No. 182, at p. 5. That is factually incorrect. Dr. Thompson used "billing sheets" (i.e., time sheets) which gave him hard data—"the number of patients they saw per week." *Deposition of Shane Thompson, PhD.* ("Thompson Depo."), Exh. 7, at p. 53-54. For accurate analysis, he needed to distinguish between patients who were seen "back-to-back" and those who "required travel," and therefore supplemented the billing sheet data with attestations from opt-ins on "[t]he percentage of appointments that required travel." *Id*. at p. 46. To that percentage, he applied "[t]heir average travel time which they also supplied." Id. at p. 54. Here again, a more detailed discussion is presented in Plaintiffs' *Daubert* Memorandum, ECF No. 185, at pp. 7-9, 12-13.

Lastly, Defendants' decertification brief says that "[a]s to the Rule 23 Class," Dr. Thompson "simply applied an average." ECF No. 182, at p. 5. This too is inaccurate. As he explained in his deposition, Dr. Thompson has "a Ph.D. in economics [and] two Master's degrees in economics as well. … My specialization for my Ph.D. was in labor economics and econometrics." *Thompson Depo.*, Exh. 7, at p. 8. He explained that "econometrics is the union between statistics and economics, and so typically I'm applying mathematical statistical methodologies to labor economic data." *Id*. An econometrician's expertise is not merely in performing calculations, but also in determining how to interpret data and apply it to larger groups.

8

"[S]ome of these calculations, and this is typical in cases, there is a formulaic piece where you are doing A plus B times C, and it's a simple calculation. This is common in a lot of my cases. It's providing an overall estimate of damages for a large group, which is why I believe I was brought in." *Id*. at p. 62. "My objective," he explained, "was to calculate the economic damages of the class. So it's taking these [data] for the several people and applying math and statistics such that I can identify a reliable estimate of damages for the whole class." *Id*. at p. 63. Dr. Thompson's expertise was required at each level of analysis. *See* Plaintiffs' Daubert Memorandum, ECF No. 185, at pp. 7-9.

The fact that estimates of damages are needed in this case is a problem of Defendants' own making. Family Solutions of Ohio did not keep records of employees' time, as required by the FLSA and Ohio law. *Smith Depo.*, Exh. 1, at pp. 64-65, 89. *See Abdelkhaleq v. Precision Door of Akron*, 653 F. Supp. 2d 773, 784-85 (N.D. Ohio 2009) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). That failure entitles plaintiffs to estimate their hours and Defendants bear the burden of proving that the plaintiffs' estimates are incorrect. *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir. 1995). Plaintiffs need only introduce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042-43 (2016) ((quoting *Mt. Clemens*, 328 U.S. at 687). Sixth Circuit decisions allow "representative testimony" and "an estimated-average approach to calculate damages." *Monroe v. FTS USA, LLC*, 815 F. 3d 1000, 1016 (6th Cir. 2016); *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741 (6th Cir. 2019). *Monroe* held that "inaccuracy in damages should not bar recovery for violations of the FLSA or penalize employees for an employer's failure to keep adequate records." *Id*. at 1021.

### IV. Employees' Signing of Time Cards Is of No Consequence

Defendants rehash earlier briefs when they assert that they cannot be held liable because employees "drafted, reviewed and signed their weekly time sheets." ECF No. 181, at p. 5. Addressing this issue previously, the Court noted that "Clinical Supervisors Pryor, Winston, and Creamer each averred that they were instructed not to approve any time logged for time spent on these three categories of activities. Winston and Creamer also averred that '[m]any hourly employees at Family Solutions of Ohio complained about not getting paid for writing and reviewing client notes and documentation, work related travel time, and no-shows,' but that none of these complaints were ever rectified." *Stephenson v. Family Sols. of Ohio*, No. 1:18cv2017, 2022 U.S. Dist. LEXIS 23614, at *28-29 (N.D. Ohio Feb. 9, 2022).

### V. Defendants' Citation to Facts Regarding Stephenson and Baron's Employment is Immaterial

Defendants also rehash, essentially verbatim, arguments that Stephenson's and Baron's claims are "individualized" because Stephenson "did not create medical records" and "failed to timely submit his billing sheets" and Baron's "employment was very short" and she "had admitted issues with accurately recording and submitting her time." ECF No. 182, at pp. 10-11. Those same arguments were addressed and rejected by this Court:

> Regardless of any 'issues' [Baron and Stephenson] may have had with their time sheets, Baron's and Stephenson's injury arises from or is directly related to a wrong to the class… [R]egardless of [Baron's] short tenure at Family Solutions, Baron's claims arise from the same practice that gives rise to the claims of other class members and are based on the same body of evidence and the same legal theory.

ECF No. 143, at p. 36 (citations omitted).

### VI. Smith's Latest Declaration Proves Nothing

Defendants submitted yet another declaration from Dawn Smith with their decertification motion but it proves nothing. Never once in twenty pages does she actually say that QMHSs were

10

paid for travel time or documentation time. If QMHSs were paid for such time, it would have been a simple matter for Defendants to produce time sheets listing documentation time and travel time among the QMHSs' hours, coupled with pay stubs proving they were compensated.

Smith's declaration contends that QMHSs "were required to report no show appointments in medical records as non billable time" and such time "is then paid by Family Solutions." *Smith June 2, 2022 Declaration*, ECF No. 181-2 at ¶ 73. However, QMHSs <u>were not paid based on information contained in clients' medical records</u>. By Defendants' repeated admission, QMHSs are "paid for everything reflected on the approved time sheet." ECF No. 181-2 at ¶ 34. *See Smith Depo*. at p. 259-260 (acknowledging that a QMHS or therapist is "paid for whatever he put on his billing and time sheet"). The billing and time sheets were "Excel spreadsheets" created by a Family Solutions of Ohio employee. *Id*. at p. 51-53. Medical records are a separate entity; they were created and housed – at least during most of the time period relevant to this case - in the company's electronic ICAN medical record system. *Id*. at p. 23.

Finally, Smith contends that Plaintiffs' expert, Dr. Thompson, "increased the weekly average amounts by 16% when he applied [them] to the Rule 23 Class," and also "fail[ed] to take into account Family Solutions' policy of providing telehealth… from March 25, 2020 to the present." ECF No. 182, pp. 5, 11. Neither contention provides any basis for decertification, and the former statement is simply inaccurate. Dr. Thompson estimated that the FLSA opt-ins' damages were $451 per week. He used weighted averaging when extrapolating to the Rule 23 class, see *Thompson Depo*. at 134-38, which reduced the average weekly damages for class members to $424.

## VII. Defendants Offer No New Evidence in Support of Their Supplemental Jurisdiction Arguments

Defendants further rehash earlier briefs in their supplemental jurisdiction arguments. ECF No. 181, at p. 12-15. The Court extensively addressed those arguments in its April 2021 class certification ruling, ECF No. 143 at pp. 16-23, and again in its order denying Defendants' motion for interlocutory appeal, ECF No. 175 at pp. 13-16.

No further consideration of those arguments is occasioned by the Court's decision in *Woods v. First Transit, Inc.*, Case No. 1:21-cv-0739, 2021 U.S. Dist. LEXIS 193456 (N.D. Ohio Oct. 7, 2021). The Court found that *Woods* was "easily distinguishable from *Stephenson*." The Plaintiffs' state-law claims in Woods "would substantially predominate over the FLSA claim," in part because of "important differences" between California and New York law and the "the single FLSA overtime violation" asserted in Ohio. *Id*. at *8. Also, "considerations of judicial economy weigh[ed] against exercising supplemental jurisdiction over Plaintiff Posey's California claims," inasmuch as "another putative class action … remains pending in California federal court and involves claims nearly identical to Plaintiff Posey's." *Id*.

The present *Stephenson* case only involved "whether to exercise supplemental jurisdiction over Ohio state-law claims." *Woods*, at *16. Two of the four Ohio claims ("for alleged violations of Ohio's minimum wage and overtime violations") were "similar to the FLSA claim in terms of their elements and the relevant facts and evidence." *Id*. at *14.

The third claim, for unjust enrichment, while "not identical to the FLSA claim, …was 'largely premised on the same evidence as the federal claim, i.e., evidence that Defendants failed to pay [putative class members] for travel time, no show appointments, and time spent entering documentation into patient records.'" *Id*. at *14 (quoting *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2021 WL 1253459 (N.D. Ohio Apr. 5, 2021)). When an employer fails to pay

12

wages for hours worked under forty in a workweek, "gap time" pay – may be recovered on an unjust enrichment claim. *See e.g., Bacon v. Subway Sandwiches & Salads LLC*, No. 3:14-CV-192, 2015 U.S. Dist. LEXIS 19572, at *5-6 (E.D. Tenn. Feb. 19, 2015); *Martin v. Lowe's Cos.*, No. 5:20-cv-00015, 2020 U.S. Dist. LEXIS 163747 (W.D.N.C., Sept. 5, 2020); *Fisher v. Diagnostic Imaging Centers, PA,* No. 16-2094, 2016 U.S. Dist. LEXIS 97053 (D. Kan. July 25, 2016). *Accord Tommey v. Comput. Scis. Corp.*, 2013 WL 1000659, at *2 (D.Kan. 2013); *Sanchez v. Haltz Constr., Inc.*, 2012 WL 13514, at *8 (N.D. Ill. 2012); *Osby v. Citigroup, Inc., 2008 WL 2074102, at *2 (W.D. Mo. 2008)*; *Roberts v. Baptist Healthcare System*, 1:20-cv-92, 2020 U.S. Dist. LEXIS 224090 (E.D. Tex. Nov. 30, 2020). Here, the Plaintiffs' unjust enrichment claim is entirely premised on the same evidence as the federal claim. Plaintiffs' expert, Dr. Thompson, has simply divided the unpaid hours, and resultant damages, into regular pay hours and overtime pay hours.

The exact same is true of Plaintiffs' Ohio minimum wage count, though Plaintiffs' expert found no minimum wage damages here.

And finally, as this Court already held, the Ohio record-keeping claim also "drew 'from the same body of evidence'" and was not "so distinct that it would necessarily predominate over the federal claim." *Id*.

### VIII. Conclusion

For these reasons, Defendants' motion to decertify the Rule 23 class should be denied.

        Respectfully submitted,

        *s/ Scott D. Perlmuter*
        Scott D. Perlmuter (0082856)
        4106 Bridge Avenue
        Cleveland, Ohio 44113
        216-308-1522
        Fax: 888-604-9299
        scott@tittlelawfirm.com

*s/ Thomas A. Downie*
Thomas A. Downie (0033119)
46 Chagrin Falls Plaza #104
Chagrin Falls, Ohio 44022
440-973-9000
tom@chagrinlaw.com
Counsel for Plaintiff

CERTIFICATE OF SERVICE

    I hereby certify that on June 16, 2022, the foregoing was filed electronically with the Court.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)