IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,* <br> **On behalf of herself and** <br> **All others similarly situated,** <br><br> **Plaintiffs,** <br> -vs- <br><br> **Family Solutions of Ohio, Inc.,** <br> *et al*., <br><br> **Defendants** | Case No. 1:18cv2017 (lead case) <br> 1:21cv00196 <br><br><br><br> **JUDGE PAMELA A. BARKER** <br><br><br><br> **ORDER** |

Currently pending is the Motion of Plaintiffs Jamal Stephenson and Melanie Baron to Enforce Provisions of the Parties' Settlement Agreement.  (Doc. No. 212.)  Defendants Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith (hereinafter referred to collectively as "Defendants") filed a Brief in Opposition on March 26, 2024, as well as a Supplemental Filing containing Exhibits to that Brief in Opposition on March 27, 2024.  (Doc. Nos. 214, 215.)  Plaintiffs filed a Reply Brief on April 2, 2024.  (Doc. No. 216.)

For the following reasons, Plaintiffs' Motion to Enforce (Doc. No. 212) is GRANTED IN PART and DENIED IN PART, as set forth herein.

I.     **Background**

      A.     **Relevant Procedural History and Approval of Settlement Agreement**

This class and collective action was brought on behalf of Qualified Mental Health Specialists ("QMHS") employed by Defendant Family Solutions of Ohio.  The Complaint was filed on September 4, 2018, and an Amended Complaint was filed on May 5, 2020.  (Doc. Nos. 1, 50.) Plaintiffs Jamal Stephenson and Melanie Baron allege that they and other QMHSs were not paid for

travel time, time spent entering documentation, and time spent for no-show appointments, in violation of federal and state wage-and-hour laws and state common law. Defendants denied Plaintiffs' allegations.

On September 16, 2019, the Court conditionally certified the case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of QMHS's who worked during the preceding three years. (Doc. No. 20 at p. 21.) Notice was issued to potential opt- ins and 29 persons ultimately joined the case by submitting consent forms. Subsequently, on April 5, 2021, the Court granted Plaintiffs' Motion for Certification of a state-law Class under Fed. R. Civ. P. 23. (Doc. No. 143.) The Court approved Notice to putative Class Members on May 5, 2021. After Notice was issued and the period to request exclusion had expired, the Rule 23 Class consisted of a total of 177 Class Members. *See* Doc. No 209 at p. 2.

After extensive discovery and motion practice, the parties ultimately reached an agreement to settle the instant action. On March 16, 2023, the parties filed a Joint Motion for Preliminary Approval of Class and Class Action Settlement. (Doc. No. 201.) The parties later filed a Supplement thereto, in which they addressed certain issues raised by the Court and attached a signed copy of the parties' "Agreement of Settlement and Release" (hereinafter "Settlement Agreement.") (Doc. Nos. 203, 203-3.) The Court preliminarily approved the parties' Settlement Agreement on March 28, 2023. (Doc. No. 204) (preliminarily approving Doc. No. 203-3.)

Pursuant to this Court's Preliminary Approval Order, Defendants were to provide a Roster[1] to counsel for Plaintiffs with the "most up to date mailing addresses in Defendants' records" by April

---

[1] The term "Roster" is defined in the Settlement Agreement as follows: "'Roster' means the document prepared and agreed upon by the parties listing the Class Members and Opt-Ins as defined herein. The names, addresses, and dates of employment of Class Members and Opt-Ins were based on Defendants' records." (Doc. No. 203-3 at ¶ 13.)

2

17, 2023. (Doc. Nos. 204 at ¶ 13(a).) Plaintiffs were then ordered to send Notice of Settlement to Class Members listed in the Roster by no later than April 27, 2023. (*Id.* at ¶ 13(b).) It is undisputed that Defendants provided the Roster to Plaintiffs' Counsel and, further, that Plaintiffs' Counsel used the information contained in that Roster to send the Notices to Class Members.

Several months later, the parties filed a Joint Motion for Final Approval of the parties' Settlement Agreement. (Doc. No. 206.) Of relevance herein, the Agreement contains several provisions relating to the distribution of settlement payments to Class Members and Opt-Ins. Specifically, Paragraph 27 of the Agreement provides:

> **27. Defendants' Installment Payments and Dates**. Defendants will pay the Total Settlement Amount of $535,000.00 in two equal installments of $178,333.33, and a third installment of $178,333.34, on or before the following Installment Dates. The first Installment Date shall be thirty days after the Effective Date or November 1, 2023, whichever is later. The second and third Installment Dates shall be June 1, 2024 and January 2, 2025, respectively.

(Doc. No. 203-3 at ¶ 27.) Defendants are to make individual payments to Class Members and Opt-Ins as follows:

> **32. Issuance of Distributions**. Defendants will make the prescribed distributions from Installment Payments according to the Schedule of Distributions, as follows.
>
> **(a) Individual Payments**. Individual Payments will be distributed by Defendants' payroll service. Individual Payments of one-hundred dollars ($100) or less will be distributed out of the second Installment Payment. All other Individual Payments will be distributed in three approximately equal amounts out of the first, second, and third Installment Payments. Defendants' payroll service will distribute the Individual Payments no later than twenty-one days after the applicable Installment Date.
>
> \*\*
>
> **(d) Review by Plaintiffs' Counsel.** Plaintiffs' Counsel may inquire of Defendants during the course of administration and shall be entitled to reasonably necessary information and documents related to the payments set forth in this Agreement.

3

(*Id*. at ¶ 32.)

Importantly, Paragraph 34 of the Settlement Agreement provides the following process for addressing non-cashed checks:

> **34. Non-Cashed Checks**. At 90-day intervals (2/1/24, 5/1/24, 8/1/24, 11/1/24, 2/1/25, 5/1/25, and 8/1/25), Defendants will provide a report to Plaintiffs' Counsel via e-mail listing the dates of all checks issued to Plaintiffs, Opt-Ins, and Class Members and whether the checks are cashed or uncashed. **For individuals who have one or more uncashed checks, Plaintiffs' Counsel may use reasonable efforts to obtain alternative addresses and request reissuance of their checks. Upon request, Defendants will provide any available contact information for such individuals**. Any checks not cashed within 360 days after their issuance will be deemed void and the amounts will revert to Defendants.

(*Id*. at ¶ 34) (emphasis added).  Lastly, the Settlement Agreements contains a Cooperation Clause, that provides that "[t]he Parties agree to cooperate and take all steps necessary to accomplish and implement the terms of this Settlement Agreement." (*Id*. at ¶ 21.)

The Court conducted an in-person Final Approval Hearing on July 10, 2023 and issued a Final Approval Order later that same day.  (Doc. No. 210.)  In the Final Approval Order, the Court found (among other things) that the Total Settlement Amount and the proposed distributions to the Named Plaintiffs, Opt-Ins, and Settlement Class Members are fair and reasonable.  (*Id*. at p. 5.)  In addition, the Court "approve[d] the distributions and order[ed] that they be made in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement." (*Id*.)  The Court also retained jurisdiction to enforce the terms of the Settlement agreement and resolve any and all disputes thereunder.  (*Id*. at p. 6.)

### B.   Problems with the First Installment Payments

Pursuant to Paragraphs 27 and 32(a) of the Settlement Agreement, Defendants were required to distribute the first installment checks to the Named Plaintiffs, Class Members, and Opt-Ins by no

4

later than November 21, 2023. [2] On November 27, 2023, Plaintiffs' Counsel emailed Defendants' Counsel (in relevant part) as follows: "I'm getting a lot of class members saying that they haven't received checks, so I'm asking for your assistance in two ways: (1) Can you confirm that checks went out to the whole class; and (2) Can you have your client void, reissue checks, and send to my office, for" ten (10) specific Class Members identified in Plaintiffs' email. (Doc. No. 212-1 at PageID#s 8313, 8315.) Defendants' Counsel responded that same day, stating "we will check with the client." (*Id*. at PageID# 8315.)

One week later, on November 30, 2023, Plaintiffs' Counsel emailed Defendants' Counsel as follows: "Have you heard anything? These people (and likely more) are now a month late in getting their checks." (*Id*. at PageID# 8319.) On December 1, 2023, Plaintiffs' Counsel emailed Defendants' Counsel to identify another Class Member who had reported not receiving her check. (*Id*. at PageID# 8323.) Plaintiffs' Counsel remarked that "[g]iven the number of people who have contacted us, we need some information soon about what happened with all of these checks." (*Id*.) Defendants' Counsel did not respond.

On December 5, 2023, Plaintiffs' Counsel emailed Defendants' Counsel that "[i]f we don't have information by the end of the week, we're going to have to get the Court involved." (*Id.* at PageID# 8325.) Later that day, Defendants' Counsel responded as follows: "The client confirmed that the checks have gone out to the entire roster and that some of the individuals [identified in Plaintiff' Counsel's previous emails] have already cashed their checks. The client will get me the

---

[2] While the Settlement Agreement provides that the first "Installment Date" is November 1, 2023, Paragraph 32(a) of the Settlement Agreement also provides that "Defendants' payroll service will distribute the Individual Payments no later than twenty-one days after the applicable Installment Date." (Doc. No. 203-3 at ¶¶ 27, 32(a)). Thus, as to the first installment, Defendants had until twenty-one (21) days after November 1, 2023 (i.e., until November 21, 2023) to distribute Individual Payments to Class Members.

5

names of those individuals below who have cashed and is working to see what other checks have already been cashed." (*Id*. at PageID# 8328.)

On December 10, 2023, Plaintiffs' Counsel sent an email to Defendants' Counsel again identifying certain Class Members who had not received their checks and requesting that Defendants "void and reissue [checks to those specific Class Members], and send them to my office, so I can FedEx them to the clients with tracking." (*Id*. at PageID# 8334.) Defendants' Counsel did not respond, and on December 20, 2023, Plaintiffs' Counsel emailed Defendants' Counsel with the names of nine Class Members who had not received their checks. (*Id*. at PageID# 8336.) In that email, Plaintiffs' Counsel stated as follows: "Per Paragraph 34 of the settlement agreement, I am requesting immediate reissuance of the checks. Please send the checks to my office, so I can ensure that they reach their intended destination. If I don't have confirmation by next Friday (12/29) that your clients are reissuing the checks, I will bring this issue to the Court." (*Id*.)

On December 23, 2023, Defendants' Counsel responded as follows:

> We spoke with the client this week and all checks have been sent out according to the final list of addresses. These individuals should have received these checks unless they have moved, which we have no evidence of and have not been provided evidence of. The client believes that some of these checks have been cashed and we will follow up to confirm whether the checks for the below individuals have been cashed. Due to the holidays, it may be the week following December 29.

(*Id*. at PageID#s 8338-8339.) Plaintiffs' Counsel indicated a willingness to wait until January 5, 2024 before filing a motion to enforce. (*Id.* at PageID# 8342.) On January 5, 2024, Defendants' Counsel emailed Plaintiffs' Counsel that they had been "bogged down" but "will be calling the client today to get the facts on the checks." (*Id.* at PageID# 8347.) On January 9, 2024, Defendants' Counsel indicated that "the client is working to get this information." (*Id*. at PageID# 8353.) Plaintiffs'

6

Counsel expressed considerable frustration with the delay and threatened, again, to file a motion to enforce.  (*Id.*)

It does not appear that Defendants provided any further information to Plaintiffs' Counsel until February 1, 2024.  On that date, Defendants provided an audit report to Plaintiffs' Counsel pursuant to Paragraph 34 of the Settlement Agreement (hereinafter "February 1, 2024 Audit Report") that listed the dates of all checks issued to Plaintiffs, Opt-Ins, and Class Members and indicated whether the checks were cashed or uncashed.[3]  On February 11, 2024, Plaintiffs' Counsel emailed Defendants' Counsel (in relevant part) as follows:

> **Defendants' February 1, 2024 report raises troubling questions. Out of 168 class members who were to be paid in the First Installment, Defendants "sent" checks to only 43 class members. Checks are still "uncashed" for 154 class members**.
>
> Under Paragraph 32(d) of the Settlement Agreement, "Plaintiffs' Counsel may inquire of Defendants during the course of administration and shall be entitled to reasonably necessary information and documents related to the payments set forth in this Agreement." We exercise that right as follows.
>
> <u>Checks for Individuals Identified in Prior Emails</u>
> We've written you several times about [the following] class members who we know haven't gotten their checks [:] [1] Alex Dolin; [2] Alexandra Toth; [3] Jamal Stephenson; [4] Anjelica Morris; [5] Natalia Varias; [6] Courtney Edwards; [7] Ann Marie Petricca; [8] Sharon Burns; [9] Andrea Reynolds; [10] Allen Steele; [and] [11] Mitchell Townsend. Your spreadsheet confirms that none of these checks were cashed. Please have them re-issued within 5 business days and sent to my office (4106 Bridge Ave., Cleveland, OH 44113) so that I can ensure that they get out to each of these individuals.
>
> **
>
> <u>Names and Addresses Used for First Installment Payments</u>
> Please provide the names and addresses used for issuing Individual Payments during the First Installment. At a minimum, include the 154 individuals listed in Defendants'

---

[3] The Court notes that neither party provided this Court with a copy of Defendant's February 1, 2024 Audit Report.

7

> February 1 report as having "uncashed" checks. Please provide such information with five business days.
>
> **Contact Information for Individuals Who Have Uncashed Checks**
> Paragraph 34 states that, "[f]or individuals who have one or more uncashed checks, Plaintiffs' Counsel may use reasonable efforts to obtain alternative addresses and request reissuance of their checks. Upon request, Defendants will provide any available contact information for such individuals." Please provide any and all contact information for the 154 individuals listed in Defendants' February 1 report as having "uncashed" checks. Include any and all mailing addresses, email addresses, and phone numbers. Please provide such information with twenty business days.

(*Id*. at PageID#s 8356-8357) (emphasis added).[4] On February 15, 2024, Defendants' Counsel responded via email that they had "confirmed with the client that checks have been sent to the entire class." (Doc. No. 215-2 at PageID# 8404.) At no point in time did Plaintiffs' Counsel and Defendants' Counsel speak to each other on the telephone or meet (either in person or via Zoom) to attempt to resolve their dispute.

  **C.**  **Motion to Enforce**

  On March 5, 2024, Plaintiffs filed the instant Motion to Enforce. (Doc. No. 212.) On March 25, 2024, Defendants' Counsel sent an email to Plaintiffs' Counsel providing the addresses to which the first installment checks had been mailed with regard to the eleven specific Class Members identified in Plaintiffs' February 11, 2024 email. (Doc. No. 215-1 at PageID# 8388-8390.) Defendants' Counsel further explained that the installment checks for all Class Members had been sent to the addresses listed on the previously provided Roster. (*Id*. at PageID# 8390.) Defendants' Counsel indicated that "Family Solutions does not have any new contact information for any

---

[4] In this email, Plaintiffs' Counsel also requested that Defendants' Counsel identify the payroll service used by Defendants to issue the first installment checks to individual Class Members. (*Id*.) Defendants represent (and Plaintiffs do not dispute) that Defendants' Counsel subsequently informed Plaintiffs that all checks were issued using Defendants' "in-house team." (Doc. No. 214 at p. 7.) Thus, this issue is resolved.

8

individual on that list and, therefore, the checks were sent to the last known address for each class member." (*Id.*)  Defendants' Counsel stated that "if you would like Family Solutions to reissue the above checks to these 11 individuals, please provide us with verified addresses so that new checks can be sent." (*Id.*)

Defendants' Counsel then asked Plaintiffs' Counsel if they would be willing to withdraw their Motion to Enforce. (*Id.*)  Plaintiffs' Counsel declined to withdraw the Motion unless "a) you provide us a list of the addresses to which all checks were sent today, b) your client will commit to, and we can put in a joint filing, that we will provide updated addresses within 7 days and your client will reissue checks within another 7 days, and c) your client re-issues checks [for the 11 identified Class Members] and FedExs them to my office by tomorrow." (*Id*. at PageID# 8387.)

Defendants declined to agree to these conditions and filed their Brief in Opposition on March 26, 2024, and a Notice of Filing of Exhibits to Defendants' Opposition on March 27, 2024. (Doc. No. 215.)  Plaintiffs filed a Reply Brief on April 2, 2024. (Doc. No. 216.)

II.     **Analysis**

In their Motion, Plaintiffs argue that Defendants violated Paragraphs 32(d) and 34 of the Settlement Agreement when they failed to either respond to Plaintiffs' Counsel's repeated requests for further information or comply with Plaintiffs' Counsel's request that Defendants reissue individual settlement payment checks to the eleven (11) Class Members identified in their various emails. (Doc. No. 212.)  Plaintiffs emphasize that, between November 27, 2023 and February 11, 2024, Plaintiffs' Counsel sent no less than fourteen emails to defense counsel requesting further information and reissuance of the checks, but that Defendants failed to timely respond and/or comply. (*Id*. at p. 4.)  Plaintiffs also state that, according to the February 1, 2024 Audit Report, first installment

9

checks are still "uncashed" for at least 154 class members. (Doc. No. 216 at p. 2.) Plaintiffs' Counsel characterizes this level of uncashed checks as "unprecedented."[5] (*Id*.)

To address this situation, Plaintiffs request that this Court order Defendants to: (1) provide the names and addresses used for issuing the November 2023 Individual Payments so that Plaintiffs can conduct a National Change of Address search; (2) provide "any available contact information" for the 154 individuals listed in Defendants' February 1, 2024 audit report as having "uncashed" checks; and (3) immediately reissue checks to new addresses upon Plaintiffs' request, "including, if a class member requests it, to Plaintiffs' counsel's address so that they may retrieve the check." (Doc. No. 216.) Plaintiffs also indicate that Plaintiffs' Counsel will then promptly provide updated addresses for Class Members, to the extent they have them. (*Id*. at p. 3.)

In response, Defendants argue that they have fully complied with all their obligations under the Settlement Agreement. (Doc. No. 214.) Specifically, Defendants assert that they (1) timely provided a Roster to Plaintiffs' Counsel by April 17, 2023; (2) timely sent checks to Class Members and Opt-Ins to the addresses listed in that Roster by November 1, 2023; (3) resent checks to several Class Members for whom Plaintiffs' Counsel provided updated addresses; (4) provided Plaintiffs' Counsel with an audit report on February 1, 2024 pursuant to Paragraph 34 of the Agreement that details the dates the checks were issued, to whom, and whether the checks are cashed or uncashed;

---

[5]Plaintiffs also asked the Court to order Defendants' Counsel to pay the outstanding invoice of expert witness Shane Thompson, Ph.D., for hours he expended in relation to his deposition on May 6, 2022. (Doc. No. 212 at p. 1.) In their Brief in Opposition, Defendants state that they "informed counsel that a check had been requested [for Dr. Thompson] and would be issued. Thus, this issue is resolved." (Doc. No. 214 at pp. 7, 10.) In their Reply Brief, Plaintiffs do not contest Defendants' statement regarding payment to Dr. Thompson, or otherwise argue that they are entitled to any further relief with respect to Dr. Thompson. (Doc. No. 216.) Thus, the Court finds that the issue of Dr. Thompson's payment is resolved.

10

and (5) responded to Plaintiffs' Counsel's inquiries about the February 1, 2024 Audit Report via email on February 15, 2024. (*Id.* at p. 4.)

Defendants maintain that it is, in fact, "Plaintiffs who have completely failed to cooperate with Defendants on administering the Settlement Agreement." (*Id.* at p. 8.) Defendants argue that, pursuant to Paragraph 34 of the Agreement, it is *Plaintiffs' Counsel* that have the responsibility to "use reasonable efforts to obtain alternative addresses" for Class Members that have not cashed their checks. (*Id.*) Defendants assert that Plaintiffs' Counsel have unreasonably taken the position that they will not provide updated addresses for the majority of Class Members[6] unless and until Defendants resend the Roster to Plaintiffs and provide additional contact information for Class Members who have not cashed their checks. (*Id.* at pp. 8-9.) While Defendants have now apparently agreed to resend the Roster to Plaintiffs' Counsel, they refuse to provide any further available contact information for Class Members until after Plaintiffs' Counsel provides updated addresses. (*Id.* at pp. 6, 9-10.) In addition, Defendants object, strenuously, to Plaintiffs' Counsel's request that reissued checks be sent to Plaintiffs' Counsel's address, arguing that this "violates the terms of the Settlement Agreement." (*Id.* at p. 2.)

The Court finds that neither party to this action has acted with the level of cooperation that is contemplated (and, indeed, required) by the Settlement Agreement. As set forth at length above, Defendants failed to meaningfully respond, for several months, to Plaintiffs' Counsel's repeated requests for information regarding the status of the first installment payments to individual Class Members. Pursuant to Paragraph 32(d) of the Agreement, Plaintiffs' Counsel were expressly

---

[6] In their Brief in Opposition, Defendants acknowledge that Plaintiffs' Counsel did recently provide Defendants' Counsel with new addresses for the eleven Class Members identified in Plaintiffs' Counsel's February 11, 2024 email.

11

permitted to "inquire of Defendants during the course of administration and shall be entitled to reasonably necessary information and documents related to the payments set forth in this Agreement." (Doc. No. 203-3 at ¶ 32(d)). Given the fact that numerous Class Members had reported not receiving their checks, Plaintiffs' Counsel were well within their rights under Paragraph 32(d) to ask Defendants for further information regarding the first installment payments, including (1) whether the first installment checks were issued to the entire Class; (2) when such checks were mailed; (3) to what addresses the checks were sent; and (4) whether certain checks had been cashed. For weeks, Defendants' Counsel failed to meaningfully respond to Plaintiffs' Counsel's inquiries, either ignoring Plaintiffs' Counsel's emails entirely or stating only that they would "check with the client." (Doc. No. 212-1 at PageID#s 8313-8327.) Defendants' Counsel provided information only when Plaintiffs' Counsel threatened to involve the Court and, even then, the information provided was limited, vague, and unsubstantiated. (*Id.* at PageID# 8328, 8338-8339.) Again and again, Defendants' Counsel promised to "follow up" with their clients. (*Id*. at PageID#s 8315, 8328, 8343, 8347, 8353.) Defendants, however, provided no meaningful responses to Plaintiffs' Counsel's inquiries until Defendants submitted the February 1, 2024 Audit Report required under Paragraph 34 of the Settlement Agreement. The Court does not have a copy of this Audit Report, but it apparently indicates that Defendants only mailed checks to 43 of the 168 Class Members and that checks are still uncashed for 154 Class Members. (*Id*. at PageID# 8356.)

It is no wonder that Plaintiffs are frustrated and angry. Defendants provide no explanation for their failure to timely respond to Plaintiffs' Counsel's reasonable inquiries regarding the first installment payments to Individual Class Members. Moreover, while Defendants state generally that they sent checks "to the addresses listed on the roster," they do not acknowledge or directly address

12

Plaintiffs' Counsel's statement that checks were only mailed to 43 of 168 Class Members and that 154 checks remain uncashed. Under these circumstances, the Court finds that Defendants failed to sufficiently cooperate with Plaintiffs' Counsel and/or timely respond to Plaintiff's Counsel's requests for "reasonably necessary information and documents related to the [first installment] payments," in contravention of Paragraphs 27 and 32(d) of the Settlement Agreement. The Court will, therefore, require Defendants to provide the following information to Plaintiffs' Counsel within seven (7) days of the date of this Order: (1) the names and addresses of the Class Members to whom the first installment checks were mailed; and (2) the date on which each such check was mailed (or remailed, if applicable).[7]

The Court further finds that Plaintiffs' Counsel properly asked Defendants to provide "any available contact information" for the 154 Class Members listed in the February 1, 2024 Audit Report as having uncashed checks. As set forth *supra*, Paragraph 34 of the Settlement Agreement authorizes Plaintiffs' Counsel to undertake reasonable efforts to obtain alternative addresses for Class Members who have not cashed their checks and expressly provides that, "[u]pon request, Defendants *will* provide *any available* contact information for such individuals." (Doc. No. 203-3 at ¶ 34) (emphasis added). Upon review, the Court finds that, as part of their reasonable efforts to obtain alternative

---

[7] The Court rejects Defendants' argument that they complied with their obligations in this regard by informing Plaintiffs' Counsel that Defendants mailed the first installment checks to the addresses listed in the previously provided Roster. Given the number of Class Members that have reported not receiving checks, it was not unreasonable for Plaintiffs' Counsel to ask Defendants to provide the actual list of addresses to which Defendants sent the first installment payments to Individual Class Members. Plaintiffs' Counsel were entitled to this information under Paragraph 32(d) of the Settlement Agreement, and it is unclear why Defendants' Counsel refused to provide it. It could not have been that difficult for Defendants to simply resend the Roster to Plaintiffs' Counsel, and apparently Defendants have now (only after the filing of the Motion to Enforce) agreed to resend it. Defendants provide no explanation for their months-long refusal to do so, other than to simply state that they shouldn't have had to. This is contrary to the plain language of the Paragraph 32(d) and inconsistent with the requirement that the parties cooperate in good faith to implement the terms of the Settlement Agreement.

13

addresses, Plaintiffs' Counsel are permitted under this Paragraph to ask Defendants to provide "any available contact information" in Defendants' current possession for those Class Members listed in the February 1, 2024 Audit Report as having uncashed checks, including updated mailing addresses, email addresses, and phone numbers (if any).

In so finding, the Court rejects Defendants' argument that Paragraph 34 first requires Plaintiffs' Counsel to use reasonable efforts to obtain alternative addresses, and only then are Defendants required to provide "any available contact information" upon request. There is no language in Paragraph 34 that requires such a restrictive reading. Nor does the Court agree with Defendants' narrow interpretation of the term "any available contact information" to mean only mailing addresses. The phrase "any available contact information" is quite broad and in no way restricted to mailing addresses only. If Defendants had wanted to restrict this provision to mailing addresses, they could certainly have negotiated for more restrictive language in the Agreement. They did not and the Court will not now read such a restriction into Paragraph 34 of the Settlement Agreement.

Accordingly, and within seven (7) days of the date of this Order, Defendants shall provide to Plaintiffs' Counsel "any available contact information" in their possession for the 154 Class Members listed in the February 1, 2024 Audit Report as having uncashed checks, including updated mailing addresses, email addresses, and phone numbers (if any). The Court further orders that, within seven (7) days of receiving this information from Defendants, Plaintiffs shall provide to Defendants any updated addresses for Class Members that Plaintiffs have in their possession (if any).

Lastly, the Court addresses Plaintiffs' request that the Court order Defendants to "reissue checks to all class members and addresses provided by Plaintiffs' counsel including, if a class member

requests it, to Plaintiffs' counsel's address so that they may retrieve the check." (Doc No. 216 at p. 3.) Paragraph 34 of the Settlement Agreement provides that "[f]or individuals who have one or more uncashed checks, Plaintiffs' Counsel may use reasonable efforts to obtain alternative addresses and request reissuance of their checks." (Doc. No. 203-3 at ¶ 34.) Regarding the eleven Class Members identified in Plaintiffs' Counsel's February 11, 2024 email, Defendants state that Plaintiffs' Counsel provided alternate addresses for these individuals on the morning of March 26, 2024 and that Defendants "will promptly reissue checks for these individuals." (Doc. No. 214 at pp. 6-7.) It is unclear from Plaintiffs' Reply Brief, but it appears that Plaintiffs continue to insist that Defendants send the reissued checks to these eleven Class Members (as well as any other Class Members who may request it in the future) to Plaintiff's Counsel's office address. (Doc. No. 216 at p. 3.)

The Court finds as follows. On its face, Paragraph 34 of the Settlement Agreement does not permit Plaintiffs' Counsel to demand that payments to certain Class Members be sent directly to Plaintiff's Counsel's office address rather than to the Class Members' personal addresses. Nor, therefore, does the Settlement Agreement contain any provisions for documenting or verifying alleged requests by Class Members to have their reissued checks sent to Plaintiff's Counsel's office address rather than to the Class Members' personal addresses. Thus, the Court finds that it was not appropriate (or in the spirit of cooperation) for Plaintiff's Counsel to demand that reissued checks be sent to their office address, nor was it appropriate (or in the spirit of cooperation) for Plaintiff's Counsel to condition any further cooperation or exchange of information on Defendants' agreement to do so.

The Court, therefore, denies Plaintiffs' Motion to the extent it asks the Court to order Defendants to send reissued checks to Plaintiff's Counsel's office address. The Court does, however,

note as follows. Given the problems associated with the distribution of the first installment checks, the Court understands Plaintiff's Counsel's concerns as well as their desire to find a solution that ensures that Class Members promptly receive their installment checks. The Court also suspects that sending installment checks to Plaintiff's Counsel's address (for those Class Members who request it) could, indeed, simplify matters and prevent future disputes about whether, when, and to whom installment checks were mailed. That being said, it is not unreasonable for Defendants to require verification (via Declaration or otherwise) from Class Members that request that reissued checks be sent to Plaintiff's Counsel's office address.

As none of this is addressed in the Settlement Agreement, the Court will not order Defendants to send reissued checks to Plaintiff's Counsel's address for those Class Members that request it via sworn Declaration. However, there is no reason that counsel cannot meet and confer, in the spirit of cooperation, to discuss the possibility of having Defendants send reissued checks to Plaintiff's Counsel's office address under certain conditions and circumstances, such as, for example, requiring sworn Declarations from any Class Members requesting it. The Court strongly encourages Plaintiffs' Counsel and Defendants' Counsel to meet and confer, in good faith and in person or by video or telephone conference, to discuss this issue and arrive upon a solution that addresses each side's concerns. Paragraph 21 of the Settlement Agreement requires the parties to "cooperate and take all steps necessary to accomplish and implement the terms of" the Settlement Agreement. (Doc. No. 203-3 at ¶ 21.) At a bare minimum, this includes *talking to each other* when problems arise – not simply exchanging a series of increasingly acrimonious emails.

True cooperation within the meaning of the Settlement Agreement is particularly important here given that the Settlement Agreement provides for two more installment payments -- in June 2024

16

and January 2025. It is in everyone's best interest to resolve this issue promptly and fairly and to avoid future disputes. Thus, the Court imposes the following requirement. **Prior to the filing of any future Motion to Enforce in this action, Plaintiffs' Counsel and Defendants' Counsel are required to meet and confer, in good faith, to attempt to resolve the dispute. The meet and confer must be conducted in person, by video conference, or by telephone conference**. Any **Motion to Enforce must be accompanied by a sworn Declaration of Counsel, confirming that Counsel met and conferred as required by this Order and detailing the time, place, and specific outcome of that meet and confer.**

### III. Conclusion

For all the reasons set forth above, Plaintiffs' Motion to Enforce Provisions of Settlement Agreement (Doc. No. 212) is GRANTED IN PART and DENIED IN PART, as follows:

A. By no later than seven (7) days of the date of this Order, Defendants are ORDERED to provide the following to Plaintiffs' Counsel: (1) the names and addresses of the Class Members to whom the first installment checks were mailed, as well as the date on which each such check was mailed (or remailed, if applicable); and (2) "any available contact information" in Defendants' possession for the 154 Class Members listed in the February 1, 2024 Audit Report as having uncashed checks, including updated mailing addresses, email addresses, and phone numbers (if any).

B. By no later than seven (7) days from Defendants' provision of the above information to Plaintiffs' Counsel, Plaintiffs are ORDERED to provide to Defendants any updated mailing addresses for Class Members that Plaintiffs have in their possession (if any).

C. If they have not already done so, Defendants are ORDERED to reissue first installment checks to the eleven (11) Class Members listed in Plaintiffs' Counsel's February 11, 2024 email. These checks should be sent to the Class Members' updated addresses that were apparently provided by Plaintiffs' Counsel on March 26, 2024.

D. To the extent Plaintiffs' Motion requests that reissued checks for Individual Class Members be mailed to Plaintiff's Counsel's office address, Plaintiff's

        Motion is DENIED.  The parties are strongly encouraged, however, to meet and confer within the next thirty (30) days to discuss whether they can agree on a process going forward whereby reissued checks can be mailed to Plaintiff's Counsel's office address under certain agreed-upon circumstances.

E.     Prior to the filing of any future Motion to Enforce in this action, Plaintiffs' Counsel and Defendants' Counsel are required to meet and confer, in good faith, to attempt to resolve the dispute.  The meet and confer must be conducted in person, by video conference, or by telephone conference.  Any Motion to Enforce must be accompanied by a sworn Declaration of Counsel, confirming that Counsel met and conferred as required by this Order and detailing the time, place, and specific outcome of that meet and confer.

**IT IS SO ORDERED.**

Date: April 11, 2024

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE