# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Jamal Stephenson,** *et al.,*<br>**On behalf of herself and**<br>**All others similarly situated,** | **Case No. 1:18cv2017 (lead case)**<br>**1:21cv00196** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Family Solutions of Ohio, Inc.,**<br>*et al.,* | **ORDER** |
| **Defendants** | |

Currently pending is the Motion of Plaintiffs Jamal Stephenson and Melanie Baron to Enforce Provisions of the Parties' Settlement Agreement.  (Doc. No. 225.)  Defendants Prostar Management, Inc., John Hopkins, and Dawn Smith (hereinafter referred to collectively as "Responding Defendants")[1] filed a Brief in Opposition, to which Plaintiff replied on February 13, 2025.  (Doc. Nos. 226, 227.)   For the following reasons, Plaintiffs' Motion to Enforce (Doc. No. 225) is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART, as set forth herein.

## I.    Background

### A.    Relevant Procedural History and Approval of Settlement Agreement

This class and collective action was brought on behalf of Qualified Mental Health Specialists ("QMHS") employed by Defendant Family Solutions of Ohio, Inc. ("FSO").  The Complaint was filed on September 4, 2018, and an Amended Complaint was filed on May 5, 2020.  (Doc. Nos. 1,

---

[1] The Court notes that, while Family Solutions of Ohio, Inc. is a named Defendant in the instant action, the instant Motion to Enforce was filed only against Defendants Prostar Management, Inc., John Hopkins, and Dawn Smith.  Thus, the Court refers to Defendants Prostar Management, Inc., Hopkins and Smith as the "Responding Defendants" herein.

50.)  In the Amended Complaint, Plaintiffs Jamal Stephenson and Melanie Baron assert claims for violations of federal and state wage-and-hour laws and state common law against the following Defendants: (1) FSO; (2) Prostar Management, Inc.; (3) John Hopkins; and (4) Dawn Smith (hereinafter referred to collectively as "Defendants").  (Doc. No. 50.)  Defendants denied Plaintiffs' allegations.

On September 16, 2019, the Court conditionally certified the case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of QMHS's who worked during the preceding three years.  (Doc. No. 20.)  Notice was issued to potential opt-ins and 29 persons ultimately joined the case by submitting consent forms.  Subsequently, on April 5, 2021, the Court granted Plaintiffs' Motion for Certification of a state-law Class under Fed. R. Civ. P. 23.  (Doc. No. 143.)  The Court approved Notice to putative Class Members on May 5, 2021.  After Notice was issued and the period to request exclusion had expired, the Rule 23 Class consisted of a total of 177 Class Members.  *See* Doc. No 209 at p. 2.

After extensive discovery and motion practice, the parties ultimately reached an agreement to settle the instant action.  On March 16, 2023, the parties filed a Joint Motion for Preliminary Approval of Class and Class Action Settlement.  (Doc. No. 201.)  The parties later filed a Supplement thereto, in which they addressed certain issues raised by the Court and attached a signed copy of the parties' "Agreement of Settlement and Release" (hereinafter "Settlement Agreement.") (Doc. Nos. 203, 203-3.)  The Court preliminarily approved the parties' Settlement Agreement on March 28, 2023.  (Doc. No. 204) (preliminarily approving Doc. No. 203-3.)

Several months later, the parties filed a Joint Motion for Final Approval of the parties' Settlement Agreement.  (Doc. No. 206.)  The Settlement Agreement defines the term "Parties" as

meaning "Plaintiffs and Defendants, as defined herein" and defines "Defendants" as "Family Solutions of Ohio, Inc., Prostar Management, Inc., John Hopkins, and Dawn Smith." (Doc. No. 203-3 at ¶¶ 2, 5.) In addition, and of particular relevance herein, the Settlement Agreement contains several provisions relating to the distribution of settlement payments to Class Members and Opt-Ins. Specifically, Paragraphs 26 and 27 of the Agreement provide:

> 26. **Total Settlement Amount.** Defendants will pay the Total Settlement Amount of Five Hundred Thirty-Five Thousand Dollars ($535,000.00) as provided herein.

> 27. **Defendants' Installment Payments and Dates**. Defendants will pay the Total Settlement Amount of $535,000.00 in two equal installments of $178,333.33, and a third installment of $178,333.34, on or before the following Installment Dates. The first Installment Date shall be thirty days after the Effective Date or November 1, 2023, whichever is later. The second and third Installment Dates shall be June 1, 2024 and January 2, 2025, respectively.

(*Id*. at ¶¶ 26, 27.) The Agreement further provides that Defendants are to make individual payments to Class Members and Opt-Ins as follows:

> 32. **Issuance of Distributions**. Defendants will make the prescribed distributions from Installment Payments according to the Schedule of Distributions, as follows.

> **(a) Individual Payments**. Individual Payments will be distributed by Defendants' payroll service. Individual Payments of one-hundred dollars ($100) or less will be distributed out of the second Installment Payment. All other Individual Payments will be distributed in three approximately equal amounts out of the first, second, and third Installment Payments. Defendants' payroll service will distribute the Individual Payments no later than twenty-one days after the applicable Installment Date.

(*Id*. at ¶ 32.) In addition, the Settlement Agreements contains a Cooperation Clause, that provides that "[t]he Parties agree to cooperate and take all steps necessary to accomplish and implement the terms of this Settlement Agreement." (*Id*. at ¶ 21.) The Settlement Agreement is signed by Plaintiffs

3

Jamal Stephenson and Melanie Baron, and contains the separate signatures of Defendants FSO, Prostar Management, Inc.,  John Hopkins, and Dawn Smith.  (*Id.* at PageID#s 8233-8235.)

The Court conducted an in-person Final Approval Hearing on July 10, 2023 and issued a Final Approval Order later that same day.  (Doc. No. 210.)  In the Final Approval Order, the Court found (among other things) that the Total Settlement Amount and the proposed distributions to the Named Plaintiffs, Opt-Ins, and Settlement Class Members were fair and reasonable.  (*Id.* at p. 5.)  In addition, the Court "approve[d] the distributions and order[ed] that they be made in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement."  (*Id.*)  The Court also retained jurisdiction to enforce the terms of the Settlement Agreement and resolve any and all disputes thereunder.  (*Id.* at p. 6.)

### B.  Problems with the First Installment Payments

Pursuant to Paragraphs 27 and 32(a) of the Settlement Agreement, Defendants were required to distribute the first installment checks to the Named Plaintiffs, Class Members, and Opt-Ins by no later than November 21, 2023.[2]  On November 27, 2023, Plaintiffs' Counsel emailed Defendants' Counsel to advise that "a lot of class members [are] saying that they haven't received checks."  (Doc. No. 212-1 at PageID#s 8313.)  Defendants' Counsel responded that same day, stating "we will check with the client."  (*Id.* at PageID# 8315.)  In a series of emails in November and December 2023, Plaintiffs' Counsel continued to raise concerns and issues regarding reports from numerous class members that they had not received their checks.  (*Id.* at PageID#s 8319, 8334, 8336.)  On January

---

[2] While the Settlement Agreement provides that the first "Installment Date" is November 1, 2023, Paragraph 32(a) of the Settlement Agreement also provides that "Defendants' payroll service will distribute the Individual Payments no later than twenty-one days after the applicable Installment Date."  (Doc. No. 203-3 at ¶¶ 27, 32(a)).  Thus, as to the first installment, Defendants had until twenty-one (21) days after November 1, 2023 (i.e., until November 21, 2023) to distribute Individual Payments to Class Members.

5, 2024, Defendants' Counsel emailed Plaintiffs' Counsel that they had been "bogged down" but "will be calling the client today to get the facts on the checks." (*Id.* at PageID# 8347.) On January 9, 2024, Defendants' Counsel indicated that "the client is working to get this information." (*Id.* at PageID# 8353.) Plaintiffs' Counsel expressed considerable frustration with the delay and threatened to file a motion to enforce. (*Id.*)

It does not appear that Defendants provided any further information to Plaintiffs' Counsel until February 1, 2024. On that date, Defendants provided an audit report to Plaintiffs' Counsel that listed the dates of all checks issued to Plaintiffs, Opt-Ins, and Class Members and indicated whether the checks were cashed or uncashed. On February 11, 2024, Plaintiffs' Counsel emailed Defendants' Counsel (in relevant part), raising a host of additional concerns. (*Id.* at PageID#s 8356-8357). On February 15, 2024, Defendants' Counsel responded via email that they had "confirmed with the client that checks have been sent to the entire class." (Doc. No. 215-2 at PageID# 8404.)

### C.  First Motion to Enforce (Doc. No. 212)

On March 5, 2024, Plaintiffs filed their first Motion to Enforce, arguing that Defendants violated Paragraphs 32(d) and 34 of the Settlement Agreement when they failed to either respond to Plaintiffs' Counsel's repeated requests for further information or comply with Plaintiffs' Counsel's request that Defendants reissue individual settlement payment checks to the eleven (11) Class Members identified in their various emails that had not received checks. (Doc. No. 212.) Defendants filed their Brief in Opposition on March 26, 2024, in which they argued that they had fully complied with the Settlement Agreement. (Doc. No. 214.) Plaintiffs filed a reply on April 2, 2024. (Doc. No. 216.)

On April 11, 2024, this Court issued a Memorandum Opinion & Order granting in part and denying in part Plaintiff's Motion.  (Doc. No. 217.)  The Court found that "Defendants failed to sufficiently cooperate with Plaintiffs' Counsel and/or timely respond to Plaintiff's Counsel's requests for 'reasonably necessary information and documents related to the [first installment] payments,' in contravention of Paragraphs 27 and 32(d) of the Settlement Agreement."  (*Id.* at PageID# 8424.)  The Court therefore required Defendants to provide the following information to Plaintiffs' Counsel: (1) the names and addresses of the Class Members to whom the first installment checks were mailed; and (2) the date on which each such check was mailed (or remailed, if applicable).  (*Id.*)

The Court, however, denied Plaintiffs' Motion to the extent it asked the Court to order Defendants to send reissued checks to Plaintiff's Counsel's office address, as this was not contemplated in the Settlement Agreement.  (*Id.* at PageID# 8426.)  Nonetheless, the Court remarked that "there is no reason that counsel cannot meet and confer, in the spirit of cooperation, to discuss the possibility of having Defendants send reissued checks to Plaintiff's Counsel's office address under certain conditions and circumstances, such as, for example, requiring sworn Declarations from any Class Members requesting it."  (*Id.* at PageID# 8427.)  The Court "strongly encourage[d] Plaintiffs' Counsel and Defendants' Counsel to meet and confer, in good faith and in person or by video or telephone conference, to discuss this issue and arrive upon a solution that addresses each side's concerns."  (*Id.*)  The Court concluded by noting as follows:

> True cooperation within the meaning of the Settlement Agreement is particularly important here given that the Settlement Agreement provides for two more installment payments -- in June 2024 and January 2025.  It is in everyone's best interest to resolve this issue promptly and fairly and to avoid future disputes. Thus, the Court imposes the following requirement. Prior to the filing of any future Motion to Enforce in this action, Plaintiffs' Counsel and Defendants' Counsel are required to meet and confer, in good faith, to attempt to resolve the dispute. The meet and confer must be conducted in person, by video conference, or by telephone conference. Any Motion to Enforce

6

must be accompanied by a sworn Declaration of Counsel, confirming that Counsel met and conferred as required by this Order and detailing the time, place, and specific outcome of that meet and confer.

(*Id*. at PageID#s 8427-8428.)

Five months later, on September 5, 2024, the parties filed a Joint Motion for a Status Conference regarding Settlement.  (Doc. No. 220.)  Therein, the parties indicated that (1) installment payments under the parties' Settlement Agreement are/were due on November 1, 2023, June 1, 2024, and January 2, 2025; (2) "Defendants assert that they have encountered financial difficulties affecting their ability to meet that schedule;" and (3) the parties want this Court to "hold a conference with counsel so that they may discuss possible paths forward."  (*Id*.)  On September 6, 2024, the Court denied the parties' Joint Motion without prejudice.  *See* Non-Doc Order dated Sept. 6, 2024.  The Court explained that "[b]ased on the very limited information provided in the Joint Motion, it is not clear what the parties expect this Court to do about Defendants' apparent inability to meet the payment schedule set forth in the parties' Settlement Agreement.  Nor is it clear why counsel for the parties cannot meet to discuss this issue among themselves and arrive upon a negotiated solution." (*Id*.)  While the Joint Motion suggested the possibility of "motion practice regarding the parties' predicament," the Court reminded all counsel of the meet and confer requirement set forth in the April 2024 Opinion.  (*Id*.)  The Court strongly encouraged counsel for the parties to work cooperatively (and diligently) to resolve this issue on their own prior to involving this Court.  (*Id*.)

Shortly thereafter, on September 13, 2024, Defendant FSO filed a Notice that it had filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Eastern District of North Carolina.  *See In re Family Solutions of Ohio, Inc*., Case No. 24-03043-5 (E.D. N.C.).

**D.** ***Stephenson, et al., v. Hopkins, Sr., et al*., Case No. 1:24cv1830 ("*Stephenson II*")**

7

Meanwhile, on September 12, 2024, Plaintiffs filed a Class Action Complaint for Equitable, Declaratory, and Monetary Relief in the Cuyahoga County Court of Common Pleas against the following defendants: (1) John A. Hopkins, Sr., (2) Dawn Smith, (3) Nancy Hopkins, (4) John A. Hopkins, Jr., (5) Tiffany Hopkins, (6) Family Solutions USA, Inc., (7) Hopkins Global Solutions, Inc., and (8) Prostar Management, Inc.  *See* Case No. 1:24cv1830 (Doc. No. 1-2) (hereinafter *Stephenson II*). Therein, Plaintiffs alleged that Defendants Hopkins, Sr., Smith, and Prostar Management, Inc. had breached the Settlement Agreement in the instant action (hereinafter *Stephenson I*) "by failing to make even the first installment payment in full." (*Id.* at ¶ 14.)  Plaintiffs further alleged that, "from 2018 through 2023, during the pendency of [*Stephenson I*], decision after decision from that litigation alerted Defendants that their pay practices at FSO were quite patently illegal." (*Id.* at ¶ 23.)  Plaintiffs alleged that "[i]nstead of tightening the company purse strings or even closing FSO down, John A. Hopkins, [Sr.], Dawn Smith, and Nancy Hopkins enriched their own finances and added to the FSO payroll the Hopkins children — Defendants John Hopkins, Jr. and Tiffany Hopkins — while simultaneously continuing to steal wages from FSO employees." (*Id.* at ¶ 24.)

Plaintiffs brought the case as a class action pursuant to Civ. R. 23 on behalf of themselves and "[a]ll employees who worked in Ohio as Qualified Mental Health Specialists ('QMHS') for Family Solutions of Ohio during the period September 16, 2016 to April 5, 2021," i.e., the same class of employees in *Stephenson I*. (*Id.* at ¶ 30.)  Plaintiffs identified the following questions of law and fact common to the proposed Class: (1) whether Defendants transferred assets out of FSO, and/or other entities, for their own benefit; (2) whether Defendants transferred assets out of FSO, and/or other entities, while knowing that FSO could not meet its ability to pay debts as they became due; (3)

whether Defendants' transfers or receipt of monies directly or indirectly from FSO violated provisions of the Ohio Fraudulent Transfer Act, R.C. § 1336.01, *et seq*.; and (4) where the transferred sums or proceeds are currently held or deposited.  (*Id*. at ¶ 32.)

Based on the above allegations, Plaintiffs asserted state claims in *Stephenson II* for (1) breach of contract; (2) fraudulent transfer liability under the Ohio Fraudulent Transfer Act, Ohio Rev. Code §§ 1336.01, *et seq*.; (3) civil conspiracy to commit fraudulent transfer; and (4) declaratory relief.  *See* Case No. 1:24cv1830 (Doc. No. 1-2.)  On October 21, 2024, Defendants removed the Complaint to the instant Court on the basis of diversity jurisdiction and marked it as "related" to *Stephenson I*.  *See* Case No. 1:24cv1830 (Doc. No. 1.)

On November 11, 2024, Defendants filed identical Motions to Consolidate in both *Stephenson I* and *Stephenson II*.  *See* Case No. 1:18cv2017 (Doc. No. 223); Case No. 1:24cv1830 (Doc. No. 6.)  On December 5, 2024, this Court issued a Memorandum Opinion & Order in *Stephenson I*, denying the Motion to Consolidate.[3]  *See* Case No. 1:18cv2017 (Doc. No. 224.)  Thereafter, on February 6, 2025, in *Stephenson II*, Plaintiffs filed an Amended Class Action Complaint, which added Family

---

[3] The Court explained: "[T]he Court declines, in the exercise of its discretion, to consolidate the instant action with Case No. 1:24cv1830. While Defendants argue (summarily) that *Stephenson I* and *Stephenson II* involve 'common questions of law or fact' and 'involve the same parties and concern the same issues,' this Court is not convinced. *Stephenson I* principally involved alleged overtime violations of the FLSA and Ohio's Wage and Hour laws and was asserted against four defendants—FSO; Hopkins, Sr.; Smith; and Prostar Management. *Stephenson I* settled and was dismissed with prejudice over a year ago. By contrast, *Stephenson II* involves a slew of state law claims that are unrelated to the wage and hour claims at issue in *Stephenson I*. Most notably, *Stephenson II* is a putative class action involving claims under Ohio's Fraudulent Transfer Act, Ohio Rev. Code 1336.01, *et seq*., as well as state law claims for breach of contract, civil conspiracy, and declaratory relief. While the *Stephenson II* Plaintiffs' breach of contract claim relates to the parties' Settlement Agreement (over which this Court retained jurisdiction), the fraudulent transfer, civil conspiracy, and declaratory relief claims are distinct and well beyond the scope of *Stephenson I*. Moreover, *Stephenson II* includes several parties that were not parties to *Stephenson I*, including Nancy Hopkins, John Hopkins, Jr., Tiffany Hopkins, Family Solutions USA, Inc., and Hopkins Global Solutions, Inc. Thus, the Court finds, in the exercise of its discretion, that consolidation is not warranted or appropriate under the circumstances presented." *Stephenson I*, Case No. 1:18cv2017 (Doc. No. 224 at PageID#s 8507-8508.)

Solutions of Louisiana, Inc., and Family Solutions of Illinois, Inc., as party defendants. *See* Case No. 1:24cv1830 (Doc. No. 10.)

On March 20, 2025, the parties in *Stephenson II* filed a Joint Motion to Stay. *See* Case No. 1:24cv1830 (Doc. No. 13.)  The parties indicated, in relevant part, that "Plaintiffs and Defendants have reached an agreement under which they have jointly moved to stay this action" for a period of two years, explaining that "Defendants have agreed to make certain payments during the period May 2025 through December 1, 2026." (*Id.*)  Judge Oliver subsequently conducted a status conference with counsel, in which he "applauded the parties' efforts to efficiently resolve their dispute, but noted that staying a case for the first two years of litigation is highly unusual." *See* Case No. 1:24cv1830 (Doc. No. 14.)  Judge Oliver granted in part and denied in part the parties' Joint Motion to Stay, indicating that "[t]he court is amenable to a possible stay of up to one year, after which the action would be dismissed if neither party moves to vacate the stay." (*Id.*)

On April 21, 2025, the parties filed a "Joint Proposed Stipulation to Suggested Terms and Conditions of a One-Year Stay of the Action and Subsequent Dismissal without Prejudice." *See* Case No. 1:24cv1830 (Doc. No. 15.)  Judge Oliver entered the Stipulation on April 23, 2025. *See* Case No. 1:24cv1830 (Doc. No. 16.)  In relevant part, the Stipulation provides that:

> Plaintiffs and Defendants have reached an agreement under which they jointly seek a stay of this action. Defendants have agreed to make certain payments during the period May 2025 through December 1, 2026.  So long as Defendants timely satisfy those payment terms, Plaintiffs have agreed to refrain from (i) attempting to lift the stay in this case or (ii) pursuing execution on any judgment that may be entered in the [*Stephenson I*].

(*Id.*)

### E.    *Stephenson I*-- Second Motion to Enforce (Doc. No. 225)

10

Meanwhile, on January 23, 2025, Plaintiffs filed the instant Motion to Enforce Settlement in *Stephenson I* based on the Responding Defendants' failure to make the required Installment Payments under the Settlement Agreement.  (Doc. No. 225.)  The Responding Defendants filed a Brief in Opposition on February 7, 2025, to which Plaintiffs replied on February 13, 2025.  (Doc. Nos. 226, 227.)

On May 6, 2025, the Court issued a non-document Order suggesting that the instant Motion to Enforce was now moot in the light of the parties' Stipulation in *Stephenson II*.  *See* Non-Doc Order dated May 6, 2025.  The Court ordered that "[i]f the parties disagree, they must file a Notice on the docket to that effect by no later than May 13, 2025, along with a thorough explanation of why they believe the Motion to Enforce Settlement (Doc. No. 225) is not now moot."  (*Id.*)

On May 12, 2025, Plaintiffs filed a Notice indicating that they did not believe that the instant Motion to Enforce is moot.  (Doc. No. 228.)  To the contrary, Plaintiffs indicate that "the parties contemplated that a ruling on the pending motion could, and likely would, be entered, during the twenty-month period in which Defendants agreed to make payments."  (*Id.*)  Plaintiffs further explain:

> In the present case, the pending motion asks the Court to enter judgment on Defendants['] nonpayment of the class settlement. It is not an "abstract proposition … which cannot affect the matter in issue in the case." [internal citation omitted]. To the contrary, Defendants are in default of their settlement obligations, and judgment should be rendered against them for that default. The order in *Stephenson II* does not rectify their default, but rather simply puts into place an agreed-upon means for Defendants to keep collection efforts at bay. In stipulating to the order in *Stephenson II*, Defendants understood that judgment would likely be entered against them in this case. Entering judgment here will help to ensure that Defendants do not engage in further delay, as Plaintiffs will be able to immediately begin collecting on the judgment should Defendants further default on their payment obligations.

(*Id.*)

11

## II.    Analysis

At the outset, the Court questions whether it is an appropriate use of judicial resources for Plaintiffs to insist on a ruling on the instant Motion to Enforce even though the parties have already negotiated (and have begun implementing) a payment plan for the amounts due and owing under the Settlement Agreement.  However, given the Defendants' protracted history of failing to honor their payment obligations under that Agreement (as set forth *supra*), the Court will nonetheless proceed to rule on the instant Motion to Enforce.

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation [ ] before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (quoting *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir. 1976)).  Before enforcing a settlement, however, "a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645-46 (6th Cir. 2001).  In assessing whether an agreement has been reached, federal courts have recognized that "[s]ettlement agreements are a type of contract subject to principles of state contract law."  *Reed v. Wehrmann*, 159 F.Supp.2d 700, 704 (S.D. Ohio 2001).  *See also Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) ("Thus, '[w]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally.'") (quoting *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986)).  In this case, the Settlement Agreement provides (and the parties do not dispute) that Ohio law governs their dispute over whether they entered into an enforceable settlement agreement.  *See* Doc. No. 203-3 at ¶ 39.

In Ohio, a settlement agreement, like any other contract, requires "a meeting of the minds as well as an offer and an acceptance thereof." *Rulli v. Fan Co.*, 683 N.E.2d 337, 338 (Ohio 1997).  *See*

12

*also Spoerke v. Abruzzo*, 2014 WL 1350143 at *5 (Ohio App. 11th Dist. Mar. 31, 2014) ("To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties.")  Further, the essential terms of the settlement must be "reasonably certain and clear."  *Rulli,* 683 N.E.2d at 339.  "[S]ettlement agreements are highly favored in the law."  *Cont'l W. Condo. Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 660 N.E.2d 431, 432 (Ohio 1996).

Here, Plaintiffs argue that the parties' Settlement Agreement (Doc. No. 203-3) should be enforced because (1) it is a binding contract that was signed by each of the Responding Defendants; (2) Plaintiffs performed their part of the bargain by releasing claims against Defendants; (3) Defendants breached Paragraphs 26 and 27 of the Settlement Agreement by failing to make the required Installment Payments; and (4) Plaintiffs have been damaged in the amount of the total unpaid balance of $397, 677.51.  (Doc. No. 225 at PageID#s 8514-8515.)  Plaintiffs maintain that, as named Defendants and signatories to the Settlement Agreement, Responding Defendants are responsible for the unpaid balance and are not affected by the bankruptcy stay as to Defendant FSO.  (*Id.* at PageID#s 8510-8511.)  Thus, Plaintiffs request that (1) the settlement payments due and owing of $397,677.51 be reduced to judgment; (2) Responding Defendants be ordered to show cause why they have not complied with the Settlement Agreement; (3) Plaintiffs be permitted to conduct discovery regarding any representation by Responding Defendants that they are/were financially unable to make the required Installment Payments; and (4) Plaintiffs be permitted to move for attorneys' fees and "other appropriate sanctions" "if any representations of insolvency are not made in good faith."  (*Id.* at PageID#s 8514-8515.)

In response, Responding Defendants do not dispute that the Settlement Agreement is a binding contract; that Plaintiffs performed under that Agreement; that Defendants breached Paragraphs 26 and 27 of the Agreement; or that Plaintiffs were damaged by Defendants' breach.  (Doc. No. 226.) Nor do Responding Defendants dispute that they signed the Settlement Agreement.  (*Id*.)  Rather, Responding Defendants complain, at length, that Plaintiffs should be barred by principles of collateral estoppel and *res judicata* from pursuing their fraudulent transfer and civil conspiracy claims in *Stephenson II* because Plaintiffs could have raised those claims in *Stephenson I*.  (*Id*. at PageID#s 8536-8537.)  Responding Defendants further assert that "Plaintiffs should not be allowed to pursue the same relief in both [*Stephenson I* and *Stephenson II*], but rather should elect their remedy, either enforcement of the Settlement Agreement or pursuit of the claims in *Stephenson II*, but not both." (*Id*. at PageID# 8537.)

Responding Defendants next maintain that the Settlement Agreement should not be enforced as against them because they "were not Plaintiffs' employer" and, therefore, they were not required to make any payments under the Agreement.  (*Id*. at PageID# 8538.)  Responding Defendants assert that, if they are considered Plaintiffs' "employers," then the bankruptcy stay arising from FSO's Chapter 11 bankruptcy case "should apply equally to them."  (*Id*. at PageID# 8539.)  In this regard, Responding Defendants argue, summarily, that "unusual circumstances" warrant extending the bankruptcy stay to them because "the Settlement Agreement creates an indemnification and contribution relationship between [Responding] Defendants and FSO as it relates to the settlement amount."  (*Id*. at PageID# 8540.)  Responding Defendants further note that FSO's bankruptcy filing adds a "new complication" because, under the Settlement Agreement, FSO's payroll service (not Responding Defendants) was the mechanism by which payments were to be made.  (*Id*.)  Lastly,

14

Responding Defendants argue that Plaintiffs' Motion should be denied because Plaintiffs have failed to fully comply with this Court's April 2024 Opinion requiring the parties to meet and confer either in person, by video conference, or by telephonic conference prior to filing a motion to enforce. (*Id.*)

The Court finds as follows.  First, the Court finds that the Settlement Agreement is a binding, enforceable contract between Plaintiffs and Defendants FSO, Prostar Management, Inc., John Hopkins, and Dawn Smith.[4]  As noted above, Responding Defendants do not dispute that the parties reached agreement on all material terms, including the total Settlement Amount (i.e., $535,000) and the dates and amounts of the Installment Payments (i.e., payments of $178,333.33 on November 1, 2023 and June 1, 2024, and a payment of $178,333.34 on January 2, 2025).  Nor do Responding Defendants dispute that they each individually signed the Settlement Agreement, along with Defendant FSO.  *See* Doc. No. 203-3 at PageID#8235. Lastly, the Court finds (and Responding Defendants do not dispute) that the essential terms of the settlement are reasonably certain and clear.

The Court also finds that Defendants breached Paragraphs 26 and 27 of the Settlement Agreement by failing to timely make the required Installment Payments.  Plaintiffs have come forward with evidence that Defendants failed to timely make any of the three required Installment Payments.  Specifically, Plaintiffs' lead counsel, Attorney Scott Perlmuter, submitted a Declaration in which he avers, in relevant part, as follows:

> 2.    The Court-approved settlement of this matter called for settlement payments to be made in installments of $178,333.33 on November 1, 2023 and June 1, 2024, and an installment  of $178,333.34 on January 2, 2025.

---

[4] The Court finds that it has the authority to enforce the parties' Settlement Agreement because the Court expressly retained jurisdiction to do so.  *See* Doc. No. 210 at p. 6.  *See also RE/MAX Int'l, Inc*., 271 F.3d 641–43 (finding that when an order of dismissal expressly includes a provision retaining jurisdiction, the district court has the authority to enforce a settlement agreement).

3.       As Plaintiffs alerted this Court in ECF Nos. 212 and 216, Defendants failed to make even the first settlement payment in full.

4.       In terms of assessing the current status of payments, Defendants issued settlement payments directly to class members. Thus, Plaintiffs' counsel is largely dependent on information provided by Defendants.

5.       On October 30, 202[4], in the correspondence attached hereto as Exhibit 1-A, [Defendants indicated] that they had issued $148,433.86 worth of settlement checks.

6.       No additional settlement payments have been made by Defendants since the attached October 30, 202[4] correspondence.

**

14.      Again, at the present time, as shown in Exhibit 1-A, Defendants claim to have issued 175 checks, and acknowledge that 62 have not been cashed.

15.      The settlement agreement calls for Defendants to have distributed 545 checks.

16.      To date, Defendants have made $137,322.49 in settlement payments that have been received by class members and/or my firm.

17.      An additional $11,111.37 was allegedly sent to class members in checks that have not been cashed. However, that representation by Defendants is dubious, given that I have spoken with numerous would-be recipients of those checks who have confirmed that Defendants have their correct address and that they have not received the checks in question.

18.      As the last installment date has now passed, Defendants owe $397,677.51 under the parties' settlement agreement.

(Doc. No. 225-1 at PageID#s 8517-8519.)  Plaintiffs support the Attorney Perlmuter's representations with copies of various letters and emails between Attorney Perlmuter and Defendants' former and current counsel.  (*Id*. at PageID#s 8520-8532.)  Thus, Plaintiffs have come forward with evidence demonstrating that (1) Defendants (including Responding Defendants) breached the payment provisions of the parties' Settlement Agreement; and (2) Plaintiffs have been damaged in the total amount of $397,677.51 by Defendants' breach.

16

Responding Defendants argue, however, that the Settlement Agreement should not be enforced against *them* because they are not Plaintiffs' "employers" within the meaning of the FLSA and, therefore, were not required to make any payments under the Agreement.  (Doc. No. 226 at PageID# 8538.)  The Court rejects this argument.  In the Amended Complaint, Plaintiffs specifically allege that Responding Defendants are "employers" for purposes of the FLSA, 29 U.S.C. § 203(d).[5] (Doc. No. 50 at ¶ 26.)  The Court is not aware of any motions filed by Defendants challenging this allegation or otherwise seeking (or obtaining) dismissal of Prostar Management, Inc., Hopkins, and/or Smith on the basis that they are not "employers" under the FLSA and/or Oho law.

Moreover, and most importantly, the Responding Defendants are clearly parties to the Settlement Agreement. As noted *supra,* the Settlement Agreement defines "Parties" as meaning "Plaintiffs and Defendants, as defined herein" and then defines "Defendants" as including "Family Solutions of Ohio, Inc., *Prostar Management, Inc., John Hopkins, and Dawn Smith*." (Doc. No. 203-3 at ¶¶ 2, 5) (emphasis added).  The Agreement expressly provides that "*Defendants*" will pay the Total Settlement Amount of $535,000 via the three Installment Payments set forth in Paragraph 27. (*Id*. at ¶¶ 26, 27) (emphasis added).  Responding Defendants clearly benefitted from the Agreement since, in exchange for this payment, Plaintiffs broadly released "any and all claims asserted or otherwise arising out of" the Amended Complaint against "Defendants .... including the family,

---

[5] Specifically, Plaintiff alleges that: "Defendant Prostar, and individual Defendants John Hopkins and Dawn Smith, were 'employers' pursuant to 29 U.S.C. § 203(d) in that they were 'person[s] [who] act[ed] directly or indirectly in the interest of an employer,' Family Solutions, 'in relation to employees,' including Plaintiffs, the Potential Opt-Ins, and the Ohio Class Members. Prostar was the parent company of Family Solutions. John Hopkins was the owner of Prostar and the President and chief executive of Family Solutions. Dawn Smith was the Chief Operating Officer of Family Solutions. All had operational control over significant aspects of Family Solutions' operations and day-to-day functions, including compensation of employees. Defendants Hopkins and Smith, acting for and on behalf of Defendants Family Solutions and Prostar, made the decision to pay Plaintiffs and other QMHSs for fewer than all of the hours they worked, at hourly rates less than the minimum wage, and without overtime compensation." (Doc. No. 50 at ¶ 26.)

spouses, children, heirs, dependents, and assigns of" Hopkins and Smith.  (*Id.* at ¶ 35.)  Lastly, the Settlement Agreement contains the separate signatures of each of the Responding Defendants, i.e., Prostar Management, Inc., Hopkins, and Smith.  (*Id.* at PageID# 8235.)  Thus, the Court rejects Responding Defendants' argument that the Settlement Agreement should not be enforced against them because they are not "employers" for purposes of Plaintiffs' claims.

The Court also rejects Responding Defendants' argument that, if they are considered "employers" along with Defendant FSO, the stay arising from FSO's bankruptcy petition "should apply equally to them." (Doc. No. 226 at PageID# 8539.)   As the Sixth Circuit has explained, "[i]t is universally acknowledged that an automatic stay of proceeding accorded by [11 U.S.C.] § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor." *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983).  In "unusual circumstances,"[6] the bankruptcy court may "extend" the automatic stay to non-debtor parties pursuant to its equitable powers granted by 11 U.S.C. § 105.  *Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir. 1993).  The Sixth Circuit has emphasized that "such extensions, although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate." *Patton*, 8 F.3d at 349.  Thus, courts have held that the question of whether "unusual circumstances" warrant extending the automatic stay to a non-bankrupt party "is to be decided by the bankruptcy court."  *Ampla, LLC v. Burke Declor, LLC,* 2024 WL 3495346 at * 2 (N.D. Ohio July 22, 2024) (citing *Patton*, 8 F.3d at 349).  *See also Patton*, 8 F.3d at 349 (noting that a

---

[6] Examples of unusual circumstances "include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization." *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993).  *See also Fortenberry v. Fuciarelli*, 2024 WL 4982892 at * 2 (E.D. Mich. Dec. 4, 2024).

request to extend the automatic stay to a non-debtor "can only be presented to the bankruptcy court");
*Hom v. HOV Servs., Inc.*, 2025 WL 1662747 at * 1 (E.D. Mich. June 12, 2005) (same).

Here, the Responding Defendants indicate that they "are seeking an extension of the bankruptcy stay from the Bankruptcy Court under its equity jurisdiction pursuant to 11 U .S.C. § 105" and "request that this Court hold Plaintiffs' Motion to Enforce in abeyance to allow the Bankruptcy Court to extend the stay to them."  (Doc. No. 226 at PageID# 8540.)  As of the date of this Order, however, Responding Defendants have not demonstrated that they have, in fact, sought an extension of the automatic stay from the Bankruptcy Court.  Specifically, Responding Defendants have not provided this Court with a copy of any motion or request filed in the FSO Bankruptcy proceeding seeking an extension of the automatic stay to Responding Defendants, or otherwise directed this Court's attention to any specific filing on the FSO Bankruptcy Court docket that would evidence that such a request has been made.  Under these circumstances, then, this Court will not hold Plaintiffs' Motion in abeyance to allow the Bankruptcy Court to extend the stay.[7]

The Court also rejects Responding Defendants' arguments that Plaintiffs should be (1) barred by principles of collateral estoppel and *res judicata* from pursuing their fraudulent transfer and civil conspiracy claims in *Stephenson II* because Plaintiffs could have raised those claims in *Stephenson I*; and (2) required to "elect their remedy, either enforcement of the Settlement Agreement or pursuit of the claims in *Stephenson II*, but not both."  (*Id*. at PageID# 8536-8537.)  As an initial matter, the Court finds that this issue is moot in light of the parties' Joint Stipulation in *Stephenson II*.  Even if it were not moot, the Court finds that it would not be appropriate for this Court to decide whether

---

[7] Should the Bankruptcy Court extend the stay to the Responding Defendants in the future, Responding Defendants may give notice to this Court, as necessary.

Plaintiffs' claims in *Stephenson II* (an entirely different action that is presided over by a different District Judge) are barred by collateral estoppel and/or *res judicata*. As for the issue of election of remedies, the Court finds that this issue is not appropriately raised or addressed in the context of the instant Motion to Enforce.

Lastly, the Court rejects Responding Defendants' argument that Plaintiffs' Motion should be denied because Plaintiffs have failed to fully comply with this Court's April 2024 Opinion requiring the parties to meet and confer either in person, by video conference, or by telephonic conference prior to filing a motion to enforce. In compliance with this Court's April 2024 Opinion, Attorney Perlmuter submitted a sworn Declaration that he had numerous Zoom and telephone calls with defense counsel regarding Defendants' non-payment, including on June 12, 2024, June 26, 2024,  July 2, 2024, October 15, 2024, November 8, 2024, December 3, 2024, and January 10, 2025. (Doc. No. 225-1 at ¶ 9.)

Accordingly, and for all the reasons set forth above, the Court finds that Responding Defendants breached Paragraphs 26 and 27 of the Settlement Agreement by failing to timely submit the required Installment Payments. Plaintiffs' Motion to Enforce is therefore granted to the extent it seeks a ruling that Responding Defendants breached the Settlement Agreement for non-payment and are jointly and personally liable for damages in the amount of $397,677.51. As discussed below, however, the Court has reservations regarding the specific relief requested by Plaintiffs in their Motion.

Plaintiffs first request that "the settlement payments due and owing of $397,677.51 be reduced to judgment." (Doc. No. 225 at PageID# 8514.) However, as Responding Defendants correctly note, the Settlement Agreement provides that "Individual Payments will be distributed by Defendants'

20

payroll service." (Doc. No. 203-3 at ¶ 32(a)).  Responding Defendants assert (and Plaintiffs do not

dispute) that the reference to "Defendants' payroll service" is to *FSO*'s payroll service.  (Doc. No.

226 at PageID# 8540.)  Responding Defendants maintain that distribution of the Individual Payments

was structured this way "because the Settlement Agreement also governed the Tax Treatment of the

payments," explaining:

> The Defendants were not the entity permitted to deduct the employee share of
> applicable taxes, etc., for one-half the payment, as set forth in the Settlement
> Agreement. The right to such deduction was squarely with FSO, and correctly so.
> Dawn Smith, for instance, could not claim a deduction on her individual taxes for
> Federal/State tax withholdings on payments she makes under the settlement
> agreement. But what Plaintiffs fail to mention in their Declaration is that undersigned
> counsel has at all times been responsive to them, has attempted in numerous ways to
> creatively resolve this without Court intervention, and has proposed several
> modifications to the Settlement Agreement. Unfortunately, in the two, going on three
> months since his involvement (from November 8, 2024 forward), the parties could not
> come to an agreement on the modification.

(*Id.* at PageID#s 8540-8541.)[8]  Plaintiffs fail to sufficiently acknowledge or address this issue in either

their Motion or Reply.

While the Court finds that Responding Defendants breached the Settlement Agreement and

are jointly and personally liable for damages in the amount of $397,677.51, the Court is not inclined

to order Responding Defendants to pay this amount in the absence of any meaningful response from

Plaintiffs regarding the logistics of how the payments and the appropriate tax deductions should be

made consistent with Paragraphs 32(a) and 33 of the Settlement Agreement.  The Court also declines,

---

[8]  Paragraph 33 of the Settlement Agreement (entitled "Tax Treatment of Distributions") provides: "For each Individual
Payment to a Plaintiff, Opt-In, or Class Member, one-half shall be treated as a wage payment subject to deduction of the
employee share of applicable taxes and withholdings required by federal, state, and local law, and one-half shall be
considered non-wage income and reported to the appropriate taxing authorities on Forms 1099.  Defendants will bear
responsibility for the employer's share of any applicable taxes or withholdings.  Service awards and attorneys' fees will
be considered non-wage income and reported to the appropriate taxing authorities on Forms 1099. Defendants shall use
the information on file for each Plaintiff, Opt-in, and Class Member in distributing the W2 and 1099 payments.  Plaintiffs
counsel  will provide Defendants with a W9 within seven (7) days of the Effective Date."  (Doc. No. 203-3 at ¶ 33.)

at this time, to grant Plaintiffs' request that (1) Responding Defendants be ordered to show cause why they have not complied with the Settlement Agreement; (2) Plaintiffs be permitted to conduct discovery regarding any representation by Responding Defendants that they are/were financially unable to make the required Installment Payments; and (3) Plaintiffs be permitted to move for attorneys' fees and "other appropriate sanctions" "if any representations of insolvency are not made in good faith." (Doc. No. 225 at PageID#s 8515.) The Court finds this relief premature in light of the parties' Joint Stipulation in *Stephenson II.*

Thus, Plaintiffs' Motion to Enforce is denied without prejudice to the extent it seeks the above relief at this time. In the event that Responding Defendants default on their payment obligations in *Stephenson II*, Plaintiffs may file an appropriate motion in this Court seeking the above relief, as necessary.

### III. Conclusion

Accordingly, and for all the reasons set forth above, Plaintiffs' Motion to Enforce (Doc. No. 225) is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART, as follows. Plaintiffs' Motion is GRANTED to the extent it seeks a ruling that Responding Defendants breached the Settlement Agreement and are jointly and personally liable for damages in the amount of $397,677.51. However, to the extent Plaintiffs seek an Order directing the Responding Defendants to pay this amount at this time, Plaintiffs' Motion is DENIED WITHOUT PREJUDICE in light of Plaintiffs' failure to adequately address how the payments and the appropriate tax deductions should be made consistent with Paragraphs 32(a) and 33 of the Settlement Agreement.

In addition, the Court DENIES WITHOUT PREJUDICE Plaintiffs' request that (1) Responding Defendants be ordered to show cause why they have not complied with the Settlement

Agreement; (2) Plaintiffs be permitted to conduct discovery regarding any representation by Responding Defendants that they are/were financially unable to make the required Installment Payments; and (3) Plaintiffs be permitted to move for attorneys' fees and other appropriate sanctions if any representations of insolvency are not made in good faith.

In the event that Responding Defendants default on their payment obligations in *Stephenson II,* Plaintiffs may file an appropriate motion in this Court seeking the above relief, as necessary.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
Date: July 31, 2025                                                                U. S. DISTRICT JUDGE